# DECLARATION OF AMY M. DAVIDSON

I, AMY M. DAVIDSON, declare under penalty of perjury as prescribed in 28 U.S.C. §. 1746 that the following is true and correct follows:

1. I am over the age of eighteen, competent to testify, and make this declaration based on my personal knowledge and my review of relevant business records.

## Personal Background

2. I am the Director of the Center on Homelessness (COH) with the Human Services Agency (HSA) within the County of San Mateo, California. As Director, my duties include managing the County's planning, administration, and evaluation of housing and services programs for unhoused County residents in collaboration with my colleagues, the County Department of Housing (DOH), and a coalition of governmental and community-based organizations. I have held this position since January 2025.

3. Prior to accepting the role of Director of COH, I was the Deputy Director of the City of Berkeley's Health, Housing, and Community Services Department with more than 20 years of professional experience in affordable housing and homeless services.

4. I have a Bachelor of Arts from Brown University and a master's degree in public policy from Harvard University's Kennedy School.

## San Mateo County's Homeless Population And Homeless Assistance Programs

5. HSA is the second-largest County department with almost 800 employees and a budget of over $316 million. HSA provides safety net services and administers federal and state-mandated programs to over 198,000 children and adults.

6. San Mateo County is experiencing a severe housing and homelessness crisis. Nearly two thousand people in San Mateo County are homeless on any given night. For example, according to a June 2025 point in time count (PIT), which takes a snapshot of the number of people without housing on a specific date, more than 1,800 individuals were experiencing homelessness, including more than 900 who were unsheltered (living outdoors or in another location not meant for human habitation) and more than 900 who were living in a temporary shelter. Data from the Homeless Management Information System shows that in 2024, 4,313 unique people accessed

homeless services in San Mateo County.

7. In order to house people experiencing homelessness and ensure the community has a comprehensive system of homeless services, San Mateo County applies for funding from the U.S. Department of Housing and Urban Development's (HUD) Continuum of Care (CoC) program for permanent supportive housing (PSH), which provides long-term affordable housing, combined with supportive services for individuals and families experiencing homelessness; CoC Planning, which funds work to coordinate the homeless system of care, complete federally mandated reporting and other activities, and work towards improving system outcomes; and an HMIS Project, which supports the Homeless Management Information System that the County uses for federal reporting and tracking data on homeless programs. Through the County of San Mateo and community-based partner organizations, CoC funds also go towards rapid rehousing programs, which help individuals in San Mateo County exit homelessness and return to permanent housing by providing temporary financial assistance and other supportive services such as housing search and stability case management, as well as a family shelter.

## San Mateo County's CoC Grant Application

8. San Mateo County has applied annually for CoC funding—and received that funding—as part of a Continuum for at least 20 years. The San Mateo Continuum of Care represents a coalition of stakeholders that includes San Mateo County, other local governments, nonprofit organizations and other parties. The County of San Mateo COH submits the CoC application to HUD on behalf of the San Mateo Continuum of Care.

9. In July 2024, HUD posted a biennial NOFO for CoC grants for FYs 2024 and 2025. The San Mateo County Continuum applied for approximately $16,241,298 and was awarded approximately $14,416,792 of FY 2024 CoC funding.

10. Of the total $14,416,792 conditionally awarded to the San Mateo County Continuum, HUD awarded San Mateo County approximately $12,765,350 for 5 individual agreements. HUD also awarded the indicated amounts to the following San Mateo County Continuum partners: $280,825 to LifeMoves for a permanent supportive housing program;

$1,151,716 to Community Overcoming Relationship Abuse or CORA for a rapid rehousing program for survivors of domestic violence, $139,350 to LifeMoves for a family shelter program, and $79,551 to the Mental Health Association of San Mateo County for a permanent supportive housing program.

11. HUD's FY 2024 NOFO for CoC funds was a two-year NOFO. It instructed continuums that they were only required to submit one CoC application for both FY 2024 and FY 2025 funds, and FY 2024 awardees may not need to apply for FY 2025 funds for the award to be renewed.

### The November 13, 2025, FY 2025 NOFO

12. Because of prior representations by HUD, San Mateo County relied on the understanding that its CoC award of $14,416,792 would be renewed for FY 2025 and has been planning its staffing and budget accordingly. But instead, HUD issued a new NOFO on November 13, 2025, several months later. This new NOFO diverges significantly from the previous NOFO and has a closing date of January 14, 2026.

