# DECLARATION OF MARY KATHERINE RAND

I, Mary Katherine Rand, hereby declare under penalty of perjury as prescribed in 28 U.S.C. § 1746 that the following is true and correct:

1. I am over the age of 18 years, am competent to testify as to the matters in this declaration, and make it based on my personal knowledge and review of relevant business records.

2. I am the Executive Director of The Mary Parrish Center. I have been in this position since 2018. In this role, I oversee all organizational operations and strategy. Vital responsibilities include program oversight, financial management, grant compliance, staff supervision, fundraising, and community relations.

3. Founded in 2002, The Mary Parrish Center has an exclusive focus on assisting survivors of interpersonal violence by providing housing and support services to survivors who are homeless or in need of housing as a result of sexual assault, domestic violence, dating violence, or stalking, particularly when emergency shelter or other crisis intervention services are unavailable or insufficient. Since that time, we have provided a full array of no-cost, comprehensive services to over 17,000 survivors. In 2009, after noticing the dire need in Nashville, The Mary Parrish Center developed a program dedicated to providing transitional housing for survivors. This Transitional Housing Program provides safe, individual apartments along with flexible and optional support services such as case management, clinical therapy, crisis intervention, economic empowerment, enrichment activities, financial assistance, housing advocacy, and workforce development.

4. Beginning in 2019, the Department of Housing and Urban Development granted The Mary Parrish Center funding to develop three new programs: a Rapid Rehousing Program, a Joint Transitional Housing/Permanent Housing-Rapid Re-Housing Program, and a Domestic

Violence Coordinated Entry Process, all funded through the HUD Continuum of Care ("CoC") program. And each year, our CoC funding has increased. The Mary Parrish Center relies on this funding to provide housing and support services to survivors of interpersonal violence each year.

5. In FY 2024, after participating in the CoC competition through Nashville's Office of Homeless Services, The Mary Parrish Center received $558,929 from the CoC program. This includes $291,534 for Joint Transitional Housing and Rapid Re-housing (TH-RRH), $110,970 for Supportive Services Only, $132,378 for Rapid Re-housing, and $24,047 for Transitional Housing. In 2024, a total of 1,835 individuals were served by these CoC-funded programs, consisting of 246 individuals served through Transitional Housing, Rapid Re-Housing, and Joint TH-RRH programs, and 1,589 individuals served through Domestic Violence Coordinated Entry.

6. The FY25 NOFO's forced treatment preferences systematically disadvantage organizations that provide housing to survivors of domestic violence and sexual assault who cannot safely remain at home—and therefore threaten to leave support for those populations critically underfunded. Organizations that support survivors of domestic violence and sexual assault would commonly seek and receive grants not just under the CoC program, but also under the Violence Against Women Act (VAWA) and Family Violence Prevention and Service Act (FVPSA). Under VAWA and FVPSA, it is illegal for a provider to require beneficiaries to participate in support services as a condition of receiving housing assistance; those services must be voluntary. 34 U.S.C. 12351(b)(3) (VAWA grants for transitional housing assistance); 42 U.S.C. 10408(d)(2) (FVPSA grants for emergency shelter). Thus, under the FY2025 NOFO's forced treatment preferences, organizations serving survivors face great disadvantage because they cannot receive the 29 points (of the 130 points available) that are granted to programs that mandate participation in supportive services.

7. As a result of this scoring disadvantage, my organization does not have a fair or meaningful opportunity to compete for CoC funding. My organization receives both VAWA and FVPSA funding, and in our community, we are the only CoC-funded entity that exclusively provides victim services. We are also the only CoC-funded organization that operates Transitional Housing, Joint Transitional Housing–Rapid Rehousing, and Rapid Rehousing programs dedicated specifically to survivors of domestic violence and sexual assault. If we are not awarded CoC funding, these housing programs will close. As a result, our community will no longer have any longer-term housing options designed specifically for survivors. There are no comparable programs in this community that could absorb these survivors if our programs close.

8. At the time of this declaration, there are approximately 334 households on the Domestic Violence Coordinated Entry By-Name List, representing 684 adult survivors and their children in need of safe housing. Without our programs, these survivors will no longer have access to safe, trauma-informed, domestic-violence-specific housing. Many will be left with only two options: return to their abuser or face unsheltered homelessness.

9. The survivors served by our housing programs are among the most vulnerable in our community and are at the highest risk of serious injury or death as a result of continued abuse. Of those served in our programs last year, 100% reported experiencing stalking, 83% reported being strangled by their abuser, and 100% reported that they believe their abuser is capable of killing them. These programs exist because survivors facing this level of danger require specialized housing and services designed to address complex trauma, safety planning, and long-term recovery.

10. Victim service providers are intentionally designed to operate under a voluntary services model. VAWA and FVPSA expressly protect survivors' right to make their own choices

about services because mandating participation would replicate the power and control dynamics of abuse and deepen trauma. In the most recent program year, 99% of our clients voluntarily engaged in services, demonstrating the effectiveness of this approach. Moreover, federal statutes enacted under VAWA and FVPSA require voluntary services and confidentiality protections. Nevertheless, under the CoC's current scoring system, programs like mine are penalized for complying with these legal mandates.

11. The harm that will result from the closure of these programs cannot be remedied by monetary damages. Once survivors lose access to safe housing, confidentiality protections, and specialized advocacy, the consequences include physical danger, psychological harm, family separation, and heightened risk of serious injury or death. This is not speculative or hypothetical. If The Mary Parrish Center cannot access additional CoC funding, closure of these programs will occur within the current operating cycle.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 26TH day of November, 2025.

*/s/ Mary Katherine Rand*
Mary Katherine Rand