# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NATIONAL ALLIANCE TO END HOMELESSNESS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al.*,<br><br>*Defendants*. | Case No. 25-cv-636-MSM-AEM |

### SUPPLEMENTAL DECLARATION OF ANN MARIE OLIVA NATIONAL ALLIANCE TO END HOMELESSNESS

I, Ann Marie Oliva, declare the following under penalty of perjury:

1. My name is Ann Marie Oliva, and I am the CEO of the National Alliance to End Homelessness ("Alliance" or "NAEH").

2. I previously submitted a declaration in this case in support of Plaintiffs' Motion for Stay and Preliminary Injunction. Dkt. No. 7-1 (First NAEH Decl.).

3. I submit this Supplemental Declaration in further support of Plaintiffs' Motion.

4. If called upon to testify, I could and would testify competently as to the truth of the facts in this declaration.

## I. HUD Withdrew the November NOFO But Intends to Issue Another NOFO

5. On Monday, December 8, I learned that HUD withdrew the FY25 NOFO for the CoC Program that was issued on November 13, 2025.

6. In the afternoon on December 8, several Alliance staff received communications from various members and partners that indicated HUD was withdrawing the FY25 NOFO for the CoC Program. Shortly thereafter, we confirmed on grants.gov that the FY25 NOFO was pulled down and saw a confirmation message on the HUD website that HUD would issue a "modified NOFO well in advance of the deadline for obligation of available Fiscal Year 2025 funds."

7. A screenshot of HUD's December 8, 2025, message on grants.gov is included below:

> Deletion Comments: Today, the Department withdrew a Notice of Funding Opportunity (NOFO) with respect to the Continuum of Care (CoC) grant program. This withdrawal will allow the Department to make appropriate revisions to the NOFO, and the Department intends to do so. In the previous FY 24-25 NOFO, the Department reserved the right to make changes to the NOFO instead of processing renewals for a variety of reasons, including to accommodate a new CoC or Youth Homelessness Demonstration Program (YHDP) priority or new funding source. The Department still intends to exercise this discretion and make changes to the previously issued CoC NOFO to account for new priorities. HUD anticipates reissuing a modified NOFO well in advance of the deadline for obligation of available Fiscal Year 2025 funds.

8. When I read the message from HUD, it was not immediately clear to me what changes HUD intended to make or how CoC applicants should proceed. First, it has been my experience that corrections to a NOFO are usually issued with the posting of a revised NOFO that includes changes that are clearly marked, rather than a full recission and a gap between the documents that creates confusion and delays for applicants. Additionally, the final sentence refers to the obligation deadline for FY25 funds, which would technically be the end of FY2027. Obviously, the FY25 CoC funds

included in this NOFO are needed well before September 30, 2027, so the message did not make sense. Finally, the notification provided no meaningful guidance as to when the new NOFO would be issued, what it would include, or when organizations should expect FY25 funds. Unsurprisingly, we received numerous questions and concerns from our members about what this change means for their programs and applications.

9.  Soon after the grants.gov statement was posted, I learned that attorneys for HUD filed a notice with the Court in this case. The notice explained: "HUD has withdrawn the 2025 NOFO in order to assess the issues raised by Plaintiffs in their suits and to fashion a revised NOFO." Dkt. No. 39

10. The next day, in a public statement, HUD indicated that the withdrawal was meant to address "technical" issues, and that HUD "fully stands by the fundamental reforms" it proposed a month earlier with the November NOFO.[1]

11. On December 12, 2025, HUD emailed the SNAPS-Competition List Serv indicating that it was "working diligently" to revise and replace the FY25 NOFO. A screenshot of HUD's December 12 message is included below:

---

[1] Jason DeParle, *Trump Administration Withdraws Plan to Overhaul Homeless Aid*, N.Y. Times (Dec. 9, 2025), https://perma.cc/XB54-6DWE.



12. Based on its actions and statements, HUD could issue another NOFO at any moment, with any set of conditions, and there is no clear timeline for awarding FY25 CoC awards.

II.     **HUD's Actions Continue to Harm the Alliance's Members**

13. The Alliance's members continue to face harm due to HUD's abandonment of the two-year FY24-25 NOFO, and the withdrawal of the November NOFO only exacerbates uncertainty, chaos, and harm.

14. Based on the two-year NOFO, our members expected their CoC grants to be renewed and awarded by December or January. HUD's abandonment of that NOFO creates serious consequences for our members and the communities they serve.