13. It will be challenging, if not impossible, for the County to obtain funding pursuant to the November 13 NOFO. The process of responding to a CoC NOFO typically takes several months. Here, we have just nine weeks. In that time, we have to solicit proposals from nonprofit organizations, review and select them, and compile a satisfactory application. This is compounded by the fact that in January, the same County staff will also be preparing for and carrying out a point-in-time homeless count. HUD requires that the County perform its point-in-time homeless count in January. This is a major lift that typically requires coordinating about 400 volunteers.

14. Preparing an application for this new NOFO is especially daunting because it is, substantively, such a dramatic departure from the FY 2024 NOFO. Prior CoC HUD NOFOs incentivized prioritizing permanent supportive housing and allowed continuums to use the majority of their award for permanent housing. The County has, accordingly, spent the vast majority of its CoC awards on permanent housing. But under this new NOFO, continuums can only spend 30 percent of their awards on permanent supportive housing, with the rest going toward

Transitional Housing (TH) and Supportive Services Only projects (SSO). So, now, the County and the CoC partners have to rethink its entire CoC approach, find nonprofit partners to carry out this new approach, and prepare a competitive application based on this new approach, in just a few weeks which also include three major holidays.

15. The FY 2025 NOFO requires project applications to be submitted to the CoC for review by December 15, 2025. This means that subrecipients and nonprofit partners have minimal time to decide whether and how to apply based on new criteria that radically depart from prior practice. Some current subrecipients who have developed and are operating successful evidence-based programs will be unable to meet the requirements of the NOFO. Other programs may not be able to overhaul their entire programs within the two weeks that applications will be available. Some organizations may choose not to apply due to the risk of relying on a source of funding that may be changed so capriciously.

16. Additionally, the new NOFO says extra points will be given to applicants who "can demonstrate that all CoC projects that are non-profit charitable organizations voluntarily, thoroughly, and demonstrably facilitate immigration status verification before distribution of benefits to all recipients." It additionally requires awardees to comply with Executive Order 14218, which concerns restricting benefits to undocumented persons. San Mateo COH and the Continuum of Care community-based agency partners have never been asked to verify immigration status in the past to administer CoC funds and thus does not have access to SAVE or an equivalent verification system from the federal government. Therefore, San Mateo County lacks the ability to meet this new condition. This could disrupt the provision of housing services because some community members may be unwilling to accept assistance out of fear that it will impact their immigration status. Additionally, some of our nonprofit partners may decide not to participate in the Continuum if they have to check their clients' immigration status because it could affect trusting relationships with their clients.

17. The new NOFO also includes a vague condition prohibiting awardees from "rely[ing] on or otherwise us[ing] a definition of sex as other than binary in humans." If "using" a

definition of sex means that case managers cannot refer to clients by their preferred gender identities, it will have a chilling effect on honest, open conversations between case managers and the unhoused people they serve when trust is a crucial element in helping many people exiting homelessness. In past years, HUD encouraged San Mateo County to use nonbinary definitions of gender and sex. The way this new NOFO is written, the County risks losing eligibility for CoC grants entirely just because it did this in the past, consistent with past HUD policy.

18. The new NOFO also prohibits the awards from being "used to fund any project, service provider, or organization that operates drug injection sites or 'safe consumption sites,' knowingly distributes drug paraphernalia on or off of property under their control, permits the use or distribution of illicit drugs on property under their control, or conducts any of these activities under the pretext of 'harm reduction.'" This is a threshold eligibility standard for CoC funding under the new NOFO. Some nonprofit members of San Mateo County's Continuum operate facilities whose residents are not exclusively clean and sober. The County risks losing eligibility completely if our nonprofit continuum members cannot comply with this vague condition.

19. Similarly, the new NOFO requires applicants to prioritize treatment for substance use and mental health treatment over permanent housing. Of course, treatment is an important component of helping people with substance use and mental health issues recover and live stable, healthy lives in housing. But based on my experience and understanding of the relevant research, providing immediate access to permanent housing without preconditions like sobriety, participation in treatment, or employment in a "Housing First" model has been proven more effective than treatment-first approaches at ending experiences of homelessness and supporting recovery.[1] Once a person's basic needs have been met through safe and stable shelter, they are better equipped to address their health, treatment, recovery, and employment. We have seen the

---

[1] See this collection of research about Housing First models compiled by the National Low Income Housing Coalition: https://nlihc.org/sites/default/files/Housing-First-Evidence.pdf ; also see, https://pmc.ncbi.nlm.nih.gov/articles/PMC8863642/ and, https://www.ucsf.edu/news/2020/09/418546/study-finds-permanent-supportive-housing-effective-highest-risk-chronically

success of housing first models in San Mateo County and the Bay Area. This new NOFO requires the County to move away from evidence-based practices—practices that were encouraged by HUD in prior years—toward approaches we already know are less effective.