15. Our members have grants that expire beginning in January 2026 and the remaining eligible renewal projects will expire during the 2026 calendar year. Based

on the Alliance's review of publicly available data, from January to March 2026, CoC grant agreements, worth approximately 350 million dollars, will expire unless HUD takes action to process and award those renewals expeditiously.[2]

16. The Alliance remains deeply concerned about the lapses in funding that will result from HUD's actions. Lapses in CoC funding will have catastrophic consequences for the Alliance's members and their communities, including immediate operational shortfalls, loss of staff and expertise, loss of funding relationships, and loss of goodwill with partners like landlords, and most troubling, a return to unsheltered homelessness for those who are evicted or displaced from CoC-funded housing programs.

17. HUD's withdrawal of the November NOFO has only added to the uncertainty, chaos, and harm to the Alliance's members and the thousands of individuals they serve who will be forced back into homelessness.

18. As described in my first declaration, nonprofits and local governments were grappling with the late-breaking November FY25 NOFO. Under HUD's compressed timeline, they had to determine whether they would (or even could) apply for CoC funding, and how to overcome any funding shortfalls. Dkt. No. 7-1 (First NAEH Decl.) at ¶¶ 129-131. In fact, the application and detailed instructions had not even been

---

[2] The publicly available data we reviewed includes data from USASpending.gov and prior year Grant Inventory Worksheets (GIWs) previously available on HUD's website before January 21, 2025. Because the publicly available data we reviewed is incomplete, the amount included here is likely an undercount.

made available on the electronic system (e-snaps) when HUD withdrew the FY25 NOFO.

19. Communities have been left with even less clarity about what rules and conditions will apply to FY25 CoC grant funds, and when they can expect renewal awards for FY25.

20. When HUD withdrew the 2025 NOFO, many CoCs had to scramble to decide whether to pause or continue the local competition with no information from HUD about when the NOFO would be reissued. Given the short timeline and uncertainty about a potential new NOFO, some communities chose to pause their local competition, so applicants would not spend time and resources on applications that may not be relevant to a new NOFO, while other communities have continued their local competition out of fear that there will not be enough time to re-do their local competition if or when another new NOFO is issued. Still, others have cancelled their local competition entirely. This wide-ranging response of CoCs is highly unusual and is a direct result of HUD's actions.

21. I have been informed that communities spent numerous resources, financial and non-financial, to design and launch local competitions on HUD's compressed timeline. For example, Plaintiff County of Santa Clara expended over $84,000 in unexpected, contracted services this fiscal year related to the November FY25 NOFO planning and coordination of the local competition. In addition to contracted services, County staff time has been diverted from other functions and program operations, including preparing for the opening of cold weather shelters and for inclement

weather emergency response to support unhoused individuals and families. Likewise, Plaintiff City and County of San Francisco spent nearly $50,000 on consulting services and 356 hours of staff time to design and implement its local competition in line with the November FY2025 NOFO. These resources have gone to waste.

22. Alliance members, including co-Plaintiffs in this case, find themselves in limbo with planning at a standstill, and even greater financial uncertainty they must contend with:

23. **Alliance Member, Community Care Alliance (CCA)**: Headquartered in Woonsocket, Rhode Island, CCA relies heavily on CoC grants to fund critical services to support individuals and families experiencing chronic homelessness. It has applied for and received a competitive grant from HUD's CoC Program for the past 13 years, including, most recently, two rapid re-housing grants pursuant to the FY24-25 NOFO. The current contracts run through March 31, 2026, and CCA had no reason to believe that the grants would not be renewed based on the two-year NOFO. If its funding expires on March 31, 2026, and CCA does not have renewal funding, it will have to lay off one staff member and will lose housing/rental assistance for nearly 20 adults and youth. The loss in services and rental assistance cannot be understated – these adults and youth in Woonsocket and Northern Rhode Island will face eviction and be at risk of housing instability and homelessness. HUD's announcement on December 8, 2025, that it is withdrawing the new FY 25 NOFO, has only added to CCA's concern about losing essential CoC funding and the impact on its operations.

Now, CCA has no sense of when or if its HUD awards will be renewed and under what conditions, which makes planning for its housing programs impossible.