### Negative Impacts of Losing Funding

20. Any reduction to the County's CoC funding would be devastating. The County stands to lose approximately $8.7 million in annual funding solely because of the shift in focus away from permanent supportive housing. San Mateo County could lose its entire FY 2025 grant—which it was expecting to receive as a simple renewal—if it is unable to produce a competitive application in this compressed timeline, or if it cannot apply because of conditions with which it cannot comply.

21. The nine grants awarded to the San Mateo Continuum of Care are all renewals. This means that San Mateo County and its community-based partners have previously received CoC awards for these projects which are *currently* housing formerly homeless individuals and supporting ongoing homeless system coordination and reporting. In past CoC NOFOs, the size of the award has been based in part on the total amount of CoC funds awarded to that Continuum of Care in the previous funding cycle (known as the "annual renewal demand"). If San Mateo County does not receive CoC funds in the FY 2025 cycle, existing projects would no longer be considered renewals, and as such existing would not be eligible to apply as renewal projects in future years. With likely reductions of funding for HUD in future federal budget cycles, and given the competitive nature of CoC awards, this could mean losing these funds for the foreseeable future, not just for the FY 2025 round. Also, in prior years, 90 percent of the annual renewal amount was almost guaranteed if you met certain standards, and only 10 percent was competitive. Now, just 30 percent of our annual renewal amount is safe, while 70 percent is competitive. It is hard to articulate how disruptive this will be to our permanent housing projects that rely on HUD CoC funding year after year to remain in operation and that were designed with the expectation that most of that funding would continue to be renewed.

22. More significantly, losing this funding would threaten the housing status of the 471

people projected to be served in the permanent supportive housing programs and the 90 people projected to be served in the rapid rehousing programs. The vast majority of the clients projected to be served are actually already enrolled in in these programs, living in apartments supported by a monthly rent payment. Under HUD's direction, the San Mateo County Continuum of Care has prioritized the most vulnerable and highest-need people experiencing homelessness for these HUD-funded PSH and rapid rehousing programs. Many of the people served have one or more disabilities or chronic health conditions, and many are older adults. Losing this funding would likely lead to the eviction and homelessness of hundreds of extremely vulnerable community members, exposing them to further trauma and eliminating services and stability which allow them to live safely in the community, as well as adding a new barrier to future housing (an eviction record). The new NOFO acknowledges that permanent supportive housing can be an appropriate intervention for the elderly and people with disabilities, yet the crude way that these changes are being inflicted will likely cause these populations to lose their housing with everyone else.

23. Negative impacts would be experienced by more than just the people participating in services. If hundreds of previously homeless people with disabilities were to lose their housing at the same time, unsheltered homelessness is very likely to increase. The County already has a waiting list for shelter and interim housing. The increased number of people experiencing homelessness could overwhelm the homeless system of care and increase emergency costs in the healthcare system. Local property owners participating in these programs would lose rental income and would have to devote time and resources to eviction proceedings. This would likely damage relationships between local property owners, the Housing Authority, and the services agencies who have worked to develop these relationships on behalf of program participants. It would make local property owners less willing to participate in other Housing Authority programs, such as Housing Choice Vouchers. Staffing at community-based organizations could be impacted.

24. A loss of funding would also risk the continuity of the family shelter program that provides safe sheltering to a projected 62 people, all families with minor children. It is hard to estimate how long it would take to overcome the sudden loss of so many affordable housing

opportunities in a housing market as tight and expensive as San Mateo County.

25. Finally, the loss of this funding would inhibit the County's ability to continue its HMIS Project. The HMIS Project allows San Mateo County to make the most efficient use of resources by reducing turnover times in shelter programs, understanding the unhoused population and accompanying needs, and updating system operations in response. If the County could not identify alternate funding sources to fill this gap, the ability of the County to coordinate and improve the homeless system of care would be negatively impacted.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 24th day of November 2025.

_____
AMY M. DAVIDSON