24. **Plaintiff City of Boston**: Because HUD doubled down on abandoning the FY24-25 NOFO, the likelihood of a funding shortfall is even greater. Already, Boston was forced to stop referrals for certain permanent housing programs set to expire during the expected funding gap and will have to take additional steps to prepare for more funding delays. Multiple subrecipients have indicated that they may not be able to continue to administer CoC-funded programs due to the financial uncertainty associated with the chaotic NOFO process, and the dramatic cuts and programmatic changes proposed by HUD. One subrecipient, who administers housing for 586 formerly homeless households with disabilities, or more than half of the City's permanent supportive housing portfolio, has declared they will not continue running the program due to the uncertainty and are not reapplying for funding. Boston is working quickly to try to identify alternate sponsors for these projects, but this is challenging due to the lack of information about what application requirements they will be asked to meet. Subrecipients are also not sure how to communicate with tenants and landlords or deal with expiring leases supported by CoC funding. Some landlords may choose not to renew leases due to the continued uncertainty. Boston's CoC partners cannot help tenants at risk of eviction to find other housing, because of the uncertainty regarding what the new conditions or timelines will be for permanent housing. No one knows what a new or revised NOFO from HUD will look like, or when awards will be issued. HUD's actions have caused Boston and project applicants

8

to lose critical partnerships, and to continue diverting significant time and resources to respond to the uncertainty and chaos created by HUD.

25. **Plaintiff County of Santa Clara**: The County and the Santa Clara County Continuum of Care still cannot predict what CoC funding it will have for contracts expiring in mere months (the County has 9 CoC grants eligible for renewal that expire between April 30, 2026, and September 30, 2026, totaling over $25 million). Given the very short timeline, it will be very difficult to find replacement funding or shift resources to protect the most vulnerable clients in those housing programs if they are not renewed. In the past, when the County was faced with demobilizing housing programs due to funding/budget cuts, the planning would start at least 6 months to a year in advance. The rescission of the FY24-25 NOFO, with very little communication from HUD about next steps, has created tremendous uncertainty for County staff and CoC grantees. Several programs have paused referrals to housing programs due to the uncertainty of future funds.

26. **Plaintiff City of Cambridge:** Cambridge's limited resources are being directed away from addressing homelessness toward navigating a confusing and chaotic application process. Subrecipients are raising questions with the CoC about whether to stop accepting new referrals for permanent housing program openings given the uncertainty of funding for those programs. They are facing the reality that the majority of their current program participants will lose housing in the coming year. Subrecipients do not want to add new participants now if they will need to end

9

programs in mere months. HUD's withdrawal of the NOFO, on December 8, 2025, has added confusion and additional uncertainty to an already chaotic process.

27. **Alliance Member, Safe Haven Family Shelter**: Safe Haven, based in Nashville, has a CoC grant ending January 31, 2026, and currently serves 53 families from that grant, including 106 children. Forty-three of those families are in housing and receiving rental assistance and wrap-around supportive services. The remaining ten families are currently in shelter and searching for a housing unit. Safe Haven is frantically trying to determine how they can continue to serve those 53 families with funding that expires at the end of January. It estimates that it will cost at least $200,000 to continue to serve these families, and it has been almost impossible to secure that much additional funding. As a result, they have stopped taking referrals for their program from Nashville's Coordinated Entry/By Name List. For families, that list is nearly 500 names long, and the need for new intakes already exceeds the housing outflow from the system. Safe Haven cannot plan for its future operations with HUD's approach changing so often and no financial certainty.

28. **Alliance Member, Mary Parrish Center**: The Mary Parrish Center, based in Nashville, serves survivors of domestic violence and sexual assault and faces an inability to make ethical commitments to survivors and landlords. Because their funding will expire in June, they anticipate having to stop providing services as of June 30, 2026. As a result, they expect in January to have to stop taking new clients. There are already 344 households on the domestic violence Coordinated Entry/By Name list who are waiting for housing and the Mary Parrish Center has grave

concerns about what will happen to those individuals. This prolonged uncertainty has dangerous consequences for survivors, who need specialized services and trauma-informed care.

29. **Plaintiff City of Tucson**: Representatives within the CoC have been working frantically on the application process, with no idea whether it is necessary or not, nor what will happen with FY 2025 funding. For example, Our Family Services, Inc., an organization that serves both families and youth/young adults aged 12-24 experiencing homelessness, has a $924,287.00 grant for rapid re-housing expiring at the end of February 2026, and another $289,493.00 grant for permanent supportive housing expiring at the end of April 2026. Many other CoC project grants expire in June 2026. There is no certainty as to whether those projects will be re-funded and if so, when. This will require those projects to discontinue services, displace participants, and lay off personnel. In addition to those immediate harms, those projects will be behind the ball if they are awarded funding much later, because they would then need to incur the time and costs and wasted resources to re-start a project rather than simply continuing operations.

30. HUD's abandonment of the FY24-25 NOFO is catastrophic on its own, and any further delay caused by HUD's yet to be issued NOFO will only exacerbate the harms to the Alliance's members and the thousands of people they serve who will be forced back into homelessness.

### III. HUD's Latest Actions Will Further Delay Awards for FY25 CoC Grant Funds

31. Our members expected and planned for FY25 renewal awards to be issued around December or January based on the two-year FY24-25 NOFO. That timeline has been eviscerated because of HUD's abandonment of the FY24-25 NOFO.

32. Even under the withdrawn November FY25 NOFO, HUD anticipated making awards on May 1, 2026, almost five months after our members expected renewals. As discussed above, a delay until May 1, 2026, would have caused devastating funding gaps, starting with the CoC projects with grants expiring in January 2026.

33. If HUD issues a new NOFO in December, or even later, awards will likely be delayed well beyond May 1, 2026. For the renewal projects with end dates between January and June 2026, that means they will have to identify replacement funding, if any are even available, to cover a longer period without CoC grant funds (if they are funded at all by HUD).

34. Many communities generally cannot sustain costs longer than 30-45 days, if at all. *See, e.g.*, Dkt. No. 7-1 (First NAEH Decl.) at ¶ 125 (City of Providence explaining it has no additional resources to increase services without needing to terminate other activities in the municipal budget).

35. In past years, members and their communities could confidently cover brief funding delays because HUD consistently honored renewals and, even if there were some delays in processing awards or grant agreements, recipients could still make budgetary decisions, enter into sub-agreements, and provide client services, knowing that those expenses would be eligible for reimbursement under the awards and

12

subsequent grant agreement. Now, based on HUD's haphazard changes and stated intent to deprioritize renewal projects, it is a much riskier proposition for our members and their communities to attempt to cover any funding gaps. *See id.* at ¶ 135 (explaining that "there are too many unknowns this year for any nonprofit agency to agree to [front rental funds] in the current conditions").

36. Moreover, any projects with end dates after May 1, 2026, will almost certainly also experience lapses in funding as HUD further delays its timeline for processing and issuing FY25 CoC awards.

37. Based on my decades of experience and my familiarity with HUD's practices, it would be almost impossible for HUD to issue awards before May 2026 if it opts to issue a new NOFO in December or later, assuming they follow a lawful and fair review and scoring process.

38. Historically, based on fiscal years 2016 to 2024, after HUD issues a NOFO and opens the competition for the CoC Program, the competitions take, on average, 81 days (about 2.5 months).

39. A competition period shorter than 60 days is unworkable given that CoCs must design local competitions, run those local competitions, and assemble a combined application for HUD with rankings based on the conditions and requirements in the operative NOFO—and that's without a complete overhaul of the CoC Program.

40. Once the competition closes, on average, it takes HUD 124 days (about 4 months) to issue awards. Again, that is without a complete overhaul of the scoring process and review criteria.

41. It will likely take at least 4 months for HUD to review the CoC program competition because it is a complex, two level competitive process that—if the new NOFO is similar to the November FY25 NOFO—will include new criteria and will generate many more new project applications than is typical. First, the e-snaps system must be turned over from an application intake system to the grant scoring and management process, which can take several days. HUD staff then must score each CoC-level application (about 380) and review each of the approximately 6,000 project applications, most of which will be new projects due to the 30% cap on permanent housing imposed in the NOFO. New project applications normally take longer to review than renewals. After applications are scored and reviewed (CoC and project), HUD then applies the required Fair Market Rent increases and other required adjustments before awards are announced.

42. Given these realities of the time HUD reasonably needs to conduct a competition and to process applications, funding lapses are inevitable due to HUD's abandonment of the FY24-25 NOFO. The potential new NOFO, anticipated in December or later, makes the situation even worse.

### IV. HUD Waited Until November 2025 to Abandon the FY24-25 NOFO, But Could Still Easily Process Renewals Under the FY24-25 NOFO

43. The FY24-25 NOFO made clear that those who submitted applications and received awards for FY24 under the two-year NOFO would not be required to reapply for FY25 funds. Dkt. 6-1 (FY24-25 NOFO) at 69.

44. Consistent with that expectation, HUD kicked off the award process for FY25 CoC funds earlier this year.

45. On January 14, 2025, HUD sent an email to the SNAPS-Competition List Serv explaining that, under the FY24-25 NOFO, applicants who completed the FY24 CoC Program Registration did not have to "re-register for FY 2025 CoC Program Funding" unless certain special circumstances applied. Ex. A (Jan. 14 Email).

46. HUD announced FY24 CoC Program awards, pursuant to the FY24-25 NOFO, on January 17, 2025. It is not surprising that HUD closed the FY24-25 NOFO opportunity on grants.gov on January 23, 2025, after awards were announced. It is typical for a funding opportunity on grants.gov to be closed following the announcement of awards. Neither the Alliance nor its members viewed the closure of the opportunity as an indication that the FY24-25 NOFO was no longer in effect. Rather, it was an indication that the FY24 portion of the competition had been closed.

47. In fact, on June 18, 2025, HUD sent an email to CoCs with the FY25 Grant Inventory Worksheets (GIWs), again, with no indication that it was shifting away from the FY24-25 NOFO. CoCs use GIWs to confirm which projects are eligible for renewal, and HUD evaluates that information to set the CoC's Annual Renewal Demand (i.e., the maximum renewal funding the CoC can apply for). HUD's review of the GIWs is a significant and time-intensive part of the CoC Program award process.

48. After HUD's July 3, 2025, email indicating that it intended to issue a new FY25 NOFO, HUD waited 4 months to rescind the FY24-25 NOFO and replace it with the now-withdrawn November FY25 NOFO.

49. Based on my experience and knowledge of HUD's practices, it would be feasible and expedient for HUD to process awards for renewal projects under the FY24-25 NOFO.

50. HUD has already completed its review of the GIWs for FY25 funds, which means that it knows how much it will cost to renew the existing grants, and it does not need to review, score, or rank any projects that received awards in FY24 under the FY24-25 NOFO.

51. What is left for HUD to do to process FY25 awards under the FY24-25 NOFO, is minimal. The remaining procedural and administrative steps, in my best estimate, would take HUD one to two months. These steps include updating the budget line items for operating, leasing and rental assistance with FY26 Fair Market Rents, internal administrative and funding procedures, and developing grant agreements.

52. Proceeding with the FY24-25 NOFO to process renewals would be expedient and would avoid the cascading harm caused by HUD's unlawful actions.

I declare under penalty of perjury as described in 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this 17th day of December, 2025

_____
Ann Marie Oliva
Chief Executive Officer, NAEH

# EXHIBIT A

 Outlook

## FY 2025 CoC Program Registration Update

From SNAPS-COMPETITIONS <SNAPS-COMPETITIONS@hud.gov>
Date Tue 1/14/2025 11:48 AM
To    SNAPS-COMPETITIONS-L@HUDLIST.HUD.GOV <SNAPS-COMPETITIONS-L@HUDLIST.HUD.GOV>

**CAUTION:** This email originated externally from the **Riverside County** email system. **DO NOT** click links or open attachments unless you recognize the sender and know the content is safe.

**FY 2025 CoC Program Registration Update**

This Fiscal Year (FY 2025), the CoC Program Registration **will not open** in *e-snaps* the second Tuesday of January as stated in CPD-22-02: CoC Program Registration Notice.

As authorized by the FY 2024 -FY 2025 CoC Program NOFO, Collaborative Applicants and UFAs that completed the FY 2024 CoC Program Registration are not required to re-register for FY 2025 CoC Program Funding or reapply for UFA designations during the FY 2025 funding year. However, HUD is currently modifying the FY 2025 registration process to allow FY 2025 CoC Program Registrations for special circumstances.

When HUD announces the availability of the Registration forms in *e-snaps*, Collaborative Applicants must only complete the FY 2025 Registration Process for the following circumstances:

- You are the Collaborative Applicant of an existing CoC, not currently designated as a UFA, that wishes to apply for UFA designation during the FY 2025 Funding Year.

- You are the Collaborative Applicant of a new CoC that has not registered for the CoC Program competition in prior years and will apply for the FY 2025 Funding Opportunity if new FY 2025 funding becomes available.

- You are the Collaborative Applicant of a CoC that merged with, or split from, an existing CoC after the FY 2024 Registration Competition.

CoCs will be notified when Registration is open in *e-snaps* via HUD listserv message and the CoC Program Competition Homepage (please see below for instructions on how to join the HUD listserv).



###################################################################
We hope that you will want to continue receiving information from HUD.
We safeguard our lists and do not rent, sell, or permit the use of our lists by others, at any time, for any reason.

If you wish to be added or removed from this mail list, please go here and follow the instructions to either subscribe or unsubscribe.