**Nikoo, Shahrzad**

| | |
|---|---|
| **From:** | Pavlak, Cara E |
| **Sent:** | Wednesday, June 18, 2025 3:49 PM |
| **To:** | Disrud, Doug; Monroe, Christina; Sutton, Jared; Faye, Nora; Pierson, Avery; Giacini, Andrew; Silverstein, Nathan |
| **Cc:** | Carpentier, Julian B; Ryan, Joshua J; Pavlak, Cara E; Bloniarz, Kate A; O'kane, Colleen M; McKenney, Caitlin J |
| **Subject:** | Sec. 231 Notification Letter with Table |
| **Attachments:** | DeLauro.pdf; Clyburn.pdf; Womack.pdf; Cole.pdf |

Good afternoon all,

Please find attached a Sec. 231 Notification letter with an enclosed table from the Assistant Chief Financial Officer for Budget.

HUD respectfully requests approval of this plan by July 16, 2025.

Sincerely,

**Cara Pavlak**
Appropriations Liaison Division (ALD)
U.S. Department of Housing and Urban Development
E-mail: cara.e.pavlak@hud.gov
Phone: (202) 297-5025

DOJ-HUD-AR00005



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC  20410-3000
OFFICE OF THE CHIEF FINANCIAL OFFICER

6/18/2025

The Honorable Tom Cole
Chair
Committee on Appropriations
U.S. House of Representatives
Washington, DC 20515

Dear Mr. Chairman:

The U.S. Department of Housing and Urban Development (HUD) respectfully submits to the Committees, pursuant to section 231 of the Further Consolidated Appropriations Act, 2020 (Public Law 116-94; division H, title II, §231; 42 USC 11364a), approved December 20, 2019 (Section 231), its plan to use recaptured funds to supplement appropriated Fiscal Year (FY) 2025 funding.

Section 231 permits certain recaptured funds to be used only for four identified purposes and requires that the Department designate not less than 10 percent of the total covered amounts for grants in rural areas under the CoC program and not less than 10 percent of the total covered amounts for Emergency Solutions Grants (ESG) for disaster areas. Section 231 also provides that prior to competing, awarding, or obligating specified amounts recaptured from funds appropriated under the heading "Homeless Assistance Grants", HUD shall submit a plan that specifies the planned use of any such amounts to the Committees on Appropriations of the House of Representatives and the Senate. In fulfillment of this requirement, the Department hereby submits this plan.

HUD plans to use the flexibility Congress provided in Public Law 119-4, which enables HUD to repurpose the $100 million provided for new Permanent Supportive Housing to provide additional funding for the Continuum of Care Program. In addition to these amounts, HUD respectfully requests approval of this plan to utilize up to approximately $294 million of recaptured funds, pursuant to Sections 231 (a)(1) and 231 (a)(3), to supplement FY 2025 appropriated amounts.

The table accompanying this letter reflects the Department's planned uses as described above.

HUD respectfully requests approval of this plan by July 16, 2025.

DOJ-HUD-AR00006

We will be happy to provide a detailed briefing to the Committee staff, at their request, as well as any additional information you or your staff may require. Should Committee staff have questions about this matter, please contact me at (202) 256-6087.

Sincerely,

Catherine Bloniarz
Assistant Chief Financial Officer for Budget

Enclosure

**Recaptured Homeless Assistance Grant Funds Subject to Section 231**

|  | Balances Under Sec. 231 | Special NOFO Projects | Continuum of Care Projects | Remaining Sec. 231 Balance |
|---|---|---|---|---|
| **Unallocated Balance\*** | $367,287,887 | $116,000,000 | $165,000,000 | $86,287,887 |
| **Rural Homelessness Balance\*\*** | $64,197,138 | $13,000,000 | $0 | $51,197,138 |
|  | **$431,485,025** | **$129,000,000** | **$165,000,000** | **$137,485,025** |

\* The unallocated line reflects amounts available under Section 231 after setting aside required amounts for rural areas and for disaster areas.

    \*\*HUD sets aside 10 percent of recaptured amounts covered by Section 231



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC 20410-3000
OFFICE OF THE CHIEF FINANCIAL OFFICER

6/18/2025

The Honorable Rosa L. DeLauro
Ranking Member
Committee on Appropriations
U.S. House of Representatives
Washington, DC 20515

Dear Representative DeLauro:

The U.S. Department of Housing and Urban Development (HUD) respectfully submits to the Committees, pursuant to section 231 of the Further Consolidated Appropriations Act, 2020 (Public Law 116-94; division H, title II, §231; 42 USC 11364a), approved December 20, 2019 (Section 231), its plan to use recaptured funds to supplement appropriated Fiscal Year (FY) 2025 funding.

Section 231 permits certain recaptured funds to be used only for four identified purposes and requires that the Department designate not less than 10 percent of the total covered amounts for grants in rural areas under the CoC program and not less than 10 percent of the total covered amounts for Emergency Solutions Grants (ESG) for disaster areas. Section 231 also provides that prior to competing, awarding, or obligating specified amounts recaptured from funds appropriated under the heading "Homeless Assistance Grants", HUD shall submit a plan that specifies the planned use of any such amounts to the Committees on Appropriations of the House of Representatives and the Senate. In fulfillment of this requirement, the Department hereby submits this plan.

HUD plans to use the flexibility Congress provided in Public Law 119-4, which enables HUD to repurpose the $100 million provided for new Permanent Supportive Housing to provide additional funding for the Continuum of Care Program. In addition to these amounts, HUD respectfully requests approval of this plan to utilize up to approximately $294 million of recaptured funds, pursuant to Sections 231 (a)(1) and 231 (a)(3), to supplement FY 2025 appropriated amounts.

The table accompanying this letter reflects the Department's planned uses as described above.

HUD respectfully requests approval of this plan by July 16, 2025.

DOJ-HUD-AR00009

      We will be happy to provide a detailed briefing to the Committee staff, at their request, as well as any additional information you or your staff may require. Should Committee staff have questions about this matter, please contact me at (202) 256-6087.

Sincerely,

Catherine Bloniarz
Assistant Chief Financial Officer for Budget

Enclosure

**Recaptured Homeless Assistance Grant Funds Subject to Section 231**

| | Balances Under Sec. 231 | Special NOFO Projects | Continuum of Care Projects | Remaining Sec. 231 Balance |
|---|---|---|---|---|
| **Unallocated Balance*** | $367,287,887 | $116,000,000 | $165,000,000 | $86,287,887 |
| **Rural Homelessness Balance**** | $64,197,138 | $13,000,000 | $0 | $51,197,138 |
| | **$431,485,025** | **$129,000,000** | **$165,000,000** | **$137,485,025** |

\* The unallocated line reflects amounts available under Section 231 after setting aside required amounts for rural areas and for disaster areas.

\*\*HUD sets aside 10 percent of recaptured amounts covered by Section 231



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC  20410-3000
OFFICE OF THE CHIEF FINANCIAL OFFICER

6/18/2025

The Honorable James E. Clyburn
Ranking Member
Subcommittee on Transportation,
  Housing and Urban Development and Related Agencies
Committee on Appropriations
U.S. House of Representatives
Washington, DC 20515

Dear Representative Clyburn:

The U.S. Department of Housing and Urban Development (HUD) respectfully submits to the Committees, pursuant to section 231 of the Further Consolidated Appropriations Act, 2020 (Public Law 116-94; division H, title II, §231; 42 USC 11364a), approved December 20, 2019 (Section 231), its plan to use recaptured funds to supplement appropriated Fiscal Year (FY) 2025 funding.

Section 231 permits certain recaptured funds to be used only for four identified purposes and requires that the Department designate not less than 10 percent of the total covered amounts for grants in rural areas under the CoC program and not less than 10 percent of the total covered amounts for Emergency Solutions Grants (ESG) for disaster areas. Section 231 also provides that prior to competing, awarding, or obligating specified amounts recaptured from funds appropriated under the heading "Homeless Assistance Grants", HUD shall submit a plan that specifies the planned use of any such amounts to the Committees on Appropriations of the House of Representatives and the Senate. In fulfillment of this requirement, the Department hereby submits this plan.

HUD plans to use the flexibility Congress provided in Public Law 119-4, which enables HUD to repurpose the $100 million provided for new Permanent Supportive Housing to provide additional funding for the Continuum of Care Program. In addition to these amounts, HUD respectfully requests approval of this plan to utilize up to approximately $294 million of recaptured funds, pursuant to Sections 231 (a)(1) and 231 (a)(3), to supplement FY 2025 appropriated amounts.

The table accompanying this letter reflects the Department's planned uses as described above.

HUD respectfully requests approval of this plan by July 16, 2025.

DOJ-HUD-AR00012

We will be happy to provide a detailed briefing to the Committee staff, at their request, as well as any additional information you or your staff may require. Should Committee staff have questions about this matter, please contact me at (202) 256-6087.

Sincerely,

Catherine Bloniarz
Assistant Chief Financial Officer for Budget

Enclosure

DOJ-HUD-AR00013

**Recaptured Homeless Assistance Grant Funds Subject to Section 231**

|  | Balances Under Sec. 231 | Special NOFO Projects | Continuum of Care Projects | Remaining Sec. 231 Balance |
|---|---|---|---|---|
| **Unallocated Balance\*** | $367,287,887 | $116,000,000 | $165,000,000 | $86,287,887 |
| **Rural Homelessness Balance\*\*** | $64,197,138 | $13,000,000 | $0 | $51,197,138 |
|  | **$431,485,025** | **$129,000,000** | **$165,000,000** | **$137,485,025** |

\* The unallocated line reflects amounts available under Section 231 after setting aside required amounts for rural areas and for disaster areas.

\*\*HUD sets aside 10 percent of recaptured amounts covered by Section 231 for grants in rural areas or for disaster areas.

DOJ-HUD-AR00014



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC  20410-3000
OFFICE OF THE CHIEF FINANCIAL OFFICER

6/18/2025

The Honorable Steve Womack
Chairman
Subcommittee on Transportation,
    Housing and Urban Development and Related Agencies
Committee on Appropriations
U.S. House of Representatives
Washington, DC 20515

Dear Mr. Chairman:

The U.S. Department of Housing and Urban Development (HUD) respectfully submits to the Committees, pursuant to section 231 of the Further Consolidated Appropriations Act, 2020 (Public Law 116-94; division H, title II, §231; 42 USC 11364a), approved December 20, 2019 (Section 231), its plan to use recaptured funds to supplement appropriated Fiscal Year (FY) 2025 funding.

Section 231 permits certain recaptured funds to be used only for four identified purposes and requires that the Department designate not less than 10 percent of the total covered amounts for grants in rural areas under the CoC program and not less than 10 percent of the total covered amounts for Emergency Solutions Grants (ESG) for disaster areas. Section 231 also provides that prior to competing, awarding, or obligating specified amounts recaptured from funds appropriated under the heading "Homeless Assistance Grants", HUD shall submit a plan that specifies the planned use of any such amounts to the Committees on Appropriations of the House of Representatives and the Senate. In fulfillment of this requirement, the Department hereby submits this plan.

HUD plans to use the flexibility Congress provided in Public Law 119-4, which enables HUD to repurpose the $100 million provided for new Permanent Supportive Housing to provide additional funding for the Continuum of Care Program. In addition to these amounts, HUD respectfully requests approval of this plan to utilize up to approximately $294 million of recaptured funds, pursuant to Sections 231 (a)(1) and 231 (a)(3), to supplement FY 2025 appropriated amounts.

The table accompanying this letter reflects the Department's planned uses as described above.

HUD respectfully requests approval of this plan by July 16, 2025.

We will be happy to provide a detailed briefing to the Committee staff, at their request, as well as any additional information you or your staff may require. Should Committee staff have questions about this matter, please contact me at (202) 256-6087.

Sincerely,

Catherine Bloniarz
Assistant Chief Financial Officer for Budget

Enclosure

**Recaptured Homeless Assistance Grant Funds Subject to Section 231**

|  | Balances Under Sec. 231 | Special NOFO Projects | Continuum of Care Projects | Remaining Sec. 231 Balance |
|---|---|---|---|---|
| **Unallocated Balance*** | $367,287,887 | $116,000,000 | $165,000,000 | $86,287,887 |
| **Rural Homelessness Balance**** | $64,197,138 | $13,000,000 | $0 | $51,197,138 |
|  | **$431,485,025** | **$129,000,000** | **$165,000,000** | **$137,485,025** |

\* The unallocated line reflects amounts available under Section 231 after setting aside required amounts for rural areas and for disaster areas.

\*\*HUD sets aside 10 percent of recaptured amounts covered by Section 231

**Nikoo, Shahrzad**

| | |
|---|---|
| **From:** | SNAPS-COMPETITIONS |
| **Sent:** | Thursday, July 3, 2025 1:09 PM |
| **To:** | SNAPS-COMPETITIONS-L@HUDLIST.HUD.GOV |
| **Subject:** | Important FY2025 CoC Competition Updates |

Dear Continuums of Care,

Thank you for your work to serve the most vulnerable Americans without housing. You, more than anyone, know that the nation's homelessness crisis is at a historic high, and that our communities shoulder the tragic impacts of this crisis every day. With 770,000 people experiencing homelessness — 275,000 people unsheltered on our streets — HUD is dedicated to supporting local solutions that reduce unsheltered homelessness and increase long term stability and self-sufficiency. The status quo is unacceptable for every American, with or without a home.

In response, HUD intends to publish a NOFO for 2025 Continuum of Care (CoC) awards. HUD invites CoCs to prepare for an application focused on treatment and recovery, reducing unsheltered homelessness, reducing returns to homelessness, and increasing the earned income of participants.

The NOFO will seek to provide opportunities for new types of projects including street outreach and transitional housing programs. HUD encourages CoCs to evaluate the effectiveness of their projects at contributing to the community-wide goals above and to ensure that the most effective partners, including faith-based organizations, are involved.

We recognize this is a new application process for 2025 funding and are committed to providing CoCs the resources needed to serve their communities.

Alongside you, Secretary Turner and all of HUD recognize the inherent dignity of every man, woman, and child without a home. It is HUD's mission to steward resources so that no person is left to languish on our streets or to suffer in the grip of addiction. Thank you for your partnership to that end.



####################################################################
We hope that you will want to continue receiving information from HUD.
We safeguard our lists and do not rent, sell, or permit the use of our lists by others, at any time, for any reason.
If you wish to be added or removed from this mail list, please go here and follow the instructions to either subscribe or unsubscribe.

DOJ-HUD-AR00018



**U. S. Department of Housing and Urban Development**
Washington, D.C. 20410-8000

OFFICE OF THE ASSISTANT SECRETARY FOR
CONGRESSIONAL AND INTERGOVERNMENTAL RELATIONS

The Honorable Scott H. Peters
U.S. House of Representatives
Washington, DC 20515

Dear Congressman Peters:

On behalf of the Department of Housing and Urban Development (HUD), thank you for your letter to Secretary Scott Turner in support of Continuum of Care (CoC) applications for homeless assistance. HUD provides over $4 billion annually to homeless shelters, transitional housing and permanent housing for the homeless, as well as supportive services for the homeless. The program funds state and local units of government and private non-profit organizations.

As your letter indicated, on January 17, 2025, the Department announced $3.6 billion in CoC Program awards for nearly 7,000 projects across the country. CoCs affected by major disasters received an extension to the original application deadline of October 30, 2024 on March 21, 2025. Final grant agreements for all awarded projects were made available on March 20, 2025, and HUD prioritized executing grant agreements for recipients with existing renewal grants expiring within the first four months of the calendar year. The Department has continued to prioritize processing grant agreements for the FY24 CoC awards.

Regarding Fiscal Year (FY) 2025 CoC Program and the 2-year CoC Program competition process, the Consolidated Appropriations Act, 2024 authorized HUD to issue a single 2-year Notice of Funding Opportunity (NOFO). The FY 2024 and FY 2025 CoC Competition and Renewal or Replacement of Youth Homeless Demonstration Program (YHDP) Grants NOFO provided that "projects that are awarded FY 2024 funds may be eligible for an award of FY 2025 funds using their FY 2024 application submission" and the Department "reserves the right to modify this NOFO or issue a supplemental FY 2024 CoC and YHDP NOFO if necessary." On July 3, 2025, HUD announced it will issue a FY 2025 CoC NOFO to award 2025 CoC funds.

The Department is committed to the effort to combat homelessness. The CoC Program is an important part of HUD's mission. I appreciate your input on this important issue. Please let me know if I can be of further assistance.

Sincerely,

Colleen M. O'Kane
Deputy Assistant Secretary for Congressional
and Intergovernmental Relations

www.hud.gov

DOJ-HUD-AR00019

cc:
Rep. Scott H. Peters
Rep. Suzanne Bonamici
Rep. Sarah Jacobs
Rep. Gwen S. Moore
Rep. Alma S. Adams, Ph.D.
Rep. Henry C." Hank" Johnson, Jr.
Rep. Summer L. Lee
Rep. Kevin Mullin
Rep. Eleanor Holmes Norton
Rep. Shelia Cherfilus-McCormick
Rep. Sylvester Turner
Rep. Robin L. Kelly
Rep. Danny K. Davis
Rep. James P. McGovern
Rep. Mark Pocan
Rep. Frank J. Mrvan
Rep. Ted W. Lieu
Rep. Dwight Evans
Rep. Rashida Tlaib
Rep. Bennie G. Thompson
Rep. Cleo Fields
Rep. Becca Balint
Rep. Sarah McBride
Rep. Darren Soto
Rep. Pramila Jayapal
Rep. Adam Smith
Rep. Gilbert Ray Cisneros, Jr.
Rep. Maxine Dexter
Rep. Mike Quigley
Rep. John Schakowsky
Rep. John B. Larson
Rep. Delia C. Ramirez
Rep. Paul D. Tonko
Rep. Steven F. Lynch
Rep. Morgan McGarvey
Rep. Glenn Ivy
Rep. Alexandria Ocasio-Cortez
Rep. Joaquin Castro
Rep. Brittany Pettersen
Rep. Joseph D. Morelle
Rep. Maxwell Alejandro Frost
Rep. Emilia Strong Sykes
Rep. Chellie Pingree
Rep. Jonathan L. Jackson
Rep. Dan Goldman

3

Rep. Raja Krishanamoorthi
Rep. Robert J. Menendez
Rep. Derek T. Tran
Rep. Greg Landsman
Rep. Salud Carbajal
Rep. Emmanuel Cleaver, II
Rep. Yassamin Ansari
Rep. Mike Leven
Rep. Sylvia R. Garcia
Rep. Mark Takano

DOJ-HUD-AR00021



**U. S. Department of Housing and Urban Development**
Washington, D.C. 20410-8000

OFFICE OF THE ASSISTANT SECRETARY FOR
CONGRESSIONAL AND INTERGOVERNMENTAL RELATIONS

The Honorable Adam Schiff
United States Senate
Washington, DC 20515-0001

Dear Senator Schiff:

On behalf of the Department of Housing and Urban Development (HUD), thank you for your letter to Secretary Scott Turner in support of Continuum of Care (CoC) applications for homeless assistance. HUD provides over $4 billion annually to homeless shelters, transitional housing and permanent housing for the homeless, as well as supportive services for the homeless. The program funds state and local units of government and private non-profit organizations.

As your letter indicated, on January 17, 2025, the Department announced $3.6 billion in CoC Program awards for nearly 7,000 projects across the country. CoCs affected by major disasters received an extension to the original application deadline of October 30, 2024 on March 21, 2025. Final grant agreements for all awarded projects were made available on March 20, 2025, and HUD prioritized executing grant agreements for recipients with existing renewal grants expiring within the first four months of the calendar year. The Department has continued to prioritize processing grant agreements for the FY24 CoC awards.

Regarding Fiscal Year (FY) 2025 CoC Program and the 2-year CoC Program competition process, the Consolidated Appropriations Act, 2024 authorized HUD to issue a single 2-year Notice of Funding Opportunity (NOFO). The FY 2024 and FY 2025 CoC Competition and Renewal or Replacement of Youth Homeless Demonstration Program (YHDP) Grants NOFO provided that "projects that are awarded FY 2024 funds may be eligible for an award of FY 2025 funds using their FY 2024 application submission" and the Department "reserves the right to modify this NOFO or issue a supplemental FY 2024 CoC and YHDP NOFO if necessary." On July 3, 2025, HUD announced it will issue a FY 2025 CoC NOFO to award 2025 CoC funds.

The Department is committed to the effort to combat homelessness. The CoC Program is an important part of HUD's mission. I appreciate your input on this important issue. Please let me know if I can be of further assistance.

Sincerely,

Colleen M. O'Kane
Deputy Assistant Secretary for Congressional
and Intergovernmental Relations

www.hud.gov

2

cc:
Senator Tina Smith
Senator Martin Heinrich
Senator Edward J. Markey
Senator Ron Wyden
Senator Jeanne Shabeen
Senator Alex Padilla
Senator Ben Ray Lujan
Senator Richard Blumenthal
Senator Mazie K. Hirono

DOJ-HUD-AR00023

**Nikoo, Shahrzad**

| | |
|---|---|
| **From:** | SNAPS-COMPETITIONS |
| **Sent:** | Thursday, November 13, 2025 8:16 PM |
| **To:** | SNAPS-COMPETITIONS-L@hud.gov |
| **Subject:** | FY 2025 Continuum of Care Competition and YHDP Notice of Funding Opportunity |

The 2025 Continuum of Care (CoC) Competition Notice of Funding Opportunity (NOFO) is now available at grants.gov.

HUD is laser-focused on working with tribal, state and local communities to dramatically stop and reverse the crisis of increasing homelessness. Our responsibility is to help families and individuals experiencing homelessness as well as American taxpayers whose safety and use of public spaces is impacted by the crises of homelessness, addiction and mental illness.

This NOFO makes available $3.9 billion in awards and is the single largest Federal program to address homelessness. HUD intends to positively steward these valuable taxpayer resources by:

- Promoting treatment and recovery,
- Welcoming Transitional Housing and Supportive Services projects including street outreach,
- Increasing competition for grants in order to improve system efficiencies and to increase innovation,
- Measuring long-term meaningful outcomes such as increases in self-sufficiency and reduction in recidivism rates,
- Strengthening the role of local elected officials, law enforcement and the community leaders,
- Advancing public safety through thoughtful partnerships with law enforcement, and
- Increasing personal accountability through enhanced treatment requirements to combat the Fentanyl crisis.

HUD encourages CoCs to expand their pool of providers, including high-performing faith-based providers when appropriate, who can deliver outcomes in line with the priorities above and in this NOFO.

HUD also encourages organizations that are passionate about these priorities who have not previously received CoC funding to participate with their local CoC. In the case that high-quality service providers are denied access to CoC funding, these agencies are encouraged to consider pursuing the Solo Application process that is described in this NOFO and at HUD.gov.

Further, HUD reminds applicants that recipients of Federal housing and homelessness assistance may not operate drug injection sites or "safe consumption sites," knowingly distribute drug paraphernalia, or permit the use or distribution of illicit drugs on property under their control (EO 14321 Sec. 5(c)). HUD may refer allegations of any such operations or distributions to the Department of Justice for further action, potentially including prosecution for any violations of 21 U.S.C. § 856.

For more information, see HUD's Notice of Funding Opportunity (NOFO) here.

Additional resources will be available on the Continuum of Care Competition page of HUD's website.

DOJ-HUD-AR00024

**Submission Deadline:** Wednesday, January 14, 2026 at 8:00 PM EST

The FY 2025 CoC Application, the FY 2025 CoC Priority Listing, and FY 2025 Project Applications should be available in e-snaps soon.

**Additional Guidance**

The following additional materials will be posted on the [Continuum of Care page](#) of HUD's website:

- FY 2025 CoC Estimated ARD Reports
- Detailed Instructions
  - FY 2025 CoC Application
  - FY 2025 CoC Priority Listing
  - FY 2025 Project Applications – all types
- Navigational Guides
  - How to Access Project Applications
  - Project Applicant Profile Navigational Guide
  - New Project Application
  - Renewal Project Application
  - YHDP Renewal Project Application
  - YHDP Replacement and YHDP Reallocation Project Application
  - UFA Costs Project Application
  - Planning Costs Project Application
  - CoC Priority Listing

**Webinar- Friday, November 14th**

HUD will host an informational webinar at 3pm (EST), Friday, November 14th. All potential applicants are encouraged to attend. The webinar will be recorded.

You do not need to register in advance. To join click on the link below:

[FY25 CoC NOFO Webinar](#)

If you cannot join by computer, you may dial in by phone only at 202-735-3323 with access code 5006287#.

**Questions**

Questions regarding the FY 2025 CoC Program Competition process must be submitted to [CoCNOFO@hud.gov](#).

Questions related to *e-snaps* functionality (e.g., password lockout, access to user's application account, updating Applicant Profile) must be submitted to [e-snaps@hud.gov](#).

DOJ-HUD-AR00025



###############################################################
We hope that you will want to continue receiving information from HUD.
We safeguard our lists and do not rent, sell, or permit the use of our lists by others, at any time, for any reason.

If you wish to be added or removed from this mail list, please go here and follow the instructions to either subscribe or unsubscribe.

DOJ-HUD-AR00026



**U.S. Department of Housing and Urban Development**

Community Planning and Development

FY 2024 and FY 2025 Continuum of Care Competition and Renewal or Replacement of Youth Homeless Demonstration Program Grants
FR-6800-N-25
08/29/2025

DOJ-HUD-AR00027

# Table of Contents

I. FUNDING OPPORTUNITY DESCRIPTION...........................................................................3

A. Program Description .................................................................................................................3

B. Definitions and CoC Program Concepts .................................................................................10

II. AWARD INFORMATION ........................................................................................................33

A. Available Funds ......................................................................................................................33

III. ELIGIBILITY INFORMATION .............................................................................................34

A. Eligible Applicants..................................................................................................................34

B. Rules and Regulations Applicable to HUD NOFOs ...............................................................36

C. Rules that Affect How HUD Evaluates Applications .............................................................57

IV. APPLICATION AND SUBMISSION INFORMATION .........................................................67

A. Application Package.................................................................................................................67

B. System for Award Management (SAM) and Unique Entity Identifier (UEI) .........................67

C. Other Guidance and Notifications ...........................................................................................68

D. Application Verification...........................................................................................................69

E. Content and Form of Application Submission .........................................................................69

F. CoC Consolidated Application ................................................................................................72

G. Submission Dates and Times ..................................................................................................75

H. Intergovernmental Review ......................................................................................................77

I. Funding Restrictions ................................................................................................................77

J. Other Submission Requirements ..............................................................................................77

V. APPLICATION REVIEW INFORMATION ............................................................................80

A. Criteria.....................................................................................................................................80

B. CoC Application Scoring .........................................................................................................81

C. Project Review and Selection Process...................................................................................108

D. Adjustments to Projects.........................................................................................................111

E. Corrections to Deficient Applications ...................................................................................112

F. Other Federal Statutes............................................................................................................112

VI. AWARD ADMINISTRATION INFORMATION..................................................................113

A. Award Notices.......................................................................................................................113

B. Administrative, National and Departmental Policy Requirements and Terms for HUD's Financial Assistance Programs ...................................................................................................115

C. Environmental Review ..........................................................................................................117

D. Lead-Based Paint Requirements ...........................................................................................118

DOJ-HUD-AR00028

E. Remedies for Noncompliance ............................................................................................118

F. Reporting ............................................................................................................................118

G. Debriefing ..........................................................................................................................120

H. Administrative and Other Program Requirements. ...........................................................120

I. Timeliness Standards. .........................................................................................................120

VII. APPEALS .........................................................................................................................120

A. Description .........................................................................................................................120

B. Types of Appeals ...............................................................................................................121

C. Solo Applicant ...................................................................................................................121

D. Denied or Decreased Funding ...........................................................................................122

E. Consolidated Plan Certification .........................................................................................124

F. Appeals Submission ...........................................................................................................125

VIII. AGENCY CONTACT .....................................................................................................126

C. General Clarification. .........................................................................................................126

IX. OTHER INFORMATION ..................................................................................................127

Appendix .................................................................................................................................128

Community Planning and Development

FY 2024 and FY 2025 Continuum of Care Competition and Renewal or Replacement of Youth Homeless Demonstration Program Grants

**Funding Opportunity Number:**

FR-6800-N-25

**Assistance Listing Number (formerly CFDA Number):**

14.267

**Due Date for Applications:**

08/29/2025

The U.S. Department of Housing and Urban Development (HUD) issues this Notice of Funding Opportunity (NOFO) to invite applications from eligible applicants for the program and purpose described within this NOFO. You, as a prospective applicant, should carefully read all instructions in all sections to avoid sending an incomplete or ineligible application. HUD funding is highly competitive. Failure to respond accurately to any submission requirement could result in an incomplete or noncompetitive proposal.

In accordance with Title 24 part 4, subpart B of the Code of Federal Regulations (CFR), during the selection process (which includes HUD's NOFO development and publication and concludes with the award of assistance), HUD is prohibited from disclosing covered selection information. Examples of impermissible disclosures include: 1) information regarding any applicant's relative standing; 2) the amount of assistance requested by any applicant; and 3) any information

contained in the application. Prior to the application deadline, HUD may not disclose the identity of any applicant or the number of applicants who have applied for assistance.

For further information regarding this NOFO, direct questions regarding the specific requirements of this NOFO to the agency contact identified in Section VIII.

**Paperwork Reduction Act Statement.** The information collection requirements in this notice were approved by the Office of Management and Budget (OMB) under the Paperwork Reduction Act of 1995 (44 U.S.C. §§ 3501- 3520) (PRA). In accordance with the PRA, HUD may not conduct or sponsor, and a person is not required to respond to a collection of information unless the collection displays a valid OMB control number. This NOFO identifies the applicable OMB control number, unless the collection of information is excluded from these requirements under 5 CFR part 1320.

**OMB Control Number(s):**
2506-0112

# I. FUNDING OPPORTUNITY DESCRIPTION

## A. Program Description

The Continuum of Care (CoC) Program is designed to promote a community-wide commitment to the goal of ending homelessness; to provide funding for efforts by nonprofit providers, States, Indian Tribes or Tribally Designated Housing Entities [as defined in section 4 of the Native American Housing Assistance and Self-Determination Act of 1996 (25 U.S.C. 4103) (TDHEs)], and local governments to quickly rehouse individuals and families experiencing homelessness, persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, and stalking, and youth experiencing homelessness while minimizing the trauma and dislocation caused by homelessness; to promote access to and effective utilization of mainstream programs by homeless individuals and families, and to optimize self-sufficiency among those experiencing homelessness.

The goal of the Youth Homelessness Demonstration Program (YHDP) is to support the development and implementation of a coordinated community approach to preventing and ending youth homelessness and sharing that experience with and mobilizing communities around the country toward the same end. The population to be served by the demonstration program is youth ages 24 and younger who are experiencing homelessness, including unaccompanied and pregnant or parenting youth.

### 1. Authority

The CoC Program is authorized by subtitle C of title IV of the McKinney-Vento Homeless Assistance Act, (42 U.S.C. 11381–11389) (the Act), and the CoC Program rule found in 24 CFR part 578 (the Rule).

The FY 2024 funds are authorized by the Consolidated Appropriations Act, 2024 (Public Law 118-42, approved March 9, 2024). Available funds also include amounts made available pursuant to Section 231 of the Further Consolidated Appropriations Act, 2020 (Public Law 116-94, division H, title II, section 231;  42 USC 11364a). The noncompetitive or competitive renewal or replacement of YHDP grants under the CoC program, and HUD's authority to issue a

DOJ-HUD-AR00030

2-year NOFO are authorized by the Consolidated Appropriations Act, 2024 and any FY 2025 funding will be authorized by a FY 2025 Congressional Appropriation.

**2. Deadline.**

This NOFO establishes two deadlines for submitting applications to HUD for the FY 2024 - FY 2025 CoC Program Competition and the Renewal and Replacement of YHDP grants. The deadline to submit CoC Consolidated applications and project applications for FY 2024 funds is 8:00 PM EDT on October 30, 2024. Applicants must complete and submit their applications in *e-snaps* at **https://esnaps.hud.gov/**. See Sections IV.F and G of this NOFO for application submission and timely receipt requirements.

CoC and YHDP Renewal grants that do not meet the renewal eligibility requirements for FY 2024 funding but are eligible for renewal when FY 2025 Congressional Appropriations are made available, must submit applications for FY 2025 funding by the application submission deadline of 8:00 PM EDT on August 29, 2025. Applicants with CoC projects that wish to reallocate eligible renewal projects and create new projects in the FY 2025 funding process must also submit those applications for reallocation by the application submission deadline of 8:00 PM EDT on August 29, 2025. Applicants with YHDP Projects that expire in CY 2025 may non-competitively renew or replace those projects and must submit an application by 8:00 PM EDT on August 29, 2025.

HUD may also amend this NOFO if necessary to make additional funds available.

**3. Changes from Previous NOFO**

**a. Changes to Tiering**. Tier 1 is set at 90 percent of the CoC's Annual Renewal Demand (ARD).

**b. 2-Year NOFO**. The Consolidated Appropriations Act, 2024 authorizes HUD to issue a single 2-year NOFO for fiscal years 2024 and 2025.

The application and selection process for the FY 2024 funds awarded through this NOFO (the FY 2024 CoC Program and YHDP funds) will proceed much like it has in prior-year competitions. However, CoCs are only required to submit one CoC application that will be applicable to the FY 2024 and FY 2025 funds. HUD reserves the right to award available FY 2025 funds (the FY 2025 CoC program and YHDP funds) based on this NOFO competition. Projects that are awarded FY 2024 funds may be eligible for award of FY 2025 funds using their FY 2024 application submission and are not required to apply for renewal for FY 2025 funds. CoC and YHDP renewal projects expiring in CY 2025 (January 1, 2025, and ending December 31, 2025) are eligible to be renewed with FY 2024 CoC and YHDP funds. Projects that will be eligible for renewal with FY 2025 CoC Program and YHDP funds must have an expiration date in CY 2026 (January 1, 2026, and ending December 31, 2026). Should there not be sufficient appropriated amounts to fully fund all FY 2025 renewal grants, grant amounts may be reduced proportionately. If new competitive funding becomes available for FY 2025, this NOFO may be amended and the FY 2024 - 2025 CoC Application and score may be used for the FY 2025 application selection process. Applications for FY 2025 eligible CoC and/or YHDP renewal projects and new projects created through CoC and/or DV reallocation or YHDP replacement, must be submitted in e-snaps by the application submission deadline for FY 2025 CoC and YHDP funds on August 29, 2025. HUD also reserves the right to modify this NOFO or issue a

DOJ-HUD-AR00031

supplemental FY 2025 CoC and YHDP NOFO if necessary (e.g., to accommodate a new CoC or YHDP priority or new funding source).

**c. Funding for Specific Subpopulations.** The House and Senate Committees on Appropriations expressed that for projects awarded for specific subpopulations (e.g., homeless youth or survivors of domestic violence, dating violence, sexual assault or stalking), before funding for such projects may be reallocated to other populations, HUD must consult with relevant stakeholders. For the FY 2024 funds, HUD requires funding reallocated from projects previously funded with YHDP or DV Bonus funding to be used for projects serving the same subpopulation. Therefore, prior to executing the reallocation of any project, HUD strongly recommends reviewing the Grant Inventory Worksheets (GIWs) published on the CoC Program Competitions page on the HUD.gov website to determine the type of new projects that can be created with reallocated funding intended for the specific subpopulations.

**d. DV Reallocation and YHDP Replacement.** In this NOFO, HUD has expanded reallocation to include DV Reallocation and has expanded the definition of YHDP Replacement to include YHDP Reallocation. HUD establishes these terms to distinguish between funding sources that must continue to serve the same populations of the projects being reallocated or, in the case of YHDP, replaced.

**(1) *DV Reallocation Applications.*** HUD is establishing a definition of DV reallocation to implement a congressional directive that requires projects previously funded using DV Bonus funds to continue to serve the same population, even when projects are reallocated. CoCs may reallocate eligible Renewal projects that were previously funded, in whole or in part, with DV Bonus funding to create DV Reallocation projects that are dedicated to serving the same population. New DV Reallocation projects must be 100 percent dedicated to serving individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking who qualify under paragraphs (1) or (4) of the definition of homeless at 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act [see sections I.B.2.b.(24) and III.B.4.a.(4) of this NOFO for more information].

**(2)*YHDP Replacement definition changes.*** Language allowing HUD to competitively or noncompetitively renew or replace YHDP projects allows for reallocation of YHDP projects. HUD is allowing YHDP recipients to reallocate YHDP grants to increase the flexibility of the YHDP program. In this NOFO, CoCs may now submit applications for YHDP Replacement projects by:

**(a)** reallocating a YHDP Renewal project with a new YHDP Replacement project that has the same recipient (in this NOFO this is referred to as a YHDP Replacement project);

**(b)** reallocating YHDP Renewal project(s) to create one or more YHDP Reallocation projects with a new recipient, so long as the YHDP renewal project(s) being reallocated have already renewed in a prior CoC Program competition. In this NOFO, this is referred to as YHDP Reallocation projects [See sections I.B.2.b.(32), and III.B.4.a.(5) of this NOFO for more information]; and

**(c)** reallocating YHDP Renewal project(s) to create YHDP Expansion applications through the YHDP Replacement process.

DOJ-HUD-AR00032

**e. Special YHDP Activities.** In the FY 2024 – 2025 CoC NOFO, YHDP Renewal projects and YHDP Replacement projects (including YHDP Reallocation) may include requests to include special YHDP activities, subject to the requirements in section III.B.4.b.(5) of this NOFO.

**f. Cost of Living Adjustments for Conditionally Selected Grants.** The Consolidated Appropriations Act, 2024 authorizes HUD to make reasonable cost of living adjustments to renewal amounts to help afford increasing cost of operations due to inflation. See section V.D below.

### 4. HUD's Strategic Planning Goals and Homelessness Policy Priorities

### a. HUD Strategic and Other Goals

HUD's Strategic Plan sets the direction and focus of our programs and staff to create strong, sustainable, inclusive communities and quality, affordable homes for all. This NOFO supports HUD's Strategic Plan for Fiscal Years (FY) 2022-2026 to accomplish HUD's mission and vision. Each of the five goals in the Strategic Plan includes what HUD hopes to accomplish, the strategies to accomplish those objectives, and the indicators of success.

HUD will pursue two overarching priorities focused on increasing equity and improving customer experience across all HUD programs. Five strategic goals and several objectives undergird the Plan; however, the following goals are applicable to this NOFO:

**Applicable Goals and Objectives from HUD's Strategic Plan**
**Strategic Goal 1: Support Underserved Communities**
Fortify support for underserved communities and support equitable community development for all people.

**1A: Advance Housing Justice**
Fortify support for vulnerable populations, underserved communities, and Fair Housing enforcement.

**1B: Reduce Homelessness**
Strengthen Federal, State, Tribal, and community implementation of the Housing First approach to reducing the prevalence of homelessness, with the ultimate goal of ending homelessness.

**1C: Invest in the Success of Communities**
Promote equitable community development that generates wealth-building for underserved communities, particularly for communities of color.

**Strategic Goal 2: Ensure Access to and Increase the Production of Affordable Housing**
Ensure housing demand is matched by adequate production of new homes and equitable access to housing opportunities for all people.

**2A: Increase the Supply of Housing**
Enhance HUD's programs that increase the production and supply of housing across the country.

**2B: Improve Rental Assistance**
Improve rental assistance to address the need for affordable housing.

**Strategic Goal 3: Promote Homeownership**
Promote homeownership opportunities, equitable access to credit for purchase and improvements, and wealth-building in underserved communities.

Page 6 of 128

DOJ-HUD-AR00033

**3A: Advance Sustainable Homeownership**
Advance the deployment of tools and capital that put sustainable homeownership within reach.

**3A – Major Initiative: Expand Homeownership Opportunities**
Promote financing for innovative ownership models to increase the availability of affordable housing.

**3B: Create a More Accessible and Inclusive Housing Finance System**
Advance new policy, programs, and modernization initiatives that support a more equitable housing finance system. Promote the preservation and creation of affordable housing stock.

**Strategic Goal 4: Advance Sustainable Communities**
Advance sustainable communities by strengthening climate resilience and energy efficiency, promoting environmental justice, and recognizing housing's role as essential to health.

**4A: Guide Investment in Climate Resilience**
Invest in climate resilience, energy efficiency, and renewable energy across HUD programs.

**4B: Strengthen Environmental Justice**
Reduce exposure to health risks, environmental hazards, and substandard housing, especially for low-income households and communities of color.

**4C: Integrate Health and Housing**
Advance policies that recognize housing's role as essential to health.

You are expected to align your application to the applicable strategic goals and objectives below. Use the information in this section to describe in your application the specific goals, objectives, and measures that your project is expected to help accomplish. If your project is selected for funding, you are also expected to establish a plan to track progress related to those goals, objectives, and measures. HUD will monitor compliance with the goals, objectives, and measures in your project.

**b. HUD Homeless Policy Priorities**

This section provides additional context regarding the selection criteria found in section V.B. of this NOFO and is included here to help applicants better understand how the selection criteria support the goal of ending homelessness:

**(1) *Ending homelessness for all persons.*** In 2023, the United States Interagency Council on Homelessness (USICH) presented All In: The Federal Strategic Plan to Prevent and End Homelessness to the President and Congress. The plan is built around six pillars: three foundations — equity, data and evidence, and collaboration — and three solutions — housing and supports, crisis response, and prevention. The work funded through this NOFO will support the actions and strategies proposed within the pillars. To end homelessness, CoCs should identify, engage, and effectively serve all persons experiencing homelessness. CoCs should measure their performance based on local data that consider the challenges faced by all subpopulations experiencing homelessness in the geographic area (e.g., veterans, youth, families, older adults, those experiencing chronic homelessness, and people with disabilities, including those living with HIV/AIDS). CoCs should partner with housing, health care, and supportive services providers and agencies to expand housing options, such as permanent supportive housing, housing subsidies, and rapid rehousing. Additionally,

Page 7 of 128

CoCs should use local data to determine the characteristics of individuals and families with the highest needs and longest periods experiencing homelessness to develop housing and supportive services tailored to their needs.

**(2) *Use a Housing First approach.*** Housing First prioritizes rapid placement and stabilization in permanent housing and utilizes housing as a platform for providing supportive services that improve a person's health and well-being. CoC Program funded projects should help individuals and families move quickly into permanent housing without preconditions and ensure that participants can choose the services they need to improve their health and well-being and remain in their housing. Additionally, CoCs should engage landlords and property owners to identify housing units available for rapid rehousing and permanent supportive housing participants, remove barriers to entry, and adopt client-centered service practices. HUD encourages CoCs to assess how well Housing First approaches are being implemented in their communities.

**(3) *Reducing Unsheltered Homelessness.*** In recent years, the number of people experiencing unsheltered homelessness has risen significantly, including a rising number of encampments in many communities across the country. People living unsheltered have high rates of physical and mental health challenges, including substance use disorders. CoCs should explore all available resources, including CoC and ESG funded assistance, housing subsidies, health care programs, and other supportive services to help improve unsheltered people's well-being and help them move as quickly as possible to permanent housing. CoCs should work with law enforcement and their state and local governments to enlist their support for housing people residing in encampments, and to avoid practices that criminalize homelessness. Criminalization of homelessness risks the health of people living unsheltered and makes it more difficult for them to move into permanent housing. Additionally, CoCs should use their Coordinated Entry process to promote participant choice, coordinate homeless assistance and mainstream housing and services, and ensure people experiencing homelessness receive assistance quickly.

**(4) *Improving System Performance.*** CoCs should be assessing the performance of all homelessness projects using system performance measures (e.g., average length of homeless episodes, rates of return to homelessness, rates of exit to permanent housing destinations). CoCs should review all projects eligible for renewal under this FY 2024 – 2025 CoC NOFO to determine their effectiveness in serving people experiencing homelessness, including their cost-effectiveness. The CoC Competition includes several options to help CoCs improve their effectiveness, including reallocation, expansion, and transition grants, and CoC's should take advantage of these options to improve their overall performance. CoCs should also look for opportunities to implement continuous quality improvement and other process improvement strategies.

**(5) *Partnering with Housing, Health, and Service Agencies.*** Using cost performance and outcome data, CoCs should improve how all available resources are utilized to end homelessness. HUD encourages CoCs to maximize the use of mainstream and other community-based resources when serving persons experiencing homelessness and should:

**(a)** Work closely with health care systems and agencies and assist program participants to obtain health care and supportive services, including behavioral health services, including those covered and financed by Medicaid. In addition, CoCs should develop

DOJ-HUD-AR00035

close partnerships with public health agencies to analyze data and design approaches that reduce homelessness, improve the health of people experiencing homelessness, and prevent and address disease outbreaks, including HIV/AIDS.

**(b)** Partner closely with PHAs and state and local housing organizations to utilize coordinated entry, develop housing units, and provide housing assistance to people experiencing homelessness. These partnerships can also help CoC Program participants exit permanent supportive housing through Housing Choice Vouchers and other available housing options. CoCs and PHAs should especially work together to implement targeted programs such as HUD-VASH, Mainstream Vouchers, Family Unification Program (FUP) Vouchers, Fostering Youth Independence (FYI) Vouchers, and other housing voucher programs targeted to people experiencing homelessness. CoCs should coordinate with their state and local housing agencies on the utilization of new program resources provided through the Homelessness Assistance and Supportive Services Program (HOME-ARP) that was created through the American Rescue Plan. CoCs should also work with organizations administering other housing assistance, such as assistance provided through HUD's Section 202 and 811 programs, HUD's Project Based Rental Assistance, and U.S. Department of Agriculture's housing assistance programs.

**(c)** Partner with local workforce development centers to improve employment opportunities.

**(d)** Work with Tribal organizations to ensure that Tribal members can access CoC-funded assistance when a CoC's geographic area borders a Tribal area.

**(6)** *Racial Equity.* In nearly every community, Black, Indigenous, and other people of color are substantially over-represented in the homeless population. In this NOFO, HUD is emphasizing system and program changes to address racial equity within CoCs and projects. Responses to preventing and ending homelessness should address racial inequities to ensure successful outcomes for all persons experiencing homelessness using proven approaches, such as: partnering with a racially diverse set of community partners and people experiencing homelessness and partnering with organizations with experience serving underserved populations. CoCs should review local data, policies, procedures, and processes to identify barriers that result in racial disparities and take steps to eliminate barriers to improve racial equity and to address disparities.

**(7)** *Improving Assistance to LGBTQ+ Individuals.* Discrimination on the basis of gender identity or sexual orientation manifests differently for different individuals and often overlaps with other forms of prohibited discrimination. CoCs should address the needs of LGBTQ+, transgender, gender non-conforming, and non-binary individuals and families in their planning processes. Additionally, when considering which projects to select in their local competition to be included in their application to HUD, CoCs should ensure that all projects provide privacy, respect, safety, and access regardless of gender identity or sexual orientation. CoCs should also partner with organizations with expertise in serving LGBTQ+ populations.

**(8)** *Persons with Lived Experience/Expertise.* The people who know best what solutions will effectively end homelessness are those who are experiencing homelessness. HUD

DOJ-HUD-AR00036

expects CoCs to include people with lived homeless expertise and experience in their local planning and decision-making processes. People with lived experience/expertise should determine how local policies may need to be revised and updated to improve the effectiveness of homelessness assistance programs, including participating in planning and oversight activities, developing local competition processes, monitoring and evaluation. CoC leaders and community partners should prioritize hiring people who have experienced homelessness in areas where their expertise is needed.

**(9)** *Building an Effective Workforce***.** Homeless assistance providers need effective, well-supported staff to provide high quality assistance. Unfortunately, recruiting and retaining qualified staff for programs to assist persons experiencing homelessness has proven difficult due to low pay and the challenging nature of the work. To address this issue, HUD is applying cost of living adjustments to supportive service activities and other staffing-focused budget lines to allow CoC budgets to better keep up with rising costs. HUD also encourages CoCs to work with their funders and other community stakeholders to improve pay and support for people who work in the homelessness sector.

**(10)** *Increasing Affordable Housing Supply***.** The lack of affordable housing is the main driver of homelessness. CoCs play a critical role in educating local leaders and stakeholders about the importance of increasing the supply of affordable housing and the specific consequences of the continued lack of affordable housing. CoCs should be communicating with jurisdiction leaders, including for the development of Consolidated Plans, about the harmful effects of the lack of affordable housing, and they should engage local leaders about steps such as zoning and land use reform that would increase the supply of affordable housing. This NOFO awards points to CoCs that take steps to engage local leaders about increasing affordable and accessible housing supply.

## B. Definitions and CoC Program Concepts

**1. Standard Definitions**

**Affirmatively Furthering Fair Housing (AFFH)** means taking meaningful actions, in addition to combating discrimination, to overcome patterns of segregation and foster inclusive communities free from barriers that restrict access to opportunity based on protected characteristics. Specifically, affirmatively furthering fair housing means taking meaningful actions that, taken together, address significant disparities in housing needs and in access to opportunities, replacing segregated living patterns with truly integrated and balanced living patterns, transforming racially and ethnically concentrated areas of poverty into areas of opportunity, and fostering and maintaining compliance with civil rights and fair housing laws. The duty to affirmatively further fair housing extends to all program participant's activities and programs relating to housing and urban development. See 24 CFR 578.93(c) for specific Affirmatively Furthering Fair Housing requirements that apply to the CoC program.

**Assistance Listing Number** refers to the unique number assigned to each Federal assistance program publicly available in the Assistance Listing, which is managed and administered by the General Services Administration. The Assistance Listing number was formerly known as the Catalog of Federal Domestic Assistance (CFDA) number.

**Deficiency**, with respect to the making of an application for funding, is information missing or omitted within a submitted application. Examples of deficiencies include missing documents,

DOJ-HUD-AR00037

missing or incomplete information on a form, or some other type of unsatisfied information requirement. Depending on specific criteria, a deficiency may be either Curable or Non-Curable.

*(1) A Curable Deficiency* is missing or incomplete application information that may be corrected by the applicant with timely action. To be curable, the deficiency must:

- not be a threshold requirement, except for documentation of applicant eligibility;
- not influence how an applicant is ranked or scored versus other applicants; and
- be remedied within the time frame specified in the notice of deficiency.

*(2) A Non-Curable Deficiency* is missing or incomplete application information that cannot be corrected by an applicant after the submission deadline. A non-curable deficiency is a deficiency that is a threshold requirement, or a deficiency that, if corrected, would change an applicant's score or rank versus other applicants. If an application includes a non-curable deficiency, the application may receive an ineligible determination, or the non-curable deficiency may otherwise adversely affect the application's score and final funding determination.

**Eligibility requirements** are mandatory requirements for an application to be eligible for funding.

**Environmental Justice** means investing in environmental improvements, remedying past environmental inequities, and otherwise developing, implementing, and enforcing environmental laws and policies in a manner that advances equity and provides meaningful involvement for people and communities that have been environmentally underserved or overburdened, such as Black and Brown communities, indigenous groups, and individuals with disabilities. This definition does not alter the requirements under HUD's regulations at 24 CFR 58.5(j) and 24 CFR 50.4(l) implementing Executive Order 12898. E.O. 12898 requires consideration of how Federally assisted projects may have disproportionately high and adverse human health or environmental effects on minority and/or low-income populations. For additional information on environmental review compliance, refer to: https://www.hud.gov/program_offices/comm_planning/environment_energy/regulations.

**Equity** has the meaning given to that term in Section 2(a) of Executive Order 13985 and means the consistent and systematic fair, just, and impartial treatment of all individuals, including individuals who belong to underserved communities that have been denied such treatment, such as Black, Latino, and Indigenous and Native American persons, Asian Americans and Pacific Islanders and other persons of color; members of religious minorities; lesbian, gay, bisexual, transgender, and queer (LGBTQ+) persons; persons with disabilities; persons who live in rural areas; and persons otherwise adversely affected by persistent poverty or inequality.

**Federal award** has the meaning, depending on the context, in either paragraphs (1) or (2) of this definition:

(1)

(a) The Federal financial assistance that a recipient receives directly from a Federal awarding agency or indirectly from a pass-through entity, as described in 2 CFR 200.101; or

DOJ-HUD-AR00038

(b) The cost-reimbursement contract under the Federal Acquisition Regulations that a non- Federal entity receives directly from a Federal awarding agency or indirectly from a pass- through entity, as described in 2 CFR 200.101.

(2) The instrument setting forth the terms and conditions. The instrument is the grant agreement, cooperative agreement, other agreement for assistance covered in paragraph (2) of the definitions of Federal financial assistance in 2 CFR 200.1, and this NOFO, or the cost-reimbursement contract awarded under the Federal Acquisition Regulations.

(3) Federal award does not include other contracts that a Federal agency uses to buy goods or services from a contractor or a contract to operate Federal Government owned, contractor operated facilities (GOCOs).

(4) See also definitions of Federal financial assistance, grant agreement, and cooperative agreement in 2 CFR 200.1.

**Federal financial assistance** has the same meaning defined at 2 CFR 200.1.

**Grants.gov** is the website serving as the Federal government's central portal for searching and applying for Federal financial assistance throughout the Federal government. Although the CoC Program NOFO is officially posted on Grants.gov, registration on Grants.gov is not required for submission of applications for this NOFO. This program only accepts applications submitted in *e-snaps*, an electronic application system.

**Primary Point of Contact (PPOC)** is the person who has the authority to submit the CoC Registration and the CoC's Consolidated Application on behalf of the CoC.

**Racial Equity** is the elimination of racial disparities, and is achieved when race can no longer predict opportunities, distribution of resources, or outcomes – particularly for Black and Brown persons, which includes Black, Latino, Indigenous, Native American, Asian, Pacific Islander, and other persons of color.

**System for Award Management (SAM)** is the Federal Repository into which an entity must provide information required for the conduct of business as a recipient. Registration with SAM is required for submission of applications via *e-snaps*. You can access the website at https://www.sam.gov/SAM/. There is no cost to use SAM.

**Threshold Requirements** are eligibility and quality requirements that must be met for an application to be reviewed, rated, and ranked. Threshold requirements are not curable, except for documentation of applicant eligibility and are listed in Section III.C.4. Similarly, there are eligibility requirements under Section III.A.

**Underserved Communities** has the meaning given to that term in Section 2(b) of Executive Order 13985 and refers to populations sharing a particular characteristic, as well as geographic communities, that have been systematically denied a full opportunity to participate in aspects of economic, social, and civic life, as exemplified by the list in the definition of "equity" above.

**Unique Entity Identifier (UEI)** means the identifier assigned by SAM to uniquely identify business entities. As of April 4, 2022, the Federal government has transitioned from the use of the DUNS Number to the use of UEI, as the primary means of entity identification for Federal awards government-wide.

DOJ-HUD-AR00039

**2. Program-Specific Definitions and Concepts**

Regulatory citations are provided below so applicants can refer to specific areas of the Rule. Projects awarded CoC Program funds are subject to the program regulations as they may be amended from time to time. However, YHDP Renewal and YHDP Replacement projects and awards are subject to CoC Program regulations except as otherwise provided in this NOFO [see section I.B.3.e].

The definitions and concepts contained in this section include terms that are important for all applicants to understand in order to complete all parts of the FY 2024 - 2025 CoC Consolidated Application in e-snaps on behalf of the CoC.

**a. Definitions from 24 CFR 578.3.** The following terms are defined in 24 CFR 578.3. Applicants must refer to the Rule for the definitions contained in this section.

**(1)** Annual Renewal Amount (ARA)
**(2)** Applicant
**(3)** Centralized or Coordinated Assessment System
**(4)** Chronically Homeless
**(5)** Collaborative Applicant
**(6)** Continuum of Care
**(7)** Consolidated Plan
**(8)** High Performing Community (HPC)
**(9)** Homeless Management Information System (HMIS)
**(10)** HMIS Lead
**(11)** Homeless. - Although not reflected in the regulation, section 605 of Violence Against Women Act Reauthorization Act of 2022 amended Section 103(b) of the Act and requires HUD to consider certain individuals and families as homeless. This amendment took effect on October 1, 2022. Notwithstanding anything to the contrary contained elsewhere in this NOFO, where 578.3 paragraph (4) is referenced, applicants may apply to serve the population as defined in Section 103(b) of the Act.
**(12)** Permanent Housing
**(13)** Permanent Supportive Housing
**(14)** Private Nonprofit Organization
**(15)** Program Participant
**(16)** Project
**(17)** Recipient
**(18)** Subrecipient
**(19)** Transitional Housing
**(20)** Unified Funding Agency
**(21)** Victim Service Provider

**b. CoC Program NOFO Concepts.** The following terms are not found in 24 CFR 578.3 but are used in other areas of the Rule or are used in this NOFO to define concepts that pertain specifically to the FY 2024 - 2025 CoC Consolidated Application.

**(1)** *Annual Renewal Demand (ARD) (24 CFR 578.17(b)(2)).* The total amount of all the CoC's projects that will be eligible for renewal in the CoC Program Competition, before any required adjustments to funding for leasing, rental assistance, and operating Budget Line

DOJ-HUD-AR00040

Items (BLIs) based on FMR changes. HUD will calculate the ARD by combining the total amount of funds requested by eligible renewal projects in each FY funding opportunity, including:

> **(a)** renewal projects approved and ranked on the Renewal Project Listing;

> **(b)** renewal project amount(s) that were reallocated as recorded on the reduced or eliminated reallocation forms of the CoC Priority Listing;

> **(c)** YHDP renewal projects on the YHDP Renewal Project Listing; and

> **(d)** YHDP Replacement projects, including YHDP Reallocation projects, on the YHDP Reallocation and Replacement Project Listing. YHDP Replacement projects are eligible for funding through the replacement of YHDP Renewal projects. The YHDP Replacement application must request the same amount of funding that is eligible for YHDP Renewal.

**(2)** *Beds Dedicated to Chronically Homeless Individuals and Families.* A permanent supportive housing bed that is dedicated specifically for use by individuals and families experiencing chronic homelessness [see 24 CFR 578.3 definition of Chronically Homeless] within a CoC's geographic area, as reported in the CoC's housing inventory count (HIC) and permanent housing (PH) project applications. When a program participant exits the project, the bed must be filled by another participant who is experiencing chronic homelessness unless there are no persons experiencing chronic homelessness within the CoC's geographic area. This concept only applies to PSH projects.

**(3)** *CoC Bonus Project.* The CoC Bonus allows CoCs to use up to 12 percent of their Final Pro Rata Need (FPRN) to create one or more new project applications. New projects created through the CoC Bonus must meet the project eligibility and project quality threshold requirements established by HUD in sections III.C.4.a. and b. of this NOFO. To be eligible to receive a CoC Bonus project, the Collaborative Applicant must demonstrate its CoC evaluates and ranks projects based on how they improve system performance as outlined in section V.B.2.b of this NOFO.

**(4)** *CoC Merger.* The CoC merger is a process where two or more CoCs voluntarily agree to merge the entire geographic areas of all CoCs into one larger CoC. HUD strongly encourages CoCs that struggle with capacity to merge with a neighboring CoC or Balance of State CoC during each fiscal year's CoC Program Registration process. To encourage CoC mergers and mitigate the potential adverse scoring implications that may occur when a high performing CoC merges with one or more lower-performing CoC(s), HUD will award up to 25 bonus points to the FY 2024 - 2025 CoC Application Score for CoCs that registered as a merged CoC during the FY 2024 CoC Program Registration process. The minimum number of points awarded will be 5 with the maximum points awarded up to 25.

To be eligible for these points, the merged CoC must include all the geographic areas previously included in two or more CoCs that received funding in the FY 2023 CoC Program Competition. Points will be awarded as follows:

> **(a)** 5 bonus points to CoCs that merged;

DOJ-HUD-AR00041

**(b)** 10 bonus points to CoCs where one or more of the merging CoCs had a CoC Application score of 140 points or lower in either the FY 2022 or FY 2023 CoC Program Competitions; and

**(c)** 10 bonus points to CoCs that demonstrate that the results of their Point-in-Time counts were affected by the changes in methodology that resulted from the merger in a way that would affect their CoC score.

**(5) *DedicatedPLUS Project.*** A PSH project where 100 percent of the beds are dedicated to serve individuals, households with children, and unaccompanied youth (including pregnant and parenting youth) that at intake meet one of the following categories:

**(a)** experiencing chronic homelessness, meaning they qualify as "chronically homeless" as defined in 24 CFR 578.3;

**(b)** residing in a TH project that will be eliminated and meets the definition of chronically homeless in effect at the time in which the individual or family entered the TH project;

**(c)** residing in a place not meant for human habitation, emergency shelter, or Safe Haven and had been admitted and enrolled in a PH project within the last year but were unable to maintain a housing placement and met the definition of chronically homeless as defined by 24 CFR 578.3 prior to entering the project;

**(d)** residing in transitional housing funded by a Joint TH/PH-RRH component project and who were experiencing chronic homelessness as defined by 24 CFR 578.3;

**(e)** residing and has resided in a place not meant for human habitation, Safe Haven, or emergency shelter for at least 12 months in the last three years, but has not done so on four separate occasions and the individual or head of household meet the definition of 'homeless individual with a disability; or

**(f)** receiving assistance through a Department of Veterans Affairs (VA)-funded homeless assistance program and met one of the above criteria at initial intake to the VA's homeless assistance system.

A renewal project where 100 percent of the beds were dedicated to individuals and families experiencing chronic homelessness, as described in section I.B.2.b.(2), under the grant that is being renewed may either be reallocated as a DedicatedPLUS project or may continue as a renewal dedicating 100 percent of its beds to individuals and families experiencing chronic homelessness. If the project is reallocated as a DedicatedPLUS project, the project must adhere to all fair housing requirements at 24 CFR 578.93.

Projects HUD awarded as DedicatedPLUS in a previous CoC Program Competition must continue to include households with children to qualify as a DedicatedPLUS project in the FY 2024 - 2025 CoC Program Competition.

**(6) *Domestic Violence, Dating Violence, Sexual Assault, and Stalking Bonus (DV Bonus).*** A new project that is dedicated to individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking who qualify under the paragraphs (1) or (4) of definition of homeless at 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance

DOJ-HUD-AR00042

Act. As described in paragraph (13) below, survivors of human trafficking may qualify as homeless under paragraph (4) of the homeless definition at 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act because they are often also victims of domestic violence, dating violence, sexual assault, or stalking, however, a DV Bonus project may not exclusively serve people fleeing or attempting to flee human trafficking. New DV Bonus projects are subject to the limitation on new projects in section I.B.3.a.(1) of this NOFO. CoCs may apply for DV Bonus projects where the total amount for one year of funding for all DV Bonus applications is up to 15 percent of its Preliminary Pro Rata Need (PPRN); however, this amount is limited to:

   **(a)** a minimum of $50,000 if 15 percent of the CoC's PPRN is less than $50,000; or

   **(b)** a maximum of $5 million if 15 percent of the CoC's PPRN is more than $5 million.

See sections I.B.3.j and I.B.2.b.(6) of this NOFO for project application requirements and how DV Bonus projects will be reviewed and selected.

(see definition of PPRN in section I.B.3.u. below)

**(7)** *Domestic Violence, Dating Violence, Sexual Assault, and Stalking Renewal Projects (DV Renewal Projects)*. Are eligible renewal projects that were originally funded with DV Bonus funding or were at some point expanded using DV Bonus funding and continue to serve the same population.

**(8)** *Eligible Renewal Project.* Consists of YHDP, CoC and DV projects eligible to renew under this NOFO. An eligible FY 2024 renewal project must have an expiration date in CY 2025 (between January 1, 2025 and December 31, 2025) and eligible FY 2025 renewal projects must have an expiration date in CY 2026 (between January 1, 2026, and December 31, 2026). Renewal project applications must be submitted by the same recipient operating the project. See section III.B.4.c for more information on renewal projects.

In cases where an expiring grant agreement is amended to have a new recipient after a renewal application is submitted, the new recipient will be eligible to receive the renewal award (Section VI.A.4).

**(9)** *Expansion.* The process used by eligible renewal project applicants to add funds to an existing CoC Renewal, DV Renewal or YHDP Renewal project to expand its current operations either through reallocation, DV Bonus or a CoC Bonus project application. Project applicants may expand their current project by adding units, beds, persons served, services provided to existing program participants, or in the case of HMIS, increase the current HMIS activities within the CoC's geographic area. Applications to expand YHDP Renewal projects through the YHDP Replacement process can only be funded with funding reallocated from another YHDP Renewal project. For more information on expansion applications see section III.B.4.a(6) of this NOFO.

**(10)** *Final Pro Rata Need (FPRN) (24 CFR 578.17(b)(3))*. The higher of PPRN or ARD for the Continuum of Care is the FPRN, which is the base for the maximum award amount for projects within the CoC.

**(11)** *Formula Area.* Defined in the Indian Housing Block Grant Program at 24 CFR 1000.302.

DOJ-HUD-AR00043

**(12) *Grant Consolidation.*** The process by which two or more projects eligible for renewal under this NOFO apply for funding and are combined into a single renewal project upon award. See sections I.B.3.d and III.B.4.a.(7) of this NOFO for additional information.

**(13) *Homelessness and Human Trafficking.*** HUD is clarifying that persons who are fleeing or attempting to flee human trafficking may qualify as homeless under paragraph (4) of the homeless definition at 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act and may be eligible for certain forms of homeless assistance under the CoC Program, subject to other restrictions that may apply. HUD considers human trafficking, including sex trafficking, to be "other dangerous or life-threatening conditions that relate to violence against the individual or family member" under paragraphs (1) and (4) of the definition of homeless at 24 CFR 578.3 and "other dangerous, traumatic, or life-threatening conditions related to the violence against the individual or a family member in the individual's or family's current housing situation" under section 103(b) of the McKinney-Vento Homeless Assistance Act.

**(14) *Host Home and Kinship Care.*** Host Home and Kinship Care is limited to YHDP Renewal and replacement grants. This is a model of housing where a family agrees to permit a youth program participant to reside with them. Recognizing the addition of another person in the home may increase costs to the family, HUD will consider YHDP Replacement project applications that propose to house youth with families and subsidize the additional costs attributable to housing the youth, including recruitment of hosts. An example of eligible costs would be additional food or transportation costs, which are eligible supportive services under 24 CFR 578.53(e)(7) or 24 CFR 578.53(e)(15). Recipients must keep records related to this determination for HUD review upon request. The residence is in a community-based setting and the family may be related to youth program participants with a time-limited or unlimited length of stay.

**(15) *Housing First.*** A model of housing assistance that prioritizes rapid placement and stability in permanent housing in which admission does not have preconditions (such as sobriety or a minimum income threshold) and in which housing assistance is not conditioned upon participation in services. Transitional Housing and Supportive Services Only projects are considered to be using a Housing First model for the purposes of this NOFO if they operate with low barriers; work to quickly move people into permanent housing; do not require participation in supportive services for continued tenancy, occupancy, or participation in the project; and, for Transitional Housing projects, do not require preconditions for moving into the transitional housing (e.g., sobriety or minimum income threshold) but do provide or assist with access to such supportive services. Additional information regarding Housing First is in section I.A.4.b.(2) of this NOFO.

**(16) *Housing Inventory Count (HIC).*** A complete listing of the CoC's HUD and non-HUD funded beds dedicated to individuals and families experiencing homelessness in the CoC's geographic area.

**(17) *Indian Tribe.*** A federally recognized Tribe or a State recognized Tribe as defined in Section 4 of NAHASDA (25 U.S.C. 4103).

**(18) *Joint TH/PH-RRH Component Project*.** The Joint TH/PH-RRH component project combines two existing program components – Transitional Housing and Permanent Housing-

DOJ-HUD-AR00044

Rapid Rehousing – in a single project to serve individuals and families experiencing homelessness. The recipient must adopt a Housing First approach [see sections I.A.4.b.(2) and I.B.2.b.(15) of this NOFO] across the entire project and program participants may only receive up to 24-months of total assistance. For more information about Joint TH/PH-RRH component project quality threshold requirements, see section III.C.4.b. of this NOFO.

If funded, HUD will limit eligible costs as follows, in addition to other limitations found in the Rule:

   **(a)** leasing of a structure or units, and operating costs to provide transitional housing;

   **(b)** short- or medium-term tenant-based rental assistance on behalf of program participants to pay for the RRH portion of the project;

   **(c)** supportive services;

   **(d)** costs of contributing data to the HMIS; and

   **(e)** project administrative costs.

Project applicants must provide details in the project description of how TH and PH-RRH assistance will be provided. Additionally, if CoC Program funds are not being requested for both TH and PH-RRH units, the project application must describe and include the number of the project's TH and PH-RRH units that will be paid for from another funding source. Applicants may only use CoC Program Leasing funds or non-CoC Program Funds to house program participants enrolled in the TH portion of the project.

When a program participant is enrolled in a Joint TH/PH-RRH component project, the recipient or subrecipient must be able to provide both components, including the units supported by the TH component and the tenant-based rental assistance and services provided through the PH-RRH component, to all participants. A program participant may choose to receive only the assistance provided through the TH portion of the project or the assistance provided through the PH-RRH component, but the recipient or subrecipient must make both types of assistance available.

**(19)** *Non-Dedicated Permanent Supportive Housing Beds.* Permanent Supportive Housing beds within a CoC's geographic area that are not currently classified as dedicated for use by chronically homeless individuals and families or as DedicatedPLUS.

**(20)** *Project Applicants.* Eligible project applicants for the CoC Program are identified in section III.A.4 of this NOFO. For-profit entities are ineligible. HUD will not review applications submitted by ineligible entities.

**(21)** *Preliminary Pro Rata Need (PPRN).* The amount of funds a CoC could receive based upon the geographic areas included by the CoC as part of their geography and reviewed by HUD during the CoC Program Registration process. To determine the amount of funding available for each geographic area, HUD will use the formula defined in section IV.B.7 of CPD-22-02: CoC Program Registration Notice.

**(22)** *Racial Disparities.* Racial disparities are differences in the population of persons experiencing homelessness based on race or ethnicity, which includes individuals who are Black, Latino, Indigenous, Native American, Asian, Pacific Islander, and other persons of

color relative to the general population or differences in the provision or outcomes of homelessness assistance based on race or ethnicity.

**(23)** *Rapid Rehousing (RRH).* A type of permanent housing meeting the requirements of 24 CFR 578.37(a)(1)(ii).

**(24)** *Reallocation.* Reallocation is a process CoCs use to shift funds in whole or in part from existing eligible renewal projects to create one or more new projects without decreasing the CoC's ARD. New projects created through reallocation must meet the requirements in sections I.B.3.a, III.B.4.a.(3), (4) and (5), and the project eligibility and project quality thresholds established in sections III.C.4.a. and b. of this NOFO. CoCs may only reallocate eligible renewal projects so long as the renewal project being reduced or eliminated has a current grant agreement and has renewed under the CoC Program at least once. First time renewals are not eligible for reallocation.

    **(a)** The House and Senate Committees on Appropriations expressed that for projects awarded for specific subpopulations (e.g., youth experiencing homelessness or survivors of domestic violence, dating violence, sexual assault or stalking), before funding for such projects may be reallocated to other populations, HUD must consult with relevant stakeholders. For the FY 2024 Funding Opportunity, HUD requires funding reallocated from projects previously funded with YHDP or DV Bonus funding must be used for projects serving the same subpopulation. Therefore, prior to executing the reallocation of any project, HUD strongly recommends reviewing the Grant Inventory Worksheets (GIWs) published on the CoC Program Competitions page on the HUD.gov website to determine the type of new projects that can be created with reallocated funding intended for the specific subpopulations.

    **(b)** DV Reallocation. DV Reallocation Projects are projects created from the reallocation of eligible DV Renewal projects [I.B.2.b.(7)]. CoCs may reallocate eligible DV Renewal projects to create new DV Reallocation projects, so long as 100 percent of the population served by the new DV Reallocation project are individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking who qualify under paragraphs (1) or (4) of the definition of homeless at 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act.

When reallocating DV Renewal project(s), the new project(s), including new expansion projects created with reallocation DV Renewal funding, in their entirety must meet all the same requirements of a DV Bonus project (see section III.B.4.a.(4)) and the sum of all DV Reallocation applications must be for the same amount of funding made available from the DV Renewal funding being reallocated. If a CoC reallocates funding from a DV Renewal grant and does not earmark those funds for new project(s) that are 100 percent dedicated to that subpopulation, HUD may condition the project applications to ensure the projects are serving the required subpopulation. If an applicant does not resolve the condition placed on the project, HUD will reject the project application. To avoid any potential delays in funding or a loss in ARD, CoC should review the GIWs published on the CoC Program Competitions page on the HUD.gov to determine which renewal projects were previously awarded DV Bonus funds, including CoC projects that were previously expanded and partially includes DV Bonus funding.

DOJ-HUD-AR00046

The following restrictions also apply:

> (i.) DV Renewal projects that have an SSO-CE component cannot be reallocated.
> (ii.) Reallocated DV Renewal funding cannot be used to expand a CoC Renewal grant.

**(c)** In addition to reallocations that occur using FY 2024 funding, subject to the language in the FY 2025 HUD Appropriation, CoCs may reallocate eligible FY 2025 renewal grants, including grants awarded FY 2024 funding, to create new grants for FY 2025 CoC and YHDP Funding. However, YHDP projects that have not been renewed in a prior CoC program competition may not be reallocated.

**(d)** To create a Transition Grant through the reallocation process, the CoC must wholly eliminate one or more projects and use those funds to create the single, new transition grant [see section I.B.2.b.(30) of this NOFO].

**(e)** For information on reallocating YHDP projects through the replacement process, see sections I.B.2.b.(32), I.B.3.e and III.B.4.a.(5) of this NOFO.

**(25)** *Reservation.* For purposes of this Notice, reservations are a type of formula area as specifically delineated under HUD's IHBG program at 24 CFR 1000.302.

**(26)** *Rural Area.* For this competition a rural area is a county which:

**(a)** has no part of it within an area designated as a standard metropolitan statistical area by the Office of Management and Budget;
**(b)** is within an area designated as a metropolitan statistical area or considered as part of a metropolitan statistical area and at least 75 percent of its population is local on U.S. Census blocks classified as non-urban; or
**(c)** is located in a state that has a population density of less than 30 persons per square mile (as reported in the most recent decennial census), and of which at least 1.25 percent of the total acreage of such State is under Federal jurisdiction, provided that no metropolitan city in such State is the sole beneficiary of the grant amounts awarded under this NOFO. A metropolitan city means a city that was classified as a metropolitan city under section 102(a) of the Housing and Community Development Act of 1974 (42. U.S.C. 5302(a)) for the fiscal year immediately preceding the fiscal year for which Emergency Solutions Grants program funds are made available.

**(27)** *Shared Housing.* YHDP Renewal and replacement grants may provide rental assistance for shared housing where youth may reside with family or another unrelated person. The youth leases from the property owner and shares the unit with the family or unrelated person. The unit may be a house or an apartment.

**(a)** YHDP rental assistance cannot be provided to a youth to reside in a unit occupied by an immediate family member. For this NOFO "immediate family member" includes parents, grandparents, and legal guardians.

**(b)** YHDP rental assistance cannot be provided to a youth in a shared housing unit if the landlord is an immediate family member of the youth.

**(c)** YHDP rental assistance may only be provided to a youth if the youth can enter into a valid, binding, and enforceable lease under applicable state or local law. This includes a

DOJ-HUD-AR00047

legally appointed guardian executing a lease on behalf of a youth or an emancipated youth entering into a lease.

**(d)** YHDP Renewal and replacement grants may provide a shared housing option for youth program participants who are not part of a household but are interested in sharing a housing unit with a roommate unrelated to the program participant.

**(28)** *Solo Applicants.* Per the Act, "A solo applicant may submit an application to the Secretary for a grant under subsection (a) and be awarded such grant on the same basis as such grants are awarded to other applicants based on the criteria described in section 427 [42 U.S.C. 11386a], but only if the Secretary determines that the solo applicant has attempted to participate in the continuum of care process but was not permitted to participate in a reasonable manner. The Secretary may award such grants directly to such applicants in a manner determined to be appropriate by the Secretary." A solo applicant must submit a solo applicant project application in e-snaps prior to the application deadline of 8:00 PM EDT on October 30, 2024, for FY 2024 CoC and YHDP Funding., or 8:00 PM EDT on August 29, 2025 if Congressional Appropriations authorize HUD to solicit applications for new FY 2025 CoC and YHDP Funding. Additionally, for HUD to consider its solo application, a solo applicant must also meet all the requirements outlined in section VII.C of this NOFO.

**(29)** *Tribally Designated Housing Entity.* For purposes of this Notice, this term has the same meaning as in Section 4 of NAHASDA (25 U.S.C. 4103).

**(30)** *Transition Grant.* A grant to fund a new CoC project through the reallocation process to transition an eligible renewal project from one program component to another eligible new component over a 1-year period. The renewal project transitioning to a new component must be fully eliminated through reallocation. Transition grants in this Competition may apply to renew in subsequent fiscal year competitions for eligible activities of the new component. Prior to applying for a transition grant, the current recipient must have the consent of its Continuum of Care; and the new project application must meet project eligibility and project quality thresholds established by HUD in sections III.C.4.a. and b. of this NOFO.

Transition grants HUD conditionally awards in the CoC Program Competition have 1 year to fully transition from the original component to the new component. The transition grant's operating start date will be the day after the end of the previous grant term for the expiring component. For transition grants reallocated from more than one project, the operating start date of the transition grant will be the day after the end of the earliest expiring grant term. The grant term may be extended consistent with 2 CFR 200.308 and 2 CFR 200.309. After the first operating year for which FY 2024 funds are awarded, the transition grant must be fully operating under the new component and will be eligible for renewal in the FY 2025 Operating year under the component to which it transitioned subject to the language in the FY 2025 HUD Appropriation. Projects seeking to renew with FY 2025 funds (including grants that renewed with FY 2024 funds) may submit a transition grant application for FY 2025 funds. Subject to the language in the FY 2025 HUD Appropriation, transition grant applications awarded FY 2025 funds must fully transition to the new component by the end of the 1-year grant term and must apply for renewal in the next CoC Program Competition under the component to which it transitioned.

DOJ-HUD-AR00048

For a new project to be considered a transition grant, the new project applicant must be the recipient listed on the current grant agreement for the eligible renewal grant(s) being eliminated and must include the grant number(s) of the project(s) being eliminated to create the new project and attach a copy of the most recently awarded project application. For example, expiring FY 2023 grants applying to transition to a new component during the FY 2024 funding process will attach a copy of the FY 2023 CoC Program Competition project application.

> **(a)** If the project application identifies the project as a transition project and the CoC ranks the new transition grant project on the New Project Listing in the CoC Priority Listing, HUD will consider this as CoC consent.

> **(b)** If HUD determines a new project submitted as a transition grant does not qualify, but meets all other new project requirements, HUD may award the project as a new non-transition grant project. If this occurs, the new project operating start date will be reflected in the grant agreement .

> **(c)** YHDP Renewal grants are not eligible to use the transition grant process. YHDP Renewal grants must submit a YHDP Replacement application to change component types.

> **(d)** Grants with DV Renewal funding are not eligible to use the transition grant process.

**(31)** *Trust Land.* For purposes of this Notice, trust lands are a type of formula area as delineated under HUD's IHBG program at 24 CFR 1000.302.

**(32)** *YHDP Replacement Process.* The Consolidated Appropriations Act, 2024, permits the replacement of renewing YHDP projects under the CoC Program. The YHDP Replacement process occurs when: (1) a CoC reallocates a YHDP Renewal project to create one or more new YHDP project(s) that has the same recipient referred to as YHDP Replacement in this NOFO; (2) a CoC is reallocating a YHDP Renewal project to create one or more new projects with a new recipient referred to as YHDP Reallocation in this NOFO; or (3) a CoC is reallocating YHDP Renewal project(s) to create YHDP Expansion applications through the YHDP Replacement process. For more information on YHDP Reallocation, see sections I.B.3.e and III.B.4.a.(5) of this NOFO.

**c. FY 2024 - FY 2025 CoC Program Competition NOFO Requirements.** All requirements for submitting applications for projects eligible for FY 2024 CoC and YHDP funding, including requirements for the entire Consolidated Application, are contained in this NOFO. This NOFO also includes requirements for submitting applications for FY 2025 funding, including FY 2025 reallocation project applications. Subject to the FY 2025 HUD Appropriation, HUD may amend this NOFO if FY 2025 appropriations authorize HUD to solicit applications for funding not currently covered under this NOFO.

Applicants should read this information carefully and respond to all submission requirements and deadlines as described.

The 8:00 PM EDT application submission deadline on October 30, 2024, applies to the following (see Section IV.G of this NOFO for more information):

- FY 2024 - 2025 CoC Application;

DOJ-HUD-AR00049

- FY 2024 Project Applications; and
- FY 2024 Priority Listing, including a signed HUD-2991.

Collaborative Applicants complete one CoC Application for the FY 2024 and FY 2025 funding, and it must be submitted in e-snaps by the 8:00 PM EDT Application Submission deadline on October 30, 2024. CoC Applications will not be accepted during the FY 2025 Application submission phase, but the Collaborative Applicant must still submit an application for FY 2025 funding. Applicants that are designated Unified Funding Agencies (UFAs) or High Performing Communities (HPCs) by HUD during the FY 2024 CoC Program Registration process will maintain their UFA and/or HPC designation for the FY 2025 Funding Process.

Collaborative Applicants and UFAs with CoC (including DV Renewal) and YHDP Renewal grants with an expiration date in CY 2026, that were not awarded FY 2024 CoC and YHDP funding and applications for new grants created through CoC Reallocation, or DV Reallocation, or YHDP Replacements which includes YHDP Reallocation must submit their applications for FY 2025 funding no later than 8:00 PM EDT on August 29, 2025. Projects that are awarded FY 2024 funds may be eligible for award of FY 2025 funds using their FY 2024 application submission and are not required to apply for renewal for FY 2025 funds.

Collaborative Applicants and UFAs will be required, at a minimum, to submit the following as part of their application to apply for FY 2025 funding:

- FY 2025 Renewal project applications for grants that were not funded in FY 2024 that have an expiration date in CY 2026 (between January 1, 2026, and December 31, 2026).
- Applications for projects created through the reallocation of eligible CoC renewal (including DV Renewal) grants and through the replacement of eligible YHDP renewal grants which also includes YHDP Reallocation;
- FY 2025 Project Listing that includes all projects approved by the CoC to apply for FY 2025 funding; and,
- A signed HUD-2991. This form will be included as part of the FY 2024 - FY 2025 Consolidated Application and is not required to include projects that were awarded FY 2024 funding and are continuing in FY 2025.

Collaborative Applicants, and project applicants should read this NOFO in its entirety in conjunction with the Rule to ensure a comprehensive understanding of and compliance with all CoC Program requirements. This NOFO frequently references citations from the Rule.

(1) CoCs should consider the policy priorities established in this NOFO in conjunction with local priorities to determine the ranking of new and renewal project application requests. See section I.A.4 of this NOFO for more information on HUD's homelessness policy priorities and program highlights.

(2) HUD will conduct threshold reviews of project applicants, subrecipients, and project applications for all CoC Consolidated Applications submitted by the FY 2024 and FY 2025 application submission deadlines as described in section IV.G.

(3) HUD may issue more than one conditional funding announcement, including for instances where a CoC has been affected by a disaster and for which HUD has extended the deadline for application submission.

DOJ-HUD-AR00050

**(4)** HUD will score the FY 2024 - 2025 CoC Application portion of the Consolidated Application in accordance with the criteria set forth in section V.B of this NOFO.

**(5)** CoC Planning and UFA Costs project applications are not ranked and will be selected, provided they pass project eligibility and project quality threshold review.

**(6)** HUD selects the following projects that pass project eligibility, project quality threshold, and if applicable, project renewal threshold, using the Tier 1 and Tier 2 ranking process described in sections I.B.3.h of this NOFO for FY 2024 funding.

**(a)** CoC Bonus projects.
**(b)** CoC Renewal projects (including DV Renewal projects).
**(c)** New CoC Reallocation projects.
**(d)** New DV Reallocation projects.

Projects with a ranked position in Tier 1 will be selected based on requirements in section I.B.3.h.(1) of this NOFO and Projects with a ranked position in Tier 2 will be selected based on the CoC Application score and the project application score outlined in section I.B.3.h.(2) of this NOFO.

**(7)** YHDP Renewal projects and YHDP Replacement projects including YHDP Reallocation projects are non-competitive YHDP projects and must not be ranked by CoCs. HUD will select YHDP projects for funding if they pass project eligibility and project quality threshold review, and for YHDP project renewal threshold; as explained in section III.C.4.c. of this NOFO. HUD will not reject YHDP Replacement project applications which includes YHDP Reallocation projects during quality threshold review; however, HUD may require YHDP Replacement grant recipients to correct or revise information submitted after the final CoC Program Competition award announcement.

**(8)** HUD may select new DV Bonus project applications that pass project eligibility and project quality threshold with:

> **(a)** DV Bonus funds based on the CoC Application score, how the CoC collaborates with victim service providers, the need for the project, and how the provider will involve survivors with lived experience/expertise in the policy and program development [section I.B.3.j of this NOFO]. HUD will remove DV Bonus project applications selected with DV Bonus funds from the Tier 1 and Tier 2 ranking process; or

> **(b)** CoC Bonus or reallocated funds where the project application retains its ranked position in Tier 1 or Tier 2 and may be selected by HUD as outlined in sections I.B.3.h.(1) or (2) of this NOFO.

**(9)** DV Reallocation Projects submitted for FY 2024 CoC and YHDP funding must be ranked in either Tier 1 or Tier 2 and may be selected for award as outlined in sections I.B.3.h.(1) or (2) of this NOFO.

**c. Establishing and Operating the CoC.** 24 CFR 578.5 and 24 CFR 578.7 detail the requirements for the establishment of a CoC and its responsibilities.

**d. CoC Geographic Area.** 24 CFR 578.5 requires representatives from relevant organizations within a geographic area to establish a CoC to carry out the duties within the geographic area. The boundaries of identified CoC geographic areas cannot overlap, and any overlapping

DOJ-HUD-AR00051

geographies are considered Competing CoCs. HUD follows the process at 24 CFR 578.35(d) to determine which CoC HUD will fund in the case of CoC geographic areas that overlap.

**e. Planning Duties of the CoC.** Planning duties for CoCs are detailed in 24 CFR 578.7.

**f. Centralized or Coordinated Assessment System (Coordinated Entry).** In general, 24 CFR 578.23(c)(9) and (11) requires all CoC program recipients and subrecipients to use the centralized or coordinated assessment system established by CoCs. The definition of Centralized or Coordinated Assessment (also known as Coordinated Entry) is found at 24 CFR 578.3. 24 CFR 578.7(a)(8) details the responsibilities of the CoC to establish and operate this required system. In addition to the definition and responsibilities established in the Rule, HUD posted on its website, *CPD-17-01: Notice Establishing Additional Requirements for a Continuum of Care Centralized or Coordinated Assessment System*, establishing additional requirements related to the development and use of a centralized or coordinated entry assessment system. These systems help communities assess the needs of program participants and effectively match individuals and families experiencing homelessness with the most appropriate resources available to address their supportive service and housing needs. CoCs may use planning costs to design and plan for the implementation of a Coordinated Entry system; however, once the system is established and operating, the costs of operating it are not eligible planning costs. CoCs must operate the system with CoC Program funds, other funds, or a combination of the two. Section 578.23(c)(9) of the CoC Program Rule exempts victim service providers from using the CoC's coordinated entry process if victim service providers use a coordinated entry process that otherwise meets HUD's requirements.

**g. CoC Program Components.** 24 CFR 578.37 states CoC funds may be used to create and operate projects under five program components: PH (including PSH and RRH); TH; SSO; HMIS; and in some cases, homelessness prevention. Only CoCs designated by HUD as HPCs during the CoC Registration process may carry out homelessness prevention activities through the CoC Program. In the FY 2017 CoC Program Competition and Registration Notice, HUD introduced a new Joint TH and PH-RRH component type that CoCs could apply for. The only types of projects that will be funded in the FY 2024 – FY 2025 CoC Program Competition are:

    **(1)** PH (PSH and RRH);
    **(2)** TH;
    **(3)** Joint TH and PH-RRH;
    **(4)** SSO; and
    **(5)** HMIS.

**h. Collaborative Applicant.** The Collaborative Applicant is the single applicant designated by the CoC to compile all parts of the FY 2024 - 2025 CoC Consolidated Application, including the CoC Application, the CoC Priority Listing, and all project applications that the CoC has recommended for funding within the geographic area (24 CFR 578.9(a)(3)). HUD will only review CoC Consolidated Applications submitted by the CoC designated Collaborative Applicant. When FY 2025 funds become available, the FY 2025 CoC Priority Listing and FY 2025 project applications submitted by the CoC become part of the FY 2024 - 2025 CoC Consolidated Application.

Additionally, the Collaborative Applicant is the only entity eligible to apply to HUD for CoC Planning costs and if designated as a UFA by HUD, for UFA Costs (24 CFR 578.3).

**3. CoC Program Provisions.**

The following list highlights important information that applicants should consider as they are preparing the FY 2024 - 2025 CoC Application and project applications(s). This is not an exhaustive list of considerations or requirements; therefore, all applicants should carefully review the Rule for comprehensive information.

**a. Performance-Based Decisions.** Consistent with the requirements of the Consolidated Appropriations Act, 2024:

> **(1)** Requests for new CoC project applications , except for new projects created through reallocation, are not allowed, unless the CoC evaluates and competitively ranks projects based on how they improve the CoC's system performance as outlined in section V.B.2.b of this NOFO; and

> **(2)** HUD will prioritize funding for CoCs that have demonstrated the capacity to reallocate funding from lower to higher performing projects

**b. Indian Tribes or Tribally Designated Housing Entities (TDHEs).** The Consolidated Appropriations Act, 2021 amended Title IV of the Act by adding Section 435 so designated Indian Tribes or TDHEs (as defined in Section 4 of the Native American Housing Assistance and Self-Determination Act of 1996 (25 U.S.C. 4103) may:

> **(1)** create a CoC;
> **(2)** be a Collaborative Applicant;
> **(3)** be an eligible project applicant; or
> **(4)** receive grant amounts from another entity that receives a grant directly from HUD (i.e. be a CoC grant subrecipient).

However, under 42 U.S.C. 11383(g) only States, Units of General Local Government, nonprofit organizations, and Public Housing Agencies may administer permanent housing rental assistance.

**c. Coordination with Housing and Healthcare.** The Consolidated Appropriations Act, 2024 directs HUD to provide incentives to create projects that coordinate with housing providers and healthcare organizations to provide permanent supportive housing and rapid rehousing services. In the FY 2024 - 2025 CoC Program Competition, CoCs may receive up to 14 points on the CoC Application if the FY 2024 CoC Priority Listing includes new project applications created through reallocation or the CoC Bonus that utilizes housing vouchers and healthcare provided through an array of healthcare services providers. See section V.B.6 of this NOFO for additional details.

**d. Consolidation Project.** Project applicants can consolidate two but no more than ten eligible renewal projects during the application process. The projects being combined during a grant consolidation will continue uninterrupted. To be eligible for consolidation, the projects must have the same recipient (as evidenced by recipient's Unique Entity Identifier) and be for the same component. Additionally, YHDP projects cannot consolidate with non-YHDP projects. See section III.B.4.a.(7) of this NOFO for additional information.

DOJ-HUD-AR00053

**e. Youth Homeless Demonstration Program (YHDP).** Consistent with the requirements of the Consolidated Appropriations Act, 2024, funding for the CoC Program may be used to competitively or non-competitively renew or replace grants for YHDP projects.

HUD will non-competitively renew and replace YHDP projects which includes new YHPD projects created from the reallocation of YHDP renewal grants; however, these project applications will be reviewed for compliance with project eligibility, project quality, and if applicable, project renewal thresholds. See sections III.B.4.a.(5), III.B.4.b.(5) and I.B.2.k.(4) of this NOFO for additional information.

While YHDP projects can use the replacement process to consolidate projects as outlined in section III.B.4.a.(7) of this NOFO, these projects cannot consolidate with non-YHDP projects. YHDP Renewal projects may also apply to expand its current project through the YHDP Replacement process. See section III.B.4.a.(6)(c) for more information. Unified Funding Agencies (UFAs) are prohibited from moving funds out of or into YHDP-funded projects and mix funding from any other non-YHDP funded project. UFAs may replace eligible YHDP renewal projects.

All YHDP Renewal, YHDP Replacement and YHDP Reallocation projects are subject to the following provisions of the Rule, as may be amended from time to time, except where they conflict with the NOFO requirements, with the special YHDP activities identified in section III.B.4.b.(5) of this NOFO, or the requirement that grant funds may only be used to serve homeless youth, age 24 and younger: 24 CFR 578.3, 578.15, 578.23(a), 578.25, 578.27, 578.29, 578.37, 578.43, 578.45, 578.47, 578.49, 578.51, 578.53, 578.55, 578.57, 578.59, 578.61, 578.63, 578.73(c), 578.75, 578.77, 578.79, 578.81, 578.83, 578.85, 578.87, 578.89, 578.89, 578.91, 578.93, 578.95, 578.97, 578.99, 578.103(a)(3) - (18) and (b) – (e), 578.105, 578.107 and 578.109. The requirements of 2 CFR 200.306, as may be amended from time to time, with the exception of 200.306(b)(5) apply. All YHDP Renewal, YHDP Replacement and new YHDP Reallocation projects must comply with 24 CFR 578.93, except that in 578.93(c)(2), recipients must provide such information to the jurisdiction in which the project is located. Federal fair housing and nondiscrimination requirements cannot be waived.

YHDP projects eligible to renew in the CoC Program Competition for the first time in FY 2025 must submit their renewal or replacement application by August 29, 2025 and will be selected by HUD non-competitively for a grant term of 1 year, subject to the FY 2025 HUD Appropriations. YHDP projects renewing in FY 2025 for the first time may not be reallocated.

**f. Adjustments for Ineligible Projects.** If an ineligible renewal project is submitted in this Competition or used in the reallocation process; or an ineligible YHDP Renewal or YHDP Replacement project is submitted, HUD will remove the ineligible project when calculating the final ARD amount for the CoC. To be eligible for renewal, reallocation, or replacement in the FY 2024 CoC and YHDP Funding Process, a project must have an expiration date in Calendar Year (CY) 2025 (between January 1, 2025, and December 31, 2025). Subject to the FY 2025 HUD Appropriation, to be eligible for renewal, reallocation, or replacement in the FY 2025 CoC and YHDP Funding Process, a project must have an expiration date in Calendar Year (CY) 2026 (between January 1, 2026, and December 31, 2026).

**g. Homeless Management Information System (HMIS).** As directed by Congress, HUD must provide an annual estimate of all individuals and families experiencing homelessness nationwide

Page 27 of 128

and within the territories. Therefore, all CoCs must have an HMIS that has the capacity to collect un-duplicated counts of individuals and families experiencing homelessness and provide information to project subrecipients and applicants for needs analysis and funding priorities. Additionally, CoC and Emergency Solutions Grants (ESG) Program recipients must participate in the local HMIS; unless a recipient is a victim service provider or legal service provider, in which case these recipients must use a comparable database and provide de-identified information to the CoC. For many communities, the inclusion of ESG recipients and subrecipients and other HUD federal partners (e.g., the Department of Health and Human Services and Department of Veterans Affairs) that require their programs to use the CoC's HMIS, results in an increase in users that the HMIS must be able to accommodate. HUD expects communities to be able to use the HMIS information as well as aggregate data from comparable databases to review performance for the entire CoC geographic area, not just at the project level. The HMIS Lead should continue to consider any unique needs that the HMIS might be required to address to accommodate emergency shelter, street outreach, homelessness prevention, and other federal programs.

**h. HUD Funding Process.** CoCs and applicants should ensure there is a thorough understanding of the information provided in this NOFO. HUD has a two-tier funding selection process for FY 2024 funding. HUD will establish Tier 1 and Tier 2 amounts for each CoC, based on each CoC's Annual Renewal Demand. HUD will post a report that lists the available amounts for each CoC's PPRN, estimated ARD, Tier 1, CoC Planning, estimated CoC Bonus amounts, and estimated DV Bonus amounts on HUD's website. The GIWs are also posted on HUD's website.

Applications for YHDP Renewal, YHDP Replacement, CoC Planning, and if applicable, UFA Costs projects are not competitively ranked, and therefore must be excluded from CoC ranking. These non-competitive applications are also excluded from the Tier 1 and Tier 2 selection process.

The selection process described in this section of the NOFO will also be used for CoC Collaborative Applicants designated as UFAs. Section V. of this NOFO provides additional information regarding project selection.

Note that Tier 1 and Tier 2 selection process takes place after the initial DV Bonus selection process has occurred.

**(1)** *Tier 1.* Tier 1 is equal to 90 percent of the CoC's Annual Renewal Demand (ARD) as described in section I.B.2.b.(1) of this NOFO minus the sum of all ARAs of non-competitive YHDP Renewal and YHDP Replacement projects. HUD will conditionally select project applications in Tier 1 from the highest scoring CoC application to the lowest scoring CoC application and according to the rank assigned by the CoC on the CoC Priority listing, provided the project applications pass both project eligibility and project quality threshold review, and if applicable, project renewal threshold.

The following project applications can be placed in Tier 1:

**(a)** new CoC projects created through CoC Reallocation;
**(b)** new CoC Bonus projects;
**(c)** new DV Bonus projects;
**(d)** new DV Reallocation projects created through the reallocation of a DV Renewal

DOJ-HUD-AR00055

grant;

**(e)** CoC Renewal projects (including DV Renewal projects)

If a DV Bonus project ranked in Tier 1 is selected with DV Bonus funds, HUD will remove the project from the FY 2024 Priority Listing and move the projects below it up one rank position. However, if HUD does not select a new DV Bonus project in the initial DV Bonus selection, the project will retain its ranked position in the Tier 1 selection process. If the DV Bonus project is not selected through the initial DV Bonus selection process but is selected as a Tier 1 or Tier 2 project, it will be funded using CoC funds and not the funds set aside for "new rapid re-housing projects and supportive service projects providing coordinated entry, and for eligible activities that the Secretary determines to be critical in order to assist individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking." Reallocated DV projects must follow the same requirements as DV Bonus projects; however, reallocated DV projects are only selected in the Tier 1 and Tier 2 selection process. For more on the initial DV Bonus selection process, see [I.B.3.j].

In the event insufficient funding is available to award all Tier 1 projects, Tier 1 will be reduced proportionately, which could result in some Tier 1 projects falling into Tier 2. Therefore, CoCs should carefully determine the priority and ranking for all project applications in Tier 1 as well as Tier 2, which is described below.

**(2) *Tier 2.*** Tier 2 is the difference between Tier 1 and the maximum amount of CoC Renewal (including DV Renewal), CoC Reallocation, DV Bonus, DV Reallocation, and CoC Bonus funds that a CoC applies for.

If HUD selected a DV Bonus project during the initial DV Bonus selection process, HUD will remove that project from the CoC's Priority Listing ranking and move the projects below it up in rank position. See section I.B.3.j of this NOFO. HUD will assess project applications placed in Tier 2 for project eligibility and project quality threshold requirements and project renewal threshold requirements, if applicable; and HUD will determine funding using the CoC Application score as well as the factors listed in section I.B.3.h of this NOFO.

HUD will award a point value to each ranked new and renewal project application that is in Tier 2 using a 100-point scale, and conditionally select applications in Tier 2 using this point value from the highest scoring project application to the lowest:

**(a)** CoC Score. Up to 50 points in direct proportion to the score received on the CoC Application, e.g., if a CoC received 100 out of 200 points on the CoC Application, the project application would receive 25 out of 50 points for this criterion.

**(b)** CoC Project Ranking. Up to 40 points for the CoC's ranking of the project application(s). To consider the CoCs ranking of projects, HUD will assign point values directly related to the CoCs' ranking of project applications. The calculation of point values will be 40 times the quantity (1-x) where x is the ratio of the cumulative funding requests for all projects or portions of projects ranked higher by the CoC in Tier 2 plus one half of the funding of the project of interest to the total amount of funding available in Tier 2 for the CoC. For example, if a CoC is eligible to apply for projects totaling $500,000 in Tier 2 and applies for 5 projects ranked in Tier 2 of $100,000 each: the

DOJ-HUD-AR00056

highest-ranked project would receive 36 points, and then the subsequently ranked projects would receive 28, 20, 12, and 4 points.

**(c)** Commitment to Housing First. Up to 10 points based on the project application's commitment to follow a Housing First approach as defined in section I.B.2.b.(15) of this NOFO. Dedicated HMIS projects and supportive service only for coordinated entry (SSO-CE) projects will automatically receive 10 points.

**(3)** *Projects Straddling Tiers.* If a project application straddles the Tier 1 and Tier 2 funding line, HUD will conditionally select the project up to the amount of funding that falls within Tier 1. Using the CoC score, and other factors described in section I.B.3.h of this NOFO, HUD may fund the Tier 2 portion of the project. If HUD does not fund the Tier 2 portion of the project, HUD may award the project at the reduced amount based on the amount of funding that falls within Tier 1, provided the project is still feasible with the reduced funding (e.g., is able to continue serving homeless program participants effectively).

**i. CoC Planning and UFA Costs Projects.** CoCs may only submit one project application for CoC Planning costs and, if applicable, one project application for UFA Costs. The Collaborative Applicant listed on the CoC Applicant Profile in e-snaps is the only eligible applicant that may apply for CoC Planning and UFA Costs projects. Collaborative Applicants are not required to submit applications for FY 2025 CoC Planning and UFA Costs projects. HUD will award FY 2025 CoC Planning and UFA Costs projects using FY 2024 application submissions.

**j. Domestic Violence, Dating Violence, Sexual Assault, and Stalking Bonus (DV Bonus).** The Consolidated Appropriations Act, 2024 provides $52 million for "new rapid re-housing projects and supportive service projects providing coordinated entry, and for eligible activities that the Secretary determines to be critical in order to assist survivors of domestic violence, dating violence, sexual assault, or stalking." See section I.B.2.b.(6) of this NOFO for additional information.

CoCs must rank all new DV Bonus project applications on the New Project Listing of the CoC Priority Listing with a unique number ranking and when the project is part of an expansion, the corresponding renewal project application must be on the Renewal Project Listing with a unique rank number. HUD will only select a new DV Bonus project that expands an existing renewal project if HUD conditionally selects the renewal project in Tier 1 or 2. If HUD selects the renewal project application for conditional award with CoC Program funds and the new DV Bonus expansion project is approved for selection, HUD will select the new DV Bonus project with DV Bonus funds and remove the new DV Bonus project from the New Project Listing. All subsequent project applications ranked below the new DV Bonus project application will move up one rank position.

In cases where a new DV Bonus project is selected using the selection process noted in this section, it will be funded from funds made available for "new rapid re-housing projects and supportive service projects providing coordinated entry, and for eligible activities that the Secretary determines to be critical in order to assist individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking." To be eligible to receive a new DV Bonus project, the CoC must demonstrate it ranks projects based on how they improve system performance as outlined in section V.B.2.b of this NOFO. Additionally, to be eligible to receive a DV Bonus

DOJ-HUD-AR00057

project for PH-RRH or Joint TH/PH-RRH component, all projects funded through the DV Bonus must adopt a Housing First approach.

Each CoC may only submit one new SSO-CE DV Bonus project; however, there is no limit on the number of PH-RRH and Joint TH/PH-RRH DV Bonus projects CoCs may submit, provided that each application is for at least $50,000. A project applicant may also apply to expand an existing renewal project, including one that was previously awarded with DV Bonus funding, in accordance with section I.B.2.b.(6) of this NOFO; however, only the new project application for the expansion will be considered for DV Bonus funds through this process. DV Bonus funding may be used to expand an existing renewal project that is not dedicated to serving individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking who qualify as homeless under paragraphs (1) or (4) of the definition of homeless at 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act [see section III.B.4.a.(6)], so long as the DV Bonus funds for expansion are solely for additional units, beds, or services dedicated to persons eligible to be served with DV Bonus funding.

For new projects the CoC requests to be considered as part of the DV Bonus, HUD will award a point value to each project application using the following 100-point scale, including points based on FY 2024 - 2025 CoC Application score and responses to the domestic violence bonus specific questions in the FY 2024 - 2025 CoC Application [see (1), (2) and (3) below]:

**(1)** Rapid Rehousing (PH-RRH) and Joint Transitional Housing and Permanent Housing-Rapid Rehousing (Joint TH/PH-RRH) component projects:

**(a)** CoC Score. Up to 50 points in direct proportion to the score received on the CoC Application.

**(b)** CoC Collaboration with Victim Service Providers. Up to 10 points in direct proportion to the score received on the following rating factors in the CoC application: section V.B.1.e, section V.B.2.c, and section V.B.3.b.

**(c)** Need for the Project. Up to 10 points based on the extent the CoC quantifies the need for the project in its portfolio, the extent of need, and how the project will fill that gap.

**(d)** Quality of the Project Applicant Experience. Up to 15 points based on the previous performance of the applicant in serving individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking, and their ability to house survivors and meet safety outcomes.

**(e)** Demonstration of inclusion of victim-centered practices. Up to 8 points based on the quality of the project's plan to address the housing and safety needs of survivors by adopting victim-centered practices (e.g., Housing First, Trauma-Informed Care, Confidentiality) in operating their project. Full points will be awarded to project applicants that can demonstrate they are already adopting victim-centered practices.

**(f)** Demonstration of plan to include survivors with lived expertise. Up to 7 points based on the project's ability to demonstrate its plan to involve survivors in policy and program development throughout the project's operation.

DOJ-HUD-AR00058

**(2)** PH-RRH and Joint TH/PH-RRH component projects must follow a housing-first approach.

**(3)** Supportive Services Only Coordinated Entry (SSO-CE) to implement policies, procedures, and practices that equip the CoC's coordinated entry to better meet the needs of people experiencing homelessness who are experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking (e.g., to implement policies and procedures that are trauma-informed, client-centered or to better coordinate referrals between the CoC's coordinated entry and the victim service providers coordinated entry system where they are different):

**(a)** CoC Score. Up to 50 points in direct proportion to the score received on the CoC Application.

**(b)** CoC Collaboration with Victim Service Providers. Up to 10 points in direct proportion to the score received on the following rating factors in the CoC application: section V.B.1.e, section V.B.2.c, and section V.B.3.b.

**(c)** Need for the Project. Up to 25 points based on the extent to which the CoC demonstrates the need for a coordinated entry system that better meets the needs of individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking, and how the project will fill this need.

**(d)** Demonstration of plan to include survivors with lived expertise. Up to 15 points based on the project's ability to demonstrate its plan to involve survivors in policy and program development throughout the project's operation.

**k. Participant Eligibility.** Projects funded through this NOFO must have the following eligibility criteria for program participants. All references to paragraphs of the definition of homeless that are found throughout this NOFO refer to the paragraphs listed under the definition of "homeless" in 24 CFR 578.3 and include the definition of "homeless" under section 103(b) of the McKinney-Vento Homeless Assistance Act, even if section 103(b) is not explicitly referenced. All specific references to the definition of "homeless" under paragraph (4) of 24 CFR 578.3 that are found throughout this NOFO also include the definition of "homeless" under section 103(b) of the McKinney-Vento Homeless Assistance Act, even if section 103(b) is not explicitly referenced. All projects must participate in coordinated entry, and the selection of program participants must be consistent with the CoC's coordinated entry process. As provided by the Consolidated Appropriations Act, 2024, youth aged 24 and under must not be required to provide third-party documentation that they meet the homeless definition in 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act as a condition for receiving services funded under this NOFO. Additionally, any youth-serving provider funded under this NOFO may serve unaccompanied youth aged 24 and under or families headed by youth aged 24 and under who are living in unsafe situations. HUD interprets "youth-serving provider" as a private nonprofit organization whose primary mission is to provide services to youth aged 24 and under and families headed by youth aged 24 and under. HUD interprets "living in unsafe situations" as having an unsafe primary nighttime residence and no safe alternative to that residence. These youth-related requirements supersede any conflicting requirements under this NOFO or the Rule.

DOJ-HUD-AR00059

CoC, DV and YHDP Renewal projects must serve the same population of individuals or families as indicated in the expiring grant agreement.

Participants eligible to be served by New Projects, are as follows:

**(1)** New PH-PSH projects awarded CoC funds must serve one of the following:

**(a)** persons eligible to be served by DedicatedPLUS projects as described in section I.B.2.b.(5) of this NOFO in which case all units funded by the project must be used to serve program participants who meet the qualifications for DedicatedPLUS; or

**(b)** persons who are experiencing chronic homelessness [see 24 CFR 578.3 definition of Chronically Homeless] at the time they initially enroll in the project.

**(2)** New PH-RRH, Joint TH/PH-RRH, and SSO-CE projects awarded CoC funds must serve persons who qualify as homeless under paragraphs (1), (2), or (4) of 24 CFR 578.3, Section 103(b) of the McKinney-Vento Homeless Assistance Act, or persons who qualify as homeless under paragraph (3) of 24 CFR 578.3 if the CoC is approved to serve persons in paragraph (3).

**(3)** New DV Bonus and DV Reallocation projects (RRH, Joint TH/PH-RRH, and SSO-CE) must serve individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, and stalking who qualify as homeless under paragraphs (1) or (4) of the definition of homeless at 24 CFR 578.3 or Section 103(b) of the McKinney-Vento Homeless Assistance Act. Additionally, these projects may serve individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, and stalking who qualify as homeless under paragraph (3) of 24 CFR 578.3 if the CoC is approved to serve persons in paragraph (3).

**(4)** New YHDP Replacement projects including YHDP Reallocation must serve youth aged 24 or younger, including unaccompanied and pregnant or parenting youth who:

**(a)** qualify as homeless under paragraphs (1), (2), or (4) of the homeless definition in 24 CFR 578.3 or Section 103(b) of the McKinney-Vento Homeless Assistance Act;

**(b)** have an unsafe primary nighttime residence and no safe alternative to that residence; or

**(c)** qualify as homeless under paragraph (3) of 24 CFR 578.3 if the CoC is approved to serve persons in paragraph (3).

## II. AWARD INFORMATION

## A. Available Funds

Funding of approximately $3,524,000,000 is available through this NOFO. Subject to appropriations, HUD reserves the right to award fiscal year 2025 funds based on this NOFO competition.

Additional funds may become available for award under this NOFO consistent with Section VI.A.2.e., Adjustments to Funding. Use of these funds is subject to statutory constraints. All awards are subject to the funding restrictions contained in this NOFO.

DOJ-HUD-AR00060

HUD is also making available up to $93,000,000 in recaptured amounts that are available for additional Continuum of Care awards pursuant to section 231 of the Further Consolidated Appropriations Act, 2020 (Public Law 116-94, division H, title II, section 231;  42 USC 11364a).

Funding includes approximately $188,000,000 for the non-competitive renewal and replacement of expiring YHDP grants. $52,000,000 is available for Domestic Violence, Dating Violence, Sexual Assault, and Stalking Bonus (DV Bonus) projects, described in sections I.B.3.j and I.B.2.b.(6) of this NOFO.

## III. ELIGIBILITY INFORMATION

## A. Eligible Applicants

**1.** HUD does not award grants to individuals. HUD will also not evaluate applications from ineligible applicants.

### 2. Faith-based organizations

a. Faith-based organizations may apply for this award on the same basis as any other organization, as set forth at 24 CFR 5.109, and subject to the protections and requirements of 42 U.S.C. § 2000bb et seq. HUD will not, in the selection of recipients, discriminate against an organization based on the organization's religious character, affiliation, or exercise.

b. A faith-based organization that participates in this program will retain its independence and may continue to carry out its mission consistent with religious freedom and conscience protections in Federal law, including the Free Speech and Free Exercise Clauses of the Constitution, 42 U.S.C. § 2000bb et seq., 42 U.S.C. § 238n, 42 U.S.C. § 18113, 42 U.S.C. §§ 2000e-1(a) and 2000e-2(e), 42 U.S.C. § 12113(d), and the Weldon Amendment, among others. Religious accommodations may also be sought under many of these religious freedom and conscience protection laws, particularly under the Religious Freedom Restoration Act.

c. A faith-based organization may not use direct financial assistance from HUD to support or engage in any explicitly religious activities except where consistent with the Establishment Clause and any other applicable requirements. Such an organization also may not, in providing services funded by HUD, discriminate against a beneficiary or prospective program beneficiary on the basis of religion, religious belief, a refusal to hold a religious belief, or a refusal to attend or participate in a religious practice.

**3. Cost Sharing or Matching**
This Program requires cost sharing or matching as described below.

24 CFR 578.73 of the Rule requires that recipients must match all grant funds, except for leasing funds, with no less than 25 percent of funds or in-kind contributions from other sources. 24 CFR 578.73.

Project applicants that intend to use program income as a match must provide an estimate of how much program income will be used for the match. HUD will not require YHDP Renewal or replacement projects to meet the 25 percent match requirement if the applicant is able to demonstrate it has taken reasonable steps to maximize resources available for youth experiencing homelessness.

**4. Eligible Project Applicants (McKinney-Vento Act, 24 CFR 578.15, 24 CFR 5.100)**

DOJ-HUD-AR00061

Eligible project applicants for the CoC Program Competition are found at 24 CFR 578.15 and in the Act and include nonprofit organizations, states, local governments, instrumentalities of state and local governments, Indian Tribes and TDHE [as defined in section 4 of the Native American Housing Assistance and Self-Determination Act of 1996 (25 U.S.C. 4103) (TDHEs)]. Public housing agencies, as such term is defined in 24 CFR 5.100, are eligible without limitation or exclusion. For-profit entities are ineligible to apply for grants and are prohibited from being subrecipients of CoC Program grant funds.

**5. Indian Tribes and Tribally Designated Housing Entities (TDHE)**

The Consolidated Appropriations Act, 2021 (Public Law 116-260, approved December 27, 2020) amended Title IV to add Section 435 of the Act to allow Indian Tribes and Tribally Designated Housing Entities (TDHE) to be Collaborative Applicants, eligible entities, or subrecipients of the CoC Program in addition to amending Title IV Section 401 to add the terms "Formula Area" and "Indian Tribe." These amendments mean that not only may Tribes and TDHEs apply for grants through other CoCs, but that formula areas, as that term is defined in the Indian Housing Block Grant program at 24 CFR 1000.302, are eligible to be added to the geographic areas of existing CoCs or may be included in newly formed CoCs through the CoC registration process (see Notice CPD-22-02).

Any applicant that is not a Tribe or TDHE proposing to site a project on a reservation or trust land must include a Tribal resolution from the Tribe authorizing the applicant to do so or a letter from an official or principal of the Indian Tribe or TDHE who is authorized to act on behalf of the Indian Tribe or TDHE. Tribes do not need to include a Tribal resolution to site a project on their own reservation or trust land.

**6. Collaborative Applicants**

Only CoCs with a valid e-snaps registration for the FY 2024 – FY 2025 CoC Program and YHDP Competition will have access to the FY 2024 – FY 2025 CoC Consolidated Application in e-snaps, which includes the CoC Application, CoC Priority Listing, and the project application(s). CoCs should not attempt to change Collaborative Applicants during the FY 2024 – FY 2025 CoC Program and YHDP Competition without prior HUD approval unless HUD replaces the CoC's designated Collaborative Applicant under the authority of Section 402(c) of the Act. HUD will approve Collaborative Applicant changes outside the annual CoC Program Registration process under the following circumstances:

**a.** the Collaborative Applicant made an error when entering the Collaborative Applicant name in the CoC Applicant Profile;
**b.** the CoC-designated Collaborative Applicant is no longer in business;
**c.** the CoC designates a new Collaborative Applicant; or
**d.** HUD designated a new Collaborative Applicant as a remedial action under Section 402(c) of the Act.

In cases where the CoC changes its designated Collaborative Applicant during the CoC Program Registration process, the CoC must notify the local HUD CPD field office, in writing, stating the reason for the Collaborative Applicant change. The notice to HUD must provide documentation of the CoC's approval of the change (e.g., a copy of the meeting minutes to include the date and attendees).

DOJ-HUD-AR00062

## B. Rules and Regulations Applicable to HUD NOFOs

Applicants must comply with these rules to apply.

### 1. Eligibility Requirements for Applicants of HUD's Financial Assistance Programs

The following requirements affect applicant eligibility. Detailed information on each requirement is found in the "Eligibility Requirements for Applicants of HUD's Competitive Programs" document on HUD's Funding Opportunities page. Applicants who fail to meet any of these eligibility requirements are deemed ineligible to receive HUD funding.

1. Universal Identifier and System for Award Management (SAM.gov) Requirements
2. Outstanding Delinquent Federal Debts
3. Debarments or Suspensions, or both
4. Mandatory Disclosure Requirement
5. Pre-selection Review of Performance
6. Sufficiency of Financial Management System
7. False Statements
8. Failure to conducting Business in Accordance with Ethical Standards/Code of Conduct
9. Prohibition Against Lobbying Activities

In addition, each applicant under this NOFO must have the necessary processes and systems in place to comply with the Award Term in Appendix A of 24 CFR part 170 if the applicant receives an award, unless an exception applies as provided in 2 CFR170.110.

### 2. Resolution of Civil Rights Matters

Applicants who fail to meet any of the following threshold eligibility requirements are deemed ineligible. Applications from ineligible applicants are not rated or ranked and will not receive HUD funding.

Outstanding civil rights matters must be resolved before the application submission deadline. Project applicants, who after review are confirmed to have civil rights matters unresolved at the application submission deadline, will be deemed ineligible. Their applications will receive no further review, will not be rated and ranked, and will not receive funding.

a. An applicant is ineligible for funding if the applicant has any of the charges, cause determinations, lawsuits, or letters of findings referenced in subparagraphs (1) – (5) that are not resolved to HUD's satisfaction before or on the application deadline date for this NOFO.

(1) Charges from HUD concerning a systemic violation of the Fair Housing Act or receipt of a cause determination from a substantially equivalent state or local fair housing agency concerning a systemic violation of a substantially equivalent state or local fair housing law proscribing discrimination because of race, color, religion, sex (including sexual orientation and gender identity), national origin, disability or familial status;

(2) Status as a defendant in a Fair Housing Act lawsuit filed by the United States alleging a pattern or practice of discrimination or denial of rights to a group of persons raising an issue of general public importance under 42 U.S.C. § 3614(a);

(3) Status as a defendant in any other lawsuit filed or joined by the Department of Justice, or in which the Department of Justice has intervened, or filed an amicus brief or statement of interest,

DOJ-HUD-AR00063

alleging a pattern or practice or systemic violation of Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, Section 109 of the Housing and Community Development Act of 1974, the Americans with Disabilities Act, Violence Against Women Act, or a claim under the False Claims Act related to fair housing, non-discrimination, or civil rights generally including an alleged failure to affirmatively further fair housing;

(4) Receipt of a letter of findings identifying systemic non-compliance with Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, Section 109 of the Housing and Community Development Act of 1974; Violence Against Women Act; or the Americans with Disabilities Act; or

(5) Receipt of a cause determination from a substantially equivalent state or local fair housing agency concerning a systemic violation of provisions of a state or local law prohibiting discrimination in housing based on sexual orientation, gender identity, or lawful source of income.

b. HUD will determine whether actions to resolve the charge, cause determination, lawsuit, or letter of findings taken before the application deadline date will resolve the matter. Examples of actions that may be sufficient to resolve the matter include, but are not limited to:

(1) Current compliance with a voluntary compliance agreement signed by all the parties;

(2) Current compliance with a HUD-approved conciliation agreement signed by all the parties;

(3) Current compliance with a conciliation agreement signed by all the parties and approved by the state governmental or local administrative agency with jurisdiction over the matter;

(4) Current compliance with a consent order or consent decree;

(5) Current compliance with a final judicial ruling or administrative ruling or decision; or

(6) Dismissal of charges.

### 3. Program-Specific Requirements

a. **Advancing Racial Equity**. In accordance with Executive Order 13985, Executive Order 14091, *Executive Order On Advancing Racial Equity and Support for Underserved Communities Through the Federal Government,* and Federal fair housing and civil rights laws, HUD is emphasizing rating factors regarding CoC evaluation of racial disparities as well as system and program changes to address racial equity within CoCs. Responses to preventing and ending homelessness should address racial inequities to ensure successful outcomes for all persons experiencing homelessness using proven approaches, such as: developing a coordinated community response created in partnership with a racially diverse set of stakeholders and people experiencing homelessness and partnering with organizations with experience serving underserved populations. CoCs should review local policies, procedures, and processes with attention to identifying barriers that result in racial disparities, and taking steps to eliminate barriers to improve racial equity and to address disparities. Note that any actions taken in furtherance of this section must be consistent with Federal nondiscrimination requirements.

In Rating Factors V.B.1.p. and V.B.2.e, Collaborative Applicants must demonstrate how the CoC addresses racial inequities, including identifying and eliminating barriers that result in racial

disparities. In particular, Collaborative Applicants must demonstrate how the CoC's project selection will address racial inequities.

b. **Affirmative Marketing and Outreach**. You must submit a narrative demonstrating that the housing, services, outreach, or other benefits provided under this grant will be affirmatively conducted broadly throughout the local area and nearby areas and targeted to reach any eligible persons in demographic groups that would be unlikely or least likely to be aware of the benefits of a HUD award absent such efforts, or entities that serve such groups. Such demographic groups may include, for example, Black and Brown persons or communities, individuals with limited English proficiency, individuals with disabilities, or families with children. Strategies for affirmative marketing or outreach include outreach through community contacts or service providers or at community centers serving the target population; and marketing on websites, social media channels, television, radio, and print media serving local members of the targeted group. You must describe the affirmative marketing/outreach activities that will be conducted if you are selected for a HUD award.

Collaborative Applicants must demonstrate via narrative response to rating factor V.B.1.j that the housing, services, outreach, or other benefits provided by the CoC are affirmatively conducted broadly throughout the local area and nearby areas and targeted to reach any eligible persons in demographic groups that would be unlikely or least likely to be aware of the benefits of a HUD award absent such efforts. At minimum, the narrative response must demonstrate: (1) how your CoC's street outreach efforts, including the methods it uses to ensure all persons experiencing unsheltered homelessness are identified and engaged; (2) how your CoC tailored its street outreach to persons experiencing homelessness who are least likely to request assistance; (3) that your CoC conducts street outreach throughout their entire geographic areas in a way that allows for quick identification and engagement of people experiencing unsheltered homelessness; (4) your CoC's street outreach methods provide effective communications for persons with disabilities including large print, sign-language interpreters, Braille, and other formats; and (5) how your CoC's street outreach methods provide access for persons with limited English proficiency. 2,500 character maximum.

c. **Experience Promoting Racial Equity**

In accordance with Executive Order 13985, Executive Order On Advancing Racial Equity and Support for Underserved Communities Through the Federal Government, Executive Order 14091, Further Advancing Racial Equity and Support for Underserved Communities Through the Federal Government, and Federal fair housing and civil rights law, your application must demonstrate that you have the experience and the resources to effectively address the needs of underserved communities, particularly Black and Brown communities, who are substantially overrepresented in the homeless population. This may include experience successfully working directly with such groups, experience designing or operating programs that equitably benefit such groups, or experience successfully advancing racial equity in other ways. This may also include experience soliciting, obtaining, and applying input from such groups when designing, planning, or implementing programs and activities.

Collaborative Applicants must provide a narrative response, in the CoC Application, which addresses the requirement outlined in the paragraph above. This narrative will be evaluated for sufficiency. If the narrative is deemed insufficient, it will be a "Curable Deficiency" that will be communicated to the Collaborative Applicant for correction. 2,500 character maximum.

DOJ-HUD-AR00065

d. **Affirmatively Furthering Fair Housing**

With some exceptions for Federally recognized Indian tribes and their instrumentalities, the application must discuss how the applicant will carry out the proposed activities in a manner that affirmatively furthers fair housing in compliance with the Fair Housing Act and its implementing regulations, and how applicants will meet the requirements of the definition of AFFH at 24 CFR 5.151. Applicants may propose activities that are consistent with their jurisdiction's Analysis of Impediments (AI), an Assessment of Fair Housing (AFH), or other means of fair housing planning that meaningfully supports their AFFH certification.

If the applicant will carry out proposed activities in a jurisdiction with an AFH, the proposed activities should be consistent with the AFH's fair housing goals and with fair housing strategies specified in the jurisdiction's Consolidated Plan or Public Housing Agency Plan.

In response to Rating Factor V.B.1.o, Collaborative Applicants must describe how their proposed NOFO activities, including selection of projects, are aligned with AFFH requirements, as specified at 24 CFR 578.93(c) of the Rule.

**4. Criteria for Applicants**

**a. Eligible Project Applications.** In addition to eligible renewal project applications, the following types of project applications will be eligible for completion and submission under this NOFO. Ineligible project applications will not be reviewed.

**(1) *CoC Planning projects.*** All Collaborative Applicants are eligible and encouraged to apply for CoC Planning funds which they may use according to 24 CFR 578.39. CoC Planning project applications must be submitted by the CoC-designated Collaborative Applicant and the Collaborative Applicant organization must match the organization listed as the Collaborative Applicant in the CoC Applicant Profile in e-snaps. Collaborative Applicants must not rank Planning project applications in the FY 2024 - 2025 CoC Program Competition. Planning projects will not affect a CoC's available amount for new and renewal project applications because it is not included in the CoC's ARD calculation.

**(2) *UFA Costs projects*.** Only those CoC-designated Collaborative Applicants approved for UFA designation by HUD are eligible to apply for UFA Costs project funds as described in 24 CFR 578.41. UFA Costs project application must be submitted by the CoC-designated Collaborative Applicant and the Collaborative Applicant organization must match the organization listed as the Collaborative Applicant in the CoC Applicant Profile in e-snaps. Collaborative Applicants must not rank UFA Costs projects in the FY 2024 - 2025 CoC Program Competition. UFA Costs projects will not affect a CoC's available amount for new and renewal project applications as it is not included in the CoC's ARD calculation.

**(3) *New Projects Created Through the CoC Reallocation or CoC Bonus processes*.** CoCs may apply for the following types of new CoC projects through reallocation or the CoC Bonus process:

**(a)** PH-PSH projects.

**(b)** PH-RRH projects.

**(c)** Joint TH/PH-RRH component projects.

DOJ-HUD-AR00066

**(d)** Dedicated HMIS project for the costs at 24 CFR 578.37(a)(4) that may only be carried out by the HMIS Lead, which is the recipient or subrecipient of an HMIS grant and is listed on the HMIS Lead form in the CoC Applicant Profile in e-snaps. Additionally, if the CoC has organizations within its geographic area that are victim service providers, the HMIS Lead, or subrecipient, may request HMIS funds for a comparable database. Victim service providers may also request HMIS funds in their project application budgets to enter data into a comparable database.

**(e)** SSO-CE project to develop or operate a Coordinated Entry system.

Prior to completing a new project application created through the reallocation process or Bonus processes, project applicants should consult with the CoC to determine which of these options will be available in the local CoC competition.

If HUD determines that a CoC Bonus or CoC Reallocation project applicant or a Collaborative Applicant incorrectly classified one or more new projects as reallocation or CoC Bonus, HUD may reclassify the project(s) as either reallocation or CoC Bonus if the CoC exceeded either its reallocation or CoC Bonus amounts. For example, if a project applicant or the Collaborative Applicant classified a new project application as reallocation but did not reallocate funds in whole or part from an eligible renewal project, and there are CoC Bonus funds available, HUD may reclassify the new project application as CoC Bonus during its review. If a project applicant uses both reallocation and CoC Bonus amounts to create a single new project but did not have enough available from either source, HUD will reduce the project to the amount available, if any.

A new CoC project may only use reallocated funds from eligible CoC renewal project(s) that have previously been renewed under the CoC Program and have a current grant agreement.

For new projects created through the CoC Bonus process, HUD must determine the CoC has demonstrated that the projects are evaluated and ranked based on the degree to which they improve the CoC's system performance.

**(4)** ***New Projects Created Through DV Bonus or DV Reallocation processes.*** To be considered for DV Bonus or DV Reallocation, new projects must be:

**(a)** PH-RRH projects dedicated to serving individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking that are defined as homeless under 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act;

**(b)** Joint TH/PH-RRH component projects defined in section I.B.2.b.(18) of this NOFO dedicated to serving individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking who are defined as homeless under 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act; or

**(c)** SSO-CE project to implement policies, procedures, and practices that equip the CoC's coordinated entry to better meet the needs of individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking.

DOJ-HUD-AR00067

Where a new project may be eligible for the DV Bonus, CoC Bonus or reallocation process, if HUD determines that a project applicant incorrectly classified one or more new projects as a DV Bonus or DV Reallocation, HUD may reclassify the project(s). For example, if the proposed project does not propose it is dedicated to serve individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, and stalking, HUD may condition the project to ensure the required population is served or HUD may reclassify the project(s) as either CoC reallocation or CoC Bonus if the project(s) are eligible. If a project does not have enough funding available from CoC Bonus or reallocation sources, HUD will reduce the project to the amount available, if any, and determine if the project is feasible at the reduced rate.

For new projects created through DV Bonus, HUD must determine if the CoC has demonstrated that projects are evaluated and ranked based on the degree to which they improve the CoC's system performance.

**(5) *New YHDP Projects Created through YHDP Replacement processes*.** In general, CoCs may replace renewing YHDP project(s) to create one or more new YHDP Replacement projects. The YHDP Replacement process occurs when: (1) a CoC replaces a YHDP Renewal project to create one or more new YHDP project(s) that has the same recipient (referred to as YHDP Replacement in this NOFO); (2) a CoC is reallocating a YHDP Renewal project to create one or more new projects with a new recipient (referred to as YHDP Reallocation in this NOFO).); or (3) a CoC is reallocating YHDP Renewal project(s) to create YHDP Expansion applications through the YHDP Replacement process.

**(a)** YHDP Renewal project applicants may submit renewal applications [see section III.B.4.c)] for minor changes to a project, including adding or modifying select Special YHDP Activities under section III.B.4.b.(5); however, if a renewing YHDP project applicant chooses to modify the current project in a way that does not meet the definition of renewal project found at III.B.4.c of this NOFO, it must submit a YHDP Replacement project application.

**(b)** A YHDP Renewal project applicant may apply to expand its current project through the YHDP Replacement process. See section III.B.4.a.(6)(c) for more information.

**(c)** If an eligible YHDP Renewal project applicant submits a YHDP Replacement project application instead of submitting a renewal project application, it must:

(i.) include the grant number from the YHDP Renewal project(s) being replaced with the YHDP Replacement project application. The CoC's Collaborative Applicant is responsible for ensuring that only a renewal YHDP or replacement YHDP project application is submitted through the CoC Priority Listing. If the Collaborative Applicant submits both a renewal and replacement YHDP project application for the same project, HUD will only select the renewal YHDP project application;

(ii.) include a letter of support from the Youth Action Board; and

(iii.) show that the project is consistent with the CoC's most recent Coordinated Community Plan.

DOJ-HUD-AR00068

**(d)** HUD will only fund new YHDP Replacement projects which includes YHDP Reallocation projects as described below and in sections I.B.3.e and III.B.4.b.(5) of this NOFO:

(i.) Permanent Housing, including PH-PSH and PH-RRH projects.

(ii.) Joint TH/PH-RRH Component.

(iii.) TH or Crisis Residential Transitional Housing which is a form of transitional housing that is short-term, low-barrier, using a congregate living setting, and provides access to the following supportive services in particular: family engagement and unification, case management, emergency triage services and other supportive services whose purpose is to move youth rapidly into stable housing.

(iv.) SSO, including, but not limited to, housing search and placement services, case management, drop-in centers which are a physical location that offers a variety of services to individuals and families experiencing homelessness that can be funded through the drop-in center grant or through another grant, legal services, or street outreach.

(v.) SSO-CE.

(vi.) SSO - Host Home and Kinship Care. A model in which a family agrees to permit a youth to reside with them. Recognizing that the addition of another person in the home may increase costs to the family, HUD will entertain applications that propose to house youth with families and to subsidize the additional costs attributable to housing the youth. The residence is in a community-based setting. The family could be related to the youth and the length of stay may be time-limited or without time limits. YHDP funds may be used to subsidize the increased costs to the family that are attributable to housing the youth. An example of eligible costs would be additional food or transportation costs, which are eligible supportive services under 24 CFR 578.53(e)(7) or 24 CFR 578.53(e)(15). Recipients must keep records related to this determination by the recipient for HUD review upon request.
(vii.) HMIS.

(viii.) The inclusion of TH and SSO that are not SSO-CE are only available to YHDP Replacement project applications which includes YHDP Reallocation projects. No other project applicant is allowed to submit new project applications with these components; and if received, will be rejected.

(ix.) HUD will review new YHDP Reallocation and YHDP Replacement project applications to ensure the activities requested are eligible and the amounts requested do not exceed the amounts available for YHDP reallocation or, in the case of YHDP Replacements, the ARA of the renewal project(s) being replaced. HUD will not reject YHDP projects applications; however, HUD may require YHDP grant recipients to correct or revise information submitted after the final award announcement, prior to executing the grant agreement.

(x.) New YHDP Reallocation projects or projects created through the YHDP Replacement processes must include at least as many housing units and at least as much funding for the combination of Rental Assistance, Operating Costs, and

DOJ-HUD-AR00069

Leasing as the grant being reallocated or replaced unless the YHDP Community demonstrates that a majority of their YHDP funding is being used for the combination of Rental Assistance, Operating Costs, and Leasing.

**(6) *Expansion Project.*** HUD will allow project applicants to apply for new expansion projects to expand existing projects to increase the number of units, persons served, services provided to existing program participants, or to add additional activities to HMIS and SSO-CE projects. [see section I.B.2.b.(9) of this NOFO]

CoC Bonus, DV Bonus, CoC Reallocation, and DV Reallocation funds may only be used to expand eligible CoC and DV Renewal projects. Applications to expand YHDP Renewal projects through the YHDP Replacement process can only be funded with funding reallocated from another YHDP Renewal project.

The new expansion project applications must meet the project eligibility and project quality thresholds in sections III.C.4.a. and b. of this NOFO and must be for the same component as the project being expanded. If the new expansion project exceeds the amount of funding available under the reallocation or Bonus processes, HUD will reduce the funding request to the available amount, which could affect the activities of the new expansion project. If both the new expansion project and the renewal project it expands are conditionally selected for funding, one grant agreement incorporating both approved project applications will be executed. To apply for an expansion grant with CoC Bonus, DV Bonus, DV Reallocation, or CoC Reallocation funding, project applicants must submit separate new and renewal project applications and both projects must be ranked by the CoC with unique rank numbers. In the case of YHDP Replacement applications to expand existing YHDP Renewal projects, applicants must submit a YHDP Replacement and a YHDP Reallocation application separately and each project must be included in the CoC's Priority Listing; however, these projects must not be ranked.

If a project application does not meet the following requirements, or if the renewal project the new project application is proposing to expand is not selected for award, HUD will review the new project and will consider it as a standalone project during the selection process provided that the project is feasible on its own with its requested funding and provided it passes project eligibility and project quality threshold requirements.

**(a)** The following limitations apply to expansion grant applications:

(i.) HUD will not fund expansion applications that include requests for capital costs (i.e., new constructions, rehabilitation, or acquisition) and will only allow 1-year funding requests.

(ii.) CoC Bonus, CoC Reallocation, DV Bonus or DV Reallocation funding cannot be used to expand a YHDP renewal project.

(iii.) If CoC Bonus, DV Bonus or CoC Reallocation funding is used to expand a DV Renewal project, the entire expanded project must be 100 percent dedicated to serving individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking who qualify under paragraph (1) or (4) of the definition of

DOJ-HUD-AR00070

homeless at 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act.

(iv.) When DV Reallocation funding is used to expand another project, the entire expansion project must meet all the requirements of a DV Bonus project.

(v.) New YHDP projects created with reallocated YHDP funding may be used to expand an existing YHDP renewal project through the YHDP Replacement process. The expansion YHDP project must meet the requirements of a new YHDP Replacement application.

**(b)** Project applicants expanding an eligible CoC Renewal, or DV Renewal project must:

(i.) submit the renewal project application that will be expanded and a new project application with expansion information;

(ii.) in the new project application, enter the grant number of the eligible renewal project proposed for expansion;

(iii.) indicate how the new project application will expand units, beds, services, persons served, or services provided to existing program participants, or in the case of HMIS or SSO-CE projects, how the current activities will be expanded for the CoC's geographic area;

(iv.) ensure the funding request for the expansion grant is within the funding parameters allowed under CoC Reallocation, CoC Bonus, DV Bonus, or DV Reallocation amounts available.

**(c)** Project applicants expanding an eligible YHDP Renewal project through the YHDP Replacement process must:

(i.) submit a YHDP Renewal project application and a new YHDP Reallocation project application with the expansion information through the YHDP Replacement process, including the grant number of the YHDP Renewal project being expanded.

(ii.) indicate how the expansion project application will expand units, beds, services, persons served, or services provided to existing program participants

(iii.) ensure the funding request for the YHDP Reallocation application to expand the YHDP Renewal project is within the funding parameters allowed under the YHDP Reallocation amount available.

(iv.) ensure the YHDP Renewal and YHDP Reallocation project applications meet the requirements in sections I.B.3.e and III.B.4.b.(5) of this NOFO

**(d)** DV Bonus and DV Reallocation Expansion Applications.

(i.) DV Bonus and DV Reallocation funds can only be used for an application to expand an existing renewal project if the new expansion project is dedicated to individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking who qualify under paragraphs (1) or (4) of the definition of homeless at 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act.

DOJ-HUD-AR00071

(ii.) Project applicants may use DV Bonus funds to expand an existing renewal project that is not currently dedicated to serving individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking to dedicate additional beds, units, persons served, or services provided to existing program participants of this population; however, only the new project application for the expansion will be considered for DV Bonus funds. Only the new project application for the expansion will be considered for DV Bonus funds and HUD will use the DV Bonus selection process described in I.B.3.j.

(iii.) If an applicant proposes to use DV Reallocation funds to expand an existing renewal project that is not currently dedicated to serving individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking to dedicate additional beds, units, persons served, or services provided to existing program participants of this population, the entire project, including the renewal project being expanded, must serve 100 percent individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking who qualify under paragraphs (1) or (4) of the definition of homeless at 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act. In the case of DV Reallocation Projects, HUD will use the Tier 1 and Tier 2 selection process described in section I.B.3.h of this NOFO.

(iv.) For expansion applications created with new DV Bonus or DV Reallocation funds, if the application does not meet the above requirements for an expansion project or the renewal portion is not selected, HUD will review the new project and will consider it as a standalone DV Bonus or DV Reallocation project during the selection process provided that the project is feasible on its own with its requested funding and provided it passes project eligibility and project quality threshold requirements.

**(7)** *Consolidation Project.* Applicants intending to use the consolidation process to combine two or more, but no more than 10, eligible renewal projects (including renewing YHDP projects), may do so through the renewal project application.

**(a)** For renewal projects consolidating during the FY 2024 Funding Process, the current period of performance and budget period must have end dates in CY 2025. For renewal projects consolidating during the FY 2025 Funding Process, the period of performance and budget period of the expiring grant must have end dates in CY 2026. Applicants intending to use the consolidation process must ensure:

(i.) Budget Line Items (BLIs) for the consolidated project application submitted, exactly match the sum of the BLIs for each of the individual projects as they appear on the grant agreement, or the grant agreement as amended;

(ii.) inclusion of the expiring grant numbers with period of performance and budget period start and end dates for the projects that are consolidating;

(iii.) are in good standing with HUD, meaning none of the projects have:

DOJ-HUD-AR00072

i. outstanding audit or monitoring findings,
ii. outstanding obligation to HUD that is in arrears,
iii. unresolved construction delays,
iv. a history of poor financial management/drawdown issues,
v. history of low occupancy levels, or lack experience in administering the project type, or
vi. other capacity issues.

(iv.) the projects have the same recipient and are for the same component.

**(b)** YHDP Renewal projects that wish to consolidate may establish a single YHDP Replacement grant to replace multiple YHDP Renewal grants.

**(c)** The following projects cannot be consolidated and if a project application meeting these characteristics attempts to consolidate, HUD will not consider the consolidation, but rather select the projects individually in their ranked position (if applicable) provided they pass project eligibility and project quality threshold requirements:

(i.) a DV Renewal project cannot consolidate with a CoC Renewal project (a project not dedicated to serving individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking who qualify under paragraphs (1) or (4) of the definition of homeless at 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act) or a YHDP Renewal project;

(ii.) a YHDP Renewal project cannot consolidate with a CoC Renewal project or a DV Renewal project;

(iii.) a TH and a PH project cannot consolidate to form a Joint TH/PH-RRH component project; and

(iv.) transition grants cannot consolidate with any other project.

**(d)** To request the consolidation of eligible renewal projects, project applicants must submit renewal projects for the individual projects to be included in the consolidation and each project application must identify the grant number that will survive which must be the grant number with the earliest start date in CY 2025 for FY 2024 consolidations or CY 2026 for consolidations that occur during the FY 2025 Funding process. Project applications for the grants that are proposed to be part of the consolidation must be ranked with a unique rank number for each project, and if all those grants are selected, HUD will conditionally award the single surviving grant based on its ranked position to include the amount of funding of all grants included in the consolidation. All other project applications included in the surviving grant will be removed from the CoC's ranking resulting in project applications below to slide up one ranked position. Project applicants must not submit a consolidated project application that contains two different components (e.g., PH and TH).

**(e)** The start date for the consolidated grant, if conditionally awarded, will be the day after the expiration date of the eligible renewal project with the earliest expiration date. HUD will calculate the expiration date for the consolidated grant by averaging the expiration dates for all expiring grants included in the consolidated grant weighted by the

DOJ-HUD-AR00073

size of each expiring grant. If that date falls on the first through the fifteenth of a month, then the expiration date will be the last day of the previous month. If the date falls on the sixteenth through the end of the month, then the expiration date will be the last day of the month.

HUD will calculate the expiration date for the consolidated grant as follows: It will be 'X' months after the end of the 12th month after the start date for the consolidated grant with 'X' determined by calculating the sum for all grants of the total award times the number of months after the expiration of the first expiring grant that the grant expires and dividing that sum by the total award for the consolidated grant. If the calculation of 'X' results in a partial month, if it is less than 0.5, then the consolidated grant will expire on the last day of the previous month, and if it is 0.5 or more, then the consolidated grant will expire on the last day of the calculated month.

**(f)** Collaborative Applicants designated by HUD as UFAs have more flexibility in how they manage their CoC Program-funded projects, making the consolidation of projects during the CoC Program competition unnecessary. A Collaborative Applicant with UFA designation can consolidate projects during the grant term, so long as the consolidations are not combining different component types and the projects are funded under the same grant (e.g., projects are currently funded under the same renewal grant). If a UFA-designated Collaborative Applicant consolidates projects during the grant term, it can apply to renew them during the CoC Program Competition as consolidated projects.

**b. Eligible Costs.** Except as otherwise stated below, 24 CFR 578.37 through 578.63 identify the eligible costs that applicants may request under the CoC Program.

**(1)** Eligible costs for YHDP projects originally funded under the YHDP Competition are also eligible YHDP Renewal project costs under this NOFO. Additionally, YHDP Renewal projects may include the YHDP Special Activities described in section III.B.4.b.(5) subject to requirements in sections III.B.4.c. including III.B.4.c.(7)(b) of this NOFO. YHDP Replacement project applications under this NOFO may include requests for eligible CoC Program Costs, the YHDP activities described in section III.B.4.a.(5) and the YHDP Special Activities in section III.B.4.s.(6) of this NOFO. HUD will reject any requests for ineligible costs, except as otherwise provided in this NOFO.

**(2)** Section 605(a)(2) of VAWA 2022 amended section 423(a) of the McKinney-Vento Homeless Assistance Act to add the following eligible activity to the CoC program: "Facilitating and coordinating activities to ensure compliance with the emergency transfer plan requirement in [34 U.S.C. 12491(e)] and monitoring compliance with the confidentiality protections in [34 U.S.C. 12491(c)(4)]."

HUD has determined that eligible activities paid for under the VAWA costs category are not subject to the CoC program's spending caps on administrative costs under section 423(a)(10), (11), and (12). This activity may be included in new project applications, added to eligible renewal projects through expansion or added to eligible renewal projects by shifting up to 10 percent of funds from one eligible activity to the VAWA costs line item.

**(a)** Examples of eligible costs for emergency transfer facilitation include the costs of assessing, coordinating, approving, denying and implementing a survivor's emergency transfer which includes:

DOJ-HUD-AR00074

(i.) Assistance with moving costs. Reasonable moving costs to move survivors for an emergency transfer.

(ii.) Assistance with travel costs. Reasonable travel costs for survivors and their families to travel for an emergency transfer.

(iii.) Security Deposits. Grant funds can be used to pay for security deposits of the safe units the survivor is transferring to via an emergency transfer.

(iv.) Utilities. Grant funds can be used to pay for costs of establishing utility assistance in the safe unit the survivor is transferring to.

(v.) Housing Fees. Fees associated with getting survivor into a safe unit via emergency transfer, includes but not limited to application fees, broker fees, holding fees, trash fees, pet fees where the person believes they need their pet to be safe, etc.

(vi.) Case management. Grant funds can be used to pay staff time necessary to assess, coordinate and implement emergency transfers.

(vii.) Housing navigation. Grant funds can be used to pay staff time necessary to identify safe units and facilitate moves into housing for survivors through emergency transfers.

(viii.) Technology to make an available unit safe. Grant funds can be used to pay for technology that the individual believes is needed to make the unit safe, including but not limited to doorbell cameras, security systems, phone and internet service when necessary to support security systems for the unit, etc.

**(b)** Examples of eligible costs for monitoring compliance with the VAWA confidentiality requirements include the costs of ensuring compliance with the VAWA confidentiality requirements which includes:

(i.) Monitoring and evaluating compliance with VAWA confidentiality requirements.

(ii.) Developing and implementing strategies for corrective actions and remedies.

(iii.) Program evaluation of confidentiality policies, practices and procedures.

(iv.) Training on compliance with VAWA confidentiality requirements.

(v.) Reporting to Collaborative Applicant, HUD and other interested parties on compliance with VAWA confidentiality requirements.

(vi.) Costs for establishing methodology to protect survivor information.

(vii.) Staff time associated with maintaining adherence to confidentiality requirements.

**(3)** Section 5707 of the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 (PL 117-263, December 23, 2022, 136 Stat 2395) amended section 423(a) of the McKinney-Vento Homeless Assistance Act to allow projects in rural areas [as defined in section I.B.2.b.(26) of this NOFO] to use program funds to pay for the following eligible Continuum of Care Program activities:

**(a)** Payment of short-term emergency lodging, including in motels or shelters, directly or through vouchers.

**(b)** Repairs to units in which individuals and families experiencing homelessness will be housed; or are currently not fit for human habitation.

**(c)** Staff training, professional development, skill development, and staff retention activities.

HUD has determined that eligible activities paid for under the Rural costs category may be included in new project applications or added to eligible renewal projects through expansion.

HUD will publish a list of CoCs located in rural areas as defined in section I.B.2.b.(26) of this NOFO.

**(4) *Indirect Costs.*** Indirect cost rules under 2 CFR part 200, as may be amended from time to time, apply. Project applicants that intend to charge indirect costs to the award must clearly state in the project application(s) the rate and distribution base the recipient intends to use, and if applicable, the rate and distribution base to be used by any subrecipient(s). If the rate is a Federally negotiated indirect cost rate, the project application must include the corresponding negotiated indirect cost rate agreement signed by the cognizant agency. A government department or agency unit that receives no more than $35 million in direct federal funding per year and has developed and maintains an indirect cost rate proposal and supporting documentation in accordance with 2 CFR part 200, appendix VII, may use the rate and distribution base specified in that indirect cost rate proposal, unless the cognizant agency requires the proposal to be submitted for negotiation.

For each applicant or intended subrecipient that meets the conditions for using the de minimis rate under 2 CFR 200.414(f) and will use that rate to charge indirect costs, the project application must clearly state the intended use of the de minimis rate. As described in 2 CFR 200.403, costs must be consistently charged as either indirect or direct costs but must not be double charged or inconsistently charged as both. Once an organization elects to use the de minimis rate, the organization must apply this methodology consistently for all Federal awards until the organization chooses to negotiate for a rate, which the organization may apply to do at any time. Documentation of the decision to use the de minimis rate must be retained on file for audit.

**(5) *Special YHDP Activities.*** YHDP Renewal and YHDP Replacement including YHDP Reallocation projects may submit applications that include the following special YHDP activities, which are ineligible under the CoC Program, subject to the conditions specified in this section:

**(a)** Recipients may carry out the activities below with written notice to the Deputy Assistant Secretary for Special Needs, subject to the requirements governing grant agreement amendments at 24 CFR 578.105. HUD will consider the inclusion of these activities in the project application as notification to the Deputy Assistance Secretary for Special Needs.

(i.) Housing projects may have leases for a minimum term of 1 month plus 1 day under rental assistance budget line items.

Page 49 of 128

(ii.) Projects may use leasing, sponsor-based rental assistance, and project-based rental assistance in RRH projects.

(iii.) In addition to the eligible costs listed in 24 CFR 578.59(a), recipients may use project administration funds to support costs of involving youth with lived experience in project implementation, execution, and improvement.

(iv.) Recipient may use project administrative funds to attend conferences and trainings that are not HUD-sponsored or HUD-approved, provided that the subject matter is relevant to youth homelessness.

(v.) Projects may employ youth who are receiving services, or housing assistance, from the recipient organization. Recipients that use this special YHDP activity must maintain documentation that discloses the nature of work that the youth performs, and that the youth is not in a position that creates a conflict of interest.

(vi.) Projects may use habitability standards in 24 CFR 576.403(c) rather than Housing Quality Standards in 24 CFR 578.75 for short- or medium-term (up to 24 months) housing assistance. Recipients implementing this special YHDP activity must keep documentation of which standards they apply to the units and proof that the units complied with standards before assistance is provided for every unit funded.

(vii.) Recipients may provide moving expenses to a program participant more than once.

(viii.) Recipients may provide payments of up to $500 per month for families that provide housing under a host home and kinship care model to offset the increased costs associated with having youth housed in the unit.

(ix.) YHDP recipients may continue providing supportive services to program participants for up to 12 months after the program participant exits homelessness, transitional housing or after the end of housing assistance.

(x.) Recipients may use grant funds for the following if they are necessary to assist program participants to obtain and maintain housing. Recipients and subrecipients must maintain records establishing how it was determined that paying the costs was necessary for the program participant to obtain and retain housing and must also conduct an annual assessment of the needs of the program participants and adjust costs accordingly:

   i. Security deposits for units in an amount not to exceed 2 months of rent.

   ii. The costs to pay for any damage to housing due to the action of program participants, which may be paid while the youth continues to reside in the unit. The total costs paid for damage per program participant may not exceed the cost of 2 months' rent.

   iii. The costs of providing household cleaning supplies to program participants.

   iv. Housing start-up expenses for program participants, including furniture, pots and pans, linens, toiletries, and other household goods, not to exceed $300 in value per program participant.

DOJ-HUD-AR00077

v. The one-time cost of purchasing a cellular phone and service for program participant use, provided access to a cellular phone is necessary to obtain or maintain housing and the costs of the phone and services are reasonable per 2 CFR 200.404.

vi. The cost of internet in program participants' units if the costs of the service is reasonable per 2 CFR 200.404.

vii. Payment of rental arrears consisting of a one-time payment for up to 6 months of rent in arrears, including any late fees on those arrears.

viii. Payment of utility arrears of up to 6 months per utility.

ix. Up to 3 months of utilities for a program participant, based on the utility costs schedule for the unit size and location.

x. In addition to transportation costs eligible in 24 CFR 578.53(e)(15), recipients may pay gas and mileage costs for a program participant's personal vehicle for trips to and from medical care, employment, childcare, or other services eligible under this section.

xi. Legal fees, including court fees, bail bonds, and required courses and equipment.

xii. Program participant's past driving fines and fees that are blocking a young person from being able to obtain or renew a driver's license and impacting their ability to obtain or maintain housing. Additionally, recipients may pay for program participants' costs for insurance and registration for personal vehicles, if the personal vehicle is necessary to reach medical care, employment, childcare, or other services eligible under this section.

**(b)** Under the conditions specified below, recipients may make use of the following built-in exceptions to this NOFO's requirements, subject to approval by the Deputy Assistance Secretary for Special Needs and requirements governing grant agreement amendments at 24 CFR 578.105. To expedite grant agreement processing, applicants should include as much information as possible as part of their project application to demonstrate they meet the conditions specified below.

(i.) Projects may provide up to 36 months of RRH rental assistance to program participants if the recipient demonstrates: (1) the method it will use to determine which youth need rental assistance beyond 24 months and (2) the services and resources that will be offered to ensure youth are able to sustain their housing at the end of the 36 months of assistance.

(ii.) Projects may continue providing supportive services to program participants for up to 24 months after a program participant exits homelessness, transitional housing or after the end of housing assistance if the recipient demonstrates: (1) the proposed length of extended services to be provided; (2) the method it will use to determine whether services are still necessary; and (3) how those services will result in self-sufficiency and ensure stable housing for program participants.

DOJ-HUD-AR00078

(iii.) Projects may continue providing supportive services to program participants for up to 36 months after program participants exit homelessness, if the services are in connection with housing assistance, such as the Foster Youth to Independence initiative, or if the recipient can demonstrate that extended supportive services ensures continuity of caseworkers for program participants.

(iv.) Rental assistance may be combined with leasing or operating funds in the same unit, provided that the recipient submits a project plan that includes safeguards to ensure that no part of the project would receive a double subsidy.

(v.) Projects may provide payments of up to $1,000 per month for families that provide housing under a host home and kinship care model, provided that the recipient can show that the additional cost is necessary to recruit hosts to the program.

(vi.) YHDP recipients may pay for short-term (up to three months) emergency lodging in motels or shelters as the transitional housing component in a Joint transitional housing-rapid rehousing (TH-RRH) project, provided that the recipient can demonstrate that use of the hotel or motel room is accessible to supportive services.

**(c)** In addition to the specific activities authorized above or in 24 CFR part 578, other **innovative activities** to reduce youth homelessness may be carried out in a YHDP project, subject to approval by the Deputy Assistant Secretary for Special Needs and requirements governing grant agreement amendments at 24 CFR 578.105. Requests to carry out YHDP innovative activities are permitted to be requested in any YHDP application. YHDP Replacement applicant must demonstrate to HUD that the activity meets the following criteria; and to expedite grant agreement processing, must include as much information as possible as part of their project application.

**(d)** YHDP Renewal or YHDP Replacement applications requesting to carryout Special YHDP Activities must demonstrate the following:

(i.) The activity is approved by both the Youth Action Board (YAB) which is a group of at least 4 youth with voting power on policy decisions of the CoC, particularly on policies that relate to preventing and ending youth homelessness. Each YAB member must be age 24 or younger, and at least two-thirds of the YAB members must have lived experience/expertise of homelessness and should be representative of the youth and young adult population experiencing homelessness in the community, and must be a formal committee within the CoC, as evidenced by letters of support from each organization;

(ii.) That activity will be testing or likely to achieve a positive outcome in at least one of the four core outcomes for youth experiencing homelessness (stable housing, permanent connections, education/employment, and well-being);

(iii.) The activity is cost-effective; and

(iv.) The activity is not in conflict with fair housing, civil rights, or environmental regulations.

DOJ-HUD-AR00079

**c. Renewal Project Requirements.** As set forth in 24 CFR 578.33, projects may renew under the FY 2024 – FY 2025 CoC Program Competition NOFO to continue ongoing leasing, operating, supportive services, rental assistance, HMIS, and project administrative costs.

Awards HUD made under the CoC Program and YHDP are eligible for renewal with FY 2024 CoC Program funds if they are currently operating and have an expiration date in CY 2025 (the period from January 1, 2025, through December 31, 2025). Therefore, project applications for grants previously awarded 1 year of funding, including projects awarded funding under the FY 2023 CoC Program Competition NOFO, are renewable for the FY 2024 CoC Program funding opportunity if they are currently operating and have an expiration date in CY 2025.
Awards made under the CoC Program and YHDP will be eligible for renewal with FY 2025 CoC Program funding subject to the FY 2025 HUD Appropriation and if they have a signed grant agreement with HUD that will expire in CY 2026 (January 1, 2026, and ending December 31, 2026). For awards made in FY 2024, HUD will make FY 2025 awards using the FY 2024 application, subject to any FMR and Cost of Living adjustments and FY 2025 appropriations. Projects that did not meet the eligibility criteria to renew in FY 2024 but are eligible for FY 2025 renewal funding must submit a renewal application by the FY 2025 application submission deadline established in this NOFO.

**(1)** Renewal project applications must be submitted by the same recipient that signed the executed grant agreement for the grant being renewed, or entity that became the recipient through a grant agreement transfer amendment. To be eligible as a renewal project, the application must (1) be for the same amount of funding before any adjustments described in this NOFO (e.g. FMR adjustments), or the amount reduced due to reallocation ; (2) be for the same program component; (3) in the case of CoC renewal projects, must continue to serve program participants who are enrolled in the project under the project's current grant agreement; and (4) in the case of DV Bonus renewal projects and YHDP Renewal projects, must continue to serve the same subpopulation.

**(2)** If HUD conditionally selects a renewal grant during the FY 2024 or FY 2025 funding process that does not have an expiration date that meets the renewal eligibility requirements prescribed by this NOFO, HUD will withdraw any funds conditionally selected for award.

**(3)** Projects that were eligible under predecessor programs, specifically Safe Haven projects, will continue to be eligible under the CoC Program and will continue to be eligible for renewal of leasing, operating, supportive services, rental assistance, HMIS, and project administrative costs under 24 CFR 578.33(d)(1) so long as the project continues to serve the same population and the same number of program participants or units in the same type of housing as identified in their most recent grant agreement, amended grant agreement, signed before August 31, 2012. No new Safe Haven projects will be funded; however, existing Safe Haven projects may be renewed to continue to carry out activities that are eligible costs under Subpart D of the Rule.

**(4)** The total request for each renewing project, including non-competitive YHDP Renewal and YHDP Replacement projects, is limited to a project's ARA. Additionally, where two or more eligible projects are being consolidated through the project application, the total ARA of the consolidation project must be equal to or less than the sum of the original renewal projects before consolidation. Because funds for acquisition, new construction, and rehabilitation are not renewable, grants being renewed whose original expiring award

DOJ-HUD-AR00080

included acquisition, new construction, and rehabilitation funds may only renew leasing, supportive services, rental assistance, operating, and HMIS costs and must not exceed 10 percent in administrative costs.

**(5)** HUD will recapture grant funds remaining unspent at the end of the previous grant period when it renews a grant.

**(6)** HUD encourages the consolidation of eligible renewal grants as provided in section I.B.3.d of this NOFO. This does not apply to CoCs that HUD designates as UFAs, because UFAs enter into a single renewal grant agreement with HUD for the CoC's entire geographic area. If applicable, HUD issues a separate UFA grant agreement that only includes YHDP grants.

**(7)** Subject to HUD approval and the terms of the NOFO, the following requests may be included in a renewal application:

**(a)** CoC renewal project applications may include non-significant changes including shifting up to 10 percent of funds from one approved eligible activity to another.

**(b)** YHDP Renewal project applications from any round may include non-significant changes including adding select Special YHDP Activities in section III.B.4.b.(5) and shifting up to 10 percent of funds from one approved eligible activity to another.

**(c)** DV Renewal project applications may include non-significant changes including shifting up to 10 percent of funds from one approved eligible activity to another.

Renewing DV Bonus projects must continue to serve individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, and stalking who qualify as homeless under paragraphs (1) or (4) of the definition of homeless at 24 CFR 578.3 or Section 103(b) of the McKinney-Vento Homeless Assistance Act. YHDP renewal projects must serve youth, age 24 or younger, who qualify as homeless under paragraph (1), (2), and (4) of 578.3, including unaccompanied, pregnant and parenting youth, where no member of the household is older than 24. Additionally, these projects may serve youth aged 24 and under who qualify as homeless under paragraph (3) of 24 CFR 578.3 if the CoC is approved to serve persons in paragraph (3).

**(d)** Renewal applications that include requests to shift more than 10 percent of funds from one approved eligible activity to another and other significant changes as defined at 24 CFR 578.105 will not be considered during the CoC Program Competition by HUD. If an application includes a budget shift that exceeds 10 percent, HUD will correct the project budget to reflect the previously awarded budget amounts.

**(e)** CoC renewal project applicants may also apply to transition an eligible renewal project from one program component to another eligible new component through reallocation and use those funds to create a single, new transition grant [see section I.B.2.b.(30) of this NOFO]. YHDP Renewal project applicants are not permitted to utilize the transition grant application process. YHDP applicants must submit a YHDP Replacement application to change program components.

DOJ-HUD-AR00081

(f) YHDP Replacement projects cannot request capital costs (i.e., new construction, acquisition, or rehabilitation).

**(8)** *Actual Per Unit Cost – Renewal Grants.* Applicants requesting renewal of grants for rental assistance may request a per-unit amount less than the Fair Market Rent (FMR) if the actual rent per unit under lease is less than the FMR. This will help reduce the number of projects receiving rental assistance that have large balances of unspent funds remaining at the end of the operating year. Renewal project applicants must ensure the amount requested will be sufficient to cover all eligible costs as HUD cannot provide funds beyond the amount awarded through the FY 2024 – 2025 CoC Program Competition. Project applications for rental assistance cannot request more than 100 percent of the published FMR. **New project applications must adhere to 24 CFR 578.51(f) and must request the full FMR amount per unit.** See section V.D of this NOFO for additional information regarding FMR adjustments for projects receiving funds for rental assistance.

**(9)** *Renewal and Replacement Grant Terms.* CoC Program renewal, YHDP Renewal, and YHDP Replacement project applications submitted during the FY 2024 and FY 2025 CoC and YHDP Funding Processes are limited to a 1-year grant term with 1 year of funding. HUD may extend the grant term consistent with 2 CFR 200.308 and 2 CFR 200.309.

Any renewal PH project that receives project-based rental assistance or operating costs may request up to a 15-year grant term; however, project applicants may only request 1 year of funding. HUD may extend the grant term consistent with 2 CFR 200.308 and 2 CFR 200.309. Project applicants must apply for the additional funds as a renewal project application prior to the anniversary of the first expenditure of grant funds by which date grant funds should have been expended; or, if HUD extends the date that funds must be expended, the date the extension expires. HUD does not guarantee CoC Program funds past the 1 year of renewal funding.

The first year of funding for YHDP Replacement projects will be based on the 1-year renewal amount of the current YHDP project being replaced. The YHDP Replacement project's operating start date will be the day after the end of the previous grant term for the project being replaced.

**d. New Project Requirements.** CoCs may submit new projects created through DV Bonus, CoC Bonus, CoC Reallocation, DV Reallocation, YHDP Replacement including YHDP Reallocation, or a combination of reallocation and CoC Bonus. A CoC designated Collaborative Applicant may submit a new CoC Planning project application, and if applicable, a UFA Costs project application.

To expend funds within statutorily required deadlines, applicants funded for sponsor-based and project-based rental assistance must execute the grant agreement and begin providing rental assistance within 2 years. However, HUD strongly encourages all rental assistance to begin within 12 months of award. Applicants that are unable to begin rental assistance within the 12-month period should consult with the local HUD CPD field office.

**(1)** HUD will review project subrecipient eligibility as part of the project quality threshold review process. Project applicants must submit documentation of the subrecipient's eligibility with the project application.

DOJ-HUD-AR00082

**(2)** Any youth-serving provider funded under this NOFO may serve unaccompanied youth aged 24 and under (or families headed by youth aged 24 and under, including pregnant or parenting youth) who have an unsafe primary nighttime residence and no safe alternative to that residence.

**(3)** Per the Consolidated Appropriations Act, 2024, to receive funding for a new CoC project, except those created through reallocation, HUD must determine the CoC has demonstrated that projects are evaluated and ranked based on the degree to which they improve the CoC's system performance [See more information on System Performance in sections I.A.4.b.(4) and V.B.2.b of this NOFO].

**(4) *New Project Grant Terms.*** The initial grant term for new project applications may be 1-year, 2-years, 3-years, 4-years, 5-years, or 15-years. HUD may extend the grant consistent with 2 CFR 200.308 and 2 CFR 200.309. New projects awarded 1-year grants under the FY 2024 funding process will be eligible for renewal with FY 2025 CoC Program funds if they have a signed grant agreement with HUD that will expire in CY 2026 (January 1, 2026, and ending December 31, 2026). HUD will make FY 2025 awards using the FY 2024 application, subject to any FMR adjustments and FY 2025 appropriations. If a HUD conditionally selects a FY 2024 grant for renewal in FY 2025 that does not have an expiration date in CY 2026, HUD will withdraw any award conditionally selected for FY 2025 renewal funding. The following exceptions apply:

**(a)** HUD will allow new projects to request 1 year of funding with a longer initial grant term not to exceed 18 months. HUD has determined that most new projects requesting 1 year of funding normally take approximately 3 to 6 months to begin fully operating the new project (e.g., hiring staff, developing partnerships with landowners if leasing or renting). Therefore, a new project requesting 1 year of funding may request a grant term of 12 months to 18 months that will allow for the additional start-up process. Any new projects requesting capital costs (i.e., new construction, acquisition, or rehabilitation) are not eligible for 1-year funding requests. See (g) below for more information on new projects requesting capital costs. Transition grant applications cannot request 18-month grant terms.

**(b)** Any new expansion project submitted to expand an eligible renewal CoC Program-funded project may only request a 1-year grant term, regardless of the project type.

**(c)** Any new project that requests tenant-based rental assistance may request a 1-year, 2-year, 3-year, 4-year, or 5-year grant term.

**(d)** Any new project that requests leasing costs - either leasing costs only or leasing costs plus other costs (e.g., supportive services, HMIS) - may request up to a 3-year grant term.

**(e)** Any new project that requests project-based rental assistance or sponsor-based rental assistance, or operating costs may request up to a 15-year grant term; however, the project applicant may only request up to 5 years of funds. Funding for the remainder of the term is subject to availability. Applicants must apply for additional funds through a renewal project application in the competition held in the calendar year prior to the anniversary of the first expenditure of grant funds, or if HUD has extended the grant

DOJ-HUD-AR00083

term, the date the extension expires. HUD does not guarantee CoC Program funds past the initial 5-year grant term, if conditionally awarded.

**(f)** Any new project that requests operating costs, supportive services only, HMIS, and project administrative costs may request 1-year, 2-year, 3-year, 4-year, or 5-year grant terms with funding for the same number of years.

**(g)** Any new project conditionally selected by HUD that requests new construction, acquisition, or rehabilitation costs (capital costs) must request a minimum of a 3-year grant term and may request up to a 5-year grant term. Any new projects requesting capital costs are not eligible for 1-year funding requests. If a new project requests 1 year of funding with capital costs, HUD will increase the grant term to 3-years and the new project must spend the funds requested over a 3-year period.

If an applicant requests funds for new construction, acquisition, or rehabilitation in addition to requesting funds for operating, supportive services, or HMIS, the funding will be for the 3-years to 5-years requested, and the grant term will be 3-years to 5-years plus the time necessary to acquire the property, complete construction, and begin operating the project. HUD will require recordation of a HUD-approved use and repayment covenant before funds can be drawn down (the form can be obtained from the local HUD CPD field office) for all grants of funds for new construction, acquisition, and rehabilitation. (24 CFR 578.81) HUD Field Office Counsel must approve the use and repayment covenants in advance of their being recorded, and proof of recording must be submitted to HUD Field Office Counsel before HUD will release grant funds, other than acquisition funds.

**(h)** All new CoC Planning or UFA Costs project applications are limited to 1-year grant terms and 1 year of funding.

> (i.) The maximum amount for one year of funding to spend on administrative costs associated with the CoC planning activities listed at 24 CFR 578.39 is 5 percent of FPRN, up to a maximum of $1,500,000, or $50,000 whichever is greater.

> (ii.) The maximum amount for one year of funding to spend on administrative costs associated with the UFA costs described at 42 USC 11360(g) is up to 3 percent of FPRN or $1,250,000 per fiscal year; whichever is less.

> (iii.) CoC Planning and UFA Costs grants are not renewable; however, if a FY 2024 CoC Planning or UFA Costs application is selected for award, HUD will fund a FY 2025 CoC Planning and, if applicable, a UFA Costs grant based on the FY 2024 application and subject to FY 2025 appropriations.

**(i)** Any new project that is requesting consideration under the DV Bonus or DV Reallocation processes [see sections I.B.3.j, I.A.3.c and I.B.2.b.(6) of this NOFO] may only request 1 year of funding, but may request a longer initial grant term not to exceed 18 months regardless of project application component type.

## C. Rules that Affect How HUD Evaluates Applications

**1. Assessing Applicant Risk**

In evaluating risks posed by applicants, HUD may use a risk-based approach and may consider any items such as the following:

a. Financial stability;

b. Quality of management systems and ability to meet the management standards prescribed in 2 CFR part 200;

c. History of performance. The applicant's record in managing Federal awards, if it is a prior recipient of Federal awards, including timeliness of compliance with applicable reporting requirements, failing to make significant progress in a timely manner, failing to meet planned activities in a timely manner, conformance to the terms and conditions of previous Federal awards, and, if applicable, the extent to which any previously awarded amounts will be expended prior to future awards;

d. Reports and findings from audits performed under Subpart F—Audit Requirements of 2 CFR part 200 or the reports and findings of any other available audits; and

e. The applicant's ability to effectively implement statutory, regulatory, or other requirements imposed on non-Federal entities.

## 2. Past Performance

In evaluating applications for funding, HUD will consider an applicant's past performance in managing funds. Items HUD will consider include, but are not limited to:

The ability to account for funds in compliance with applicable reporting and record keeping requirements

Timely use of funds received from HUD

Timely submission and quality of reports submitted to HUD

Meeting program requirements

Meeting performance targets as established in the grant agreement

The applicant's organizational capacity, including staffing structures and capabilities

Timely completion of activities and receipt and expenditure of promised matching or leveraged funds

The number of persons served or targeted for assistance

Promoting self-sufficiency and economic independence

Producing positive outcomes and results

OMB-designated repositories of government-wide data, as noted in 2 CFR 200.206(a)

HUD may reduce cores based on the past performance review, as specified under Section V.A. Review Criteria. Whenever possible, HUD will obtain and review past performance information. If this review results in an adverse finding related to integrity of performance, HUD reserves the right to take any of the remedies provided in the Pre-Selection Review of Performance section of the Eligibility Requirements for Applicants of HUD Financial Assistance Programs.

## 3. Statutory and Regulatory Requirements

DOJ-HUD-AR00085

To be eligible for funding under the FY 2024 - 2025 CoC Program and YHDP Competition NOFO, project applicants must meet all statutory and regulatory requirements in the Act and the Rule. The non-competitive renewal and replacement of YHDP grants are administered under the Consolidated Appropriations Act, 2024 which permits YHDP projects to be renewed or replaced competitively or non-competitively through the CoC Program [see section I.B.3.e of this NOFO]. The Consolidated Appropriations Act, 2024 provides that none of the FY 2024 funds made available under this NOFO shall be available to provide funding for new projects, except for projects created through reallocation, unless the Secretary determines that the continuum of care has demonstrated that projects are evaluated and ranked based on the degree to which they improve the continuum of care's system performance.

Project applicants can obtain a copy of the Act and the Rule on HUD's website or by contacting the NOFO Information Center at 1-800-483-8929. Individuals who are deaf or hard of hearing, as well as individuals with speech or communication disabilities may visit https://www.fcc.gov/consumers/guides/telecommunications-relay-service-trs for more information on how to make an accessible telephone call to HUD.

**4. Threshold Requirements**

Applicants who fail to meet any of the following threshold eligibility requirements are deemed ineligible. Applications from ineligible applicants are not rated or ranked and will not receive HUD funding.

**a. Project Eligibility Threshold.** HUD will review all projects to determine if they meet the following project eligibility threshold requirements on a pass/fail standard. If HUD determines the applicable standards are not met for a project, HUD will reject the project. HUD will consider any project requesting renewal funding as having met these requirements through its previously approved grant application unless HUD receives information to the contrary (e.g., monitoring findings, results from investigations by HUD's Office of Inspector General, the recipient routinely does not draw down funds from eLOCCS at least once per quarter, consistently late Annual Performance Report (APR) submissions). Approval of new and renewal projects is not a determination by HUD that a recipient is compliant with applicable fair housing and civil rights requirements.

**(1)** Project applicants and potential subrecipients must meet the eligibility requirements of the CoC Program as described in the Act and the Rule and provide evidence of eligibility required in the application (e.g., nonprofit documentation).

**(2)** Project applicants and subrecipients must demonstrate the financial and management capacity and experience to carry out the project as detailed in the project application and the capacity to administer federal funds. Demonstrating capacity may include a description of the applicant and subrecipient experience with similar projects and with successful administration of SHP, S+C, or CoC Program funds or other federal funds.

**(3)** Project applicants must submit the required certifications specified in this NOFO.

**(4)** The population to be served must meet program eligibility requirements as described in the Act, the Rule, and section I.B.3.k of this NOFO.

**(5)** Project applicants, except Collaborative Applicants that only receive awards for CoC Planning costs and, if applicable, UFA Costs, must agree to participate in a local HMIS system. However, in accordance with Section 407 of the Act, any victim service provider

DOJ-HUD-AR00086

that is a recipient or subrecipient must not disclose, for purposes of HMIS, any personally identifying information about any client. Victim service providers must use a comparable database that meets the needs of the local HMIS.

**b. Project Quality Threshold.**

HUD will review all new project applications to determine if they meet the following project quality threshold requirements. HUD will not award funds to a new project unless the project was created through reallocation, or the CoC has demonstrated to HUD's satisfaction that projects are evaluated and ranked based on the degree to which they improve the CoC's system performance. HUD will consider any project requesting renewal funding, including renewing YHDP, as having met project quality threshold requirements through its previously approved grant application unless HUD receives information to the contrary (e.g., monitoring findings, results from investigations by HUD's Office of Inspector General, the recipient routinely does not draw down funds from eLOCCS at least once per quarter, consistently late APR submissions) and/or if the renewal project has compliance issues which results in the project not operating in accordance with the Rule. If awarded, a recipient must meet all the criteria listed in the criteria column for its component. Additionally, the housing and services proposed must be appropriate to the needs of the program participants and the community. A determination that a project meets the project quality threshold is not a determination by HUD that a recipient is compliant with applicable fair housing and civil rights requirements.

HUD will consider YHDP Replacement project applications including applications for new YHDP projects created through YHDP reallocation as having met project quality threshold requirements if the project application activities and costs are eligible under this NOFO. If a YHDP Replacement (including YHDP Reallocation) project application is not for activities and costs that are eligible under this NOFO, HUD will not reject the project under this project quality threshold, but HUD will require the project applicant to correct or revise information submitted after the final CoC Program award announcement but before executing the grant agreement.

| Permanent Housing: Permanent Supportive Housing or Rapid Rehousing | | |
|---|---|---|
| **New Project Application Rating Factors** | **Points Available** | **Criteria** |
| New Permanent Housing projects must receive at least 4 out of the 5 points available for | 1 | The type of housing proposed, including the number and configuration of units, will fit the needs of the program participants. |
| | 1 | The type of supportive services that will be offered to program participants will ensure successful retention in or help to obtain permanent housing, including all supportive services regardless of funding source. |

DOJ-HUD-AR00087

| this project type. New Permanent Housing projects that do not receive at least 4 points will be rejected. | 1 | The proposed project has a specific plan for ensuring program participants will be individually assisted to obtain the benefits of mainstream health, social, and employment programs for which they are eligible to apply meets the needs of program participants (e.g., Medicare, Medicaid, SSI, Food Stamps, local Workforce office, early childhood education). |
| | 1 | Program participants are assisted to obtain and remain in permanent housing in a manner that fits their needs (e.g., provides the participant with some type of transportation to access needed services, safety planning, case management, additional assistance to ensure retention of permanent housing). |
| | 1 | The average cost per household served is reasonable, meaning that the costs for housing and services provided by the project are consistent with the population the project plans to serve. |

**Joint TH/PH-RRH**

| New Project Application Rating Factors | Points Available | Criteria |
|---|---|---|
| New Joint TH/PH-RRH component project applications must receive at least 6 out of 8 points available for this project type. New Joint TH/PH-RRH component projects that do not receive at least 6 points | 1 | The type of housing proposed, including the number and configuration of units, will fit the needs of the program participants (e.g., two or more bedrooms for families.) |
| | 2 | The proposed project will provide enough rapid rehousing assistance to ensure that at any given time a program participant may move from transitional housing to permanent housing. This may be demonstrated by identifying a budget that has twice as many resources for the RRH portion of the project than the TH portion, by having twice as many PH-RRH units at a point in time as TH units, or by demonstrating that the budget and units are appropriate for the population being served by the project. |
| | 1 | The type of supportive services that will be offered to program participants will ensure successful retention or help to obtain permanent housing, |

DOJ-HUD-AR00088

| will be rejected. | | including all supportive services regardless of funding source. |
|---|---|---|
| | 1 | The proposed project has a specific plan for ensuring program participants will be individually assisted to obtain the benefits of mainstream health, social, and employment programs for which they are eligible to apply, and which meets the needs of program participants (e.g., Medicare, Medicaid, SSI, Food Stamps, local Workforce office, early childhood education). |
| | 1 | Program participants are assisted to obtain and remain in permanent housing in a manner that fits their needs (e.g., provides the participant with some type of transportation to access needed services, safety planning, case management, additional assistance to ensure retention of permanent housing). |
| | 1 | The project adheres to a Housing First model as defined in section I.B.2.b.(15) of this NOFO. |
| | 1 | The average cost per household served is reasonable, meaning that the costs for housing and services provided by the project are consistent with the population the project plans to serve. |

**SSO-Coordinated Entry**

| New Project Application Rating Factors | Points Available | Criteria |
|---|---|---|
| New SSO-CE project applications (also known as centralized or coordinated assessment) must receive at least 2 out of the 4 points available for this project type. New | 1 | The Coordinated Entry system is easily available/reachable for all persons within the CoC's geographic area who are seeking homelessness assistance. The system must also be accessible for persons with disabilities within the CoC's geographic area. |
| | 1 | There is a strategy for advertising that is designed specifically to reach households experiencing homelessness with the highest needs and who are disproportionately represented within the CoC's homelessness response system. |
| | 1 | There is a standardized assessment process. |
| | 1 | Ensures program participants, taking into account those who are from historically underserved |

DOJ-HUD-AR00089

| SSO-CE projects that do not receive at least 2 points will be rejected. | | population through the CoC's prioritization process, are directed to appropriate housing and services that fit their needs. |
|---|---|---|
| **HMIS** | | |
| **New Project Application Rating Factors** | **Points Available** | **Criteria** |
| New HMIS project applications must receive at least 3 out of the 4 points available for this project type. New HMIS projects that do not receive at least 3 points will be rejected. | 1 | How the HMIS funds will be expended in a way that is consistent with the CoC's funding strategy for the HMIS and furthers the CoC's HMIS implementation. |
| | 1 | The HMIS collects all Universal Data Elements as set forth in the HMIS Data Standards. |
| | 1 | The ability of the HMIS to un-duplicate client records. |
| | 1 | The HMIS produces all HUD-required reports and provides data as needed for HUD reporting (e.g., APR, quarterly reports, data for CAPER/ESG reporting) and other reports required by other federal partners. |
| **CoC Planning – Collaborative Applicants Only** | | |
| **New Project Application Rating Factors** | **Points Available** | **Criteria** |
| New CoC Planning projects, submitted only by the CoC's designated Collaborative Applicant, | 1 | Governance and Operations-The CoC conducts meetings of the entire CoC membership that are inclusive and open to members and demonstrates the CoC has a written governance charter in place that includes CoC policies. |
| | 1 | CoC Committees-The CoC has CoC-wide planning committees, subcommittees, or workgroups to address the needs of persons experiencing homelessness in the CoC's |

DOJ-HUD-AR00090

| must receive at least 3 out of the 5 points available for this project type. CoC Planning projects that do not receive at least 3 points will be rejected. | | geographic area that recommends and sets policy priorities for the CoC. |
| | 2 | The proposed planning project that will be carried out by the CoC with Planning grant funds are compliant with the provisions of 24 CFR 578.7. |
| | 1 | The funds requested will improve the CoC's ability to evaluate the outcome of both CoC Program-funded and ESG-funded projects. |

HUD will review the UFA Costs submitted by the UFA designated Collaborative Applicant to ensure appropriate match and eligibility of costs requested. HUD will also assess all new project applications (i.e. reallocations, DV Bonus, CoC Bonus, and YHDP replacement projects) for the following minimum project eligibility, capacity, timeliness, and performance standards. For HUD to consider projects as meeting project quality threshold, all new projects must meet all the following criteria:

**(1)** project applicants and potential subrecipients must have satisfactory capacity, drawdowns, and performance for existing grant(s) funded under the CoC Program, as evidenced by timely reimbursement of subrecipients, regular drawdowns, and timely resolution of any monitoring findings; however, this does not apply to project applicants who have never received a CoC Program funded project;

**(2)** for expansion project applications, project applicants must describe the part of the project that is being expanded and demonstrate the project is not replacing other funding sources; and

**(3)** project applicants must demonstrate their ability to meet all timeliness standards per 24 CFR 578.85. Project applicants with existing projects must demonstrate they met all renewal project threshold requirements of this NOFO. HUD reserves the right to deny a funding request for a new project, if the request is made by an existing recipient that HUD finds to have significant issues related to capacity, performance, unresolved audit, or monitoring findings related to one or more existing grants; or does not routinely draw down funds from eLOCCS at least once per quarter. HUD also reserves the right to withdraw funds if no APR is submitted on the prior grant.

**c. Project Renewal Threshold.**
CoCs must consider the need to continue funding for projects expiring in CY 2025 (January 1, 2025 to December 31, 2025) when applying for FY 2024 CoC and YHDP funding and CY 2026 (January 1, 2026 to December 31, 2026) when applying for FY 2025 CoC and YHDP funding.

DOJ-HUD-AR00091

Renewal projects must meet the minimum project eligibility, capacity, timeliness, and performance standards identified in this NOFO or they will be rejected from consideration for funding:

**(1)** When considering renewal projects for award; HUD will review information in eLOCCS, APRs, and information provided from the local HUD CPD field office; including monitoring reports and audit reports as applicable, and performance standards on prior grants, and will assess projects using the following criteria on a pass/fail basis:

**(a)** whether the project applicant's performance met the plans and goals established in the initial application, or grant as amended;

**(b)** whether the project applicant demonstrated all timeliness standards for grants being renewed have been met, including those standards for the expenditure of grant funds;

**(c)** the project applicant's performance in assisting program participants to achieve and maintain independent living and records of success, except dedicated HMIS projects are not required to meet this standard; and

**(d)** evidence of unwillingness of project applicants to accept technical assistance, a history of inadequate financial accounting practices, indications of project mismanagement, a drastic reduction in the population served, program changes have been made without prior HUD approval, or the loss of project site control.

**(2)** HUD reserves the right to reduce or reject a project application submitted during the CoC Program Competition for the following reasons:

**(a)** outstanding obligation to HUD that is in arrears or for which a payment schedule has not been agreed upon;

**(b)** audit finding(s) for which a response is overdue or unsatisfactory;

**(c)** history of inadequate financial management accounting practices;

**(d)** evidence of untimely expenditures on prior award;

**(e)** history of other major capacity issues that have significantly affected the operation of the project and its performance;

**(f)** history of not reimbursing subrecipients for eligible costs in a timely manner, or at least quarterly; and

**(g)** history of serving ineligible program participants, expending funds on ineligible costs, or failing to expend funds within statutorily established timeframes.

DOJ-HUD-AR00092

**5. Certification of Consistency with the Consolidated Plan**.

Each project applicant must submit a certification by the jurisdiction in which the proposed project(s) will be located that the applicant's project application for funding is consistent with the jurisdiction's HUD-approved consolidated plan. The certification must be made in accordance with the provisions of the consolidated plan regulations at 24 CFR part 91, subpart F. Form HUD-2991 must be completed and dated between May 1, 2024 and August 29, 2025. Additionally, applicants that propose to locate a project on a reservation or trust land must include a tribal resolution from the tribe authorizing the applicant to do so or a letter from an official or principal of the Indian Tribe or TDHE who is authorized to act on behalf of the Indian Tribe or TDHE. Tribes do not need to include a tribal resolution to site a project on their own reservation or trust land. A tribal resolution is the formal manner in which the tribal government expresses its legislative will in accordance with its organic documents. In the absence of such organic documents, a written expression adopted pursuant to tribal practices will be acceptable.

For project applications submitted for FY 2024 funding, the Certification of Consistency with the Consolidated Plan Form HUD-2991 must be completed and dated between May 1, 2024 and October 30, 2024.

If project applicants are eligible to apply for FY 2025 funding, but aren't included on the HUD-2991 submitted during the FY 2024 funding process, the CoC must submit a certification by the jurisdiction in which the proposed project(s) will be located and the certification must be made in accordance with the provisions of the consolidated plan regulations at 24 CFR part 91, subpart F. The FY 2025 Form HUD-2991 must be completed and dated between November 1, 2024 and August 29, 2025.

All project applications submitted and listed on the CoC Project Listings by Collaborative Applicants must be included in the certification either by submitting one correctly signed and dated HUD-2991 from the appropriate jurisdiction that includes an attachment listing of all submitted project applications, or a single signed and dated HUD-2991 for each individual project application from the appropriate jurisdiction. See section IV.F.3.e for more information.

**6. Participative Planning and Implementation.**

Applicants must identify the steps they will take to ensure that traditionally underserved populations (such as Black, Latino, and Indigenous and Native American persons; Asian American persons, Pacific Islanders and other persons of color; members of religious minorities; lesbian, gay, bisexual, transgender, and queer (LGBTQ+) persons; persons who live in rural areas, persons with disabilities, and others adversely affected by persistent poverty or inequality) will be able to meaningfully participate in the planning process. The applicant must identify the specific populations that it will include, identify community organizations that represent these populations, and describe how these populations will be included in the planning process. For capital investment projects, recipients should commit to and demonstrate plans to employ low- and very low-income persons and/or use Section 3 businesses at levels beyond those required by Section 3.

In accordance with Section 504 of the Rehabilitation Act of 1973 (29 U.S.C.§ 794) and HUD's implementing regulations at 24 CFR Part 8, and Title II of the Americans with Disabilities Act (42 U.S.C. §§ 12131-12134) and the implementing regulation at 28 CFR Part 35, the programs services, and activities funded through this NOFO must be accessible to and usable by persons

DOJ-HUD-AR00093

with disabilities. Applicants and recipients must ensure meetings are held in facilities that are physically accessible to persons with disabilities and ensure effective communication for individuals with disabilities. Auxiliary aids or services and reasonable accommodations must be provided, when necessary, to ensure equal participation by individuals with disabilities.

In addition, applicants and recipients must take reasonable steps to ensure meaningful language access for persons with limited English proficiency (LEP) pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d and Executive Order 13166. For assistance in ensuring meaningful access for individuals with limited English proficiency, recipients and subrecipients should consult HUD's Final Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons (HUD's LEP Guidance) published in the Federal Register on January 22, 2007 (72 Fed. Reg. 2732).

## IV. APPLICATION AND SUBMISSION INFORMATION

### A. Application Package

**1. Authoritative Versions of HUD NOFOs.** The version of these NOFOs as posted on Grants.gov are the official documents HUD uses to solicit applications. While the CoC Program NOFO is officially posted on Grants.gov, this program uses *e-snaps*, an electronic application system. HUD does not accept faxed applications or supportive documents.

**2. Exemptions.** Parties that believe the requirements of the NOFO would impose a substantial burden on the exercise of their religion should seek an exemption under the Religious Freedom Restoration Act (RFRA).

### B. System for Award Management (SAM) and Unique Entity Identifier (UEI)

### 1. SAM Registration Requirement

You must register with www.sam.gov/ before submitting your application. You must maintain current information in SAM on immediate and highest-level owners and subsidiaries, as well as on all predecessors that have been awarded a federal contract or grant within the last three years, if applicable. Information in SAM must be current for all times during which you have an active Federal award or an application or plan under consideration by HUD.

### 2. UEI Requirement

All entities doing business with the Federal government must use the UEI created in SAM.gov. Your application must include a valid UEI that is registered and active at www.sam.gov.

For projects conditionally selected for award, HUD verifies that your organization has an active SAM registration prior to release of awarded funds and will withhold processing funds if your organization's SAM registration has expired or isn't consistent with the information provided on the SAM.gov website. A UEI discrepancy may also occur if HUD approves a grant to be amended to a new recipient (see section VI.4 of this NOFO).

UEI discrepancies are a curable deficiency that may be corrected by the applicant with timely action. If a UEI discrepancy isn't resolved within the timeframe prescribed by the Notification of Curable Deficiency the applicant receives from HUD, HUD may reject the project and award funds to project(s) on the CoC's Priority Listing that were reduced due to insufficient funding

availability; or HUD may select another eligible project(s) according to the project's rank on the
CoC's Priority Listing.

## C. Other Guidance and Notifications

**1. Federalism.**

E.O. 13132 prohibits, to the extent practicable and permitted by law, an agency from
promulgating policies that have federalism implications and either impose substantial direct
compliance costs on state and local governments and are not required by statute, or preempt state
law, unless the relevant requirements of Section 6 of the executive order are met. This notice
does not have federalism implications and does not impose substantial direct compliance costs
on state and local governments or preempt state law within the meaning of the executive order.

**2. Section 102 of the HUD Reform Act.**

Section 102 of the Department of Housing and Urban Development Reform Act of 1989 (HUD
Reform Act) (42 U.S.C. 3545) and the regulations codified at 24 CFR 4, subpart A, contain
several requirements that are designed to ensure greater accountability and integrity in the
provision of certain types of assistance administered by HUD. On January 14, 1992, HUD
published a notice that also provides information on the implementation of Section 102 (57 FR
1942). The documentation, public access, and disclosure requirements of Section 102 applies to
assistance awarded under NOFOs published as described below:

**a. Documentation, Public Access, and Disclosure Requirements.** HUD will ensure that
documentation and other information regarding each application submitted pursuant to a FY
2024 - 2025 CoC and YHDP NOFO are sufficient to indicate the basis upon which assistance
was provided or denied. This material, including any letters of support, will be made available
for public inspection for a 5-year period beginning not less than 30 days after the award of the
assistance. Material will be made available in accordance with the FOIA and HUD's
implementing regulations at 24 CFR 15.

**b. Form HUD 2880, "Applicant/Recipient Disclosure/Update Report".** HUD will also make
available to the public for a period of 5 years all applicant disclosure reports (form HUD 2880)
submitted in connection with a FY 2024 - 2025 CoC and YHDP NOFO. Updated reports (also
reported on form HUD 2880) will be made available along with the applicant disclosure reports,
but in no case for a period of less than 3 years. All reports will be made available in accordance
with the FOIA and HUD's implementing regulations.

**c. Publication of Recipients of Funding.** HUD's regulations at 24 CFR part 4 provide that
HUD will publish a notice in the Federal Register to notify the public of all funding decisions
made by HUD to provide:

> **(1)** Assistance subject to Section 102(a) of the HUD Reform Act; and
> **(2)** Assistance provided through grants or cooperative agreements on a discretionary (non-
> formula, non-demand) non-competitive basis.

**3. Section 103 of the HUD Reform Act.**

Section 103 of the HUD Reform Act, codified at 24 CFR part 4, subpart B, applies to this
funding competition until the announcement of selection of successful applicants. HUD's
employees involved in the review of applications and in the making of funding decisions are

Page 68 of 128

prohibited by the regulations from providing advance information to any person (other than an authorized HUD employee) concerning funding decisions or from otherwise giving any applicant an unfair competitive advantage. Persons who apply for assistance must confine their inquiries to the subject areas HUD's employees are permitted to answer under 24 CFR part 4. Applicants who have ethics-related questions may contact HUD's Ethics Law Division at 202-708-3815 (this is not a toll-free number). HUD welcomes and is prepared to receive calls from individuals who are deaf or hard of hearing, as well as individuals with speech or communication disabilities. To learn more about how to make an accessible telephone call, please visit https://www.fcc.gov/consumers/guides/telecommunications-relay-service-trs.

**4. Digital Signatures and Recordkeeping.**

HUD is increasing electronic recordkeeping where feasible. HUD plans to use digital signatures on grant award and modification documents to expedite awards and modification. HUD will manage email records in an electronic format. Recipients need not print emails and file them if their email system and procedures meet records management and litigation requirements (e.g., identifying, retrieving, and retaining the records for as long as they are needed).

## D. Application Verification

Applicants should compare their application submission with the requirements in the CoC Program NOFO. The FY 2024 – 2025 CoC Program Competition NOFO located on Grants.gov is HUD's official NOFO. If a discrepancy in the CoC Program NOFO posted on Grants.gov or other information provided in any other version or supporting documentation is found, please, notify HUD immediately as indicated in section VIII of this NOFO. HUD welcomes and is prepared to receive calls from individuals who are deaf or hard of hearing, as well as individuals with speech or communication disabilities. To learn more about how to make an accessible telephone call, please visit https://www.fcc.gov/consumers/guides/telecommunications-relay-service-trs.

HUD will post any corrections or amendments to a CoC Program NOFO on Grants.gov.

## E. Content and Form of Application Submission

**1. CoC Registration.**

HUD required Collaborative Applicants to complete the CoC Program Registration in accordance with Notice CPD-22-02: Continuum of Care Program Registration. If a Collaborative Applicant did not complete the CoC Program Registration, HUD moved the previous year's registration forward with no changes. Collaborative Applicants and UFAs that completed their CoC Program Registration by March 7, 2024 are not required to reapply during the FY 2025 funding year. If changes to a CoC's Registration information is required during the FY 2025 funding year, CoCs must follow the Registration submission requirements in Notice CPD-22-02: Continuum of Care Program Registration for FY 2025.

**2. CoC Project Review and Ranking.**

The CoC must review each project application submitted to the CoC for inclusion on the FY 2024 CoC Priority Listing as part of the CoC Consolidated Application and either approve and rank or reject project application submissions. All project applications approved by the CoC must be listed on the CoC Priority Listing in rank order. YHDP Renewal, and YHDP

DOJ-HUD-AR00096

Replacement projects which includes YHDP Reallocation projects are not competitively awarded and must not be ranked.

Higher ranked projects will be assigned to Tier 1 and lower ranked projects will be assigned to Tier 2 as described in sections I.B.3.h.(1) and (2) of this NOFO. This two-tiered approach for CoCs notifies HUD which projects are prioritized for funding based on local needs and gaps.

**3. CoC Consolidated Application Submission.**

Collaborative Applicants, including any HUD-designated UFAs, must submit the CoC Consolidated Application in e-snaps on behalf of the CoC. For more information on the CoC Consolidated Application, see section IV.F of this NOFO. The CoC Consolidated Application for funds under this NOFO includes the following:

**a. FY 2024 - 2025 CoC Application.** The Collaborative Applicant must provide information about the CoC planning body, governance structure, overall performance, and the strategic planning process. The CoC Application describes the CoC's plan for ending homelessness, its system-level performance, and addresses the selection criteria specified in section V of this NOFO. HUD scores this part of the application with all charts and narratives completed (as applicable) and all required attachments to determine the order in which competitively ranked CoC projects are funded.

**b. Project Applications.** Project applications must include the population(s) and subpopulation(s) they will serve, the type of housing and services they will provide, and the budget activities they are requesting. Collaborative Applicants applying for CoC Planning and UFA Costs (if designated as a UFA by HUD) must provide a description of the activities that will be carried out with CoC Program grant funds. For more information on project applications, see section IV.F.2 of this NOFO. Additionally, all project applicants must ensure their organization has a Code of Conduct that complies with the requirements of 2 CFR part 200, as may be amended from time to time, and is included on HUD's website. If the organization's Code of Conduct does not appear on HUD's website, the project applicant must attach its Code of Conduct that includes all required information to its Project Applicant Profile in e-snaps.

**c. FY 2024 and FY 2025 CoC Priority Listings**. The CoC Priority Listing in e-snaps must include the following completed forms, certifications and attachment (see section IV.F.3):

**(1)** *Project Reallocation Form (if applicable).* Indicates the eligible renewal projects that are being reallocated in whole or part to create new project applications;

**(2)** *CoC New Project Listing (including DV Reallocation and DV Bonus projects);*

**(3)** *CoC Renewal Project Listing (including DV Renewal projects);*

**(4)** *UFA Costs Project Listing;*

**(5)** *CoC Planning Project Listing;*

**(6)** *YHDP Renewal Project Listing;*

**(7)** *YHDP Reallocation and YHDP Replacement Project Listing; and*

**(8)** *Form HUD-2991, Certification of Consistency with the Consolidated Plan.*

DOJ-HUD-AR00097

CoCs are required to submit a FY 2025 CoC Priority Listing by August 29, 2025 if they are submitting applications for eligible CoC or YHDP renewal projects that were not awarded FY 2024 funding or new projects created through CoC, DV Reallocation, or YHDP Reallocation under YHDP Replacement.

Funding for FY 2025 awards are subject to FY 2025 HUD Appropriations and HUD reserves the right to amend this NOFO if additional funding is made available.

**4. CoC Review of Project Applications Prior to Submission to HUD.**

HUD expects CoCs to implement a thorough review and oversight process at the local level for both new and renewal project applications to be submitted to HUD in the FY 2024 – 2025 CoC Program Competition. HUD's experience is that many project applications contain information resulting in conditions on the grant; or for more serious infractions, HUD rejecting a project application. Deficient project applications prolong HUD's review process, which results in delayed funding announcements, lost funding for CoCs due to HUD rejecting projects, and delays accessing project funds to house and assist individuals and families experiencing homelessness. HUD expects CoCs to closely review the information provided in each project application, including Renewal, Replacement, or Reallocation projects, to ensure:

**a.** all proposed program participants will be eligible for the program component type selected;

**b.** the information provided in the project application and proposed activities are:

    **(1)** eligible and consistent with program requirements in the Rule;

    **(2)** eligible and consistent with DV Renewal, DV Reallocation and DV Bonus requirements in sections I.B.3.j and III.B.4.a.(4) of this NOFO; or

    **(3)** eligible and consistent with YHDP Renewal and YHDP Replacement project requirements which includes YHDP Reallocation provided in sections I.B.3.e and III.B.4.b.(5) of this NOFO;

**c.** each project narrative is fully responsive to the question being asked and that it meets all the criteria for that question as required by this NOFO;

**d.** the data provided in various parts of the project application are consistent; and

**e**. all required attachments correspond to the list of attachments in e-snaps, must contain accurate and complete information and must be dated between May 1, 2024 and October 30, 2024 for FY 2024 applications and November 1, 2024 and August 29, 2025 for FY 2025 applications.

**5. Electronic Submission in e-snaps.**

The submission summary in e-snaps provides the list of elements required to complete each type of project application. Collaborative Applicants will not be able to submit their Consolidated Application to HUD until all required parts are completed, including the project-level review and either accepting and ranking or rejecting the project applications. Once available, the CoC Application, Project Application, and CoC Priority Listing can be accessed at https://esnaps.hud.gov/.

**6. Timely Submission of Applications**

DOJ-HUD-AR00098

Applications submitted after the deadline stated within this NOFO that do not meet the requirements of the grace period policy are marked late. Late applications are ineligible and are not considered for funding. See Section IV.G., Submission Dates and Times.

Applicants should review and follow the steps as outlined below to ensure applications are complete and submitted by the deadlines established in this NOFO. Documents referenced in this section can be found on the CoC Program page of HUD's website: https://www.hud.gov/program_offices/comm_planning/coc.

## F. CoC Consolidated Application

The CoC-designated Collaborative Applicant, including any HUD-designated UFAs, must submit the CoC Consolidated Application in e-snaps on behalf of their CoC. The Consolidated Application includes the parts listed below (for more information see the e-snaps Navigational Guides and the project application, CoC Application, and CoC Priority Listing detailed instructions located on HUD's website).

**1. The FY 2024 – 2025 CoC Application includes the following:**

**a. CoC Review, Score, and Ranking Procedures.** The CoC's written procedures that are publicly posted for all interested stakeholders and applicants that clearly describe the project-level review and ranking process that is used by the CoC to determine how CoC Program project applications submitted to the CoC are reviewed, scored, and ranked.

**b. CoC Public Notice.** A screenshot(s) from the CoC's, or a partner website, that includes the date the CoC notified the public of its local competition process, the due date for project applications, and the full CoC Application and CoC Priority Listing that includes all Project Listings of project applications submitted to HUD as accepted (in the case of non-competitive CoC Planning, UFA Costs and YHDP projects), approved and ranked or rejected.

**c. CoC Review and Ranking Process.** Documents the process used by the CoC in the local competition to review, assess, and score new and renewal project applications, a copy of one scored project application form used by most renewal project applicants that includes the objective criteria and system performance criteria and their respective maximum point values and the actual points your CoC awarded to the project applicant; and the local competition selection results for new and renewal project applications.

**d. Notification to Project Applicants of projects rejected or reduced.** The notification of the action (rejection or reduction) that must be sent to the project applicant at least 15-days prior to the HUD application submission deadline, if a new or renewal project application was submitted to the CoC in the local competition and the CoC rejected it or reduced its funding request as part of the CoC's local process.

**e. Public Notification of Ranked Project Applications.** The notification of action that all project applicants who submitted new and renewal project applications in the local CoC competition are notified at least 15-days prior to the HUD application submission deadline of the CoC's acceptance that includes the ranked position of the project applications. This notification may be posted publicly or sent via email to individual project applicants.

**f. PHA Administrative Plan.** If the CoC is seeking points under section V.B.1.g of this NOFO, a copy or the relevant excerpt from the local PHA(s) administrative planning document(s), or

DOJ-HUD-AR00099

other written policy developed between the CoC and the PHA(s) that describes the PHA(s) preference for persons experiencing homelessness. Instead of a relevant excerpt from the written plan, a letter from the PHA(s) that describes the PHA(s) preference for persons experiencing homelessness may be attached.

**g. Lived Experience Support Letter Comprised of Persons with Lived Experience of Homelessness.** The letter must be signed by either (1) at least three members involved in the working group (e.g., advisory committee, subcommittee) comprised of individuals with lived experience or (2) an authorized representative of the workgroup (e.g., a working chair) along with evidence that the person is authorized to represent the group, **or** (3) individual letters signed by three individuals who are involved on different committees; and the letter must demonstrate support of the priorities for serving individuals and families experiencing homelessness with severe service needs in the CoC's geographic area. Persons with lived experience may sign letters using pseudonyms to protect their privacy.

**h. Leveraging Housing Resources.** A written commitment, contract, or other formal written documents that demonstrate the number of subsidies or units being provided.

**i. Leveraging Healthcare Resources.** A written commitment from a health care organization with the value of the commitment and the date(s) healthcare resources will be provided.

**j. Housing First Evaluation.** An example of an actual evaluation of at least one project, conducted outside of your CoC local competition process.

**k. Projects to Serve Persons Defined as Homeless under paragraph (3) of 24 CFR 578.3.** If the CoC is seeking to serve persons defined as homeless under paragraph (3) of the homeless definition, a list of projects that will serve persons defined as homeless under paragraph (3) of the homeless definition.

**l. The FY 2024 HDX Competition Report.** The FY 2024 HDX Competition Report contains data submitted to HUD via HUD's Homelessness Data Exchange (HDX), including HIC, PIT count, and system performance data.

**2. Project Application(s), including for each project application:**

**a.** Charts, narrative responses, and attachments.

**b. Documentation of Applicant and Subrecipient Eligibility.** All nonprofit project applicants must attach eligibility documentation to the Project Applicant Profile. If nonprofit subrecipients are included in a project application, subrecipient eligibility documentation must be attached to the project application.

**c. HUD required forms.** The following HUD required forms are built into e-snaps and must be fully completed and electronically signed before project applicants have access to the project application:

   **(1)** SF-424 Application for Federal Assistance (OMB Number: 4040-0004);

   **(2)** Form HUD-2880, Applicant/Recipient Update/Disclosure (OMB Number: 2501-0017);

   **(3)** Form HUD-424-B, HUD Applicant and Recipient Assurances and Certifications (OMB Number: 2501-0017);

DOJ-HUD-AR00100

**(4)** SF-LLL, Disclosure of Lobbying Activities (if applicable) (OMB Number: 4040-0013);

**(5)** Form HUD-50070, Certification for Drug-Free Workplace;

**(6)** SF-424B*: Assurances for Non-Construction Programs (OMB Number: 4040-0007);

*The SF-424B form must be completed as part of your [SAM.gov](SAM.gov) registration. If an applicant fails to complete the SF-424B during their sam.gov registration or renewal, we will issue a curable deficiency notice.

**3. The CoC Priority Listing, including:**

**a. Project Reallocation Form.** Reallocation forms allow CoCs to indicate which eligible renewal projects, if any, will be reduced or eliminated through the reallocation process.

**b. CoC Project Listings.** CoC Project listing forms require all the following project applications to be ranked, with unique numbers, in order of priority and any project applications the CoC rejected must be identified:

**(1)** CoC New project applications (including CoC Reallocation, DV Reallocation, CoC Bonus, and DV Bonus applications), and

**(2)** CoC Renewal project applications (including DV Renewal Projects).

**c. YHDP Project Listings.** YHDP Project listing forms include the following non-ranked YHDP project applications:

**(1)** YHDP Renewal project applications, and

**(2)** YHDP Replacement project applications which includes YHDP Reallocation.

**d. CoC Planning and UFA Costs Project Listings.** These project listing forms include the following non-ranked project applications:

**(1)** CoC Planning project applications, and

**(2)** UFA Costs project applications (if applicable).

Collaborative Applicants must ensure the CoC only submits one project application for CoC Planning, and if the CoC's Collaborative Applicant is a HUD-designated UFA, one UFA Costs project application.

**e. Certification of Consistency with the Consolidated Plan Form HUD-2991.**

**(1)** For project applications submitted for FY 2024 funding, the Certification of Consistency with the Consolidated Plan Form HUD-2991 must be completed and dated between May 1, 2024 and October 30, 2024. This FY 2024 HUD-2991 submission certifies that projects awarded in FY 2024 and subsequently renewed in FY 2025 are consistent with the jurisdiction's HUD-approved consolidated plan.

**(2)** If a CoC includes any new or renewal projects on the FY 2025 CoC project listing that were not included on the FY 2024 HUD-2991 submission, CoCs must submit a new HUD-2991 that includes the FY 2025 new and renewal project applications to certify consistency with the jurisdiction's HUD-approved consolidated plan. The FY 2025 Form HUD-2991 must be completed and dated between November 1, 2024 and August 29, 2025.

DOJ-HUD-AR00101

**(3)** CoCs that propose to locate a project on a reservation or trust land were required to obtain authorization from the Tribe or TDHE, documented by a Tribal resolution or a letter from an official or principal of the Indian Tribe or TDHE who is authorized to act on behalf of the Indian Tribe or TDHE. CoCs were required to attach Tribal Resolutions or approval letters to the CoC's Registration submission in March. Tribes were not required to include a Tribal resolution or a letter from an official of the Indian Tribe or TDHE to site a project on their own reservation or trust land. A Tribal resolution is the formal manner in which the Tribal government expresses its legislative will in accordance with its organic documents. In the absence of such organic documents, a written expression adopted pursuant to Tribal practices is acceptable.

**(4)** Collaborative Applicants must certify there is a demonstrated need for all ranked (PH) renewal projects and these projects comply with program requirements and appropriate standards of housing quality and habitability on the Renewal Project Listing.

**4. Solo Applicants.**

Eligible project applicants that attempted to participate in the CoC planning process in the geographic area in which they operate, that believe they were denied the right to participate in a reasonable manner, may submit a solo project application to HUD by following the procedure found in 24 CFR 578.35. If HUD finds in favor of the solo applicant, HUD may award grant funds. Solo applicants requesting FY 2024 funding must submit their solo project application in e-snaps to HUD by 8:00 PM EDT, on October 30, 2024. If Congressional Appropriations authorize HUD to solicit applications for new FY 2025 CoC and YHDP Funding, solo applicants requesting FY 2025 funding must submit their solo project application in e-snaps to HUD by 8:00 PM EDT, on August 29, 2025. See section VII.C of this NOFO for additional information regarding the Solo Applicant appeal process.

## G. Submission Dates and Times

**1.** Completed applications for FY 2024 CoC and YHDP funding must be submitted to HUD on or before October 30, 2024, by 8:00 PM EDT. Applications for new and renewal projects applying for FY 2025 CoC and YHDP funding must be submitted by the application submission deadline at 8:00 PM EDT on August 29, 2025.

**2.** 24 CFR 578.9 requires CoCs to design, operate, and follow a collaborative process for the development of an application in response to a NOFO issued by HUD (which, under this NOFO includes applications for non-competitive YHDP Renewal and YHDP Replacement projects). As part of this collaborative process, CoCs must implement internal competition deadlines to ensure transparency and fairness at the local level. The implementation of deadlines that meet the standards outlined below for FY 2024 and FY 2025 CoC Program project applications are part of the scoring criteria as detailed in section V.B.2.g of this NOFO.

**a. Project Application.** All project applications must be submitted to the CoC no later than 30 days before HUD's CoC Program application submission deadline of 8:00 PM EDT on October 30, 2024 for FY 2024 CoC and YHDP funding and 8:00 PM EDT on August 29, 2025 for FY 2025 CoC and YHDP funding. CoCs that fail to establish this deadline for local project application(s) will receive 0 points under section V.B.2.g of this NOFO.

**b. CoC Notification to Project Applicants.** The CoC is required to notify, in writing outside of e-snaps, all project applicants who submitted their project applications to the CoC by the local CoC-established deadline whether their project application(s) will be accepted and ranked on the CoC Priority Listing, rejected, or reduced by the CoC no later than 15 days of the CoC Program application submission deadline of each FY funding opportunity.

Where a project application is being rejected or reduced, the CoC must provide the project applicant with the reason(s) for the rejection or reduction. CoCs failing to provide this information to a project applicant that submits its project application by the local competition deadline will receive 0 points under section V.B.2.g of this NOFO.

**3.** For the FY 2024 CoC and YHDP funding, HUD will consider the CoC Consolidated Application properly submitted for review when the Collaborative Applicant submits the FY 2024 – FY 2025 CoC Application, the FY 2024 CoC Priority Listing, and all FY 2024 project applications on behalf of the CoC by the FY 2024 Application Submission deadline. The "Submit" button will not be available on the Submission Summary of the FY 2024 – FY 2025 CoC Application and FY 2024 CoC Priority Listing until all required sections of the application and all parts of the listings, including accepting and ranking with a unique rank number or rejecting project applications have been completed. Collaborative Applicants should review the Submission Summary form carefully to ensure no sections state "Please Complete."

The FY 2024 - FY 2025 CoC Application and the FY 2024 CoC Priority Listing are separate submissions in e-snaps; therefore, Collaborative Applicants must ensure both the CoC Application and the CoC Priority Listing, that includes all project applications either approved and ranked or rejected, are submitted in e-snaps prior to the CoC Program application submission deadline.

The CoC Consolidated Application is considered complete at the FY 2025 Application Submission deadline. If a CoC has projects eligible to apply for renewal in FY 2025 that were not awarded FY 2024 funding; or the CoC is submitting applications for new grants through reallocation or the availability of new Congressional Appropriations in FY 2025, the Collaborative Applicant must submit a FY 2025 CoC Priority Listing and all FY 2025 project applications on behalf of the CoC to be included as part of the CoC Consolidated Application by the FY 2025 Application Submission deadline. If a CoC is not submitting applications for FY 2025 CoC and YHDP funding, the CoC is not required to submit a FY 2025 CoC Priority Listing.

**4.** Collaborative Applicants should export a PDF copy of the Submission Summary form from the FY 2024 – FY 2025 CoC Application and the FY 2024 CoC Priority Listing after they have been submitted to HUD and before closing their internet browser. This is the Collaborative Applicant's receipt of submission and proof of compliance with the FY 2024 application deadline. CoCs that are submitting new and renewal applications for FY 2025 CoC and YHDP funding should also print the Submission Summary form for the FY 2025 CoC Priority Listing for proof of compliance with the FY 2025 application deadline. HUD will not give funding consideration to any Collaborative Applicant whose FY 2024 – FY 2025 CoC Application or CoC Priority Listings are determined to be late and are unable to provide HUD with a record of submission that verifies the CoC Consolidated Application was submitted prior to the application deadlines date and time.

DOJ-HUD-AR00103

**5.** HUD strongly suggests that applicants use the "Export to PDF" functionality in e-snaps to save a hard copy of all submission documents for their records. This can be completed prior to or after submission.

**6.** As stated in section IV.G.1 of this NOFO, it is imperative that all Collaborative Applicants meet the FY 2024 and FY 2025 application submission deadlines. HUD will not fund applications that are not received on time. Also, failure to submit a complete CoC Consolidated Application may result in HUD finding that the CoC does not meet the requirements of the Act or its implementing regulations under 24 CFR 578.13. If the Secretary makes that finding, HUD may take remedial action to ensure fair distribution of grant funds to eligible entities within the CoC's geographic area, which includes the possibility that HUD will designate another eligible applicant to be the Collaborative Applicant for the CoC. In addition to the remedial actions listed in 24 CFR 578.13(a), HUD may also impose another remedial action, such as requiring the CoC to create new policies and procedures to ensure that the Collaborative Applicant performs its duties.

**7.** CoC and project applicants experiencing technical difficulty with any part of the Consolidated Application should notify HUD immediately for assistance and document all attempts to obtain assistance. Notification of technical difficulties are to be sent to CoCNOFO@hud.gov. HUD will not provide assistance directly related to content, only to troubleshoot submission issues.

**8.** If after notice and reasonable opportunity to be heard, HUD finds pursuant to 24 CFR 578.13, that one or more CoCs have failed to comply with the requirements of the Act and the Rule, HUD may, solely at its discretion and only if sufficient funds become available by recapture, publish a new NOFO for eligible applicants in CoCs that HUD determined do not meet the requirements of the Act and program regulations.

## H. Intergovernmental Review

This program is not subject to Executive Order 12372, Intergovernmental Review of Federal Programs.

## I. Funding Restrictions

Not Applicable.

## J. Other Submission Requirements

**1. Standard Application, Assurances, Certifications and Disclosures**

**a. Standard Form 424 (SF-424) Application for Federal Assistance.** The SF-424 is the government-wide form required to apply for Federal assistance programs, discretionary Federal grants, and other forms of financial assistance programs. You must complete and submit the form with the other required forms and information as directed in this NOFO.

By signing the forms in the SF-424 either through electronic submission or in paper copy submission (for those granted a waiver), you and the signing authorized organization representative affirm that you both have reviewed the certifications and assurances associated with the application for Federal assistance and (1) are aware the submission of the SF-424 is an assertion that the relevant certifications and assurances are established and (2) acknowledge that the truthfulness of the certifications and assurances are material representations upon which HUD will rely when making an award to the applicant. If it is later determined the signing

DOJ-HUD-AR00104

authorized organization representative to the application made a false certification or assurance, caused the submission of a false certification or assurance, or did not have the authority to make a legally binding commitment for the applicant, the applicant and the individual who signed the application may be subject to administrative, civil, or criminal action. Additionally, HUD may terminate the award to the applicant organization or pursue other available remedies. Each applicant is responsible for including the correct certifications and assurances with its application submission, including those applicable to all applicants, those applicable only to Federally recognized Indian tribes, or Alaskan native villages and those applicable to applicants other than Federally recognized Indian tribes, or Alaskan native villages.

**b. Assurances (HUD 424-B).** By submitting your application, you provide assurances that, if selected to receive an award, you will comply with U.S. statutory and other requirements, including, but not limited to civil rights requirements. All recipients and subrecipients of the award are required to submit assurances of compliance with federal civil rights requirements. *See, e.g.,* Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments Act of 1972, Section 504 of the Rehabilitation Act of 1973, Violence Against Women Act, and the Age Discrimination Act of 1975; *see also* 24 C.F.R. §§ 1.5; 3.115; 8.50; and 146.25. HUD accepts these assurances in the form of the HUD 424-B, which also require compliance with HUD Reform Act requirements and all general federal nondiscrimination requirements in the administration of the federal assistance award.

**c. Applicant Disclosure Report Form 2880 (HUD 2880)**. The form HUD 2880 is required if you are applying for assistance within the jurisdiction of HUD to any project subject to Section 102(d) of the HUD Reform Act. Assistance is provided directly by HUD to any person or entity, but not to subrecipients. It includes assistance for the acquisition, rehabilitation, operation, conversion, modernization, renovation, or demolition of any property containing five or more dwelling units that is to be used primarily for residential purposes. It includes assistance to independent group residences, board and care facilities, group homes and transitional housing but does not include primarily nonresidential facilities such as intermediate care facilities, nursing homes and hospitals. It also includes any change requested by a recipient in the amount of assistance previously provided, except changes resulting from annual adjustments in Section 8 rents under Section 8(c)(2)(A) of the United States Housing Act of 1937 (42 U.S.C. 1437f). See HUD Reform Act regulation for additional information.

**d. Code of Conduct.** Both you, as the award recipient, and all subrecipients must have a code of conduct (or written standards of conduct). The code of conduct must comply with the requirements included in the "Conducting Business in Accordance with Ethical Standards" section of the Administrative, National and Department Policy Requirements and Terms for HUD Financial Assistance Awards--2024, as well as any program-specific requirements. These requirements include ethical standards related to conflicts of interest for procurements in 2 CFR 200.318(c) and 2 CFR 200.317, as well as HUD-specific conflict of interest standards. HUD maintains a list of organizations that have previously submitted written standards of conduct on its Code of Conduct for HUD Grant Programs webpage. But it is your responsibility to ensure that the standards are compliant with the noted requirements and that HUD has the latest version of the written standards. Updated written standards should be submitted with the application. Any updates to your written standards, after the application period, should be submitted as directed by the HUD program contact for this NOFO.

DOJ-HUD-AR00105

**e. Lobbying Activities**

Applicants are subject to the provisions of Section 319 of Public Law 101-121, 31 U.S.C. 1352, (the Byrd Amendment), and 24 CFR part 87, which prohibit recipients of federal awards from using appropriated funds for lobbying the executive or legislative branches of the Federal government in connection with a Federal award. All applicants must submit with their application the signed certification regarding lobbying included in the Application download from Grants.gov. In addition, applicants must disclose, using Standard Form LLL (SF-LLL), "Disclosure of Lobbying Activities," any funds, other than federally appropriated funds, that will be or have been used to influence federal employees, members of Congress, or congressional staff regarding specific awards. Federally recognized Indian tribes and tribally designated housing entities (TDHEs) established by Federally recognized Indian tribes as a result of the exercise of the tribe's sovereign power are excluded from coverage of the Byrd Amendment, but state-recognized Indian tribes and TDHEs established only under state law shall comply with this requirement.

**f. False Statements**

Applicant understands that providing false or misleading information during any part of the application, award, or performance phase of an award may result in criminal, civil or administrative sanctions, including but not limited to: fines, restitution, and/or imprisonment under 18 USC 1001, 18 USC 1012, or 18 USC 287; treble damages and civil penalties under the False Claims Act, 31 USC 3729 et seq.; double damages and civil penalties under the Program Fraud Civil Remedies Act, 31 USC 3801 et seq.; civil recovery of award funds; suspension and/or debarment from all federal procurement and non-procurement transactions, FAR part 9.4 or 2 CFR part 180; and other remedies including termination of active HUD award.

**2. Other Program-Specific Requirements**

**Waiver of Electronic Submission Requirements.**

The regulatory framework of HUD's electronic submission requirement is the final rule established in 24 CFR 5.1005. CoCs seeking a waiver of the electronic submission requirement must request a waiver in accordance with 24 CFR 5.1005. HUD regulations allow for a waiver of the electronic submission requirement for good cause. For this NOFO, HUD defines good cause as:

**a.** there are no computers that could be used by applicants or the Collaborative Applicant that are newer than 5 years old anywhere within the CoC's geographic area; or

**b.** there are no computers that could be used by applicants or the Collaborative Applicant anywhere within the CoC's geographic area; or

**c.** there is no internet access that could be used by applicants or the Collaborative Applicant anywhere within the CoC's geographic area.

HUD will grant waivers only at the CoC level and not at the individual project applicant level, and only to CoCs that were approved by HUD during the required CoC Registration process.

If HUD grants the waiver, the Office of Special Needs Assistance Programs' response will include instructions on how many copies of the paper application must be submitted, as well as where to submit them. If HUD grants CoCs a waiver of the electronic submission requirement,

DOJ-HUD-AR00106

such CoCs will not receive additional time to submit their applications. Therefore, Collaborative Applicants seeking a waiver of the electronic submission requirement on behalf of the CoC must submit their waiver request with sufficient time to allow HUD to process and respond to the request. Collaborative Applicants should also allow themselves sufficient time to submit the application on behalf of the CoC so that HUD receives the application by the established CoC Program Application submission deadline date. For this reason, if a Collaborative Applicant finds it cannot submit its application electronically and must seek a waiver of the electronic grant submission requirement, its request must be postmarked no later than 60 days after the publication date of this NOFO. To expedite the receipt and review of each request, Collaborative Applicants may email their written requests to Norm Suchar, Director, Office of Special Needs Assistance Program at CoCNOFO@hud.gov. If HUD does not have sufficient time to process the waiver request, HUD will not grant a waiver. HUD will not consider paper applications received without a prior approved waiver or after the established deadline.

## V. APPLICATION REVIEW INFORMATION

HUD encourages activities in support of the Secretary's Initiatives for any of the policy preferences: Climate Change, Environmental Justice, Promise Zones, Historically Black Colleges and Universities (HBCU), Minority-Serving Institutions, and Rural Partners Network Community Networks; however, this NOFO does not include preference points. Rather, Section V.B.6 provides the information and points associated with the Consolidated Appropriations Act, 2024 and the requirement to provide incentives to create projects that coordinate housing providers and healthcare organizations to provide permanent supportive housing and rapid rehousing services.

## A. Criteria

HUD will assess CoC Consolidated Applications on a 200-point scale. No Collaborative Applicants have exercised the authority under 422(j) of the Act; therefore, no selection criteria based on section 427(b)(1)(A)(viii) is included in this NOFO. Additionally, for purposes of the requirements of section 427 (b)(1)(B)(iv)(I) of the Act. HUD considers "all relevant subpopulations" to mean families with children, youth, veterans, persons fleeing domestic violence, dating violence, sexual assault, and stalking, persons who are unsheltered, and individuals and families experiencing chronic homelessness.

**1. Major Disaster Areas.**

If a major disaster impacts a CoC's geographic area, as declared by the President under the Stafford Act, during the CoC Program application process that will impact local competition deadlines as outlined in section IV.G.2 of this NOFO, the CoC's Collaborative Applicant must send written notification to Norm Suchar, Director, Office of Special Needs Assistance Program at CoCDisaster@hud.gov. The email must include:

**a.** the nature of the disaster, date(s) the major disaster occurred, how the major disaster affected the Collaborative Applicant, the CoC, or its project(s);
**b.** the duration, and the impact on the Collaborative Applicant, the project applicants, or the CoC to meet the local competition deadline; and

**c.** the anticipated amount of time the CoC is requesting for an extension (e.g., number of days, weeks, or months). This does not mean HUD will allow the full amount of time requested.

Based on the timing and the extent of the major disaster, HUD may extend the application deadline for the affected CoC(s). All requests received will be confirmed via the Federal Emergency Management Agency (FEMA) website, https://www.fema.gov/disasters.

**2. Housing Inventory Count (HIC) and Point-in-Time (PIT) Count Data.**

CoCs were required to submit the 2024 HIC and PIT count data directly to the HUD HDX 2.0 website by May 10, 2024 by 8:00 PM EDT. CoCs that did not meet the established deadline for HIC and PIT count data submission and did not receive an extension from HUD will not receive the maximum number of points available as described in sections V.B.3 and V.B.4 of this NOFO.

**3. Capital Costs.**

For a CoC to receive maximum points if a project applicant(s) requests CoC Program funds for construction or rehabilitation, it must include information describing the actions that will be taken by project applicants to comply with Section 3 of the Housing and Urban Development Act of 1968 (12 U.S.C. 1701u) (Section 3) and HUD's implementing rules at 24 CFR part 75 to provide employment and training opportunities for low- and very low-income persons, as well as contracting and other economic opportunities for business that provide economic opportunities to low- and very low-income persons. This does not affect applicants' existing responsibilities to provide training, employment, and other economic opportunities pursuant to Section 3 that result from their receipt of other HUD funding. YHDP Replacement project applications cannot include capital costs. Grants to Indian Tribes are subject to Indian Preference under Section 7(b) of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 5307(b)) and are not subject to Section 3 requirements.

Any project that requests funding for capital costs (acquisition, new construction, or rehabilitation costs) must comply with the accessibility and civil rights requirements in Section 24 CFR 578.93(d) of the Rule.

## B. CoC Application Scoring

The following chart describes the CoC Application criteria that will be used to establish CoC scores:

**1. CoC Coordination and Engagement.** HUD will award up to 84 points to CoCs that demonstrate coordination with other systems of care that serve homeless individuals and families, including sources of funding other than the CoC Program; an inclusive and outcome-oriented community process, including an organization structure(s) and decision-making process for developing and implementing a CoC strategy that is inclusive of representatives from both the private and public sectors, has a fair and impartial project review and selection process; and has created, maintained, and built upon a community-wide inventory of housing for homeless individuals and families.

| Rating Factor | Maximum Points | To Receive Maximum Points |
|---|---|---|

DOJ-HUD-AR00108

| *a. Inclusive Structure and Participation.* | | |
|---|---|---|
| (1) Has an inclusive membership of a variety of stakeholders within the geographic area. | **2** | Collaborative Applicants must demonstrate their CoC has participation from a broad array of stakeholders, not limited to organizations listed in 24 CFR 578.5(a), within the geographic area, including at a minimum:<br><br>• victim service organizations (e.g. organizations that serve survivors of domestic and intimate partner violence, sexual assault, and human trafficking).<br>• youth service providers;<br>• individuals who are experiencing homelessness or were formerly experiencing homelessness;<br>• organizations led by and serving culturally specific communities experiencing homelessness in the geographic area to address equity (e.g., Black, Latino, Indigenous, LGBTQ+, or persons with disabilities); and<br>• Tribal organizations for CoCs where a Tribal organization is present. |
| (2) Has an invitation process for new members to join. | **1** | Collaborative Applicants must demonstrate:<br><br>• their CoC's transparent, accessible process (e.g., communicated to the public on the CoC's website) is in place to invite new members to join and includes an invitation process for new members to join that is publicly available within the geographic area at least annually; and<br>• how their CoC invites organizations serving culturally specific communities experiencing homelessness in the geographic area to addresses equity (e.g., Black, Latino, Indigenous, LGBTQ+, and persons with disabilities). |
| (3) Solicits and considers opinions from knowledgeable individuals and organizations. | **1** | Collaborative Applicants must demonstrate their CoC has a transparent, accessible process (e.g., communicated in a public manner on the CoC's website) in place to solicit and consider opinions from individuals and organizations with knowledge of homelessness in the |

DOJ-HUD-AR00109

| | | geographic area or an interest in preventing or ending homelessness in the geographic area. |
|---|---|---|
| (4) Accepts and considers proposals from organizations that have not previously received CoC Program funding. | 1 | Collaborative Applicants must demonstrate their CoC has a transparent and accessible process (e.g., communicated in a public manner on the CoC's website) in place to accept and consider proposals from organizations that have not previously received CoC Program funding. |
| **b. Coordination with Federal, State, Local, Private, and Other Organizations.** Coordinates with other organizations that serve individuals, families, unaccompanied youth, and persons fleeing domestic violence, dating violence, sexual assault, or stalking who are experiencing or at risk of homelessness. | 2 | Collaborative Applicants must indicate their CoCs:<br><br>• coordinate with other federal, state, and local governments, private, and other organizations that are included in the planning or operation of projects;<br>• consult with ESG recipients within the CoC's geographic area in the planning and allocation of ESG funds;<br>• participate in the Consolidated Plan jurisdictions' process(s) by providing PIT and HIC data;<br>• ensure local homelessness information is communicated and addressed in the Consolidated Plan updates; and<br>• coordinate with ESG recipients in reporting on and evaluating the performance of ESG recipients and subrecipients. |
| **c. Ensuring Families are not Separated.** Ensure projects do not deny admission to or separate family members. | 2 | Collaborative Applicants must indicate that emergency shelters, TH projects, and PH projects within their CoC do not deny admission to or separate family members when they enter shelter or housing, including serving all family members together and in accordance with each family member's self-reported sexual orientation and gender identity. |
| **d. CoC Collaboration Related to Children and Youth.** Demonstrate the CoC coordinates to provide education services to families with children between the ages of 0-5; and | 3 | Collaborative Applicants must:<br><br>• indicate written agreements are in place between their CoC or its HUD-funded projects and educational supports and services for children ages 0-5, such as Public Pre-K, Head Start, Child Care (Child Care and Development Fund), and |

| | | |
|---|---|---|
| collaborates with education providers, local educational authorities, and school districts. | | home visiting (including Maternal, Infant and Early Childhood Home and Visiting or MIECHV);<br>• identify the formal partnerships their CoC has with youth education providers, local educational authorities, or school districts; and<br>• describe policies and procedures their CoC adopted to inform individuals and families who have recently begun experiencing homelessness of their eligibility for educational services. |
| ***e. Addressing the Needs of Victims of Domestic Violence, Dating Violence, Sexual Assault, and Stalking.*** Addressing the Needs of Survivors of Domestic Violence, Dating Violence, Sexual Assault, and Stalking. Coordinate with survivors and people with lived experience, victim service providers, and operators of coordinated entry to address the unique needs for housing and safety that prioritize housing defined as safe by survivors. The CoC must identify the current efforts to increase access to housing and services defined as safe by survivors of domestic violence, dating violence, sexual assault, and stalking, adopting survivor-centered practices that maximum client choice while | 5 | Collaborative Applicants must demonstrate their CoC:<br><br>• regularly collaborates with victim service providers, state domestic violence coalitions, state sexual assault coalitions, anti-trafficking service providers and other organizations who help provide housing and services to individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, and stalking including those funded by HUD's CoC and ESG Programs, U.S. Department of Justice, and U.S. Department of Health and Human Services to update CoC-wide policies and ensure all housing and services provided in the CoC are trauma-informed and able to meet the needs of survivors;<br>• implemented safety planning and confidentiality protocols in its coordinated assessment and provides annual training to CoC providers and operators of Coordinated Entry that addresses best practices in serving survivors of domestic violence, dating violence, sexual assault, and stalking;<br>• implemented policies and procedures that ensure all individuals and families receiving and seeking CoC Program assistance are made aware of the CoC's |

DOJ-HUD-AR00111

| | | |
|---|---|---|
| maintaining safety and confidentiality. | | emergency transfer plan, the process for requesting an emergency transfer and the CoCs plan for responding to an emergency transfer once a survivor requests it;<br><br>• ensures individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking have access to all housing and services available within the CoC's geographic area;<br><br>• reviews the CoC's systems to proactively identify and remove barriers specific to survivors to ensure safe access to all CoC Programs/services; |
| ***f. Addressing the Needs of LGBTQ+ Individuals.*** Demonstrates efforts to address the needs of Lesbian, Gay, Bisexual, Transgender, and Queer (LGBTQ+) individuals and their families experiencing homelessness. | **6** | Collaborative Applicants must demonstrate their CoC:<br><br>• includes LGBTQ+ serving organizations or advocacy groups in the CoC membership;<br><br>• annually conducts training to providers about how to effectively implement the Equal Access to Housing in HUD Programs Regardless of Sexual Orientation or Gender Identity Rule, and the Equal Access in Accordance with an Individual's Gender Identity in Community Planning and Development Programs Rule;<br><br>• implemented and trained providers on a CoC-wide, anti-discrimination policy ensuring that LGBTQ+ individuals and families receive supportive services, shelter, and housing free from discrimination;<br><br>• regularly collaborates with LGBTQ+ and other organizations to update their CoC-wide, anti-discrimination policy, as necessary to ensure all housing and services provided in the CoC are trauma-informed and able to meet the needs of LGBTQ+ individuals and families; |

DOJ-HUD-AR00112

| | | |
|---|---|---|
| | | • assisted providers in developing project level anti-discrimination policies that are consistent with the CoC-wide anti-discrimination policy; and<br>• has a process for evaluating compliance with their CoC's anti-discrimination policies and addresses any non-compliance with those policies. |
| ***g. Public Housing Agencies.*** Coordinates with the Public Housing Agencies (PHAs) located in their geographic area that resulted in admission preferences for households experiencing homelessness, including move-on strategy-which is a partnership between the CoC and one or more PHAs who have an admission preference for program participants in PH-PSH who are able and want to move out of supportive housing with a rental subsidy. | **10** | Collaborative Applicants must demonstrate how their CoC works with the PHA(s) in their CoC's geographic area to:<br><br>• coordinate with a PHA to apply for or implement Housing Choice Voucher funding that is statutorily dedicated to people experiencing homelessness (e.g. Emergency Housing Vouchers)<br>• coordinate with a PHA to apply for or implement existing funding (e.g. Mainstream vouchers, FUP, or other programs) for people experiencing homelessness (coordination must have occurred within the past 3 years);<br>• establish PHA(s) admission preferences for households experiencing homelessness which may include a preference for households who previously experienced homelessness residing in units of housing for persons experiencing homelessness (e.g., Move-on Program), or project-basing vouchers for households experiencing homelessness;<br>• ensure at least 20 percent of new PHA admissions were individuals or families experiencing homelessness at admission; and<br>• include PHA(s)-funded units described above in the CoC's coordinated entry system. |
| ***h. Preventing People Transitioning from Public Systems from Experiencing Homelessness.*** Coordinates with and | **2** | Collaborative Applicants must indicate their CoC coordinates with state or local planning efforts to prevent homelessness among people transitioning from public systems (prisons, jails, |

| | | |
|---|---|---|
| assists in state or local planning efforts to prevent people transitioning from public systems (e.g., reentry from prisons and jails, health care or residential care, and foster care) from experiencing homelessness. | | health care facilities, residential care facilities, and foster care.).<br><br>This may include:<br><br>• Supporting state and local efforts to identify people who are at-risk of experiencing homelessness from these settings and to assist them to secure stable, accessible, and affordable housing (including reunifying with family members where appropriate);<br>• Data and information sharing, education and training on such areas as assess housing needs and homelessness risk, housing problem-solving, family reunification, housing navigation and landlord engagement, housing quality, and housing case management; and<br>• Encouraging state and local partners to leverage mainstream health care, corrections, child welfare, and other resources to meet housing needs where possible. |
| ***i. Housing First.*** Projects in the CoC use a Housing First approach and the CoC assesses fidelity to the Housing First approach. Any housing project application that is awarded FY 2024 or FY 2025 CoC Program funding that indicates it will use a Housing First approach, will be required to do so. | **10** | Collaborative Applicants must:<br><br>• Demonstrate at least 75 percent of all project applications that include housing activities (e.g., permanent housing, safe haven) their CoC submitted under this NOFO are using the Housing First approach by providing low barrier projects that do not require preconditions to accessing housing nor participation in supportive services for continued tenancy, occupancy, or participation in the project, and prioritize rapid placement and stabilization in permanent housing. This means the projects allow entry to program participants regardless of their income, current or past substance use, history of victimization (e.g., domestic violence, sexual assault, childhood abuse), and criminal record–except restrictions |

DOJ-HUD-AR00114

| | | imposed by federal, state, or local law or ordinance (e.g., restrictions on serving people who are listed on sex offender registries).<br>• Describe tools and methods their CoC used outside of the local CoC competition rating and ranking process to regularly evaluate and ensure all projects that commit to following a Housing First approach in their project applications are maintaining fidelity to a Housing First approach in project implementation. Collaborative Applicants must attach an example of such an evaluation.<br>• Describe the steps their CoC is taking to improve fidelity to Housing First approaches in the projects that the CoC identifies as using a Housing First model during and outside of the CoC Program competition. |
|---|---|---|
| ***j. Street Outreach.*** Has implemented outreach procedures to ensure all persons experiencing homelessness are aware of the housing and services providers within the CoC's geographic area. | **3** | Collaborative Applicants must:<br><br>• demonstrate that between FY 2022 and FY 2023 their CoC increased the rate at which persons exiting street outreach projects exit to positive housing destinations as reported in HDX (1 of 3 points); and<br>• describe how street outreach is tailored to reach those that are least likely to request assistance (2 of 3 points). |
| ***k. Criminalization.*** Implement specific strategies to prevent the criminalization of homelessness within the CoC's geographic area. | **2** | Collaborative Applicants must indicate their CoC's specific strategies to:<br>(1) increase utilization of co-responder responses or social services-led responses over law enforcement responses to people experiencing homelessness,<br>(2) minimize use of law enforcement to enforce bans on public sleeping, public camping, or carrying out basic life functions in public places, and<br>(3) avoid the imposition of criminal sanctions, including fines, fees, and carceral punishment for public sleeping, |

DOJ-HUD-AR00115

| | | public camping, and carrying out basic life functions in public places.<br>This can include the adoption and implementation of community-wide laws or ordinances, policies, and practices for addressing unsheltered homelessness that prioritize the health, safety, and civil rights of unsheltered people. |
|---|---|---|
| *l. Rapid Rehousing.* Demonstrate an increase, in the number of rapid rehousing beds available as recorded on the 2024 HIC data submitted to HUD, or that an increase is not needed. | **9** | Collaborative Applicants must demonstrate an increase in the number of rapid rehousing beds in their CoC's geographic area as reported in the 2024 HIC submitted in HDX 2.0;<br><br>**OR**<br><br>    clearly demonstrate the number of rapid rehousing beds in the CoC's geographic area sufficiently meeting the needs for this type of housing, which will be verified against information in the most recent PIT and HIC data reported in HDX 2.0;<br><br>**OR**<br><br>    demonstrate using Annual Performance Report or other longitudinal data from HMIS or a comparable database that more households entered permanent housing through RRH programs (including have a recorded move-in date for the RRH program) in the most recent 12-month period covered by the Annual Performance Reports or other longitudinal data from HMIS compared to the previous 12-month period. |
| *m. Mainstream Benefits and Other Assistance.* The CoC provides information and training to CoC Program-funded projects to supplement CoC Program funds with resources from other public and private | **2** | Collaborative Applicants must demonstrate:<br><br>• that at least once a year, their CoC provides training to program staff and trains program staff regarding the following mainstream resources available for program participants within the geographic area: |

DOJ-HUD-AR00116

| | | |
|---|---|---|
| sources, including programs that assist program participants in applying for and receiving mainstream benefits or gaining employment. | | <ul><li>○ Food Stamps</li><li>○ SSI</li><li>○ SSDI</li><li>○ TANF</li><li>○ Substance Use Disorder Programs</li><li>○ Employment Assistance Programs</li></ul><ul><li>how their CoC works with projects to collaborate with healthcare organizations, including those that provide substance use disorder treatment and mental health treatment, to assist program participants with receiving healthcare services, including Medicaid; and</li><li>how their CoC promotes SOAR certification among program staff, unless the CoC is in a U.S. Territory where SSI/SSDI benefits are federally prohibited.</li></ul> |
| ***n. Partnerships with Public Health Agencies.*** The CoC coordinates with state and local public health agencies to respond to and prevent infectious disease outbreaks among people experiencing homelessness. | 5 | Collaborative Applicants must demonstrate their CoC:<ul><li>effectively collaborates with state and local public health agencies to develop CoC-wide policies and procedures to respond to and prevent infectious disease outbreaks among people experiencing homelessness; and</li><li>effectively shares information related to public health measures and homelessness; and</li><li>facilitates communication between public health agencies and homeless service providers to ensure street outreach providers and shelter and housing providers are equipped to prevent or limit infectious disease outbreaks among program participants.</li></ul> |
| ***o. Coordinated Entry System and Affirmatively Furthering Fair Housing (AFFH).*** The CoC has an effective coordinated entry system | 6 | Collaborative Applicants must demonstrate their CoCs' coordinated entry system:<ul><li>can serve everybody in the CoC's geographic area regardless of where they are located;</li></ul> |

DOJ-HUD-AR00117

| | | |
|---|---|---|
| and has implemented affirmative marketing procedures to ensure all persons seeking assistance are informed of their rights and remedies under federal, state, and local fair housing and civil rights laws. | | <ul><li>affirmatively markets housing and services available within the CoC's geographic area and ensures it reaches all persons experiencing homelessness and specifically seeking out historically underserved populations;</li><li>reaches people who are least likely to apply in the absence of special outreach;</li><li>informs each program participant of their rights and remedies available under federal, State and local fair housing and civil rights laws.</li><li>reports any conditions or actions that impede fair housing choice for current or prospective program participants to the jurisdiction that provided the Certification of Consistency with the Consolidated Plan;</li><li>uses a standardized assessment process and assessment tool and collects personal information in a trauma informed way;</li><li>prioritizes persons most in need of assistance and ensures that permanent housing is rapidly obtained consistent with participants' needs and preferences;</li><li>takes steps to reduce burdens on people utilizing coordinated entry, including any invasive questions or complexity in the assessment processes;</li><li>engages with a broad range of organizations (e.g., local government, law enforcement, CDBG/HOME/ESG entitlement jurisdictions, affordable housing developers, early childhood programs, education authorities, mental health organizations.) that participate in the coordinated entry system and provide data or guidance for the community's chosen prioritization process; and</li><li>is updated at least annually using feedback received from participating projects and households that participated in coordinated entry.</li></ul> |
| ***p. Advancing Racial Equity in Homelessness.*** | **6** | Collaborative Applicants must describe: |

DOJ-HUD-AR00118

| | | |
|---|---|---|
| The CoC has assessed racial disparities in the provision or outcome of homeless assistance and taken the necessary steps to address such disparities. | | • how their CoC analyzed data to determine whether any racial disparities are present in the provision or outcomes of homeless assistance;<br>• the data (qualitative or quantitative) their CoC used to analyze whether any racial disparities are present in the provision or outcomes of homeless assistance;<br>• their CoC's targeted strategies and resources identified in the provision or outcomes of homeless assistance;<br>• their CoC's plans for ongoing evaluation of system-level processes, policies, and procedures; and<br>• their CoC's plan for continuous evaluation of racial disparities to effectively track progress on preventing or eliminating disparities in the provision or outcomes of homeless assistance.<br><br>Any actions taken must be consistent with federal nondiscrimination requirements |
| *q. Involving Individuals with Lived Experience of Homelessness in Service Delivery and Decision-Making and Provide Professional Development and Employment Opportunities.* The CoC has included persons with lived experience are of homelessness in the CoC's decision-making process, and the CoC encourages CoC members to provide professional development and employment opportunities to people experiencing homelessness. | 5 | Collaborative Applicants must demonstrate:<br><br>• their CoC's outreach efforts (e.g., social media announcements, targeted outreach) to engage those with lived experience of homelessness in leadership roles and decision-making processes;<br>• individuals with lived experience of homelessness participate in their CoC's committees, subcommittees, or workgroups;<br>• individuals with lived experience of homelessness are routinely included in decision-making processes of their CoC related to addressing homelessness (e.g. minutes from CoC or CoC Subcommittee meetings show people with lived experience are involved in decision-making);<br>• individuals with lived experience of homelessness are included in the |

DOJ-HUD-AR00119

development, or revision, of their CoC's local competition rating factors;

- individuals with lived experience of homelessness are included in the development of their CoC's coordinated entry process.
- professional development (e.g. internships, continuing education, skill-based training) and employment opportunities are provided to individuals with lived experience of homelessness either within their CoC or by CoC's membership organizations;
- feedback is routinely gathered from people experiencing homelessness and people who have received assistance through their CoC or ESG program on their experience receiving assistance and the steps their CoC takes to address challenges raised by people with lived experience of homelessness.
- a lived experience support letter signed by either (1) at least three members involved in a working group (e.g., advisory committee, subcommittee) comprised of individuals with lived experience **or** (2) an authorized representative of the workgroup (e.g., a working chair) along with evidence that the person is authorized to represent the group, **or** (3) individual letters signed by three individuals who are involved on different committees; and the letter must demonstrate support of the priorities for serving individuals and families experiencing homelessness with severe service needs in the CoC's geographic area—persons with lived experience may sign letters using pseudonyms to protect their privacy; and
- persons with lived experience must have current knowledge of homeless crisis response systems (this can be experience and/or professional understanding).

DOJ-HUD-AR00120

| | | Full points are available if there is more than one person with lived experience of homelessness engaged in local CoC planning and at least one person with lived experience came from an unsheltered situation. |
|---|---|---|
| **r. Section 3 Requirements for CoCs.** CoCs submitting new project applications that include funding requests for new construction or rehabilitation activities must complete a series of questions that address the actions taken by project applicants to comply with Section 3 as described in the "To Receive Maximum Points" column. HUD will deduct 2 points from a CoC's overall score if the information provided is insufficient to meet the required criteria.<br><br>If a CoC does not have new project applications that include new construction or rehabilitation, these criteria do not apply.<br><br>Grants to Indian Tribes are subject to Indian Preference under Section 7(b) of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 5307(b)) and are not subject to Section 3 requirements. | **-2** | For project applicants that plan to use funding for construction or rehabilitation, HUD will deduct 2 points from the CoC's overall score, unless the Collaborative Applicant includes information that describes the actions that will be taken by project applicants that receive CoC Program funding to comply with section 3 of the Housing and Urban Development Act of 1968 (12 U.S.C. 1701u) (Section 3) and HUD's implementing rules at 24 CFR part 75 to:<br><br>• provide employment opportunities for low- and very low-income persons (Section 3 residents);<br>• training opportunities for low- and very low-income persons (Section 3 residents); and<br>• and to award contracts to businesses that are owned by or substantially employ those persons (Section 3 businesses).<br><br>Self-certified Section 3 businesses in your locality may be found at www.hud.gov/sec3biz. This does not affect the applicants' existing responsibilities to provide training, employment, and other economic opportunities pursuant to Section 3 that result from their receipt of other HUD funding. |
| **s. Increasing Affordable Housing Supply.** The | **1** | Collaborative Applicants must describe at least two steps their CoC has taken in the past 12 |

| | | |
|---|---|---|
| CoC has taken steps to work with jurisdictions within their geographic area to reduce barriers to housing development and increase the supply of affordable housing. | | months to engage city, county, or state governments within their geographic area regarding:<br>• reforming zoning and land use policies to permit more housing development; or<br>• reducing regulatory barriers to housing development. |

**2. Project Capacity, Review, and Ranking.** HUD will award up to 28 points to CoCs that demonstrate the existence of a single coordinated, inclusive, and outcome-oriented community process for the solicitation, objective review, ranking, and selection of project applications, that includes reviewing and a process by which renewal projects, except expiring YHDP Renewals and YHDP Replacements, are reviewed for performance and compliance with 24 CFR part 578. HUD will award maximum points for the Ranking and Selection Process in this section to CoCs with the project(s) that have been covered by a major disaster, as declared by the President under Title IV of the Robert T. Stafford Act, that occurred in the 12 months prior to the application deadline for the FY 2024 – FY 2025 CoC Consolidated Application. To receive consideration for such a major disaster, the Collaborative Applicant must notify HUD in writing before the application deadline and must include information about how the disaster affected the Collaborative Applicant's ability to meet the criteria in 2.g below. The notification must be sent to Norm Suchar, Director, Office of Special Needs Assistance Programs, at CoCDisaster@hud.gov.

| Rating Factor | Maximum Points | To Receive Maximum Points |
|---|---|---|
| ***a. Objective Criteria.*** Demonstrate the use of objective criteria to review project applications requesting CoC Program funding. | **4** | Collaborative Applicants must demonstrate their CoC publicly notified applicants in advance and used objective criteria to evaluate applications in the local competition:<br>• up to 1 of the 4 points for attaching their CoC's local scoring and rating criteria, including point values, that was publicly posted at the time the CoC notified the public it was accepting applications.<br>• up to 1 of the 4 points based on their CoC's use of objective criteria (e.g., cost-effectiveness, type of population served, type of housing proposed; commitment to Housing First);<br>• up to 1 of the 4 points where their CoC used objective criteria that accounted for at least 33 percent of the total points available for project applications; and |

DOJ-HUD-AR00122

| | | |
|---|---|---|
| | | • up to 1 of the 4 points for use of more than one objective criterion. <br><br> CoCs may receive full points for this criterion if they only use system performance measures to meet the objective criteria for rating, selection, and ranking project applications provided it accounts for 33 percent of the total points available for project applications. |
| **b. Using System Performance Measures.** Demonstrate the use of CoC Program required system performance measures to review project applications requesting CoC Program funding. | **9** | Collaborative Applicants must demonstrate their CoC publicly notified applicants in advance of the local competition and used criteria based on system performance measures: <br><br> • up to 2 of the 9 points for attaching their CoCs' local scoring and rating criteria, including point values, that included outcome measures related to CoC system performance measures; <br> • up to 3 of the 9 points based on their CoC's use of system performance measures s (e.g., returns to homelessness, jobs and income growth, etc.) in their local review, selection, rating process; <br> • up to 2 of the 9 points where their CoC used system performance measures to account for at least 20 percent of the total points available for project applications; and <br> • up to 2 of the 9 points if their CoCs used more than one system performance measure. |
| **c. Comparable Databases to Evaluate Domestic Violence Providers.** Victim service providers are required to use comparable databases in lieu of HMIS to collect the required Universal Data Elements and CoC Program system performance measures. | **1** | Collaborative Applicants must demonstrate their CoC requires organizations serving individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking to submit performance data, including comparable database data if the provider is a victim service provider. |

| | | |
|---|---|---|
| ***d. Rapid Return to Permanent Housing and Severity of Barriers Experienced by Program Participants.*** The CoC collects and analyzes data on program participants in permanent housing and uses data on the severity of barriers experienced by a project's program participants when ranking project performance related to obtaining and maintaining permanent housing. | **4** | Collaborative Applicants must:<br><br>• explain how their CoC collects and analyzes data regarding each project that has successfully housed program participants in permanent housing;<br>• explain how their CoC analyzes data regarding how long it takes to house people in permanent housing;<br>• explain how their CoC considers the severity of barriers (e.g., substance use, history of domestic violence, criminal history), experienced by program participants preventing rapid placement in permanent housing or the ability to maintain permanent housing when rating, selecting, and ranking projects; and<br>• list the severe barriers their CoCs considered. |
| ***e. Advance Racial Equity in the local CoC Process.*** Demonstrate how the CoC is advancing racial equity when reviewing applications. Any actions taken must be consistent with federal nondiscrimination requirements. | **4** | Collaborative Applicants must demonstrate their CoC's:<br><br>• efforts to obtain input and include persons of different races and ethnicities, particularly those over-represented in the local homelessness population, have impacted how their CoC has determined the rating factors used to review project applications;<br>• inclusion of persons of different races and ethnicities, particularly those over-represented in the local homelessness population, in the review, selection, and ranking process; and<br>• process for rating and ranking projects based on the degree the projects identified any barriers to participation (e.g., lack of outreach) faced by persons of different races and ethnicities, particularly those over-represented in the local homelessness population, and has taken or will take steps to eliminate the identified barriers. |

DOJ-HUD-AR00124

| | | |
|---|---|---|
| **f. Reallocating Projects.** Demonstrate that the CoC either reallocates funding from lower performing projects to create new higher performing projects or has a process to review the performance of existing projects and reallocate funding from lower performing projects to higher performing projects. | **3** | Collaborative Applicants must demonstrate:<br><br>• their CoC actively reviews the performance of existing CoC Program-funded projects and have a standard process for reallocating funding from lower performing projects to create new high performing projects;<br><br>**OR**<br><br>• they have cumulatively reallocated at least 20 percent of their CoC's ARD between the FY 2019 and FY 2024 CoC Program Competitions. |
| **g. Ranking and Selection Process.** Demonstrate the use of an objective ranking and selection process for project applications that is publicly announced by the CoC. | **3** | Collaborative Applicants must:<br><br>• demonstrate a post to their CoC's websites or a CoC member organization's website of the 30-day deadline for project applications that is no later than 30 days before the FY 2024 CoC Program Funding Opportunity submission deadline of October 30, 2024—the posting and the deadline(s) must be on a landing page;<br><br>• attach a listing of all projects submitted to HUD from their CoC's local competition that includes all projects their CoC considered during their local competition: (1) the final score, (2) project rank, (3) accepted or rejected status, (4) funding amounts, (5) reallocated funds added to or subtracted from projects listed;<br><br>• demonstrate it sent email notifications outside of *e-snaps*, to project applicants that submitted their project applications to their CoC by the CoC-established deadline, whether their project application(s) will be accepted and ranked, rejected, or reduced on the CoC Priority Listing no later than 15 days before the FY 2024 CoC Program Funding Opportunity application submission deadline, and where a project |

DOJ-HUD-AR00125

|  |  | application is being rejected or reduced, the CoC must indicate the reason(s) for the rejection or reduction; and |
|  |  | • demonstrate a post on their CoC's website, or a CoC member organization's website, at least 2 days before the FY 2024 CoC Program Funding Opportunity application submission deadline, the CoC Application, including the attachments, and the Priority Listings, and |
|  |  | • demonstrate it sent email notifications to CoC's members and key stakeholders that the CoC Consolidated Application is available—the evidence submitted must include a visible list of all CoC members and stakeholders the email is sent to. |

**3. Homeless Management Information System.** HUD will award up to 9 points to CoCs that demonstrate the existence of a functioning HMIS, and that victim service providers use comparable databases, that facilitate the collection of information on homelessness using residential and other homeless services and stores that data in an electronic format. Collaborative Applicants must attach their CoC's FY 2024 HDX Competition Report as evidence of when they submitted data in HDX and what data was submitted. HUD will rely on data in HDX to validate those responses and data.

| Rating Factor | Maximum Points | To Receive Maximum Points |
|---|---|---|
| **a. Housing Inventory Count (HIC).** Submit complete HIC data in a timely manner. | 1 | Submitted 2024 HIC data in HDX 2.0 by the submission deadline of 8:00 PM EDT on May 10, 2024 or an alternate date approved by HUD. |
| **b. Comparable Database for DV Providers.** Have in place, developing, or coordinating a comparable database with victim service providers to collect required data elements for reporting de-identified information to the CoC. | 2 | Collaborative Applicants must demonstrate the actions their CoC and HMIS Lead are taking to directly support victim service providers to collect data in a database that meets HUD's comparable database requirements, including the FY 2024 HMIS Data Standards. |
| **c. Bed Coverage.** The bed coverage rate for the housing types within the | 4 | Collaborative Applicants must demonstrate at least 85 percent of the beds in their CoC's geographic area are covered in HMIS and |

| | | |
|---|---|---|
| CoC that includes emergency shelter, Safe Haven, transitional housing, rapid rehousing, and permanent supportive housing. | | comparable databases. The bed coverage rate is the number of HMIS and comparable database participating beds divided by the number of year-round beds dedicated to persons experiencing homelessness in the geographic area covered by the CoC.<br><br>To receive partial credit, if the bed coverage rate is below 85 percent, Collaborative Applicants must provide clear steps on how their CoC intends to increase this percentage over the next 12 months.<br><br>CoCs that merged between the FY 2023 CoC Program Registration process and the FY 2024 CoC Program Registration process will have their bed coverage rates calculated based on the higher of:<br><br>    the bed coverage rate reported by the combined, newly merged CoC in the 2023 or 2024 HIC;<br><br>**OR**<br><br>    the highest bed coverage rate reported by one of the merged CoCs as constituted before the merger in the FY 2023 CoC Program Competition.<br><br>To receive consideration as a merged CoC, new CoCs must contain all the geographic area of at least two CoCs that were awarded funds under the FY 2022 CoC Program Competition and submitted separate applications in the FY 2023 CoC Program Competition. |
| ***d. Longitudinal Systems Analysis (LSA) Submission.*** Submit usable 2023 LSA data in a complete and timely manner. | 2 | Collaborative Applicants must demonstrate their CoC submitted their LSA data in HDX 2.0 by the submission deadline of January 24, 2024, 11:59 PM EST, or an alternate date approved by HUD; and HUD determined that there were at least 2 usable files. |

**4. Point-in-Time Count.** HUD will award up to 5 points to CoCs that collect, use, and submit data from the 2024 PIT count. Collaborative Applicants must attach their CoC's FY 2024 HDX Competition Report as evidence of when they submitted data in HDX and what data was submitted. HUD will rely on data in HDX to validate those responses and data.

| Rating Factor | Maximum Points | To Receive Maximum Points |
|---|---|---|
| *a. PIT Count and Data Submission.* Conduct a PIT count and report the data in HDX. | 3 | Collaborative Applicants must demonstrate their CoCs conducted a sheltered and unsheltered PIT counts during the last 10 days in January 2024, or if an exception was provided by HUD, during the time period agreed upon by the CoC and HUD; and<br><br>Submitted the 2024 PIT count data in HDX 2.0 by May 10, 2024, 8:00 PM EDT, or an alternate date approved by HUD. |
| *b. Effectively Count Youth.* Implement specific measures to identify youth in the CoC's PIT count. | 2 | Collaborative Applicants must demonstrate that during the planning process for the 2024 PIT count, their CoC:<br><br>• Engaged stakeholders that serve youth experiencing homelessness (including unaccompanied youth);<br>• involved youth experiencing homelessness in the actual count; and<br>• worked with stakeholders to select locations where youth experiencing homelessness are most likely to be identified. |

**5. System Performance.** HUD will award up to 60 points to CoCs for system-wide performance related to reducing homelessness. Collaborative Applicants must attach their CoC's FY 2024 HDX Competition Report as evidence of when they submitted data in HDX and what data was submitted. HUD will rely on data in HDX to validate those responses and data.

| Rating Factor | Maximum Points | To Receive Maximum Points |
|---|---|---|
| *a. Reducing the Number of Homeless Individuals and Families.* Up to 1 point to CoCs that demonstrate an overall reduction of at least 5 | 12 | • Up to 2 of the 12 points for demonstrating a decrease of at least 5 percent in the number of sheltered homeless individuals and families in the 2024 PIT count compared to the 2023 PIT count as recorded in HDX, excluding |

DOJ-HUD-AR00128

| percent in the number of individuals and families who experience homelessness. | | emergency shelter beds added for a Presidentially declared disaster and recorded as such in HDX;<br>• Up to 7 of the 12 points for demonstrating a decrease of at least 5 percent in the number of unsheltered homeless individuals and families in the 2024 PIT compared to the 2023 PIT count (or most recent unsheltered PIT count submitted) as recorded in HDX; and<br>• Up to 3 of the 12 points for demonstrating a decrease of at least 5 percent in the combined number of sheltered and unsheltered homeless individuals and families in the 2024 PIT compared to the 2023 PIT count (or most recent PIT count submitted with both sheltered and unsheltered data) as recorded in HDX.<br><br>HUD will consider the impact of persons displaced by natural disasters (including displaced in the CoC's geographic area) and displaced persons seeking short-term shelter or housing assistance who recently arrived in your CoCs' geographic area <u>if the CoC demonstrates that those factors affected their performance on this rating factor.</u> |
| **b. Reduction in the Number of First-Time Homeless.** Demonstrate how the CoC works to reduce the number of individuals and families who become homeless for the first time. | 3 | Collaborative Applicants must demonstrate that between FY 2022 and FY 2023 their CoC reduced the number of first-time homeless as reported in HDX (1 of the 3 points);<br><br>HUD will consider the impact of persons displaced by natural disasters (including displaced in the CoC's geographic area) and displaced persons seeking short-term shelter or housing assistance who recently arrived in your CoCs' geographic area if the CoC demonstrates that those factors affected their performance on this rating factor.<br><br>Collaborative Applicants must: |

DOJ-HUD-AR00129

| | | |
|---|---|---|
| | | • identify the process by which risk factors are identified in its community for becoming homeless for the first time;<br>• describe the strategies in place to address individuals and families at risk of becoming homeless; and<br>• identify the organization or position that is responsible for overseeing the CoC strategy to reduce or end the number of people experiencing homelessness for the first time. |
| ***c. Length of Time Homeless.*** Reduce the length of time individuals and families remain homeless and describe how they will reduce the length of time individuals and families remain homeless in the future. | **13** | Collaborative Applicants must:<br><br>• demonstrate that between FY 2022 and FY 2023 their CoC reduced the average length of time individuals and families remained homeless in their CoC's geographic area of at least 5 percent or that the CoC's average length of time homeless was 90 days or less as reported in HDX (8 of 13 points);<br>• describe their CoC's strategy to reduce the length of time individuals and families remain homeless;<br>• describe how their CoC identifies and houses individuals and families with the longest length of time homeless; and<br>• identify the organization or position that is responsible for overseeing their CoC's strategy to reduce the length of time individuals and families remain homeless. |
| ***d. Successful Permanent Housing Placement or Retention.*** Demonstrate an increase in the rate in which individuals and families move to permanent housing destinations or continue to reside in PH projects and describe how the CoC will improve their rate of | **13** | Collaborative Applicants must:<br><br>• demonstrate that between FY 2022 and FY 2023 their CoC increased the rate at which persons exiting emergency shelter, TH, Safe Haven, and RRH projects exit to permanent housing destinations by at least 2 percentage points (e.g. from 36% to 38%) or that the rate of exits to permanent housing destinations was 50 |

| | | |
|---|---|---|
| permanent housing placement. | | percent or higher as reported in HDX (up to 6 of the 13 points);<br>• demonstrate that between FY 2022 and FY 2023 their CoC increased the rate at which persons residing in permanent supportive housing or other permanent housing, excluding rapid rehousing, exited to permanent housing destinations by at least 1 percentage point (e.g. from 92% to 93%) or that rate of retention of or exits to permanent housing destinations was 96 percent or higher as reported in HDX (up to 3 of the 13 points);<br>• describe the strategy their CoC is taking to improve permanent housing placement and retention; and<br>• identify the organization or position that is responsible for overseeing their CoC's strategy to increase permanent housing placements or retain housing for individuals and families residing in permanent housing. |
| ***e. Returns to Homelessness.*** Reduce the extent to which individuals and families leaving homelessness experience additional spells of homelessness and describe how the number of individuals and families who return to homelessness will be reduced in the community. | **8** | Collaborative Applicants must:<br><br>• demonstrate that between FY 2022 and FY 2023 their CoC reduced the rate at which persons who exited to permanent housing destinations experienced additional spells of homelessness within 6 months of exit by at least 1 percentage point (e.g., from 10% to 9%) or that the CoC's rate of return in 6 months was 5 percent or less as reported in HDX (up to 3 of the 8 points):<br>• demonstrate that between FY 2022 and FY 2023 their CoC reduced the rate at which persons who exited to permanent housing destinations experienced additional spells of homelessness within 12 months by at least 1 percentage point (e.g., from 15% to 14%) or that the CoC's rate of return in 12 months was 10 percent or less as reported in HDX (up to 3 of the 8 points): |

DOJ-HUD-AR00131

| | | |
|---|---|---|
| | | • describe the strategy their CoC implemented to identify individuals and families who return to homelessness; <br> • describe the strategy that will reduce returns to homelessness; and <br> • identify the organization or position that is responsible for overseeing the CoC's strategy to reduce returns to homelessness. |
| *f. Jobs and Income Growth.* Increase program participants' incomes from employment and non-employment cash sources and describe specific strategies to assist program participants' incomes. | 7 | Collaborative Applicants must: <br><br> • demonstrate that between FY 2022 and FY 2023 their CoC increased the percentage of CoC Program participants who had an increase in income from employment or that the rate of income from employment in the CoC was 20 percent or higher as reported in HDX (2 of the 7 points); <br> • demonstrate that between FY 2022 and FY 2023 their CoC increased the percentage of CoC Program participants who had increased income from non-employment cash sources for persons served in CoC Program-funded projects or that the rate of income from non-employment cash sources in the CoC was 50 percent or higher as reported in HDX (2 of the 7 points); <br> • describe the strategy their CoCs implemented to access employment and non-employment cash sources; <br> • describe how their CoCs are working with mainstream employment organizations to help individuals and families experiencing homelessness increase their cash income; and <br> • identify the organization or position that is responsible for overseeing their CoC's strategy to increase jobs and income growth from employment and non-employment cash sources, including mainstream employment organizations. |

DOJ-HUD-AR00132

| | | |
|---|---|---|
| **g. HMIS Performance Measures.** Submit data quality report that describes the data quality for system performance | **4** | Collaborative Applicants must demonstrate their CoC submitted FY 2023 System Performance Measures data in HDX 2.0 by the submission deadline of 6:00 PM EDT on March 13, 2024, or an alternate date approved by HUD. |

**6. Coordination with Housing and Healthcare.** As stated in section I.B.3.c of this NOFO, HUD will award up to 14 points to CoCs that submit new PSH and RRH project applications demonstrating coordination with housing providers and healthcare organizations.

| Rating Factor | Maximum Points | To Receive Maximum Points |
|---|---|---|
| **a. Leveraging Housing Resources.** These points are available for CoCs that apply for at least one new PSH or RRH project that utilizes housing subsidies or subsidized housing units not funded through the CoC or ESG programs. Housing subsidies or subsidized housing units may be funded through any of the following sources:<br><br>• Private organizations;<br>• State or local government, including through the use of HOME funding provided through the American Rescue Plan;<br>• Public Housing Agencies, including through the use of a general or limited preference;<br>• Faith-based organizations; or | **7** | CoC's will receive full points by demonstrating that they have applied for at least one PSH or RRH project that utilizes housing subsidies or subsidized housing units not funded through the CoC or ESG programs. Collaborative Applicants must demonstrate that these housing units will:<br><br>1. in the case of a PSH project, provide at least 25 percent of the units included in the project; or<br>2. in the case of a RRH project, serve at least 25 percent of the program participants anticipated to be served by the project.<br><br>CoCs must attach letters of commitment, contracts, or other formal written documents that demonstrate the number of subsidies or units being provided to support the project.<br><br>CoCs can receive less than full points for demonstrating commitments less than the threshold described above. |

| | | |
|---|---|---|
| Federal programs other than the CoC or ESG programs. | | |
| **b. Leveraging Healthcare Resources.** These points are available for CoCs that apply for at least one PSH or RRH project that utilizes healthcare resources to help individuals and families experiencing homelessness. Sources of health care resources include:<br>• Direct contributions from a public or private health insurance provider to the project (e.g., Medicaid), and<br>• Provision of health care services by a private or public organization (e.g., Ryan White funded organization) tailored to the program participants of the project.<br><br>Eligibility for the project must comply with HUD program and fair housing requirements. Eligibility criteria cannot be restricted by the eligibility requirements of the health care service provider. | 7 | Collaborative Applicants must demonstrate through a written commitment from a health care organization that:<br><br>1. in the case of a substance use disorder treatment or recovery provider, it will provide access to treatment or recovery services for all program participants who quality and choose those services; or<br>2. the value of assistance being provided is at least an amount that is equivalent to 25 percent of the funding being requested for the project, which will be covered by the healthcare organization.<br><br>Acceptable forms of commitment are formal written agreements and must include:<br><br>• value of the commitment, and<br>• dates the healthcare resources will be provided.<br><br>In-kind resources must be valued at the local rates consistent with the amount paid for services not supported by grant funds.<br><br>CoCs can receive less than full points for demonstrating commitments less than the threshold described above. |

**7. CoC Merger Bonus Points.** As stated in section I.B.2.b.(4) of this NOFO, HUD will award up to a possible 25 bonus points to CoCs that merged in the period between FY 2023 and FY 2024 CoC Program Registration deadlines based on the following structure. The minimum number of bonus points a merged CoC may receive is 5 with the maximum number of points available at 25.

DOJ-HUD-AR00134

| Rating Factor | Maximum Points | To Receive Maximum Points |
|---|---|---|
| *a. Merged CoCs between FY 2023 CoC Program Registration and FY 2024 CoC Program Registration.* | **5** | Merged CoCs - all CoCs that merged will receive this minimum number of points. |
| *b. CoC Application score in FY 2022 or FY 2023.* | **10** | One or more of the merged CoCs had a CoC Application score of 140 points or below in the FY 2022 or FY 2023 CoC Program Competitions. HUD will review the FY 2022 and FY 2023 CoC Applications and award 10 bonus points if at least one of the merged CoCs meet this criterion. |
| *c. Point in Time Counts* | **10** | Collaborative Applicants must demonstrate that the results of their Point-in-Time counts reported in the Homelessness Data Exchange (HDX) were affected by changes in methodology that resulted from the merger in a way that would affect their CoC score. To receive these bonus points for mergers, the CoC will need to demonstrate that the merger impacted the CoC's methodology or PIT count implementation. |

## C. Project Review and Selection Process

In addition to the selection criteria rating for the overall CoC Application, described in section V.B. of this NOFO, HUD will conduct a project eligibility and project quality threshold review for FY 2024 and FY 2025 project applicants and project applications. Funding for FY 2025 awards are subject to FY 2025 HUD Appropriations and HUD reserves the right to amend this NOFO to revise the selection and review criteria for FY 2025 funding. For new project applications, HUD will consider project applicant and subrecipient eligibility and capacity, project eligibility, and project quality as part of the threshold review, see sections III.C.4.a. and b. of this NOFO. HUD's renewal project application threshold review will consider project applicant and subrecipient capacity and eligibility as explained in section III.C.4.c of this NOFO. Section III of this NOFO covers eligible project applicants and section IV covers eligible project applications.

HUD may employ rating panels to review and rate all or part of the CoC Applications according to the rating criteria in section V of this NOFO.

**1. Threshold Review.** Project applicant and subrecipient eligibility, capacity, and quality. HUD will review project applications to determine whether project applicants and subrecipients meet the applicant eligibility in section III.A.4, and whether the project applications meet the project eligibility and project quality thresholds detailed in sections III.C.4.a. and b. of this NOFO. HUD

DOJ-HUD-AR00135

will review renewal projects to determine if project applicants and subrecipients meet the project quality threshold requirements detailed in section III.C.4.c of this NOFO. If HUD determines these standards are not met, HUD will reject the project application, unless otherwise provided in this NOFO. If a new project application passes the project eligibility threshold review in section III.C.4.a. and receives enough points to pass the project quality threshold review in section III.C.4.a. of this NOFO but does not receive all the points available for its project type, HUD may place conditions on the grant award that must be satisfied before HUD will execute a grant agreement with the applicant for the project. If an applicant is unable to satisfy the condition(s) within the timeframe specified by HUD, HUD reserves the right to withdraw the conditionally awarded funds.

**2. Conditional Selection and Adjustments to Funding.** HUD Headquarters will conditionally select project applications for funding using the following process:

**a.** As authorized under the Consolidated Appropriations Act, 2017 (Public Law 115-31; 131 Stat. 135) for fiscal year 2017 and hereafter, HUD will conditionally select a renewal grant that exceeds $10 million that was originally awarded pursuant to the matter under the heading "Department of Housing and Urban Development–Permanent Supportive Housing" in chapter 6 of title III of the Supplemental Appropriations Act, 2008 (Public Law 110-252; 122 Stat. 2351).

**b.** *CoC Planning projects.* HUD will conditionally select every CoC Planning project that passes project eligibility and project quality threshold review. Only one CoC Planning project application can be submitted per CoC.

**c.** *UFA Costs projects.* HUD will conditionally select every UFA Costs project submitted by UFA-designated Collaborative Applicants that pass project eligibility and project quality threshold review. Only one UFA Costs project application may be submitted per UFA-designated Collaborative Applicant.

**d. YHDP Renewal projects, and YHDP Replacement projects including YHDP projects created through YHDP Reallocation.** HUD will conditionally select all renewal, and replacement YHDP projects (including those projects created through reallocation) that pass project eligibility and project quality threshold review. YHDP projects that do not meet quality threshold will be conditionally selected with conditions that the recipient correct any project quality threshold failures prior to executing a grant agreement.

**e.** *DV Bonus.* HUD will conditionally select new DV Bonus projects (including new DV Bonus projects that are part of an expansion) that pass project eligibility and project quality threshold in accordance with the criteria established in this NOFO [see section I.B.3.j of this NOFO].

**f.** *Project applications fully in Tier 1.* HUD will conditionally select CoC Renewal, CoC Reallocation, DV Renewal, DV Reallocation, and CoC Bonus project applications that are fully within Tier 1 and pass project eligibility, project quality, and if applicable, project renewal threshold review. HUD will select projects based on CoC score, beginning with the highest scoring CoC to the lowest scoring CoC. As stated in section I.B.3.h.(1) of this NOFO, if the available funding under this NOFO is reduced, a reduction will be made to all CoCs' Tier 1 amount proportionately which would result in lower ranked Tier 1 project applications falling into Tier 2.

DOJ-HUD-AR00136

**g.** ***Projects in Tier 2.*** HUD will conditionally select CoC Renewal, CoC Reallocation, DV Renewal, DV Reallocation, and CoC Bonus project applications that pass project eligibility, project quality, and if applicable, project renewal threshold review in Tier 2 using the criteria in section I.B.3.h.(2) of this NOFO. HUD will select projects in order of point value until there are no more funds available. In the case of a tie, HUD will fund the projects in the order of CoC application score. In case there is still a tie, HUD will select the project from the CoC that has the highest score on the rating factors described in section I.B.3.h.(2) of this NOFO.

**h.** ***Projects that are partially in Tier 1.*** If a project application straddles the Tier 1 and Tier 2 funding line, HUD will conditionally select the project application up to the amount of funding that falls within Tier 1. Using the CoC score, and other factors described in section I.B.3.h of this NOFO, HUD may then fund the Tier 2 portion of the project. If HUD does not fund the Tier 2 portion of the project, HUD may award the project at the reduced amount, provided the project is still feasible with the reduced funding (e.g., is able to continue serving homeless program participants effectively).

**i.** ***Funding Additional Projects.*** Funding for FY 2025 awards are subject to FY 2025 HUD Appropriations and HUD reserves the right to amend this NOFO if additional funding is made available.

**3. Environmental Justice.** HUD may consider environmental justice in evaluating applications. Under E.O.12898, each Federal agency is directed to identify and address disproportionately high and adverse human health or environmental effects of its programs, policies, and activities on minority populations and low-income populations. Click here to view E.O. 12898.

**4. Conflict of Interest of Consultants or Technical Experts Assisting HUD.** Consultants and technical experts who assist HUD in rating and ranking applications for funding under published FY 2024 Program NOFOs are subject to 18 U.S.C. 208, the Federal criminal conflict-of-interest statute, and the Standards of Ethical Conduct for Employees of the Executive Branch regulation published at 5 CFR 2635. Therefore, consultants and technical experts who have assisted or plan to assist applicants with preparing applications for FY 2024 Program NOFOs are prohibited from serving on a selection panel or serving as a technical advisor to HUD. Anyone involved in rating and ranking FY 2024 Program NOFO applications, including departmental staff, experts, and consultants, must avoid conflicts of interest or the appearance of such conflicts. These individuals must also disclose to HUD's Office of General Counsel Ethics Law Division the following information, if applicable:

**a.** How the selection or non-selection of any applicant under a FY Program NOFO will affect the individual's financial interests, as provided in 18 U.S.C. 208, or

**b.** How the application process involves a party with whom the individual has a covered relationship under 5 CFR 2635.502.

The consultant or technical expert assisting HUD must disclose this information before participating in any matter regarding a program NOFO. Applicants with questions regarding these provisions or concerning a conflict of interest should call the Office of General Counsel Ethics Law Division, at (202)708-3815 (this is not a toll-free number). HUD welcomes and is prepared to receive calls from individuals who are deaf or hard of hearing, as well as individuals with speech or communication disabilities. To learn more about how to make an accessible

DOJ-HUD-AR00137

telephone call, please visit https://www.fcc.gov/consumers/guides/telecommunications-relay-service-trs.

## D. Adjustments to Projects

HUD may adjust the selection of competitive projects as follows:

**1. CoC Maximum Award and FMR Adjustments.** The process for determining a CoC's maximum award amount is detailed in 24 CFR 578.17(b). HUD must adjust awards for leasing, operating, and rental assistance BLIs based on changes to the Fair Market Rents (FMR). HUD will make all adjustments for each fiscal year appropriation prior to award announcement. HUD will make these adjustments as follows:

**a.** Funds awarded for rental assistance will be adjusted in one of two ways:

**(1)** Funds awarded for rental assistance in all new and renewal projects requesting the FMR will be adjusted by applying the FMR in effect at the time of application submission to HUD, including instances where the FMR for a specific area has decreased from the previous year.

**(2)** Funds awarded for rental assistance for renewal projects that request less than FMR, that is, a per-unit amount based on the actual rent costs per unit (section III.4.c.(7)), will be increased based on the average increase in FMR amounts within the CoC's geographic area, weighted for population density. If the FMR for a specific area decreased from the previous year, the award will not exceed the FMR after adjustment. If the FMR for the project applicant's entire area decreased from the previous year, the project will be awarded the lesser amount of the per-unit amount requested by the project applicant, based on the actual rent costs per unit, or the FMR after adjustment.

**b.** HUD will increase funds awarded for operating and leasing in PH projects based on the average increase in FMR amounts within the CoC's geographic area, weighted for population density. Because leasing and operating costs do not decrease relative to rent amounts for specific units (e.g., operating costs for 10 units that have rents of $500 are likely the same as for 10 units that have rents that are $450) HUD will not decrease leasing and operating BLIs if FMRs decrease in the geographic area. The operating and leasing BLIs in these projects will remain the same as in the most recent grant agreement or grant agreement amendment.

**2. Cost of Living Adjustment Factor.** HUD will adjust amounts for the supportive services and HMIS Costs budget lines for renewing projects by the following factor:

Most recent three-year average of changes in State Quarterly Census of Employment and Wages (QCEW) for the category Social Assistance (NAICS 624). Data can be found at: https://www.bls.gov/cew/data.htm

**3. Geographic Diversity.** HUD has determined that geographic diversity is an appropriate consideration in selecting homeless assistance projects in the CoC Program Competition. HUD believes that geographic diversity can be achieved best by awarding grants to as many CoCs as possible. To this end, in instances where any of the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, the Northern Mariana Islands, the Virgin Islands, and American Samoa do not have at least one funded CoC, HUD reserves the right to fund eligible project(s) with the highest total score in the CoC.

DOJ-HUD-AR00138

**4. Funding Diversity.** HUD reserves the right to reduce the amount of a grant, if necessary, to ensure that no more than 10 percent of assistance made available under this NOFO will be awarded for projects located within any one unit of general local government or within the geographic area covered by any one CoC.

**5. Tie-breaking Rules.** In the case of a tie, HUD will fund the projects in the order of CoC Application score. In case there is still a tie, HUD will select the project from the CoC that has the highest score on the rating factors described in section V.B.1 of this NOFO. If HUD exercises a right it has reserved under this NOFO, that right will be exercised uniformly across all applications received in response to this NOFO.

## E. Corrections to Deficient Applications

Deficiency is information missing or omitted within a submitted application. Deficiencies typically involve missing documents, information on a form, or some other type of unsatisfied information requirement (e.g., an unsigned form, unchecked box, expansion grant application errors, etc.). As described in section I.B.1 of this NOFO, deficiencies may be either curable or non-curable. Correction of technical deficiencies must be received by HUD within 7 calendar days after notification is received by the applicant from HUD via email. The start of the cure period will be the date stamp on the email HUD sends to the authorized representative as noted in the Project Applicant Profile in *e-snaps*; therefore, it is critical the project applicant's authorized representative's information is accurate. Additionally, HUD reserves the right to respond to unanticipated system defects, ambiguities, and technical difficulties in application submissions in *e-snaps* through a flexible implementation of its authority to cure application deficiencies through written inquires seeking clarification and additional information (also known as callbacks). Upon proper publication in the Federal Register, HUD reserves the right to extend the Competition deadline for good cause.

## F. Other Federal Statutes

CoCs may request approval, in the FY 2024 - 2025 CoC Application, for up to 10 percent of funding for each fiscal year awarded under this NOFO, to serve homeless households with children and youth defined as homeless under other federal statutes who are unstably housed (paragraph 3 of the definition of homeless found at 24 CFR 578.3). Approved CoCs are limited to using only up to 10 percent of the total amount awarded for each fiscal year appropriation to the CoC to serve this population and must determine which project(s) HUD will allow to use some or all their funding for this purpose. The only project types that will be funded in this Competition to serve this population are Transitional Housing, Supportive Services Only, and the Joint TH/PH-RRH component projects.

To be approved to serve this population, CoCs making this request must demonstrate serving this population is of equal or greater priority, which means that it is equally or more cost-effective in meeting the overall goals and objectives of the plan submitted under Section 427(b)(1)(B) of the Act, especially with respect to children and unaccompanied youth, than serving the homeless as defined under paragraphs (1), (2), and (4) of the definition of homeless in 24 CFR 578.3. CoCs must thoroughly describe how the requirements described in Section 427(b)(1)(F) of the Act will be met. Some examples of how a CoC can demonstrate that serving this population is of equal or

DOJ-HUD-AR00139

greater priority than serving those defined as homeless under paragraphs (1), (2), and (4) of the definition of homeless in 24 CFR 578.3 include:

- Evidence that the CoC has adequate resources to house all individuals and families defined as homeless under paragraphs (1) and (4) at 578.3 in their geographic area.
- An analysis that demonstrates that the net public cost (including mainstream resources, resources dedicated to preventing and ending homelessness, such as CoC Program funds, and other municipal funds, such as public works) is reduced if the CoC is able to use CoC Program funds to provide housing and supportive services to those individuals defined as homeless under paragraph (3) at 578.3.
- Evidence that the length of time individuals and families in the CoC's geographic area is low (e.g., less than 30 days) and the CoC has adequate resources to house all people who experience homelessness under paragraphs (1) and (4) at 578.3 within 30 days.

CoCs must identify the specific project(s) that will use funding for this purpose (up to 10 percent of the CoC's total award) by submitting an attachment to the CoC Application in *e-snaps* that must include the following:

- project name(s) as listed on the CoC Priority Listing; and
- amount of funding in the project or per project that will be used for this purpose.

See 24 CFR 578.89 for more information about this limitation.

## VI. AWARD ADMINISTRATION INFORMATION

## A. Award Notices

Following the evaluation process, HUD will notify successful applicants of their selection for funding. HUD will also notify other applicants whose applications were received by the deadline but were not chosen for award. Notifications will be sent by email to the person listed as the Authorized Organizational Representative (AOR) in the applicant profile in *e-snaps*.

### 1. Final Award

After HUD has made selections, HUD will finalize specific terms of the award and budget in consultation with the conditionally selected applicant. HUD may subsequently request conditionally selected applications to submit additional project information which may include documentation to show the project is financially feasible; documentation of firm commitments for match; documentation showing site control; information necessary for HUD to perform an environmental review, where HUD determines to do so in accordance with 24 CFR 58.11(d); a copy of the organization's Code of Conduct; and such other documentation as specified by HUD in writing that confirms or clarifies information provided in the application. HUD will require the submission of the additional project information no later than 30 days after the date of the letter, except as otherwise provided in 24 CFR 578.21(c). If HUD and the conditionally selected applicant do not finalize the terms and conditions of the award in a timely manner, or the conditionally selected applicant fails to provide the requested information within 90 days, an award will not be made to that applicant. In this case, HUD Headquarters may select another eligible applicant. HUD may also impose specific conditions on an award as provided under 2 CFR 200.208.

- Based on HUD's review of the applicant's risk under 2 CFR 200.206;

- When the applicant or recipient has a history of failure to comply with the general or specific terms and conditions of a Federal award;
- When the applicant or recipient fails to meet expected performance goals contained in a Federal award; or
- When the applicant or recipient is not otherwise responsible.

## 2. Adjustments to Funding

To ensure fair distribution of funds and enable the purposes or requirements of a specific program to be met, HUD reserves the right to fund less than the amount requested in an application.

a. HUD will fund no portion of an application that:

   (1) Is ineligible for funding under applicable statutory or regulatory requirements;

   (2) Fails, in whole or in part, to meet the requirements of this notice; or

   (3) Duplicates activities funded by other Federal awards.

b. HUD may adjust the funding for an application to ensure funding diversity, geographic diversity, and alignment with HUD administrative priorities.

c. If an applicant turns down an award offer, or if HUD and an applicant do not finalize the terms and conditions of the award in a timely manner, HUD Headquarters may withdraw the award offer and make an offer of funding to another eligible application.

d. If funds remain after all selections have been made, remaining funds may be made available within the current FY for other competitions within the program area, or be held for future competitions (if allowable in accordance with the applicable appropriation or authorizing statute), or be used as otherwise provided by authorizing statute or appropriation.

e. If, after announcement of awards made under the current NOFO, additional funds become available either through the current appropriations, a supplemental appropriation, other appropriations, or recapture of funds, HUD may, in accordance with the appropriation, use the additional funds to provide additional funding to an applicant awarded less than the requested amount of funds to make the full (or nearer to full) award, and/or to fund additional applicants that were eligible to receive an award but for which there were no funds available.

f. If funds are available after funding the highest-ranking application, HUD Headquarters may fund all or part of another eligible fundable application.

## 3. Funding Errors

If HUD commits an error that, when corrected, would cause selection of an applicant during the funding round of a Program NOFO, HUD may select that applicant for funding, subject to the availability of funds. If funding is not available to award in the current fiscal year, HUD may make an award to this applicant during the next fiscal year if funding is available.

## 4. Approval from HUD Headquarters is required before a grant awarded under this NOFO may be transferred.

DOJ-HUD-AR00141

Under this NOFO, HUD will treat the change of project applicant as a curable deficiency. This occurs when a Recipient of a FY 2023 CoC grant award applies to renew their award under this NOFO and during the period between applying and before HUD announces awards, with HUD approval a grant transfer of the FY 2023 grant is executed with a New Recipient. This grant transfer results in a FY 2024 CoC renewal application that does not reflect the New Recipient as the applicant. In this type of situation, HUD will treat the change of project applicant as a curable deficiency.

## B. Administrative, National and Departmental Policy Requirements and Terms for HUD's Financial Assistance Programs

Unless otherwise specified, the following requirements apply and are detailed on HUD's Funding Opportunity page in the document titled, "Administrative, National & Departmental Policy Requirements and Terms for HUD Financial Assistance – 2024." You must review each requirement to ensure compliance is considered when preparing your application materials (staff, budget, timeline). Failure to comply with these requirements may impact your ability to receive or retain a financial assistance award from HUD.

1. Compliance with The Fair Housing Act (42 U.S.C. 3601-3619) and implementing regulations at 24 CFR part 100 et seq

2. Compliance with Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d-2000d-4)(Nondiscrimination in Federally Assisted Programs) and implementing regulations at 24 CFR part 1

3. Compliance with the Age Discrimination Act of 1975 (42 U.S.C. 6101-6107) and implementing regulations at 24 CFR part 146

4. Compliance with Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) and implementing regulations at 24 CFR part 8

5. Compliance with the Americans with Disabilities Act, 42 U.S.C. 12101 et seq

6. Compliance with Affirmatively Furthering Fair Housing (AFFH) requirements, including 24 CFR 5.150 et seq

7. Compliance with Economic Opportunities for Low-and Very Low-income Persons (12 U.S.C. 1701u) requirements, including those listed at 24 CFR part 75

8. Compliance with Improving Access to Services for Persons with Limited English Proficiency (LEP) requirements, including those listed within Federal Register Notice, FR-4878-N-02 (also see HUD's webpage)

9. Compliance with Accessible Technology requirements, including those listed in HUD's Policy on Section 508 of the Rehabilitation Act and Accessible Technology

10. Compliance with Equal Access Requirements (e.g., 24 CFR 5.105(a)(2) and 5.106)

11. Compliance with Ensuring the Participation of Small Disadvantaged Business, and Women-Owned Business requirements at 2 CFR 200.321

12. Compliance with Energy Efficient and Sustainable by Design

DOJ-HUD-AR00142

13. Compliance with Uniform Relocation Assistance and Real Property Acquisition Policies Act (42 USC 4601 et seq.) (URA) requirements, 49 CFR part 24, and applicable program regulations

14. Compliance with Participation in HUD-Sponsored Program Evaluation

15. Compliance with OMB Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (2 CFR part 200). Awards made from this NOFO will conform with the updated 2 CFR 200 regulations that go into effect on October 1, 2024.

16. Compliance with Drug-Free Workplace requirements (2 CFR part 2429)

17. Compliance with the requirements related to safeguarding resident/client files (e.g., 2 CFR 200.303(e))

18. Compliance with the Federal Funding Accountability and Transparency Act of 2006 (2 CFR part 170) (FFATA), as amended

19. Compliance with Eminent Domain

20. Compliance with Accessibility for Persons with Disabilities requirements, including 24 CFR parts 8 and 100; 28 CFR part 35

21. Compliance with applicable Violence Against Women Act requirements in the Housing Chapter of VAWA, 34 U.S.C. 12491-12496, 24 CFR part 5, subpart L, and program-specific regulations, if applicable

22. Compliance with Conducting Business in Accordance with Ethical Standards/Code of Conduct, including 2 CFR 200.317, 2 CFR 200.318(c) and other applicable conflicts of interest requirements

23. Compliance with the Build America, Buy America (BABA) Act procurement requirements

24. Compliance with System for Award Management and Universal Identifier Requirements at 2 CFR part 25

25. Compliance with section 106(g) of the Trafficking Victims Protection Act of 2000 (TVPA), as amended (22 U.S.C. 7104(g)) and implementing regulations at 2 CFR part 175 (Award Term for Trafficking in Persons)

26. Compliance with Award Term and Condition for Recipient Integrity and Performance Matters (see Appendix XII to 2 CFR part 200)

27. Compliance with Suspension and Debarment regulations (2 CFR part 2424 and 2 CFR part 180)

28. Compliance with environmental justice requirements that apply in accordance with Executive Orders 12898 and 14008, and OMB Memorandum M-21-28, which implements the *Justice40 Initiative*, section 223 of Executive Order 14008.

29. Compliance with HUD Secretary Fudge's April 12, 2022 memorandum "Eliminating Barriers That May Unnecessarily Prevent Individuals with Criminal Histories from Participation in HUD Programs"

DOJ-HUD-AR00143

30. Compliance with equity requirements, including racial equity and underserved communities and LGBTQ+ requirements that apply in accordance with Executive Orders 13985, 13988, and 14091.

31. Compliance with 41 U.S.C. § 4712, which includes informing your employees in writing of their rights and remedies, in the predominant native language of the workforce. Under 41 U.S.C. § 4712, employees of a contractor, subcontractor, grantee, subgrantee, and personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant. (See Federal Contractor or Grantee Protections | Office of Inspector General, Department of Housing and Urban Development (hudoig.gov).

32. Compliance with 2 CFR 200.216, Prohibition on Certain Telecommunication and Video Surveillance Services or Equipment and Executive Orders 14091 and 14110, which include prohibition on the use of HUD funds to purchase or fund any form of facial or biometric recognition technology for the purpose of surveillance or any other use that may adversely impact equitable access to housing.

## C. Environmental Review

Notwithstanding 24 CFR 578.31 and 24 CFR 578.99(a) of the Rule, and in accordance with Section 100261(3) of MAP-21 (Pub. L. 112-141, 126 Stat. 405), activities under this NOFO are subject to environmental review by a responsible entity under HUD regulations at 24 CFR part 58.

1. All HUD assisted activities, even projects that only involve exempt activities, require some level of environmental review. Two types of projects are Categorically Excluded from review under the National Environmental Policy Act (NEPA) and not subject to compliance with the laws and authorities listed under 24 CFR 58.5 (CENST): All scattered-site projects where program participants choose their own unit and are not restricted to units within a pre-determined specific project site or sites are categorized in 24 CFR 58.35(b)(1) as CENST. This includes both tenant-based rental assistance and tenant-based leasing projects where program participants choose their own unit and do not involve any physical work or impacts beyond routine maintenance as defined by Notice CPD-16-02: Guidance for Categorizing an Activity as Maintenance for Compliance with HUD Environmental Regulations. The Exempt/CENST environmental review form is only required for each project, not every unit.

2. For activities under a grant to a recipient other than a state or unit of general local government that generally would be subject to review under 24 CFR part 58, HUD may make a finding in accordance with 24 CFR 58.11(d) and may itself perform the environmental review under the provisions of 24 CFR part 50 if the recipient objects in writing to the responsible entity's performing the review under part 24 CFR part 58.

3. Irrespective of whether the responsible entity in accordance with 24 CFR part 58 (or HUD in accordance with 24 CFR part 50) performs the environmental review, the

DOJ-HUD-AR00144

recipient must supply all available, relevant information necessary for the responsible entity (or HUD, if applicable) to perform for each property any required environmental review. The recipient also must carry out mitigating measures required by the responsible entity (or HUD, if applicable) or select alternative property.

4. The recipient, its project partners, and their contractors may not acquire, rehabilitate, convert, lease, repair, dispose of, demolish, or construct property for a project under this NOFO, or commit or expend HUD or non-HUD funds for such eligible activities under this NOFO, until the responsible entity (as defined by 24 CFR 58.2(a)(7)) has completed the environmental review procedures required by 24 CFR part 58 and the environmental certification and Request for Release of Funds (RROF) have been approved or HUD has performed an environmental review under 24 CFR part 50 and the recipient has received HUD approval of the project. HUD will not release grant funds if the recipient or any other party commits grant funds (i.e., incurs any costs or expenditures to be paid or reimbursed with such funds) before the recipient submits and HUD approves its RROF (where such submission is required).

## D. Lead-Based Paint Requirements

When providing housing assistance funding for purchase, lease, support services, operation, or work that may disturb painted surfaces of pre-1978 housing, you must comply with the lead-based paint evaluation and hazard reduction requirements of HUD's lead-based paint rules (Lead Disclosure; and Lead Safe Housing (24 CFR part 35)); and EPA's lead-based paint rules (e.g., Repair, Renovation and Painting; Pre-Renovation Education; and Lead Training and Certification (40 CFR part 745)).

## E. Remedies for Noncompliance

HUD may apply the remedies at 2 CFR 200.339 or impose additional conditions to remedy noncompliance with any Federal, State, or local statutes, regulations, or terms and conditions of the financial assistance award.  If noncompliance cannot be remedied, HUD may terminate a Federal award, in whole or in part, for any of the reasons specified in 2 CFR 200.340, Termination.

For more information on CoC Program sanctions and remedies for noncompliance see 24 CFR 578.107.

## F. Reporting

HUD requires recipients to submit performance and financial reports under OMB guidance and program instructions.

### 1. Recipient Integrity and Performance Matters

Applicants should be aware that if the total Federal share of their Federal award includes more than $500,000 over the period of performance, the award will be subject to post award reporting requirements reflected in Appendix XII to 2 CFR part 200, Award Terms and Conditions for Recipient Integrity and Performance Matters.

### 2. Race, Ethnicity and Other Data Reporting

HUD requires recipients that provide HUD-funded program benefits to individuals or families to report data on the race, color, religion, sex, national origin, age, disability, and family characteristics of persons and households who are applicants for, participants in, or beneficiaries or potential beneficiaries of HUD programs in order to carry out the Department's responsibilities under the Fair Housing Act, Executive Order 11063, Title VI of the Civil Rights Act of 1964, and Section 562 of the Housing and Community Development Act of 1987. These authorities prohibit discrimination in housing and in programs receiving financial assistance from the Department and direct the Secretary to administer the Department's programs and activities in a manner affirmatively to further these policies and to collect certain data to assess the extent of compliance with these policies. Each recipient shall keep such records and submit to the Department timely, complete, and accurate compliance reports at such times, and in such form and containing such information, as the Department may determine to be necessary to enable it to ascertain whether the recipient has complied or is complying with 24 CFR parts 1 and 121. In general, recipients should have available for the Department data showing the demographics of beneficiaries of Federally-assisted programs.

### 3. Compliance with the Federal Funding Accountability and Transparency Act of 2006 (Pub. L. 109-282) as amended (FFATA)

FFATA requires information on Federal awards be made available to the public via a single, searchable website, which is www.USASpending.gov. Accordingly, each award HUD makes under this NOFO will be subject to the requirements provided by the Award Term in Appendix A to 2 CFR part 170, "REPORTINGSUBAWARD AND EXECUTIVE COMPENSATION INFORMATION," unless the Federal funding for the award (including funding that may be added through amendments) is not expected to equal or exceed $30,000. Requirements under this Award Term include filing subaward information in the Federal Funding Accountability and Transparency Act (FFATA) Sub-award Reporting System (FSRS.gov) by the end of the month following the month in which the recipient awards any sub-award equal to or greater than $30,000.

### 4. Program-Specific Reporting Requirements

**a.** In accordance with program regulations at 24 CFR 578.103, project recipients must maintain records within the timeframe required, make any reports, including those pertaining to race, ethnicity, gender, and disability status that HUD may require. Project recipients may report the data as part of their APR submission to HUD. Also, project recipients who expend $750,000 or more in 1 year in federal awards must have a single or program-specific audit for that year in accordance with the provisions of 2 CFR part 200, subpart F.

**b.** Section 3 Reporting Regulations. Recipients are required to report their Section 3 activities per 24 CFR 75.25 if funds were awarded for housing rehabilitation, housing construction, and other public constructions. See HUD's Section 3 website for additional information including annual reporting requirements.

**c.** Award notices may also include requirements for sub-award reporting in compliance with the requirements of the Federal Financial Assistance Accountability and Transparency Act of 2006 (Pub. L. 109-282) (FFATA) and Section 872 of the Duncan Hunter National Defense Authorization Act for Fiscal Year 2009 (Pub. L. 110-417), referred to as "Section 872." See the General Section for further information.

DOJ-HUD-AR00146

**d.** An estimate of the reporting and recordkeeping burden of the CoC Program can be found in the [Federal Register Publication](#) of the Rule.

## G. Debriefing

For a period of at least 120 calendar days, beginning 30 calendar days after the final public announcement of awards under this NOFO, if requested, HUD will provide the Collaborative Applicants a debriefing related to their application. A request for debriefing must be submitted via mail or email by the person listed as the AOR in the Collaborative Applicant Profile in *e-snaps* or by his or her successor in office and be submitted to the POC in Section VIII Agency Contact(s) of this NOFO. Information provided during a debriefing may include the Collaborative Applicant's final score for each rating factor, final evaluator comments for each rating factor, and the final assessment indicating the basis upon which funding was approved or denied.

## H. Administrative and Other Program Requirements.

Federal agencies are required to measure the performance of their programs. HUD captures this information not only from monitoring visits and APRs, but also from the data gathered in annual Competitions. HUD's homeless assistance programs are being measured in FY 2024 by the objective to reduce the overall number of people experiencing homelessness and reduce the length of time homeless; measured based on system performance and the ability of CoCs that have the capacity to reallocate funds from lower performing projects to higher performing projects.

## I. Timeliness Standards.

All conditional funds awarded under the FY 2024 CoC Program Funding Opportunity must be obligated by HUD by September 30, 2026 and the obligation deadline for any FY 2025 funds is expected to be September 30, 2027. FY 2024 obligated funds remain available for expenditure until September 30, 2031 and the expenditure deadline for any FY 2025 funds is expected to be September 30, 2032. HUD reserves the right to require an earlier expenditure deadline under a grant agreement. The project applicant is expected to initiate the approved projects promptly in accordance with the requirements of this section of this NOFO. Grant terms, and associated grant operations, may not extend beyond the availability of funds. Project applicants must plan accordingly and only submit project applications that can start operations in a timely manner with sufficient time to complete the post award process within the awarded grant term. Additionally, HUD will take action if the recipient fails to satisfy the timeliness standards found in 24 CFR 578.85.

## VII. APPEALS

## A. Description

24 CFR 578.35 provides the appeal process options. Sections 578.35(b)(3), (b)(4), (c)(1), and (d)(2) authorize HUD to establish requirements for the form and manner of submissions for appeals by Solo Applicants, applicants with denied or decreased funding, and from competing CoCs. For HUD to consider an appeal under 24 CFR 578.35(b) or (c), the solo project applicant

Page 120 of 128

must follow the applicable application process set forth in this NOFO. This NOFO also provides guidance to CoCs and applicants regarding appeals of a jurisdiction's refusal to sign the Consolidated Plan certification for a project under 24 CFR 578.35(c).

Additionally, HUD is clarifying the impact that Solo Applicant appeals will have on HUD signing grant agreements for funds awarded under this NOFO. If HUD receives one or more Solo Applicant appeals from a CoC, HUD will determine the amount of funding the Solo Applicant(s) have requested which may delay signing grant agreements for the awarded project(s) listed at the bottom of the CoC's Priority Listing that has requested funding under this NOFO equal to double the amount requested by the Solo Applicant(s). Refer to the Solo Applicant appeal process in section VII.C of this NOFO for additional information about the Solo Application appeal process.

Finally, for the purposes of the appeals identified in this NOFO where 24 CFR 578.35 requires that all evidence be sent to the CoC and that the CoC respond to evidence, this means that correspondence to the CoC should be addressed to the CoC-designated Collaborative Applicant and all correspondence to HUD from the CoC should be addressed from the CoC's designated Collaborative Applicant. If the CoC has authorized another entity other than the Collaborative Applicant to respond to the appeals identified in this NOFO on its behalf, it should notify HUD by sending an email to [snapsappeals@hud.gov](mailto:snapsappeals@hud.gov).

## B. Types of Appeals

The provision at 24 CFR part 578 set forth the following types of appeals:

**1. Solo Applicants.** A process for eligible project applicants that attempted to participate in their CoC planning process and believe they were denied the right to participate in a reasonable manner.

**2. Denied or Decreased Funding.** A process for eligible applicants that are denied funds by HUD or that requested more funds than HUD awarded to them.

**3. Consolidated Plan Certification.** A process for eligible applicants whose jurisdiction refused to provide a Certification of Consistency with the Consolidated Plan (form HUD-2990).

**4. Competing CoCs.** A process when more than one CoC selects the same geographic area, for eligible applicants of lower-scoring CoCs, to appeal to HUD's decision to fund the competing CoC. Should two or more CoCs select the same geographic codes associated with formula areas during the CoC Program Registration process, HUD will use the competing CoC process provided by 24 CFR 578.35(d).

## C. Solo Applicant

Per the Act, "A solo applicant may submit an application to the Secretary for a grant under subsection (a) and be awarded such grant on the same basis as such grants are awarded to other applicants based on the criteria described in section 427, but only if the Secretary determines that

DOJ-HUD-AR00148

the solo applicant has attempted to participate in the continuum of care process but was not permitted to participate in a reasonable manner. The Secretary may award such grants directly to such applicants in a manner determined to be appropriate by the Secretary."

To apply as a solo applicant, the project applicant must submit a Solo Applicant Project Application in *e-snaps* by the application submission deadline of October 30, 2024 at 8:00 PM EDT. Additionally, the solo applicant, Collaborative Applicant, and HUD must take the following steps (See 24 CFR 578.35 for more information):

**1.** Written Notice of Intent to Appeal. The solo applicant must submit a written notice of intent to appeal, with a copy to the CoC, with their funding application.

**2.** No later than 30 days after the date that HUD announces the awards, the solo applicant shall submit in writing, with a copy to the Collaborative Applicant, all relevant evidence supporting its claim. The submission shall be emailed to snapsappeals@hud.gov.

**3.** The CoC has 30 days from the date of its receipt of the solo applicant's evidence to respond to HUD in writing, with a copy to the solo applicant. The submission must be emailed to snapsappeals@hud.gov.

**4.** HUD will notify the solo applicant and the CoC of its decision within 60 days of receipt of the CoC's response.

**5.** If HUD finds that the solo applicant was not permitted to participate in the Continuum of Care planning process in a reasonable manner, then HUD may award a grant to the solo applicant when funds next become available and may direct the Continuum of Care to take remedial steps to ensure reasonable participation in the future. HUD may also reduce the award to the Continuum's applicant(s).

## D. Denied or Decreased Funding

Eligible applicants, including project applicants and Collaborative Applicants, that submitted an application to HUD in response to this NOFO, that were either not awarded funds by HUD, or that requested more funds than HUD awarded, may appeal HUD's decision within 45 days after the final funding announcement. HUD will only consider for funding or additional funding applicants the CoC ranked within the CoC's maximum amount available. Collaborative Applicants that submitted CoC planning, and if applicable, UFA Costs project applications can appeal decreased funding if they can demonstrate HUD decreased the submitted project application's funding request to less than 5 percent of the CoC's FPRN or $1,250,000; whichever is less. To appeal HUD's decision, the applicant must submit a written appeal to HUD, with a copy to the authorized representative from the CoC's designated Collaborative Applicant. The written appeal must include evidence demonstrating HUD error and follow the instructions in this section.

The applicant must submit its written appeal by email to snapsappeals@hud.gov, from the organization's email address on the organization's letterhead and signed by the authorized representative–electronic signatures are acceptable.

**1. Denied Funding.** To appeal HUD's decision, the applicant must submit a written appeal to HUD using the process outlined in Section VII.F of this NOFO within 45 days of the date of the

DOJ-HUD-AR00149

funding announcement of the conditional awards from HUD, with a copy to the authorized representative from the CoC's designated Collaborative Applicant.

**a.** Projects, including projects for CoC Planning funds and Unified Funding Agency (UFA) costs, could have been rejected by HUD because:

**(1)** the individual project application failed to meet project eligibility, project quality, and project renewal thresholds set forth in this NOFO;

**(2)** the individual project application met project eligibility, project quality, and project renewal thresholds set forth in this NOFO, but was ranked in a position where a portion of the grant funds was outside the CoC's maximum award amount, and after HUD reduced its funding to fit within the CoC's maximum award amount, HUD determined that the project was no longer feasible; or

**(3)** HUD did not have sufficient funding to fund all eligible projects ranked within the CoC's maximum award amount.

**b.** For applicants that were fully denied funding for a grant, the applicant must provide evidence that demonstrates HUD error in not awarding the grant. Documentation submitted by the applicant must include:

**(1)** documentation that the project was ranked within the maximum award amount available to the CoC;

**(2)** evidence from the project application supporting the applicant's claim that the project application met project eligibility, project quality, and project renewal thresholds set forth in this NOFO; and

**(3)** evidence that the applicant believes HUD failed to follow its selection priorities set forth in this NOFO which resulted in the project not being funded (e.g., selecting a lower-scored project within the CoC or a similar project from another CoC).

**c.** For applicants that were denied funding due to the individual project's funding being decreased to such a level that the project was no longer feasible, documentation submitted by the applicant must include:

**(1)** documentation that the project was ranked within the maximum award amount available to the CoC;

**(2)** evidence from the project application supporting the applicant's claim that the project application met project eligibility and project quality thresholds set forth in this NOFO;

**(3)** evidence that the applicant believes HUD failed to follow its selection priorities set forth in this NOFO which resulted in the project not being funded (e.g., selecting a lower-scored project within the CoC or a similar project from another CoC); and

**(4)** the evidence in section IV.E.4 of this NOFO as well as evidence for decreased funding in section VII.D.2 of this NOFO.

**d.** For CoCs that were denied funding due to the score of the CoC Application or the score of the project application not being high enough to result in the funding of project(s) within the CoC, and the lower score for one or both application types was the result of HUD error, the CoC may

DOJ-HUD-AR00150

appeal the CoC or project application score and request funding for affected projects. Documentation submitted by the Collaborative Applicant on behalf of the CoC must include evidence of HUD error when calculating the CoC Application or project application score.

**Note: HUD can only consider information submitted with the CoC Application. HUD will not consider additional information in support of the CoC Application.**

**2. Decreased Funding.** To appeal HUD's decision, the applicant must submit a written appeal to HUD using the process outlined in section VII.F of this NOFO within 45 days of the date of the final funding announcement of the conditional awards from HUD, with a copy to the authorized representative of the CoC's designated Collaborative Applicant.
Documentation submitted by the applicant must include evidence of the HUD error the applicant believes was made.

**3. HUD Decision and Notification of Decision.** Where HUD determines that HUD error occurred, and the applicant should have been awarded additional funding, HUD will provide funding from the next available funds and make necessary adjustments by amending the award. HUD will reverse a decision only when the applicant can show that HUD error caused the denial or decrease.

## E. Consolidated Plan Certification

An applicant may appeal to HUD a jurisdiction's refusal to provide a certification of consistency with the Consolidated Plan. The appeals process is as follows:

**1. Written Appeal.** With the project application that is submitted by the application deadline, the applicant must submit a written appeal. Project applicants may submit its appeal in e-snaps with its project application. When submitted with the project application in e-snaps, the applicant must also email a copy of this appeal to the jurisdiction that denied the Certification of Consistency with the Consolidated Plan and should send a copy to the authorized representative from the CoC's designated Collaborative Applicant, unless it is the Collaborative Applicant that is filing the appeal. Otherwise, the project applicant or Collaborative Applicant may submit the appeal to HUD using one of the methods in section VII.F of this NOFO. The written appeal must include the following information:

**a.** a copy of the applicant's request to the jurisdiction for the Certification of Consistency with the Consolidated Plan;

**b.** a copy of the jurisdiction's response stating the reasons for denial, including the reasons the proposed project is not consistent with the jurisdiction's Consolidated Plan in accordance with 24 CFR 91.510(c); and

**c.** a statement of the reasons why the applicant believes its project is consistent with the jurisdiction's Consolidated Plan.

The appeal may include additional information the applicant believes supports its appeal, including:

**(1)** any additional communication between the applicant and the jurisdiction regarding the request for certification of consistency; and

**(2)** documentation that identifies to whom within the jurisdiction the evidence was sent and the date on which it was sent.

**2. Jurisdiction Response.** The jurisdiction will have 10 days after the receipt of the applicant's written appeal to submit a written response to HUD. The response must be sent by email to snapsappeals@hud.gov on the organization's letterhead, with a copy to the project applicant and the authorized representative of the CoC's designated Collaborative Applicant. The response must include the following information:

**a.** an explanation of the reasons originally given for refusing to provide the Certification of Consistency with the Consolidated Plan; and

**b.** written rebuttal to any claims made by the applicant in the written appeal.

**3. HUD Decision and Notification of Decision.**

**a.** HUD will review the submissions and will provide written notification, by email, of its decision to the applicant and the jurisdiction, with a copy to the authorized representative from the CoC's designated Collaborative Applicant within 45 days of the date of the receipt of the jurisdiction's response. In making its decision, HUD will consider whether the applicant submitted the request to the appropriate certifying jurisdiction and the reasonableness of the jurisdiction's refusal to provide the certificate.

**b.** If HUD finds that the certifying jurisdiction's refusal to provide a certification of consistency with the Consolidated Plan was reasonable, then HUD will automatically reject the project application. If HUD finds that the certifying jurisdiction's refusal to provide a certification of consistency with the Consolidated Plan is not reasonable, then HUD will consider the project application for funding in the respective FY CoC Program Competition in accordance with the review standards set forth in this NOFO.

**c.** If the jurisdiction failed to provide written reasons for refusal, including the reasons why the project is not consistent with the jurisdiction's Consolidated Plan in its initial response to the applicant's request for a certification, HUD will find for the applicant without further inquiry or response from the political jurisdiction.

**d.** HUD will provide written notification of its decision within 45 days of the date of HUD's receipt of the jurisdiction's response. Where the jurisdiction failed to provide a written response, HUD will provide written notification of its decision within 55 days of the date of HUD's receipt of the project applicant's response.

## F. Appeals Submission

**1. Submission of Appeals by Email.** Appeals must be submitted via email to snapsappeals@hud.gov. The subject line of your email must include the CoC Number, "Appeal Notice," and type of appeal, i.e., Participation, HUD Error, or Consolidated Plan Certification. A sample email Subject Line is, Subject: XX-500 – Appeal Notice–Consolidated Plan Certification.

**2. HUD Response.** HUD will respond to all appeals via email. HUD will not consider any requests to reconsider funding except for those appeals outlined in this NOFO.

DOJ-HUD-AR00152

## VIII. AGENCY CONTACT

**A. For Further Information**

Recipients and individuals can use the locator on HUD's website to find contact information for the local HUD CPD Field Office serving the CoC's geographic area. Individuals who are deaf or hard of hearing, as well as individuals with speech and communication disabilities may use any relay service to reach the local HUD CPD Field Office. To learn more about how to make an accessible telephone call, visit the webpage for the Federal Communications Commission. Note that HUD staff cannot assist applicants in preparing their applications.

**B. For Technical Assistance**

HUD will make appropriate resources available for technical assistance related to *e-snaps*, the electronic CoC program application and grants management system. Local HUD CPD Field Office staff will also be available to help citizens identify organizations in the community that are involved in developing the CoC system. All of HUD's responses to *e-snaps* technical assistance and other questions received will be made publicly available for review by any applicant or potential applicant. HUD staff and HUD contractors are prohibited from providing CoCs, Collaborative Applicants, and project applicants with guidance that will result in a competitive advantage for any CoC or project application.

Following conditional selection of applications, HUD staff will be available to assist conditionally awarded applicants in clarifying or confirming information that is a prerequisite to the offer of a grant agreement by HUD. However, between the application deadline and the announcement of conditional selections, HUD is prohibited from and will not accept any information that would improve the substantive quality of a CoC's application pertinent to HUD's funding decision.

## C. General Clarification.

HUD staff will be available to provide general clarification on the content of this NOFO; however, HUD staff are prohibited from assisting any applicant in preparing the application(s) in *e-snaps*.

**1. Local HUD Community Planning Development (CPD) Office.** Questions regarding specific program requirements should be directed to the local HUD CPD field office, a directory of which can be found at https://www.hud.gov/program_offices/field_policy_mgt/localoffices.

**2. Training and Resources.** Collaborative Applicants and project applicants that need assistance completing the applications in *e-snaps* or understanding the program requirements under the CoC Program may access the Rule, training materials, and program resources via https://www.hud.gov/program_offices/comm_planning/coc.

**3. Questions.** CoCs, Collaborative Applicants, and project applicants that require information and technical support concerning this NOFO and the application in *e-snaps* may submit an inquiry to CoCNOFO@hud.gov. Starting 2 days prior to the application deadline, this email address will respond only to emergency technical support questions up to the deadline of 8:00 PM EDT on October 30, 2024. Applicants experiencing technical difficulty should contact

DOJ-HUD-AR00153

CoCNOFO@hud.gov immediately for assistance and document their attempts to obtain assistance.

## IX. OTHER INFORMATION

**1. Compliance of this NOFO with the National Environmental Policy Act (NEPA)**

A Finding of No Significant Impact (FONSI) with respect to the environment has been made for this NOFO in accordance with HUD regulations at 24 CFR part 50, which implement section 102(2)(C) of the National Environmental Policy Act of 1969 (42 U.S.C.4332(2)(C)). The FONSI is available for inspection at HUD's Funding Opportunities web page.

**2. Web Resources**

- **Affirmatively Furthering Fair Housing (See 24 CFR 578.93(c) for specific Affirmatively Furthering Fair Housing requirements that apply to the CoC program.)**
- **Assistance Listing(formerly CFDA)**
- **Climate Action Plan**
- **Climate and Economic Justice Screening Tool (CEJST)**
- **Code of Conduct Requirements and E-Library**
- **Environmental Review**
- **Equal Participation of Faith-Based Organizations**
- **Fair Housing Rights and Obligations**
- **Federal Awardee Performance and Integrity Information System**
- **Federal Funding Accountability and Transparency Act (FFATA) Subaward Reporting System**
- **Grants.gov**
- **Healthy Homes Strategic Plan**
- **Healthy Housing Reference Manual**
- **Historically Black Colleges and Universities (HBCUs)**
- **HUD Grants**
- **HUD Reform Act**
- **HUD Reform Act: HUD Implementing Regulations**
- **HUD's Disability Overview**
- **HUD's Strategic Plan**
- **Limited English Proficiency (LEP)**
- **NOFO Webcasts**
- **Procurement of Recovered Materials**
- **Promise Zones**
- **Real Estate Acquisition and Relocation**
- **Section 3**
- **State Point of Contact List**
- **System for Award Management (SAM)**
- **Unique Entity Identifier**

DOJ-HUD-AR00154

- **USA Spending**

## Appendix

DOJ-HUD-AR00155



U.S. Department of Housing
and Urban Development

# FY 2025 Continuum of Care Competition and Youth Homeless Demonstration Program Grants NOFO

FR-6900-N-25

Applications are due by 8:00 PM EST Eastern Time on 01/14/2026.

Community Planning and Development

DOJ-HUD-AR00156

# TABLE OF CONTENTS

I. BASIC INFORMATION............................................5

A. Summary............................................................5

B. Agency Contact(s) .............................................7

II. ELIGIBILITY......................................................9

A. Eligible Applicants.............................................9

B. Cost Sharing or Matching ..................................10

III. PROGRAM DESCRIPTION .............................12

A. Purpose...........................................................12

B. Goals and Objectives.........................................12

C. Authority.........................................................14

D. Unallowable Costs ............................................14

E. Indirect Costs...................................................14

F. Program History ...............................................15

G. Other Information..............................................16

IV. APPLICATION CONTENTS AND FORMAT.....24

A. Standard Forms, Assurances, and Certifications24

B. Budget.............................................................26

C. Narratives and Other Attachments ....................34

D. Other Application Content .................................34

V. APPLICATION REVIEW INFORMATION..........51

A. Threshold Review .............................................51

B. Merit Review ....................................................66

C. Risk Review .....................................................89

D. Selection Process .............................................90

E. Award Notices..................................................95

VI. SUBMISSION REQUIREMENTS AND

DEADLINES..........................................................98

A. Deadlines.........................................................98

B. Submission Methods..........................................99

C. Other Submissions ...........................................104

D. False Statements..............................................105

VII. POST-AWARD REQUIREMENTS AND

ADMINISTRATION ..............................................107

A. Administrative, National and Departmental Policy
    Requirements, and General Terms and Conditions
    ......................................................................107

B. Environmental Requirements ...........................109

C. Remedies for Noncompliance ..........................110

D. Reporting .......................................................111

VIII. CONTACT AND SUPPORT .........................115

A. Agency Contact ..............................................115

B. esnaps.hud.gov ..............................................116

C. SAM.gov .......................................................116

D. Debriefing and Appeals ...................................116

E. Applicant Experience Survey...........................121

F. Other Online Resources...................................121

APPENDIX ...........................................................123

Appendix I. Definitions .........................................123

DOJ-HUD-AR00157

# BEFORE YOU BEGIN

If you believe you are a good candidate for this funding opportunity, register in the appropriate systems now and review the application package. If you are already registered, make sure your registration is active and up-to-date.

**SAM.gov Registration**

You must have an active and up-to-date account with SAM.gov, at the time of application and throughout the life of any award.

To register, go to SAM.gov Entity Registration and click Get Started. From the same page, you can also click on the Entity Registration Checklist for the information you will need to register.

It can take several weeks to register in SAM.gov, so please get started now if you are planning to apply. SAM.gov also provides each organization with a unique entity identifier (UEI). A valid UEI is required to apply for funding.

**esnaps.hud.gov Registration**

You must have an active esnaps.hud.gov account to submit your application. See step-by-step instructions at the CoC Registration and Competition home page.

See Section VI.B. Submission Methods.

**Find the Application Package**

Use the Grants Search at Grants.gov and search for opportunity number FR-6900-N-25 . The application package has all the online forms you need to apply. You also need to access the Download Instructions link and review the content before you apply.

If you have other technical difficulties using Grants.gov, access the Support Center on Grants.gov for assistance.

To get updates on changes to this notice of funding opportunity (NOFO), click Subscribe from the View Grant Opportunity page for this NOFO on Grants.gov.

---

**Application Deadline**
Applications are due by 8:00 PM EST Eastern Time on 01/14/2026.
See Section VI.A. of this NOFO.

**HUD Listserv**
If you are interested in email notices about upcoming funding opportunities, subscribe to HUD's Funding Opportunities listserv.
**Note**: To help you find what you need, this NOFO uses internal links. In Adobe Reader, you can go back to where you were by pressing Alt + Left Arrow (Windows) or Command + Left Arrow (Mac) on your keyboard.

---

DOJ-HUD-AR00158

# I. BASIC INFORMATION

I. Basic Information

A. Summary

B. Agency Contact(s)

TABLE OF CONTENTS

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |
|---|---|---|---|---|---|---|---|---|

# I. BASIC INFORMATION

See Contact and Support section of this NOFO.

## A. Summary

**Federal Agency Name:**
United States Department of Housing and Urban Development (HUD)

**HUD Program Office:**

Community Planning and Development

**Announcement Type:**

Initial

**Program Type:**

Discretionary

**Paperwork Reduction Act Information:**

2501-0044, 2506-0183, 2506-0145

**Due Date for Intergovernmental Review:**

See Section VI.C.1.

### Key Facts

**Opportunity Name:**
FY 2025 Continuum of Care Competition and Youth Homeless Demonstration Program Grants NOFO
**Opportunity Number:**
FR-6900-N-25
**Federal Assistance Listing:**
14.267

### Key Dates

**Application Due Date: 8PM Eastern Time on:**
01/14/2026
**Anticipated Award Date:**
05/01/2026
**Estimated Performance Period Start Date:**
05/01/2026
**Estimated Performance Period End Date:**
12/31/2027

### 1. NOFO Summary

The Continuum of Care (CoC) Program is designed to:

- promote a community-wide commitment to the goal of ending homelessness;

- provide funding for efforts by nonprofit providers, States, Indian Tribes or Tribally Designated Housing Entities [as defined in section 4 of the Native American Housing

Case 1:25-cv-00636-MSM-AEM     Document 56-2     Filed 12/29/25     Page 157 of 279
PageID #: 1525

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

Assistance and Self-Determination Act of 1996 (25 U.S.C. 4103) (TDHEs)], and local governments to quickly rehouse individuals and families experiencing homelessness, persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, and stalking, and youth experiencing homelessness while minimizing the trauma and dislocation caused by homelessness;

- promote access to, and effective utilization of, mainstream programs and programs funded with State or local resources; and
- optimize self-sufficiency among individuals and families experiencing homelessness.

The goal of the Youth Homelessness Demonstration Program (YHDP) is to support the development and implementation of a coordinated community approach to preventing and ending youth homelessness and sharing that experience with and mobilizing communities around the country toward the same end. The population to be served by the demonstration program is youth ages 24 and younger who are experiencing homelessness, including unaccompanied and pregnant or parenting youth.

The CoC Program does not require intergovernmental review.

## 2. Funding Details

### Type of Funding Instrument

G (Grant)

### Available Funds

Funding of approximately **$3,918,000,000** is available through this NOFO.

Additional funds may become available for award. Use of these funds is subject to statutory constraints. All awards are subject to the selection process contained in this NOFO.

On March 15, 2025, the President signed H.R. 1968 authorizing the Full-Year Continuing Appropriations and Extensions Act, 2025 (Public Law 119-4) which makes approximately the same amount of CoC Program funding available for FY 2025 as the Consolidated Appropriations Act, 2024 (Public Law 118-42, approved March 9, 2024). Pursuant to the Full-Year Continuing Appropriations and Extensions Act, 2025, HUD will repurpose $100,000,000 in funds previously outlined in paragraph (5) of the Consolidated Appropriations Act, 2024, under the heading 'Department of Housing and Urban Development—Community Planning and Development—Homeless Assistance Grants', to supplement the FY 2025 CoC Program Competition. Approximately $294,000,000 in amounts available pursuant to section 231 of the Further Consolidated Appropriations Act, 2020 (Public Law 116-94, division H, title II, section 231; 42 U.S.C. 11364a) is also being made available as part of this Notice.

Of the $3,918,000,000 HUD is making available:

- Approximately $52,000,000 in funding is available for Domestic Violence, Dating Violence, Sexual Assault, and Stalking Bonus (DV Bonus) projects, described in sections IV.D.1.e and IV.D.1.f of this NOFO.
- Approximately $129,000,000 for the renewal of projects originally awarded as part of

Case 1:25-cv-00636-MSM-AEM     Document 56-2     Filed 12/29/25     Page 158 of 279
PageID #: 1526



| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

the Unsheltered and Rural Homelessness Supplemental NOFO.

- Approximately $228,000,000 for the competitive renewal and replacement of expiring YHDP grants.

All requirements in the FY 2025 application process, including requirements for the entire CoC Consolidated Application, and the total amount of funds available are included in this NOFO.

**Number of Awards**
HUD expects to make approximately 7000 awards from the funds available under this NOFO.

**Length of Performance Period:**

12-month project period and budget period

18-month project period and budget period

24-month project period and budget period

36-month project period and budget period

42-month project period and budget period

48-month project period and budget period

60-month project period and budget period

Length of Periods Explanation:

## B. Agency Contact(s)

See Contact and Support section of this NOFO.

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |
|---|---|---|---|---|---|---|---|---|

# II. ELIGIBILITY

II. Eligibility

A. Eligible Applicants

B. Cost Sharing or Matching

TABLE OF CONTENTS

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 160 of 279
PageID #: 1528

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

# II. ELIGIBILITY

You are invited to apply if your organization is an eligible entity type and meets the funding conditions included in the NOFO. HUD will review applications from eligible applicants using the criteria in Section V. of this NOFO.

## A. Eligible Applicants

### 1. Eligible Entity Types:

00 (State governments)

01 (County governments)

02 (City or township governments)

04 (Special district governments)

07 (Native American tribal governments (Federally recognized))

08 (Public housing authorities/Indian housing authorities)

11 (Native American tribal organizations (other than Federally recognized tribal governments))

12 (Nonprofits having a 501(c)(3) status with the IRS, other than institutions of higher education)

25 (Others (see text field entitled "Additional Information on Eligibility" for clarification))

Additional Information on Eligibility

Faith-based organizations may apply on the same basis as any other organization. HUD does not engage in any unlawful and improper conduct, policies, or practices that target faith-based organizations.

Individuals are ineligible applicants.

To be eligible for funding under the FY 2025 Continuum of Care and Youth Homeless Demonstration Program Grants NOFO, project applicants must meet all statutory and regulatory requirements in the McKinney-Vento Homeless Assistance Act, (42 U.S.C. 11381–11389) (the Act) and the CoC Program Rule found in 24 CFR part 578 (the Rule). For more information on Applicant eligibility see Section V.A.1 of this NOFO.

Project applicants can obtain a copy of the Act and the Rule on HUD's website or by contacting the NOFO Information Center at 1-800-483-8929. Individuals who are deaf or hard of hearing, as well as individuals with speech or communication disabilities may visit https://www.fcc.gov/consumers/guides/telecommunications-relay-service-trs for more information on how to make an accessible telephone call to HUD.

### 2. Restrictions

#### a. Statutory and Regulatory Requirements Affecting Eligibility

You must comply with the current General Statutory and Regulatory Requirements Affecting Eligibility for HUD's Competitive Programs. HUD will review your eligibility before issuing an



| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

award. As part of this review, HUD uses SAM.gov and Department of Treasury data.

### b. Application Eligibility

Your application is considered for funding if it satisfies the application review requirements in Section V. of this NOFO.

For-profit entities are not eligible to apply for grants or to be subrecipients of grant funds.

## B. Cost Sharing or Matching

This Program requires cost sharing or matching, as described below.

24 CFR 578.73 of the Rule requires that recipients must match all grant funds, except for leasing funds, with no less than 25 percent of funds or in-kind contributions from other sources. 24 CFR 578.73.

Project applicants that intend to use program income as a match must provide an estimate of how much program income will be used for the match. HUD will not require YHDP Renewal or replacement projects to meet the 25 percent match requirement if the applicant is able to demonstrate it has taken reasonable steps to maximize resources available for youth experiencing homelessness.

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |
|---|---|---|---|---|---|---|---|---|

# III. PROGRAM DESCRIPTION

III. Program Description

A. Purpose

B. Goals and Objectives

C. Authority

D. Unallowable Costs

E. Indirect Costs

F. Program History

G. Other Information

TABLE OF CONTENTS

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

# III. PROGRAM DESCRIPTION

## A. Purpose

The Continuum of Care (CoC) Program (24 CFR part 578) is designed to promote a community-wide commitment to the goal of ending homelessness; to provide funding for efforts by nonprofit providers, states, local governments and Indian Tribes or tribally designated housing entities (as defined in section 4 of the Native American Housing Assistance and Self-Determination Act of 1996 (25 U.S.C. 4103) (TDHEs)) to quickly rehouse homeless individuals, families, persons fleeing domestic violence, dating violence, sexual assault, and stalking, and youth while minimizing the trauma and dislocation caused by homelessness; to promote access to and effective utilization of mainstream programs and programs funded with State or local resources; and to optimize self-sufficiency among those experiencing homelessness.

The FY 2025 CoC Program NOFO funds the renewal of existing CoC grants, including DV Renewal projects and projects originally funded under the Special NOFO to Address Unsheltered and Rural Homelessness, and the competitive renewal or replacement of existing YHDP grants that are expiring in Calendar Year 2026. This NOFO also provides funding for new projects, including those created with DV Bonus, CoC Bonus, and the reallocation of existing renewal projects.

For FY 2025, HUD requires Collaborative Applicants to rank all project applications, except for CoC Planning, and if applicable, UFA Costs project applications.

## B. Goals and Objectives

This section provides context to help applicants better understand how the merit criteria found in section V.B of this NOFO supports HUD's goal of ending homelessness. These goals are consistent with national policy objectives which must be incorporated into the awarding of funds (2 CFR 200.211(c)(1)(ii).

### 1. Ending the Crisis of Homelessness on Our Streets

The number of people experiencing unsheltered homelessness is at an all-time high. People living on the streets and in encampments have high rates of substance use disorder and mental illness. According to a nationwide study, 75% of people experiencing unsheltered homelessness report a substance use disorder and 78% report a mental health condition. The study found that substance use disorder contributed to the loss of housing for 50% of the unsheltered population, and mental health conditions contributed to loss of housing for 51% of the population.

CoCs should direct resources towards outreach, intervention, and assistance that helps people regain self-sufficiency. Consistent with Executive Order 14321 "Ending Crime and Disorder on America's Streets," CoCs should work with law enforcement, first responders, and their state and local governments to reduce encampments, public camping, and public drug use in order to address barriers to maintaining housing and increasing self-sufficiency.

### 2. Prioritizing Treatment and Recovery.

Case 1:25-cv-00636-MSM-AEM     Document 56-2     Filed 12/29/25     Page 164 of 279
PageID #: 1532

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

CoCs should prioritize projects that provide the treatment and services people need to recover and regain self-sufficiency including on-site behavioral health treatment, robust wraparound supportive services, and participation requirements. This NOFO devotes resources to Transitional Housing programs and Supportive Service Only projects with the goal of improving health and long-term economic independence for the homeless. HUD encourages CoCs to utilize the full array of mainstream programs and local and private resources to provide housing and healthcare needed to maintain safe and stable housing.

### 3. Advancing Public Safety

Safety and security for all members of the public, especially those living unsheltered, is essential to promoting a community-wide commitment to the goal of ending homelessness. CoCs should cooperate with law enforcement to advance public safety for the entire community impacted by homelessness. No one should sleep outside on the street or in dangerous encampments, and everyone should be able to enjoy public spaces safely. HUD encourages CoCs to assist in preventing and minimizing the trauma associated with living on the streets or in encampments, especially for women and youth that are the victims of sexual assault and trafficking. Unchecked public camping and public illicit drug use inhibit nonprofit providers and local government from effectively addressing homelessness.

First responders are critical partners in engaging people into treatment and services and protecting public order and vulnerable individuals experiencing homelessness. In *Grants Pass v. Johnson,* the Supreme Court of the United States upheld the authority of local governments to prohibit public camping.

### 4. Promoting Self-Sufficiency.

One of the primary purposes of the CoC Program is to optimize self-sufficiency. CoCs should partner with workforce development centers, employers, childcare, and other supportive service providers to increase employment and employment income for program participants. CoCs should prioritize projects that help lead to long-term economic independence for individuals and families to exit homelessness and prevent future returns to homelessness.

### 5. Improving Outcomes.

CoCs should review all projects eligible for renewal under this NOFO to determine their effectiveness in reducing homelessness and increasing self-sufficiency. CoCs should prioritize projects that promote self-sufficiency, increase employment income over government assistance, and promote treatment and recovery.

This NOFO includes several options to help CoCs improve their effectiveness, including reallocation, expansion, and transition grants, and CoC's should take advantage of these options to expand the pool of providers, including faith-based providers, and improve the overall performance of the CoC.

### 6. Minimizing Trauma.

One of the purposes of the CoC program is to minimize the trauma associated with homelessness. CoCs should encourage providers to provide trauma informed care and ensure participant safety in programs, especially for youth and survivors of domestic violence, dating violence, sexual assault, and stalking. Women experiencing homelessness or domestic violence should have access to safe, single-sex spaces and other considerations

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 165 of 279
PageID #: 1533

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

for personal privacy (24 CFR 578.93(b).

## C. Authority

The CoC Program is authorized by subtitle C of title IV of the McKinney-Vento Homeless Assistance Act, (42 U.S.C. 11381–11389) (the Act), and the CoC Program rule found in 24 CFR part 578 (the Rule). Pursuant to 42 U.S.C 11386a(a) and 42 U.S.C. 11386a(b)(1)(G), the Secretary can establish criteria for the awarding of funds including factors deemed appropriate to carry out the CoC Program in an effective and efficient manner.

FY 2025 funding for CoC Program Competition NOFO, including the competitive or noncompetitive renewal or replacements of YHDP grants under the CoC program, is authorized by the Full-Year Continuing Appropriations and Extensions Act, 2025 (Public Law 119-4, approved March 15, 2025). Under this NOFO, HUD will competitively renew or replace YHDP grants under the CoC Program.

HUD is including up to $294,000,000 in funding under Section 231(a)(1) and 231(a)(3) of the 2020 Consolidated Appropriations Act.

HUD is also utilizing authority under the Full-Year Continuing Appropriations and Extensions Act, 2025 (Public Law 119-4, approved March 15, 2025) to enable HUD to repurpose $100 million made available for Permanent Supportive Housing to fund CoC projects under this NOFO.

## D. Unallowable Costs

HUD will reject any requests for ineligible costs, except as otherwise provided in this NOFO.

## E. Indirect Costs

If you expect to charge indirect costs to the award, submit the Indirect Cost Rate Certification form (HUD-426) with your application.

The HUD-426 form is built into the *e-snaps* Project Applicant Profile where you will complete the information if requesting indirect costs, and you will also see the information transferred within your project application.

Indirect cost rules under 2 CFR part 200, as may be amended from time to time, apply. Project applicants that intend to charge indirect costs to the award must clearly state in the project application(s) the rate and distribution base the recipient intends to use, and if applicable, the rate and distribution base to be used by any subrecipient(s). If the rate is a Federally negotiated indirect cost rate, the project application must include the corresponding negotiated indirect cost rate agreement signed by the cognizant agency. A government department or agency unit that receives no more than $35 million in direct federal funding per year and has developed and maintains an indirect cost rate proposal and supporting documentation in accordance with 2 CFR part 200, appendix VII, may use the rate and distribution base specified in that indirect cost rate proposal. These governmental departments or agencies are not required to submit their proposals unless they are specifically requested to do so by an awarding Federal agency. The Federal agency's review should be limited to ensuring the proposal is consistent with the principles of this part.

For each applicant or intended subrecipient that meets the conditions for using the de minimis

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 166 of 279
PageID #: 1534

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

rate under 2 CFR 200.414(f) and will use that rate to charge indirect costs, the project application must clearly state the intended use of the de minimis rate. As described in 2 CFR 200.403, costs must be consistently charged as either indirect or direct costs but must not be double charged or inconsistently charged as both. Once an organization elects to use the de minimis rate, the organization must apply this methodology consistently for all Federal awards until the organization chooses to negotiate for a rate, which the organization may apply to do at any time. Documentation of the decision to use the de minimis rate must be retained on file for audit.

## F. Program History

FY 2025 CoC awards will be made through this NOFO. This NOFO rescinds and supersedes any mention of awards of FY 2025 CoC funds in the FY 2024 and FY 2025 Continuum of Care Competition and Renewal or Replacement of Youth Homeless Demonstration Program Grants published on July 31, 2024, and includes several changes.

### 1. FY 2025 CoC Consolidated Application.

All CoCs must complete and submit the FY 2025 CoC Consolidated Application that includes the CoC Application and CoC Priority Lising with all submitted projects ranked or rejected based on the criteria set forth in this NOFO.

### 2. Increase in Competition.

The Continuum of Care program is a national competition (42 U.S.C. 11386a). Tier 1 is set at 30 percent of the CoC's Annual Renewal Demand (ARD).

### 3. Investment in Transitional Housing and Supportive Service Only Projects.

In order to promote balance and increase competition, no more than 30 percent of a CoC's Annual Renewal Demand (ARD) under this NOFO will fund Permanent Housing projects, including PH-PSH, PH-RRH and Joint TH and PH-RRH projects.

### 4. Program Components that are eligible under this NOFO.

Provisions at 24 CFR 578.37 provide that CoC funds may be used for projects under five program components: transitional housing, supportive services only, HMIS, permanent housing (including rapid re-housing and permanent supportive housing), and in some cases, homelessness prevention. This NOFO is different than prior years in that applicants may apply for Transitional Housing (TH) and Supportive Services Only (SSO) projects including street outreach. Only designated High Performing Communities (HPC), may carry out homelessness prevention activities through the CoC program and there are currently no HPCs. Therefore, the four components that will be funded through this CoC Program Competition are: (a). Transitional Housing; (b). Supportive Services Only; (c). Permanent Housing; and (d). HMIS. Additionally:

a. HUD will allow renewal project applications for Joint T/PH-RRH component projects, which combine two existing program components in a single project (see section III.G.4of this NOFO for more information). No new Joint TH/PH-RRH component project applications will be allowed.

Case 1:25-cv-00636-MSM-AEM     Document 56-2     Filed 12/29/25     Page 167 of 279
PageID #: 1535

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

**b.** Project applicants may apply for SSO projects consistent with 24 CFR 578.37 and 578.53, including projects with the outreach service activity described at 24 CFR 578.53(e)(13) to individuals and families primarily residing in places not meant for human habitation. These projects must meet the project quality threshold criteria in section V.A.4.b.(5)(c) of this NOFO. All other SSO projects, except those dedicated to coordinated entry, must meet the threshold criteria in section V.A.4.b.(5)(b) of this NOFO.

The components are fully described at 24 CFR 578.37.

### 5. Special CoC NOFO grants.

Grants originally awarded funding under the Special NOFO to Address Unsheltered and Rural Homelessness, that are expiring in Calendar year 2026 are eligible to renew under this NOFO.

### 6. Reallocation.

CoCs may reallocate funding from any eligible renewal grant, including grants that have not previously renewed under the CoC Program, so long as the project has an executed grant agreement with an expiration date in Calendar Year 2026. For more information on Reallocation requirements see section III.G.3 of this NOFO.

### 7. Competitive Renewal or Replacement of YHDP Grants.

HUD will competitively renew or replace YHDP projects. Additionally, YHDP projects may be reallocated by CoCs to create new YHDP grants. If significant changes to a renewing YHDP project are needed the YHDP project may replace its current project with a new YHDP Replacement project, that may wholly or in part include activities ineligible under the CoC Program as outlined in section IV.D.1.h of this NOFO.

## G. Other Information

### 1. CoC Program NOFO Requirements.

All requirements for submitting the entire CoC Consolidated Application, including applications for projects eligible for FY 2025 CoC and YHDP funding and the total amount of funds available, are contained in this NOFO. Applicants should read this information carefully and respond to all submission requirements and deadlines as described.

**a.** CoCs should consider the Goals and Objects established in Section III.B of this NOFO in conjunction with local priorities to determine the ranking of new and renewal project application requests.

**b.** Collaborative Applicants that are designated Unified Funding Agencies (UFAs) or High Performing Communities (HPCs) by HUD during the FY 2024 CoC Program Registration process will maintain their UFA and/or HPC designation for the FY 2025 CoC Program Competition.

**c.** HUD will conduct threshold reviews of project applicants, and project applications for all CoC Consolidated Applications that are submitted by the application submission deadline as described in section V.A.4.

**d.** HUD may issue more than one conditional funding announcement, including for instances where a CoC has been affected by a disaster and for which HUD has extended

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 168 of 279
PageID #: 1536

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

the deadline for application submission.

**e.** HUD will score the FY 2025 CoC Application portion of the Consolidated Application in accordance with the criteria set forth in section V.B of this NOFO.

**f.** With the exception of CoC Planning and, if applicable, UFA Cost applications, CoCs must rank all project applications. This includes CoC Bonus, DV Bonus, CoC Renewal (including DV Renewal projects), New CoC Reallocation, New DV Reallocation, and YHDP Renewal and YHDP Reallocation projects. CoC Planning and, if applicable, UFA Costs project applications are not ranked and will be selected provided they pass project eligibility and project quality threshold review.

## 2. Eligible Renewal Project.

YHDP and CoC projects originally funded in FY 2024 or earlier, including projects originally funded under the Special NOFO or DV Bonus are eligible to renew under this NOFO, provided the projects have an expiration date in CY 2026 (between January 1, 2026, and December 31, 2026). Renewal project applications must be submitted by the recipient currently under grant agreement to operate the project. See section IV.D.2 for more information on renewal project requirements.

In cases where an expiring grant agreement is amended to have a new recipient after a renewal application is submitted, the new recipient will be eligible to receive the renewal award (Section V.D.8).

## 3. Reallocation.

Reallocation is a process CoCs use to shift funds in whole or in part from existing eligible CoC renewal projects to create one or more new projects without decreasing the CoC's ARD. CoCs may only reallocate eligible renewal projects so long as the renewal project being reduced or eliminated has a current grant agreement with an expiration date in CY 2026. Additionally, new projects created through reallocation must meet the project eligibility and project quality thresholds established in sections V.A.4.a and V.A.4.b of this NOFO. For more information on the requirements for projects created through reallocation, see sections IV.D.1.e and IV.D.1.f (DV Reallocation), IV.D.1.g (CoC Reallocation), and IV.D.1.i (YHDP Reallocation) of this NOFO.

To create a Transition Grant through the reallocation process, the CoC must wholly eliminate one or more projects and use those funds to create the single, new transition grant [see section IV.D.1.l of this NOFO].

## 4. Joint TH/PH-RRH Component Project.

The Joint TH/PH-RRH component project combines two existing program components – Transitional Housing and Permanent Housing-Rapid Rehousing – in a single project to serve individuals and families experiencing homelessness.

If funded, HUD will limit eligible costs as follows, in addition to other limitations found in the Rule:

**a.** leasing of a structure or units, and operating costs to provide transitional housing;

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 169 of 279
PageID #: 1537

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

**b.** short- and medium-term tenant-based rental assistance on behalf of program participants to pay for the RRH portion of the project;

**c.** supportive services;

**d.** costs of contributing data to the HMIS; and

**e.** project administrative costs.

Renewal project applicants must include details in the project description of how TH and PH-RRH assistance will be provided. Additionally, if CoC Program funds are not being requested for both TH and PH-RRH units, the renewal project application must describe and include the number of the project's TH units and PH-RRH units that will be paid for from another funding source. Applicants may only use CoC Program Leasing funds or non-CoC Program Funds to pay for the cost of housing program participants enrolled in the TH portion of the project.

When a program participant is enrolled in a Joint TH/PH-RRH component project, the recipient or subrecipient must be able to provide both components, including the units supported by the TH component and the tenant-based rental assistance and services provided through the PH-RRH component, to all participants. A program participant may choose to receive only the assistance provided through the TH portion of the project or the assistance provided through the PH-RRH component, but the recipient or subrecipient must make both types of assistance available.

## 5. Supportive Services Only (SSO) projects not dedicated to Coordinated Entry.

Project applicants may apply for SSO projects consistent with 24 CFR 578.37 and 578.53, including projects with the outreach service activity described at 24 CFR 578.53(e)(13) to individuals and families primarily residing in places not meant for human habitation. Projects that are primarily providing these outreach services and identify themselves as such in the project application, must meet the project quality threshold criteria in Section V.A.4.b.(5)(c) of this NOFO. All other SSO projects, except those dedicated to coordinated entry, must meet the threshold criteria in Section V.A.4.b.(5)(b) of this NOFO.

## 6. Centralized or Coordinated Assessment System (Coordinated Entry).

In general, 24 CFR 578.23(c)(9) and (11) requires all CoC program recipients and subrecipients to use the centralized or coordinated assessment system established by CoCs. The definition of Centralized or Coordinated Assessment (also known as Coordinated Entry) is found at 24 CFR 578.3. 24 CFR 578.7(a)(8) details the responsibilities of the CoC to establish and operate this required system. In addition to the definition and responsibilities established in the Rule, HUD posted on its website, *CPD-17-01: Notice Establishing Additional Requirements for a Continuum of Care Centralized or Coordinated Assessment System*, establishing additional requirements related to the development and use of a centralized or coordinated entry assessment system. These systems help communities assess the needs of program participants and effectively match individuals and families experiencing homelessness with the most appropriate resources available to address their supportive service and housing needs. CoCs may use planning costs to design and plan for the implementation of a Coordinated Entry system; however, once the system is established and operating, the costs of operating it are not eligible planning costs. CoCs must operate the system with CoC Program funds, other funds, or a combination of the two. Section

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 170 of 279
PageID #: 1538

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

578.23(c)(9) of the CoC Program Rule exempts victim service providers from using the CoC's coordinated entry process if victim service providers use a coordinated entry process that otherwise meets HUD's requirements.

### 7. Non-Dedicated Permanent Supportive Housing Beds.

A Permanent Supportive Housing bed within a CoC's geographic area that is not currently classified as dedicated for use by chronically homeless individuals and families or as DedicatedPLUS.

### 8. Beds Dedicated to Chronically Homeless Individuals and Families.

A Permanent Supportive Housing bed that is dedicated specifically for use by individuals and families experiencing chronic homelessness [see 24 CFR 578.3 definition of Chronically Homeless] within a CoC's geographic area, as reported in the CoC's housing inventory count (HIC) and permanent housing (PH) project applications.

### 9. DedicatedPLUS Project.

**a.** A PSH project where 100 percent of the beds are dedicated to serve individuals, households with children, and unaccompanied youth (including pregnant and parenting youth) that at intake meet one of the following categories:

**(1)** experiencing chronic homelessness, meaning they qualify as "chronically homeless" as defined in 24 CFR 578.3;

**(2)** residing in a TH project that will be eliminated and meets the definition of chronically homeless in effect at the time in which the individual or family entered the TH project;

**(3)** residing in a place not meant for human habitation, emergency shelter, or Safe Haven and had been admitted and enrolled in a PH project within the last year but were unable to maintain a housing placement and met the definition of chronically homeless as defined by 24 CFR 578.3 prior to entering the project;

**(4)** residing in transitional housing funded by a Joint TH/PH-RRH component project and who were experiencing chronic homelessness as defined by 24 CFR 578.3;

**(5)** residing and has resided in a place not meant for human habitation, Safe Haven, or emergency shelter for at least 12 months in the last three years, but has not done so on four separate occasions and the individual or head of household meet the definition of 'homeless individual with a disability; or

**(6)** receiving assistance through a Department of Veterans Affairs (VA)-funded homeless assistance program and met one of the above criteria at initial intake to the VA's homeless assistance system.

**b.** A renewal project where 100 percent of the beds were dedicated to individuals and families experiencing chronic homelessness may either be reallocated to create a DedicatedPLUS project or may continue as a renewal project dedicating 100 percent of its beds to individuals and families experiencing chronic homelessness. If the project is reallocated as a DedicatedPLUS project, the project must adhere to all fair housing requirements at 24 CFR 578.9.

Case 1:25-cv-00636-MSM-AEM     Document 56-2     Filed 12/29/25     Page 171 of 279
PageID #: 1539

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

c. Projects HUD awarded as DedicatedPLUS in a previous CoC Program Competition must continue to include households with children to qualify as a DedicatedPLUS project in the FY 2025 CoC Program Competition.

## 10. Participant Eligibility.

Projects funded through this NOFO must have the following eligibility criteria for program participants. All references to paragraphs of the definition of homeless that are found throughout this NOFO refer to the paragraphs listed under the definition of "homeless" in 24 CFR 578.3 and include the definition of "homeless" under section 103(b) of the McKinney-Vento Homeless Assistance Act, even if section 103(b) is not explicitly referenced. All specific references to the definition of "homeless" under paragraph (4) of 24 CFR 578.3 that are found throughout this NOFO also include the definition of "homeless" under section 103(b) of the McKinney-Vento Homeless Assistance Act, even if section 103(b) is not explicitly referenced. All projects must participate in coordinated entry, and the selection of program participants must be consistent with the CoC's coordinated entry process. As provided by the Consolidated Appropriations Act, 2025, youth aged 24 and under must not be required to provide third-party documentation that they meet the homeless definition in 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act as a condition for receiving services funded under this NOFO. Additionally, any youth-serving provider funded under this NOFO may serve unaccompanied youth aged 24 and under or families headed by youth aged 24 and under who are living in unsafe situations. HUD interprets "youth-serving provider" as a private nonprofit organization whose primary mission is to provide services to youth aged 24 and under and families headed by youth aged 24 and under. HUD interprets "living in unsafe situations" as having an unsafe primary nighttime residence and no safe alternative to that residence. These youth-related requirements supersede any conflicting requirements under this NOFO or the Rule.

Participants eligible to be served by projects funded under this NOFO, are as follows:

a. PH-PSH projects awarded CoC funds must serve one of the following:

(1) persons eligible to be served by DedicatedPLUS projects as described in section III.G.9 of this NOFO in which case all units funded by the project must be used to serve program participants who meet the qualifications for DedicatedPLUS;

(2) persons who qualify as homeless under paragraphs (1), (2), or (4) of 24 CFR 578.3 or Section 103(b) of the McKinney-Vento Homeless Assistance Act; or

(3) for renewal projects, the same population of individuals and families indicated in the expiring grant agreement (e.g., PSH projects originally awarded under the Special NOFO Competition projects through the Unsheltered Set Aside must serve individuals and families who qualify under paragraph (1) or (4) of the definition of homeless).

b. TH, PH-RRH, Joint TH/PH-RRH, SSO projects awarded CoC funds must serve persons who qualify as homeless under paragraphs (1), (2), or (4) of 24 CFR 578.3 or Section 103(b) of the McKinney-Vento Homeless Assistance Act with the following exception:

PH-RRH, TH, Joint TH/PH-RRH, SSO- may serve persons who qualify as homeless

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 172 of 279
PageID #: 1540

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

under paragraph (3) of 24 CFR 578.3 if the CoC is approved to serve persons in paragraph (3).

**c.** DV Bonus, DV Renewal and DV Reallocation projects must serve individuals and families who are fleeing or attempting to flee domestic violence, dating violence, sexual assault, and stalking and who qualify as homeless under paragraphs (1) or (4) of the definition of homeless at 24 CFR 578.3 with the following exception:

PH-RRH, Joint TH/PH-RRH, SSO- projects may serve individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, and stalking who qualify as homeless under paragraph (3) of 24 CFR 578.3 if the CoC is approved to serve persons in paragraph (3).

**d.** YHDP Renewal and Replacement projects including YHDP projects created through reallocation must serve youth aged 24 or younger, including unaccompanied and pregnant or parenting youth who:

**(1)** qualify as homeless under paragraphs (1), (2), or (4) of the homeless definition in 24 CFR 578.3 or Section 103(b) of the McKinney-Vento Homeless Assistance Act;

**(2)** have an unsafe primary night-time residence and no safe alternative to that residence; or

**(3)** qualify as homeless under paragraph (3) of 24 CFR 578.3 if the CoC is approved to serve persons in paragraph (3).

#### 11. Performance-Based Decisions.

**a.** The CoC must review each project application submitted to the CoC for inclusion on the FY 2025 CoC Priority Listing as part of the CoC Consolidated Application and either approve and rank or reject project application submissions. All project applications approved by the CoC must be listed on the CoC Priority Listing in rank order.

Higher ranked projects will be assigned to Tier 1 and lower ranked projects will be assigned to Tier 2 as described in sections V.D.3.a and V.D.3.b of this NOFO. This two-tiered approach for CoCs notifies HUD which projects are prioritized for funding based on project performance, local needs, and gaps.

**b.** Consistent with the requirements of the Consolidated Appropriations Act, 2024:

**(1)** Requests for new CoC project applications are allowed if the CoC evaluates and competitively ranks projects based on how they improve the CoC's system performance as outlined in section V.B.1.a.(1) of this NOFO; and

**(2)** HUD will prioritize funding for CoCs that have demonstrated the capacity to reallocate funding from lower to higher performing projects.

#### 12. Coordination with Housing and Healthcare.

The Consolidated Appropriations Act, 2024 directs HUD to provide incentives to create projects that coordinate with housing providers and healthcare organizations to provide permanent supportive housing and rapid rehousing services. In the 2025 CoC Program Competition, CoCs may receive up to 4 points on the CoC Application if the FY 2025 CoC

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |
|---|---|---|---|---|---|---|---|---|

Priority Listing includes new TH, PH-PSH or PH-RRH project applications created through reallocation or CoC Bonus that utilizes housing resources and healthcare provided through an array of healthcare services and housing providers. See section V.B.1.c of this NOFO for additional details.

# IV. APPLICATION CONTENTS AND FORMAT

IV.  Application Contents and Forms

A. Standard Forms, Assurances, and Certifications

B. Budget

C. Narratives and Non-Form Attachments

D.  Other Application Content

TABLE OF CONTENTS

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

# IV. APPLICATION CONTENTS AND FORMAT

Applications must include three main elements: a) standard forms, assurances, and certifications; b) budget; and c) narratives and other attachments. The content, forms, and format for each element are included in this section.

You may use this section as a checklist to ensure you submit a complete application.

If you don't provide the required documents in the correct format, your application is incomplete.

Do not submit password protected or encrypted files.

While the CoC Program NOFO is officially posted on Grants.gov, the standard forms, assurances, certifications, budgets, narrative responses, and the ability to include attachments are built into e-snaps, an electronic application system.

HUD does not accept faxed applications or supportive documents.

There are two types of applications under this NOFO that are part of the CoC Consolidated Application;

- CoC Application that includes the CoC responses to the rating factors in Section V.B of this NOFO; and

- Project applications that must be approved by CoCs to be included as part of the CoC Consolidated Application. See Sections IV.D.1 and V.A.4 of this NOFO for information on eligible project applications and submission requirements.

## A. Standard Forms, Assurances, and Certifications

You must properly complete and submit with your application the standard forms, assurances, and certifications identified below. You can find all forms in the application package or review them and their instructions at Grants.gov Forms. You can also read more about standard forms on HUD's Funding Opportunities page.

The identified forms below are included in the project applicant profile in e-snaps and must be completed by the project applicant before gaining access to the application.

| Forms/Assurances/Certifications | Submission Requirement |
|---|---|
| Application for Federal Assistance (SF-424) | Required with the application and completed in e-snaps via the information from the Project Applicant Profile. |
| Applicant and Recipient Assurances and Certifications (HUD-424B) | Required with the application and completed in e-snaps via the information from the Project Applicant Profile. |
| Applicant/Recipient Disclosure/Update Report (HUD-2880) | Required with the application and completed in e-snaps via the information from the Project |

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 176 of 279
PageID #: 1544

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| Forms/Assurances/Certifications | Submission Requirement |
|---|---|
| | Applicant Profile. |
| **Certification Regarding Lobbying** | If applicable, required with the application and completed in e-snaps via the information from the Project Applicant Profile. |
| **Disclosure of Lobbying Activities (SF-LLL)** | If applicable, required with the application and completed in e-snaps via the information from the Project Applicant Profile. |
| **Certification for a Drug-Free Workplace (HUD-50070)** | Required with the application and completed in e-snaps via the information from the Project Applicant Profile. |
| **Assurances for Construction Programs (SF-424D)** | If applicable, required with the application and completed in e-snaps via the information from the Project Applicant Profile. |
| **Certification of Need and Compliance with Housing Quality and Habitability Standards.** | If applicable, required with the application and included in e-snaps.<br><br>Collaborative Applicants must certify there is a demonstrated need for all PH renewal projects included in the Renewal Project Listing. Additionally, Collaborative Applicants must certify these projects comply with program requirements and appropriate standards of housing quality and habitability on the Renewal Project Listing. |
| **Certification for Opportunity Zone Preference Points (HUD 2996)** | If applicable. The HUD-2996 form is not built into e-snaps and must be submitted as an attachment to the CoC application in e-snaps on the Attachment screen if the CoC is requesting Opportunity Zone Preference Points. |
| **Indirect Cost Rate Certification (HUD-426)** | If applicable, required with the application and included in e-snaps. |

Attachment of the forms that are built into e-snaps, as indicated above, is not required. These forms must be completed before you will have access to the e-snaps application screens.

**The following forms are not built into e-snaps but are required to be submitted by**

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 177 of 279
PageID #: 1545

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

**Collaborative applicants with the CoC Priority listing:**

**1. Certification of Consistency with the Consolidated Plan Form HUD-2991.**

The standard form, Certification of Consistency with the Consolidated Plan (form HUD-2991), in which a state or local official certifies that the proposed activities or projects are consistent with the jurisdiction's Consolidated Plan and, if the project applicant is a state or unit of local government, that the jurisdiction is following its Consolidated Plan per the requirement of 24 CFR part 91. Collaborative Applicants must download a new HUD-2991 and complete it for all project applications submitted and listed on the CoC Project Listings either by submitting one correctly signed and dated HUD-2991 form from the appropriate jurisdiction(s) that includes an attachment listing of all submitted project applications, or a single signed and dated HUD-2991 for each individual project application from the appropriate jurisdiction.

The FY 2025 Form HUD-2991 must be completed and dated between November 1, 2024 and January 14, 2026 and attached to the FY 2025 CoC Priority Listing.

**2. Tribal Resolution for Projects on Trust Land or Reservations, if applicable.**

Any applicant that is not a Tribe or TDHE proposing to site a project on a reservation or trust land must include a Tribal resolution or a letter from an official or principal of the Indian Tribe or TDHE, who is authorized to act on behalf of the Indian Tribe or TDHE. Tribes do not need to include a Tribal resolution to site a project on their own reservation or trust land. A Tribal resolution is the formal manner in which the Tribal government expresses its legislative will in accordance with its organic documents. In the absence of such organic documents, a written expression adopted pursuant to Tribal practices is acceptable.

A CoC that is not a Tribe or TDHE that proposes to locate a new project on a reservation or trust land that is not currently included in the CoC's approved geographic service areas, identified during the CoC Registration process, are required to obtain a Tribal Resolution from the Tribe or TDHE and attach it to the CoC Priority Listing.

## B. Budget

You must submit a budget with your application to support your project narrative.

At a minimum, your budget must indicate direct and any indirect costs.

You must also submit form HUD-426, based on the requirements in Section III.E. of this NOFO.

The project application in e-snaps includes the budget forms available under this NOFO. Project applicants will select the appropriate budget form(s) based on the requested activities and must be completed for the proposed project. Additionally, there is a section to capture indirect cost rate and the HUD-426 form, if applicable.

**Eligible Costs.**

Except as otherwise stated below, 24 CFR 578.37 through 578.63 identifies the eligible costs that applicants may request under the CoC Program.

**1. YHDP Costs.**

Eligible costs for YHDP projects originally funded under the YHDP Competition are also

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 178 of 279
PageID #: 1546

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

eligible YHDP Renewal project costs under this NOFO (see section IV.D.1.h of this NOFO). Additionally, YHDP Renewal projects may include the YHDP Special Activities described in IV.B.2 below, subject to Renewal project requirements in sections IV.D.2 including IV.D.2.f.(2) of this NOFO. YHDP Replacement including YHDP Reallocation project applications under this NOFO may include requests for eligible CoC Program Costs, the YHDP activities described in section IV.D.1.i and the YHDP Special Activities in section IV.B.2 below. HUD will reject any requests for ineligible costs, except as otherwise provided in this NOFO.

## 2. Special YHDP Activities.

YHDP Renewal and YHDP Replacement including YHDP Reallocation projects may submit applications that include the following special YHDP activities, which are ineligible under the CoC Program, subject to the conditions specified in this section:

a. Recipients may carry out the activities below with written notice to the Director of HUD's Office of Special Needs Assistance Programs (SNAPS), subject to the requirements governing grant agreement amendments at 24 CFR 578.105. HUD will consider the inclusion of these activities in the project application as notification to the Director of SNAPS.

(1) Housing projects may have leases for a minimum term of 1 month plus 1 day under rental assistance budget line items.

(2) Projects may use leasing, sponsor-based rental assistance, and project-based rental assistance in RRH projects.

(3) In addition to the eligible costs listed in 24 CFR 578.59(a), recipients may use project administration funds to support costs of involving youth with lived experience in project implementation, execution, and improvement.

(4) Recipient may use project administrative funds to attend conferences and trainings that are not HUD-sponsored or HUD-approved, provided that the subject matter is relevant to youth homelessness.

(5) Projects may employ youth who are receiving services, or housing assistance, from the recipient organization. Recipients that use this special YHDP activity must maintain documentation that discloses the nature of work that the youth performs, and that the youth is not in a position that creates a conflict of interest.

(6) Projects may use habitability standards in 24 CFR 576.403(c) rather than the housing standards in 24 CFR 578.75 for short- or medium-term (up to 24 months) housing assistance. Recipients implementing this special YHDP activity must keep documentation of which standards they apply to the units and proof that the units complied with standards before assistance is provided for every unit funded.

(7) Recipients may provide moving expenses to a program participant more than once.

(8) Recipients may provide payments of up to $500 per month for families that provide housing under a host home and kinship care model to offset the increased costs associated with having youth housed in the unit.

(9) YHDP recipients may continue providing supportive services to program participants for up to 12 months after the program participant exits homelessness,

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 179 of 279
PageID #: 1547

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

transitional housing or after the end of housing assistance.

(10) Projects using grant leasing funds may pay above the Fair Market Rent (FMR) for individual units as long as the amount paid is consistent with the reasonable rent standards at 24 CFR 578.51(g).

(11) Recipients may use grant funds for the following if they are necessary to assist program participants to obtain and maintain housing. Recipients and subrecipients must maintain records establishing how it was determined that paying the costs was necessary for the program participant to obtain and retain housing and must also conduct an annual assessment of the needs of the program participants and adjust costs accordingly:

(a) Security deposits for units in an amount not to exceed 2 months of rent.

(b) The costs to pay for any damage to housing due to the action of program participants, which may be paid while the youth continues to reside in the unit. The total costs paid for damage per program participant may not exceed the cost of 2 months' rent.

(c) The costs of providing household cleaning supplies to program participants.

(d) Housing start-up expenses for program participants, including furniture, pots and pans, linens, toiletries, and other household goods, not to exceed $300 in value per program participant.

(e) The one-time cost of purchasing a cellular phone and service for program participant use, provided access to a cellular phone is necessary to obtain or maintain housing and the costs of the phone and services are reasonable per 2 CFR 200.404.

(f) The cost of internet in program participants' units if the costs of the service is reasonable per 2 CFR 200.404.

(g) Payment of rental arrears consisting of a one-time payment for up to 6 months of rent in arrears, including any late fees on those arrears.

(h) Payment of utility arrears of up to 6 months per utility.

(i) Up to 3 months of utilities for a program participant, based on the utility costs schedule for the unit size and location.

(j) In addition to transportation costs eligible in 24 CFR 578.53(e)(15), recipients may pay gas and mileage costs for a program participant's personal vehicle for trips to and from medical care, employment, childcare, or other services eligible under this section.

(k) Legal fees, including court fees, bail bonds, and required courses and equipment.

(l) Program participant's past driving fines and fees that are blocking a young person from being able to obtain or renew a driver's license and impacting their ability to obtain or maintain housing. Additionally, recipients may pay for program participants' costs for insurance and registration for personal vehicles, if the

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 180 of 279
PageID #: 1548

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

personal vehicle is necessary to reach medical care, employment, childcare, or other services eligible under this section.

**(12)** Recipients of housing projects (RRH, TH, TH-RRH, and PSH) may use YHDP funds to pay for owner incentive and retention payments before occupancy of the unit, or at any point thereafter, provided that the overall amount paid with program funds per unit occupied by the program participant does not exceed three times the rent charged for the unit. These payments may include signing bonuses (a payment offered to an owner as an incentive for leasing a unit to be occupied by a program participant), repairs to bring the unit into compliance with program requirements, or holding fees to reserve a unit for an individual or family experiencing homelessness.

**b.** *YHDP Exceptions.* Under the conditions specified below, recipients may make use of the following built-in exceptions to this NOFO's requirements, subject to approval by the Director of SNAPS and requirements governing grant agreement amendments at 24 CFR 578.105. To expedite grant agreement processing, applicants should include as much information as possible as part of their project application to demonstrate they meet the conditions specified below.

**(1)** Projects may provide up to 36 months of RRH rental assistance to program participants if the recipient demonstrates: (1) the method it will use to determine which youth need rental assistance beyond 24 months and (2) the services and resources that will be offered to ensure youth are able to sustain their housing at the end of the 36 months of assistance.

**(2)** Projects may continue providing supportive services to program participants for up to 24 months after a program participant exits homelessness, transitional housing or after housing assistance ends if the recipient demonstrates: (1) the proposed length of extended services to be provided; (2) the method it will use to determine whether services are still necessary; and (3) how those services will result in self-sufficiency and ensure stable housing for program participants.

**(3)** Projects may continue providing supportive services to program participants for up to 36 months after program participants exit homelessness, if the services are in connection with housing assistance, such as the Foster Youth to Independence initiative, or if the recipient can demonstrate that extended supportive services ensures continuity of caseworkers for program participants.

**(4)** Rental assistance may be combined with leasing or operating funds in the same unit, provided that the recipient submits a project plan that includes safeguards to ensure that no part of the project would receive a double subsidy.

**(5)** Projects may provide payments of up to $1,000 per month for families that provide housing under a host home and kinship care model, provided that the recipient can show that the additional cost is necessary to recruit hosts to the program.

**(6)** YHDP recipients may pay for short-term (up to three months) emergency lodging in motels or shelters as the transitional housing component in a Joint transitional housing-rapid rehousing (TH-RRH) project, provided that the recipient can demonstrate that use of the hotel or motel room is accessible to supportive services.

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 181 of 279
PageID #: 1549

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

c. *Innovative Activities*. In addition to the specific activities authorized above or in 24 CFR part 578, other innovative activities to reduce youth homelessness may be carried out in a YHDP project, subject to approval by the Director of SNAPS and requirements governing grant agreement amendments at 24 CFR 578.105. Requests to carry out YHDP innovative activities are permitted to be requested in any YHDP application. YHDP Replacement applicant must demonstrate to HUD that the activity meets the following criteria; and to expedite grant agreement processing, must include as much information as possible as part of their project application.

YHDP Renewal or YHDP Replacement applications requesting to carry out Innovative Special YHDP Activities must demonstrate the following:

(1) The activity is approved by both the Youth Action Board (YAB) and the CoC, as evidenced by letters of support from each organization. For purposes of this section, a YAB is defined as a group of at least 4 youth – aged 24 or younger - with voting power on policy decisions of the CoC (particularly on policies that relate to preventing and ending youth homelessness, and where at least two-thirds of the members have lived experience/expertise of homelessness. The YAB must be a formal committee of the CoC. The YAB should be representative of the youth and young adult population experiencing homelessness in the community;

(2) That activity will be testing or likely to achieve a positive outcome in at least one of the four core outcomes for youth experiencing homelessness (stable housing, permanent connections, education/employment, and well-being);

(3) The activity is cost-effective; and

(4) The activity is not in conflict with fair housing, civil rights, or environmental regulations.

### 3. Rural Costs for Projects Originally Awarded Under the Rural Set Aside of the Special CoC NOFO Competition.

Projects originally awarded under the Rural Set Aside through the Special CoC NOFO Competition may submit applications that include the following costs (Note: CoC Projects not originally funded under the Rural Set Aside of the Special NOFO Competition are not permitted to request funding under this cost category):

a. Rent or utility assistance after 2 months of nonpayment of rent or utilities to prevent eviction or loss of utility service. Funds may be used to pay rent or utility arrear payments up to 6 months on behalf of program participants residing in permanent housing.

b. Repairs, (such as insulation, window repair, door repair, roof repair, and repairs) that are necessary to make housing habitable to be used for transitional or permanent housing by people experiencing homelessness. The total cost of repairs may not exceed $10,000 per structure.

c. *Capacity building activities.* Capacity building activities are those activities that maintain or improve the skills of recipients. Eligible capacity building activities include employee education, job training, staff retention activities such as financial incentives to staff, paying for continuing education opportunities, cross-training within an organization,

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 182 of 279
PageID #: 1550

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

staff training and professional licensing or certification, and other professional development activities. An applicant may apply for up to 20% of funds requested as part of the project, including project administrative costs, for capacity building activities.

**d.** *Emergency food and clothing assistance.* The cost of providing meals or groceries and clothing to program participants are eligible costs.

**e.** Costs associated with making use of Federal Inventory property programs to house individuals and families experiencing homelessness. Federal Inventory property programs means the Use of Federal Real Property to Assist the Homeless program authorized by title V of the Act, and implemented by 24 CFR part 581, and the Single Family Property Disposition Program authorized by section 204(g) of the National Housing Act (12. U.S.C. 1710(g)) and implemented at 24 CFR part 291 Eligible costs are: preparing and submitting applications to obtain ownership of the real property; transfer taxes; recording fees; closing costs; building permit and zoning fees; attorney's fees; rehabilitation of buildings and structures on the property necessary to bring them into compliance with local building codes and to convert them to the intended homeless assistance use; water, sanitation, sewer and utility hook-up fees and deposits and bringing lines to the property; wells; septic systems; and improving access to the real property from public roads.

## 4. VAWA Costs Information.

Section 605(a)(2) of VAWA 2022 amended section 423(a) of the McKinney-Vento Homeless Assistance Act to add the following eligible activity to the CoC program: "Facilitating and coordinating activities to ensure compliance with the emergency transfer plan requirement in [34 U.S.C. 12491(e)] and monitoring compliance with the confidentiality protections in [34 U.S.C. 12491(c)(4)]."

HUD has determined that eligible activities paid for under the VAWA costs category are not subject to the CoC program's spending caps on administrative costs under section 423(a)(10), (11), and (12). This activity may be included in new project applications, added to eligible renewal projects through expansion or added to eligible renewal projects by shifting up to 10 percent of funds from one eligible activity to the VAWA costs line item.

**a.** Examples of eligible costs for emergency transfer facilitation include the costs of assessing, coordinating, approving, denying and implementing a survivor's emergency transfer which includes:

**(1)** Assistance with moving costs. Reasonable moving costs to move survivors for an emergency transfer.

**(2)** Assistance with travel costs. Reasonable travel costs for survivors and their families to travel for an emergency transfer.

**(3)** Security Deposits. Grant funds can be used to pay for security deposits of the safe units the survivor is transferring to via an emergency transfer.

**(4)** Utilities. Grant funds can be used to pay for costs of establishing utility assistance in the safe unit the survivor is transferring to.

**(5)** Housing Fees. Fees associated with getting survivors into a safe unit via emergency transfer, includes but not limited to application fees, broker fees, holding

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 183 of 279
PageID #: 1551

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

fees, trash fees, pet fees where the person believes they need their pet to be safe, etc.

**(6)** Case management. Grant funds can be used to pay staff time necessary to assess, coordinate and implement emergency transfers.

**(7)** Housing navigation. Grant funds can be used to pay staff time necessary to identify safe units and facilitate moves into housing for survivors through emergency transfers.

**(8)** Technology to make an available unit safe. Grant funds can be used to pay for technology that the individual believes is needed to make the unit safe, including but not limited to doorbell cameras, security systems, phone and internet service when necessary to support security systems for the unit, etc.

**b.** Examples of eligible costs for monitoring compliance with the VAWA confidentiality requirements include the costs of ensuring compliance with the VAWA confidentiality requirements which includes:

**(1)** Monitoring and evaluating compliance with VAWA confidentiality requirements.

**(2)** Developing and implementing strategies for corrective actions and remedies.

**(3)** Program evaluation of confidentiality policies, practices and procedures.

**(4)** Training on compliance with VAWA confidentiality requirements.

**(5)** Reporting to Collaborative Applicant, HUD and other interested parties on compliance with VAWA confidentiality requirements.

**(6)** Costs for establishing methodology to protect survivor information.

**(7)** Staff time associated with maintaining adherence to confidentiality requirements.

### 5. Rural Costs Information.

Section 5707 of the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 (PL 117-263, December 23, 2022, 136 Stat 2395) amended section 423(a) of the McKinney-Vento Homeless Assistance Act to allow projects in rural areas [as defined in section 2.b.(9) of the Appendix] to use program funds to pay for the following eligible activities:

**a.** Payment of short-term emergency lodging, including in motels or shelters, directly or through vouchers.

**b.** Repairs to units in which individuals and families experiencing homelessness will be housed; or are currently not fit for human habitation.

**c.** Staff training, professional development, skill development, and staff retention activities.

HUD has determined that eligible activities paid for under the rural costs category may be included in new project applications or added to eligible renewal projects through expansion. This rural cost category does not apply to projects originally awarded under the Rural Set Aside through the Special NOFO.

HUD published a list of CoCs located in rural areas on the CoC Program page on the HUD.gov website.

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 184 of 279
PageID #: 1552

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| Budget Form/Document | Submission Requirement | Notes/Description |
|---|---|---|
| Budget Information for Non-Construction Programs (SF-424A) | If applicable with the application | Page limit: Not Applicable<br>File name: SF-424A |
| Budget Information for Construction Programs (SF-424C) | If applicable, required with the application | Page limit: Not applicable<br>File name: SF-424C |
| Grant Application Derailed Budget (HUD-424-CB) | Required with the application | Page limit: Not applicable<br>File name: HUD-424CB<br>Form location: download instruction |
| Grant Application Detailed Budget Worksheet (HUD-424-CBW) | Required with the application | Page limit: Not applicable<br>File name: HUD-424CBW<br>Form location: download instructions |
| Indirect Cost Information Certification (HUD-426) | If applicable, this document is required with the application and after award | Page limit: Not applicable<br>File name: ICR Doc.<br>Form location: download instructions |

| Budget Form/Document | Submission Requirement | Notes/Description |
|---|---|---|
| Budget Information for Non-Construction Programs (SF-424A) | If applicable with the application | Page limit: Not Applicable<br>File name: SF-424A |
| Budget Information for Construction Programs (SF-424C) | If applicable, required with the application | Page limit: Not applicable<br>File name: SF-424C |
| Grant Application Derailed Budget (HUD-424-CB) | Required with the application | Page limit: Not applicable<br>File name: HUD-424CB<br>Form location: download instruction |

DOJ-HUD-AR00188

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 185 of 279
PageID #: 1553

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| Budget Form/Document | Submission Requirement | Notes/Description |
|---|---|---|
| Grant Application Detailed Budget Worksheet (HUD-424-CBW) | Required with the application | Page limit: Not applicable File name: HUD-424CBW Form location: download instructions |
| Indirect Cost Information Certification (HUD-426) | If applicable, this document is required with the application and after award | Page limit: Not applicable File name: ICR Doc. Form location: download instructions |

## C. Narratives and Other Attachments

If applicable, you must upload narrative and non-form attachments in e-snaps.hud.gov. When adding the attachments to the form, you can upload PDF, Word or Excel formats.

Collaborative Applicants will provide narrative responses about the CoC planning body, governance structure, overall performance, and the strategic planning processes in esnaps. The CoC Application describes the CoC's plan for ending homelessness and increasing self-sufficiency and recovery, its system-level performance, and addresses the merit criteria specified in section V.B of this NOFO. HUD scores this part of the application with all charts and narratives completed (as applicable) and all required attachments to determine the order in which competitively ranked CoC projects are funded.

Project applicants will provide narrative responses to questions in e-snaps that demonstrate their ability to meet project eligibility and project quality threshold requirements.

## D. Other Application Content

### 1. Eligible Project Applications.

The following types of project applications will be eligible for completion and submission under this NOFO.

**a. *CoC Planning projects.*** All Collaborative Applicants are eligible and encouraged to apply for CoC Planning funds which they may use according to 24 CFR 578.39. CoC Planning project applications must be submitted by the CoC-designated Collaborative Applicant and the Collaborative Applicant organization must match the organization listed as the Collaborative Applicant in the CoC Applicant Profile in e-snaps. Planning projects will not affect a CoC's available amount for new and renewal project applications because it is not included in the CoC's ARD calculation.

**b. *UFA Costs projects.*** Only those CoC-designated Collaborative Applicants approved for UFA designation by HUD are eligible to apply for UFA Costs project funds as described in 24 CFR 578.41. UFA Costs project application must be submitted by the CoC-designated Collaborative Applicant and the Collaborative Applicant organization

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 186 of 279
PageID #: 1554

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

must match the organization listed as the Collaborative Applicant in the CoC Applicant Profile in e-snaps. UFA Costs projects will not affect a CoC's available amount for new and renewal project applications as it is not included in the CoC's ARD calculation.

c. *CoC Bonus Project.* The CoC Bonus allows CoCs to use up to 20 percent of their Final Pro Rata Need (FPRN) to create one or more new project applications. New projects created through the CoC Bonus must meet the project eligibility and project quality threshold requirements established by HUD in sections V.A.4.a and V.A.4.b of this NOFO. To be eligible to receive a CoC Bonus project, the Collaborative Applicant must demonstrate its CoC evaluates and ranks projects based on how they improve system performance as outlined in section V.B.1.a.(1) of this NOFO.

d. *Domestic Violence, Dating Violence, Sexual Assault, and Stalking Renewal Projects (DV Renewal Projects).* Are eligible renewal projects that were previously funded, in whole or in part, with DV Bonus funding or were at some point expanded using DV Bonus funding to continue serving individuals and families who are fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking and who qualify under paragraphs (1) or (4) of the definition of homelessness at 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act.

e. *Domestic Violence, Dating Violence, Sexual Assault, and Stalking New Projects (DV Bonus and DV Reallocation Projects).* A new project that is dedicated to serving individuals and families who are fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking and who qualify under the paragraphs (1) or (4) of the definition of homeless at 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act. As described in section 2.b.(5) of the Appendix , survivors of human trafficking may also qualify as homeless under paragraph (4) of the homeless definition at 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act because they are often also victims of domestic violence, dating violence, sexual assault, or stalking, however a DV Bonus project may not exclusively serve people fleeing or attempting to flee human trafficking. CoCs may apply for DV Bonus projects where the total amount for one year of funding for all DV Bonus applications is up to 10 percent of its Preliminary Pro Rata Need (PPRN); however, this amount is limited to:

• A minimum of $50,000 if 10 percent of the CoC's PPRN is less than $50,000; or
• A maximum of $5 million if 10 percent of the CoC's PPRN is more than $5 million.

See sections V.A.4.b and V.D.3.d of this NOFO for project application requirements and how DV Bonus projects will be reviewed and selected.

(1) To be eligible to receive DV Bonus projects, the Collaborative Applicant must demonstrate its CoC evaluates and ranks projects based on how they improve system performance as outlined in section V.B.1.a.(1) of this NOFO.

(2) CoCs may reallocate eligible DV Renewal to create new DV Reallocation projects that are dedicated to serving individuals and families who are fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking and who qualify under paragraphs (1) or (4) of the definition of homelessness act. DV Bonus funding and funding made available from the reallocation of expiring DV Renewal projects may be used for "new rapid re-housing projects and supportive service projects providing

Case 1:25-cv-00636-MSM-AEM     Document 56-2     Filed 12/29/25     Page 187 of 279
PageID #: 1555

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

coordinated entry, and for eligible activities that the Secretary determines to be critical in order to assist individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking."

**(3)** New projects or expansion projects created with DV Bonus or DV Reallocation funding, must meet DV Bonus and DV Reallocation project requirements. Additionally, the sum of all DV Reallocation applications must be for the same amount of funding made available from the DV Renewal funding being reallocated. If a CoC reallocates funding from a DV Renewal grant and does not use those funds for new project(s) that are 100 percent dedicated to the eligible population established in this section, HUD may condition the project applications to ensure the projects are serving the required subpopulation. If an applicant does not resolve the condition placed on the project, HUD may withdraw the award. To avoid any potential delays in funding or a loss in ARD, CoCs should review the FY 2025 GIW provided by HUD to determine which renewal projects were originally awarded DV Bonus or DV Reallocation funds, including CoC projects that were expanded with DV Bonus or DV Reallocation funding in a prior year competition.

The following restrictions apply to the DV Reallocation process:

**(a)** DV Renewal projects that have a SSO-CE component cannot be reallocated.

**(b)** Reallocated DV Renewal funding cannot be used to expand a CoC or YHDP Renewal grant.

**(c)** DV Renewal projects cannot be reallocated to create new non-DV CoC projects. If HUD determines that a project applicant incorrectly classified one or more new projects as a DV Reallocation, HUD may reclassify the project(s). For example, if the proposed project is not dedicated to serving individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, and stalking, HUD may condition the project to ensure the required population is served.

**(d)** If a project does not have enough funding available from reallocation sources, HUD will reduce the project to the amount available, if any, and determine if the project is feasible at the reduced rate.

**f.** *New Projects Created Through DV Bonus or DV Reallocation Processes.*

**(1)** DV Bonus and DV Reallocation may only be used to create new SSO-Coordinated Entry, Rapid Re-housing (PH-RRH), and Transitional Housing (TH) projects.

**(2)** For PH-RRH and TH projects, the application must demonstrate:

**(a)** The project applicant's experience serving individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking, and their ability to house survivors and meet safety outcomes.

**(b)** The project's inclusion of victim-centered practices.

**(c)** Demonstration of plan to include survivors with lived expertise.

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 188 of 279
PageID #: 1556

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

**(3)** Supportive Services Only Coordinated Entry (SSO-CE) must be designed to implement policies, procedures, and practices that equip the CoC's coordinated entry to better meet the needs of people experiencing homelessness who are experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking (e.g., to implement policies and procedures that are trauma-informed, client-centered or to better coordinate referrals between the CoC's coordinated entry and the victim service providers coordinated entry system where they are different). SSO-CE project applications created with DV Bonus and DV Reallocation funding must also demonstrate its plan to involve survivors in policy and program development throughout the project's operation.

**g.** *New Projects Created with CoC Bonus or Through the CoC Reallocation process.* CoCs may apply for the following types of new CoC projects through the CoC Bonus or CoC Reallocation processes:

**(1)** SSO projects.

**(2)** TH projects.

**(3)** PH-PSH projects.

**(4)** PH-RRH projects.

**(5)** Dedicated HMIS project for the costs at 24 CFR 578.37(a)(4) that may only be carried out by the HMIS Lead, which is the recipient or subrecipient of an HMIS grant and is listed on the HMIS Lead form in the CoC Applicant Profile in e-snaps. Additionally, if the CoC has organizations within its geographic area that are victim service providers, the HMIS Lead, or subrecipient, may request HMIS funds for a comparable database. Victim service providers may also request HMIS funds in their project application budgets to enter data into a comparable database.

**(6)** SSO-CE project to develop or operate a Coordinated Entry system.

Prior to completing a new project application created using CoC Bonus funds or through the reallocation process, project applicants should consult with the CoC to determine which of these options is available to be locally selected as part of the CoC.

If HUD determines that a CoC Bonus or CoC Reallocation project applicant or a Collaborative Applicant incorrectly classified one or more new projects as reallocation or CoC Bonus, HUD may reclassify the project(s) as either reallocation or CoC Bonus if the CoC exceeded either its reallocation or CoC Bonus amounts. For example, if a project applicant or the Collaborative Applicant classified a new project application as reallocation but did not reallocate funds in whole or part from an eligible renewal project, and there are CoC Bonus funds available, HUD may reclassify the new project application as CoC Bonus during its review. If a project applicant uses both reallocation and CoC Bonus amounts to create a single new project but did not have enough available from either source, HUD will reduce the project to the amount available, if any.

If a project applicant or the Collaborative Applicant classified a new project application as reallocation but did not reallocate funds in whole or part from an eligible renewal project, HUD may reduce the funding amount or reject the new project application during its review.

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 189 of 279
PageID #: 1557

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

For new projects created through the CoC Bonus process, HUD must determine the CoC has demonstrated that the projects are evaluated and ranked based on the degree to which they improve the CoC's system performance.

**h.** *Youth Homeless Demonstration Program (YHDP).* Consistent with the requirements of the Consolidated Appropriations Act, 2024, funding for the CoC Program may be used to competitively or non-competitively renew or replace grants for YHDP projects.

In order to ensure the best use of federal dollars, HUD will competitively award all YHDP projects, including renewal and replacement YHDP projects. CoCs seeking to reallocate YHDP projects may only reallocate to other youth projects. See section IV.D.1.i below of this NOFO for additional information.

While YHDP projects can use the replacement process to consolidate projects as outlined in section IV.D.1.i and IV.D.1.k below, these projects cannot consolidate with non-YHDP projects. YHDP Renewal projects may apply to expand its current project through the YHDP Replacement process. Unified Funding Agencies (UFAs) are prohibited from moving funds out of or into YHDP-funded projects and mixing funding from any other non-YHDP funded project. UFAs may replace eligible YHDP renewal projects.

All YHDP Renewal and YHDP Replacement projects, including YHDP reallocation, are subject to the following provisions of the Rule, as may be amended from time to time, except where they conflict with the NOFO requirements, with the Special YHDP Activities identified in section IV.B.2 of this NOFO, or the requirement that grant funds may only be used to serve homeless youth, age 24 and younger: 24 CFR 578.3, 578.15, 578.23, 578.25, 578.27, 578.29, 578.37, 578.43, 578.45, 578.47, 578.49, 578.51, 578.53, 578.55, 578.57, 578.59, 578.61, 578.63, 578.73, 578.75, 578.77, 578.79, 578.81, 578.83, 578.85, 578.87, 578.89, 578.91, 578.93 except in 578.93(c)(2), recipients must provide such information to the jurisdiction in which the project is located, 578.95, 578.97, 578.99, 578.103(a)(3) - (18) and (b) – (e), 578.105, 578.107 and 578.109. The requirements of 2 CFR 200.306, as may be amended from time to time, with the exception of 200.306(b)(5) apply. All YHDP Renewal, YHDP Replacement and new YHDP Reallocation projects must comply with 24 CFR 578.93, except that in 578.93(c)(2), recipients must provide such information to the jurisdiction in which the project is located. Federal fair housing and nondiscrimination requirements cannot be waived.

**i.** *New YHDP Projects Created through YHDP Replacement processes.* CoCs may replace renewing YHDP project(s) to create one or more new YHDP Replacement projects, including YHDP Reallocation (see section 2.b.(12) of the Appendix for more information).

**(1)** YHDP Renewal project applicants may submit renewal applications for minor changes to a project, including adding or modifying select Special YHDP Activities under section IV.B.2; however, if a renewing YHDP project applicant chooses to modify the current project in a way that does not meet the definition of renewal project found at IV.D.2 of this NOFO, it must submit a YHDP Replacement project application.

**(2)** A YHDP Renewal project applicant may apply to expand its current project through the YHDP Replacement process. See section IV.D.1.j.(3) for more information.

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 190 of 279
PageID #: 1558

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

**(3)** A YHDP Replacement project application must:

**(a)** demonstrate that the project is consistent with the CoC's most recent Coordinated Community Plan; and

**(b)** For YHDP replacement projects that are not reallocations, include the grant number from the YHDP Renewal project(s) being replaced with the YHDP Replacement project application. The CoC's Collaborative Applicant is responsible for ensuring that only a renewal YHDP or replacement YHDP project application is submitted through the CoC Project Priority Listing. If the Collaborative Applicant submits both a renewal and replacement YHDP project application for the same project, HUD will only select the renewal YHDP project application;

**(4)** HUD will only fund new YHDP Reallocation projects through the YHDP Replacement process as described below and in sections IV.D.1.h and IV.B.2 of this NOFO:

**(a)** TH or Crisis Residential Transitional Housing which is a form of transitional housing that is short-term, low-barrier, using a congregate living setting, and provides access to the following supportive services in particular: family engagement and unification, case management, emergency triage services and other supportive services whose purpose is to move youth rapidly into stable housing.

**(b)** SSO, including, but not limited to, housing search and placement services, case management, or street outreach.

**(c)** SSO-CE.

**(d)** SSO - Host Home and Kinship Care. A model in which a family agrees to permit a youth to reside with them. Recognizing that the addition of another person in the home may increase costs to the family, HUD will entertain applications that propose to house youth with families and to subsidize the additional costs attributable to housing the youth. The residence is in a community-based setting. The family could be related to the youth and the length of stay may be time-limited or without time limits. YHDP funds may be used to subsidize the increased costs to the family that are attributable to housing the youth. An example of eligible costs would be additional food or transportation costs, which are eligible supportive services under 24 CFR 578.53(e)(7) or 24 CFR 578.53(e)(15). Recipients must keep records related to this determination by the recipient for HUD review upon request.

**(e)** HMIS.

**(5)** HUD will review new YHDP Reallocation and YHDP Replacement project applications to ensure the activities requested are eligible and the amounts requested do not exceed the amounts available for YHDP reallocation or, in the case of YHDP Replacements, the ARA of the renewal project(s) being replaced. HUD will not reject YHDP project applications; however, HUD may require YHDP grant recipients to correct or revise information submitted after the final award announcement, prior to executing the grant agreement.

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 191 of 279
PageID #: 1559

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

**j. *Expansion Project.*** The process used by eligible renewal project applicants to add funds to an existing CoC Renewal, DV Renewal or YHDP Renewal project to expand its current operations either through reallocation, DV Bonus or a CoC Bonus project application. The new funding being added to the existing renewal must be submitted as a new project in e-snaps. This portion of the project is known as new expansion project.

HUD will allow project applicants to apply for new expansion projects to expand existing projects to increase the number of units, persons served, services provided to existing program participants, or to add additional activities to HMIS and SSO-CE projects.

The new expansion project applications must meet the project eligibility and project quality thresholds in V.A.4.a and V.A.4.b of this NOFO and must be for the same component as the project being expanded. Additionally, the renewal project being expanded must have an expiration date in CY 2026.

In the case of YHDP Replacement applications to expand existing YHDP Renewal projects, applicants must submit a YHDP Replacement and a YHDP Reallocation application separately and each project must be included in the CoC's Priority Listing.

If a project application does not meet the following requirements, or if the renewal project the new project application is proposing to expand is not selected for award, HUD will review the new expansion project and will consider it as a standalone project during the selection process provided that the project is feasible on its own with its requested funding and provided it passes project eligibility and project quality threshold requirements.

If both the new expansion project and the renewal project it expands are conditionally selected for funding, one grant agreement incorporating both approved project applications will be executed.

(1) The following limitations apply to expansion grant applications:

(a) If the new expansion project exceeds the amount of funding available to the CoC under the reallocation or Bonus processes, HUD will reduce the funding request for the new expansion project to the available amount, which could affect the activities of the new expansion project.

(b) HUD will not fund expansion applications that include requests for capital costs (i.e., new constructions, rehabilitation, or acquisition) and will only allow 1-year funding requests.

(c) Recipients cannot apply to expand a project included in a grant consolidation during the same funding year. If an applicant applies to expand a project included in a grant consolidation, HUD may consider the expansion project for funding if it meets all the requirements of a new standalone project.

(d) CoC Bonus, CoC Reallocation, DV Bonus, or DV Reallocation funding cannot be used to expand a YHDP renewal project.

(e) If CoC Bonus, CoC Reallocation, DV Bonus, or DV Reallocation funding is used to expand a DV Renewal project, the entire expanded project must be 100 percent dedicated to serving individuals and families who are fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking and who qualify

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 192 of 279
PageID #: 1560

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

under paragraph (1) or (4) of the definition of homeless at 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act and the project must meet all the DV project requirements in sections IV.D.1.e and IV.D.1.f of this NOFO.

**(f)** New YHDP projects created with reallocated YHDP funding may be used to expand an existing YHDP renewal project through the YHDP Replacement process. The expansion YHDP project must meet the requirements of a new YHDP Replacement application.

**(2)** Project applicants expanding an eligible CoC Renewal or DV Renewal project must:

**(a)** submit a separate renewal project application and the new project application with expansion information (both projects must be ranked by the CoC with unique rank numbers);

**(b)** in the new project application, enter the grant number of the eligible renewal project proposed for expansion;

**(c)** indicate how the new project application will expand units, beds, services, persons served, or services provided to existing program participants, or in the case of HMIS or SSO-CE projects, how the current activities will be expanded for the CoC's geographic area; and

**(d)** ensure the funding request for the expansion grant is within the funding parameters allowed under CoC Bonus, CoC Reallocation, DV Bonus, or DV Reallocation amounts available.

**(3)** Project applicants expanding an eligible YHDP Renewal project through the YHDP Replacement process must:

**(a)** submit a new YHDP Reallocation project application with the expansion information through the YHDP Replacement process, including the grant number of the YHDP Renewal project being expanded.

**(b)** indicate how the expansion project application will expand units, beds, services, persons served, or services provided to existing program participants.

**(c)** ensure the funding request for the YHDP Reallocation application to expand the YHDP Renewal project is within the funding parameters allowed under the YHDP Reallocation amount available.

**(d)** ensure the YHDP Renewal and YHDP Reallocation project applications meet the requirements in sections IV.D.1.h and IV.D.1.i of this NOFO.

**(4)** DV Bonus and DV Reallocation Expansion Applications.

**(a)** DV Bonus and DV Reallocation funds can only be used for an application to expand an existing renewal project if the new expansion project is dedicated to individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking who qualify under paragraphs (1) or (4) of the definition of homeless at 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act.

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 193 of 279
PageID #: 1561

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

**(b)** Project applicants may use DV Bonus funds to expand an existing renewal project that is not currently dedicated to serving individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking to dedicate additional beds, units, persons served, or services provided to existing program participants of this population; however, only the new project application for the expansion will be considered for DV Bonus funds.

**(c)** If an applicant proposes to use DV Reallocation funds to expand an existing renewal project that is not currently dedicated to serving individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking to dedicate additional beds, units, persons served, or services provided to existing program participants of this population, the entire project, including the renewal project being expanded, must serve 100 percent individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking who qualify under paragraphs (1) or (4) of the definition of homeless at 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act. In the case of DV Reallocation Projects, HUD will use the Tier 1 and Tier 2 selection process described in sections V.D.3.a, V.D.3.b and V.D.3.c of this NOFO.

**k.** *Consolidation Project.* Applicants intending to use the consolidation process to combine two or more, but no more than 10, eligible renewal projects (including renewing YHDP projects and renewal Special CoC NOFO Competition projects), may do so through the renewal project application. The projects being combined during a grant consolidation will continue uninterrupted. To be eligible for consolidation, the projects must have the same recipient and be for the same component.

**(1)** The period of performance and budget period of the expiring grants must have end dates in CY 2026. Applicants intending to use the consolidation process must ensure:

**(a)** Budget Line Items (BLIs) for the consolidated project application submitted, exactly match the sum of the BLIs for each of the individual projects as they appear on the grant agreement, or the grant agreement as amended;

**(b)** inclusion of the expiring grant numbers with period of performance and budget period start and end dates for the projects that are consolidating;

**(c)** are in good standing with HUD, meaning none of the projects have:

i. outstanding audit or monitoring findings,
ii. outstanding obligation to HUD that is in arrears,
iii. unresolved construction delays,
iv. a history of poor financial management/drawdown issues,
v. history of low occupancy levels, or lack experience in administering the project type, or
vi. other capacity issues.

**(d)** the projects have the same recipient and are for the same component.

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 194 of 279
PageID #: 1562

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

**(2)** YHDP Renewal projects that wish to consolidate may establish a single YHDP Replacement grant to replace multiple YHDP Renewal grants.

**(3)** The following projects cannot be consolidated and if a project application meeting these characteristics attempts to consolidate, HUD will not consider the consolidation, but rather select the projects individually provided they pass project eligibility and project quality threshold requirements:

**(a)** a DV Renewal project cannot consolidate with a CoC Renewal project (a project not dedicated to serving individuals and families who meet the eligibility criteria in Section III.G.10.(c) of this NOFO, including a project originally funded under the Special NOFO Competition, and a YHDP Renewal project), or a project originally funded under the Special CoC NOFO Competition;

**(b)** a YHDP Renewal project cannot consolidate with a CoC Renewal project (including those projects originally funded **under the Special CoC NOFO Competition) or a DV Renewal project;**

**(c)** a project originally funded under the Special CoC NOFO Competition through the Rural Set Aside cannot consolidate with any other type of project (e.g., a project originally funded with DV Bonus or a project originally funded through the Unsheltered Set Aside in the Special NOFO Competition) except another project originally funded through the Rural Set Aside. This means, a project originally funded under the Special NOFO through the Rural Set Aside can only consolidate with another Special CoC NOFO Competition project originally funded through the Rural Set Aside;

**(d)** a TH and a PH project cannot consolidate to form a Joint TH/PH-RRH component project;

**(e)** transition grants cannot consolidate with any other project; and

**(f)** recipients cannot apply to consolidate projects and apply to expand the consolidated project during the same funding year. If an applicant applies to expand projects that are involved in a consolidation of grants, HUD may consider the expansion project for funding if it meets all the requirements of a new standalone project.

**(4)** To request the consolidation of eligible renewal projects, project applicants must submit renewal projects for the individual projects to be included in the consolidation and each project application must identify the grant number that will survive which must be the grant number with the earliest start date CY 2026. Project applications for the grants that are proposed to be part of the consolidation must be ranked with a unique rank number for each project, and if all those grants are selected, HUD will conditionally award the single surviving grant based on its ranked position to include the amount of funding of all grants included in the consolidation. All other project applications included in the surviving grant will be removed from the CoC's ranking resulting in project applications below to slide up one ranked position. Project applicants must not submit a consolidated project application that contains two different components (e.g., PH and TH).

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 195 of 279
PageID #: 1563

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

**(5)** The start date for the consolidated grant, if conditionally awarded, will be the day after the expiration date of the eligible renewal project with the earliest expiration date. HUD will calculate the expiration date for the consolidated grant by averaging the expiration dates for all expiring grants included in the consolidated grant weighted by the size of each expiring grant. If that date falls on the first through the fifteenth of a month, then the expiration date will be the last day of the previous month. If the date falls on the sixteenth through the end of the month, then the expiration date will be the last day of the month.

**(6)** HUD will calculate the expiration date for the consolidated grant as follows: It will be 'X' months after the end of the 12th month after the start date for the consolidated grant with 'X' determined by calculating the sum for all grants of the total award times the number of months after the expiration of the first expiring grant that the grant expires and dividing that sum by the total award for the consolidated grant. If the calculation of 'X' results in a partial month, if it is less than 0.5, then the consolidated grant will expire on the last day of the previous month, and if it is 0.5 or more, then the consolidated grant will expire on the last day of the calculated month.

**(7)** Collaborative Applicants designated by HUD as UFAs have more flexibility in how they manage their CoC Program-funded projects, making the consolidation of projects during the CoC Program competition unnecessary. A Collaborative Applicant with UFA designation can consolidate projects during the grant term, so long as the consolidations are not combining different component types and the projects are funded under the same grant (e.g., projects are currently funded under the same renewal grant). If a UFA-designated Collaborative Applicant consolidates projects during the grant term, it can apply to renew them during the CoC Program Competition as consolidated projects.

**I.** *Transition Grant.* A Transition grant is an application to fund a new CoC project through the reallocation process to transition an eligible CoC renewal project (including a Special NOFO project or DV Renewal project) from one program component to another eligible component over a 1-year period. The renewal project transitioning to a new component must be fully eliminated through reallocation. Transition grant applications awarded FY 2025 funds must fully transition to the new component by the end of the 1-year grant term and may only apply for renewal in the next CoC Program Competition under the component to which it transitioned.

**(1)** Renewal Grants expiring in CY 2026 may submit a FY 2025 transition grant application to request a component type change. The transition grant's operating start date will be the day after the end of the previous grant term for the expiring component. For transition grants reallocated from more than one project, the operating start date of the transition grant will be the day after the end of the earliest expiring grant term. The grant term may be extended consistent with 2 CFR 200.308 and 2 CFR 200.309.

**(2)** Applicants wishing to apply for a transition grant must have the consent of its Continuum of Care; and the new project application must meet project eligibility and project quality thresholds established by HUD in sections V.A.4.a and V.A.4.b of this NOFO. If the project application identifies the project as a transition grant and the CoC

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 196 of 279
PageID #: 1564

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

accepts the new transition grant project on the New Project Application Project Listing in the CoC Priority Listing, HUD will consider this as CoC consent.

(3) For a new project to be considered a transition grant, the new project applicant must be the recipient listed on the current grant agreement for the eligible renewal grant(s) being eliminated and must include the grant number(s) of the project(s) being eliminated to create the new project and attach a copy of the most recently awarded project application. For example, expiring FY 2024 grants applying to transition to a new component during the FY 2025 funding process will attach a copy of the FY 2024 CoC Program Competition project application.

(4) Transition Grant Restrictions:

(a) YHDP Renewal grants are not eligible to use the transition grant process. YHDP Renewal grants must submit a YHDP Replacement application to change component types.

(b) Grants with DV Renewal funding are not eligible to use the transition grant process.

If HUD determines a new project submitted as a transition grant does not qualify, but meets all other new project requirements, HUD may award the project as a new non-transition grant project. If this occurs, the new project operating start date will be reflected in the grant agreement.

## 2. Renewal Project Requirements.

As set forth in 24 CFR 578.33, projects may renew under the CoC Program NOFO to continue ongoing leasing, operating, supportive services, rental assistance, HMIS, and project administrative costs.

Awards HUD made under the CoC Program (including projects awarded 1-year of funding under the FY 2024 CoC Program funding opportunity), projects originally awarded under the Special NOFO, and YHDP projects are eligible for renewal with FY 2025 CoC Program funds if they are currently operating and have an expiration date in CY 2026 (the period from January 1, 2026, through December 31, 2026).

a. Renewal project applications must be submitted by the same recipient that signed the executed grant agreement for the grant being renewed, or entity that became the recipient through a grant agreement transfer amendment. To be eligible as a renewal project, the application must (1) be for the same amount of funding before any adjustments described in this NOFO (e.g. FMR adjustments), or the amount reduced due to reallocation ; (2) be for the same program component; and (3) in the case of DV Renewal projects and YHDP Renewal projects, must continue to serve the same subpopulation.

b. If HUD conditionally selects a renewal grant for funding that does not have an expiration date that meets the renewal eligibility requirements prescribed by this NOFO, HUD will withdraw any funds conditionally selected for award.

c. Projects that were eligible under predecessor programs, specifically Safe Haven projects, will continue to be eligible under the CoC Program and will continue to be eligible for renewal of leasing, operating, supportive services, rental assistance, HMIS, and

Case 1:25-cv-00636-MSM-AEM     Document 56-2     Filed 12/29/25     Page 197 of 279
PageID #: 1565

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

project administrative costs under 24 CFR 578.33(d)(1) so long as the project continues to serve the same population and the same number of program participants or units in the same type of housing as identified in their most recent grant agreement, amended grant agreement, signed before August 31, 2012. No new Safe Haven projects will be funded; however, existing Safe Haven projects may be renewed to continue to carry out activities that are eligible costs under Subpart D of the Rule.

**d.** The total request for each renewing project, including YHDP Renewal and YHDP Replacement projects, is limited to a project's ARA. Additionally, where two or more eligible projects are being consolidated through the project application, the total ARA of the consolidation project must be equal to or less than the sum of the original ARA of the renewal projects before consolidation. Because funds for acquisition, new construction, and rehabilitation are not renewable, grants being renewed whose original expiring award included acquisition, new construction, and rehabilitation funds may only renew leasing, supportive services, rental assistance, operating, and HMIS costs and must not exceed 10 percent in administrative costs.

**e.** HUD will recapture grant funds remaining unspent at the end of the previous grant period when it renews a grant.

**f.** HUD encourages the consolidation of eligible renewal grants as provided in Section IV.D.1.k of this NOFO. This does not apply to CoCs that HUD designates as UFAs, because UFAs enter into a single renewal grant agreement with HUD for the CoC's entire geographic area. If applicable, HUD issues a separate UFA grant agreement that only includes YHDP grants.

**g.** Subject to HUD approval and the terms of the NOFO, the following requests may be included in a renewal application:

**(1)** CoC renewal project applications (including DV Renewal projects and projects originally funded under the Special NOFO) may include non-significant changes including shifting up to 10 percent of funds from one approved eligible activity to another.

**(2)** YHDP Renewal project applications from any round may include non-significant changes including adding select Special YHDP Activities in section IV.B.2 and shifting up to 10 percent of funds from one approved eligible activity to another.

**(3)** Renewal applications that include requests to shift more than 10 percent of funds from one approved eligible activity to another and other significant changes as defined at 24 CFR 578.105 will not be considered during the CoC Program Competition by HUD. If an application includes a budget shift that exceeds 10 percent, HUD will correct the project budget to reflect the previously awarded budget amounts. Applicants seeking to make significant changes to their grant, such as shifting more than 10 percent of funds from an approved eligible activity, should contact their Field Office and request a grant agreement amendment.

**(4)** CoC renewal project applicants may also apply to transition an eligible renewal project from one program component to another eligible new component through reallocation and use those funds to create a single, new transition grant (see section

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 198 of 279
PageID #: 1566

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

IV.D.1.l of this NOFO). YHDP Renewal project applicants are not permitted to utilize the transition grant application process. YHDP applicants must submit a YHDP Replacement application to change program components.

**(5)** YHDP Replacement projects cannot request capital costs (i.e., new construction, acquisition, or rehabilitation).

**h.** *Actual Per Unit Cost – Renewal Grants.* Applicants requesting renewal of grants for rental assistance may request a per-unit amount less than the Fair Market Rent (FMR) if the actual rent per unit under lease is less than the FMR. This will help reduce the number of projects receiving rental assistance that have large balances of unspent funds remaining at the end of the operating year. Renewal project applicants must ensure the amount requested will be sufficient to cover all eligible costs as HUD cannot provide funds beyond the amount awarded through the FY 2025 CoC Program funding process. Project applications for rental assistance cannot request more than 100 percent of the published FMR. New project applications must adhere to 24 CFR 578.51(f) and must request the full FMR amount per unit. See section V.D.5.a of this NOFO for additional information regarding FMR adjustments for projects receiving funds for rental assistance.

**i.** *Renewal Project Grant Terms.* Renewal project applications are limited to a 1-year grant term with 1 year of funding. HUD may extend the grant term consistent with 2 CFR 200.308 and 2 CFR 200.309.

Any renewal PH project that receives project-based rental assistance or operating costs may request up to a 15-year grant term; however, project applicants may only request 1 year of funding. HUD may extend the grant term consistent with 2 CFR 200.308 and 2 CFR 200.309. Project applicants must apply for the additional funds as a renewal project application prior to the anniversary of the first expenditure of grant funds by which date grant funds should have been expended; or, if HUD extends the date that funds must be expended, the date the extension expires. HUD does not guarantee CoC Program funds past the 1 year of renewal funding.

### 3. New Project Requirements.

CoCs are encouraged to submit new projects created through CoC Bonus, DV Bonus, CoC Reallocation, DV Reallocation or YHDP Replacement including YHDP Reallocation. A CoC designated Collaborative Applicant may submit a new CoC Planning project application, and if applicable, a UFA Costs project application in FY 2025.

To expend funds within statutorily required deadlines, applicants funded for sponsor-based and project-based rental assistance must execute the grant agreement and begin providing rental assistance within 2 years. However, HUD strongly encourages all rental assistance to begin within 12 months of award. Applicants that are unable to begin rental assistance within the 12-month period should consult with the local HUD CPD field office.

**a.** HUD will review project subrecipient eligibility as part of the project quality threshold review process. Project applicants must submit documentation of the subrecipient's eligibility with the project application.

**b.** Any youth-serving provider funded under this NOFO may serve unaccompanied youth aged 24 and under (or families headed by youth aged 24 and under, including pregnant or

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 199 of 279
PageID #: 1567

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

parenting youth) who have an unsafe primary nighttime residence and no safe alternative to that residence.

**c.** Per the Consolidated Appropriations Act, 2024, to receive funding for a new CoC project, except those created through reallocation, HUD must determine the CoC has demonstrated that projects are evaluated and ranked based on the degree to which they improve the CoC's system performance (See more information on System Performance in sections III.B.6 and V.B.1.a.(1) of this NOFO).

**d.** *New Project Grant Terms.* The initial grant term for new project applications may be 1-year, 2-years, 3-years, 4-years, 5-years, or 15-years. HUD may extend the grant consistent with 2 CFR 200.308 and 2 CFR 200.309. The following exceptions apply:

**(1)** HUD will allow new projects to request 1 year of funding with a longer initial grant term not to exceed 18 months. HUD has determined that most new projects requesting 1 year of funding normally take approximately 3 to 6 months to begin fully operating the new project (e.g., hiring staff, developing partnerships with landowners if leasing or renting). Therefore, a new project requesting 1 year of funding may request a grant term of 12 months to 18 months that will allow for the additional start-up process. Any new projects requesting capital costs (i.e., new construction, acquisition, or rehabilitation) are not eligible for 1-year funding requests. See (7) below for more information on new projects requesting capital costs. Transition grant applications cannot request 18-month grant terms.

**(2)** Any new expansion project submitted to expand an eligible renewal CoC Program-funded project may only request a 1-year grant term, regardless of the project type.

**(3)** Any new project that requests tenant-based rental assistance may request a 1-year, 2-year, 3-year, 4-year, or 5-year grant term.

**(4)** Any new project that requests leasing costs - either leasing costs only or leasing costs plus other costs (e.g., supportive services, HMIS) - may request up to a 3-year grant term.

**(5)** The first year of funding for YHDP Replacement projects will be based on the 1-year renewal amount of the current YHDP project being replaced. The YHDP Replacement project's operating start date will be the day after the end of the previous grant term for the project being replaced.

**(6)** Any new project that requests project-based rental assistance or sponsor-based rental assistance, or operating costs may request up to a 15-year grant term; however, the project applicant may only request up to 5 years of funds. Funding for the remainder of the term is subject to availability. Applicants must apply for additional funds through a renewal project application in the competition held in the calendar year prior to the anniversary of the first expenditure of grant funds, or if HUD has extended the grant term, the date the extension expires. HUD does not guarantee CoC Program funds past the initial 5-year grant term, if conditionally awarded.

**(7)** Any new project that requests operating costs, supportive services only, HMIS, and project administrative costs may request 1-year, 2-year, 3-year, 4-year, or 5-year grant terms with funding for the same number of years.

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 200 of 279
PageID #: 1568

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

**(8)** Any new project conditionally selected by HUD that requests new construction, acquisition, or rehabilitation costs (capital costs) must request a minimum of a 3-year grant term and may request up to a 5-year grant term. Any new projects requesting capital costs are not eligible for 1-year funding requests. If a new project requests 1 year of funding with capital costs, HUD will increase the grant term to 3-years and the new project must spend the funds requested over a 3-year period.

If an applicant requests funds for new construction, acquisition, or rehabilitation in addition to requesting funds for operating, supportive services, or HMIS, the funding will be for the 3-years to 5-years requested, and the grant term will be 3-years to 5-years plus the time necessary to acquire the property, complete construction, and begin operating the project. HUD will require recordation of a HUD-approved use and repayment covenant before funds can be drawn down (the form can be obtained from the local HUD CPD field office) for all grants of funds for new construction, acquisition, and rehabilitation. (24 CFR 578.81) HUD Field Office Counsel must approve the use and repayment covenants in advance of their being recorded, and proof of recording must be submitted to HUD Field Office Counsel before HUD will release grant funds, other than acquisition funds.

**(9)** All new CoC Planning or UFA Costs project applications are limited to 1-year grant terms and 1 year of funding.

**(a)** The maximum amount for one year of funding to spend on administrative costs associated with the CoC planning activities listed at 24 CFR 578.39 is 5 percent of FPRN, up to a maximum of $1,500,000, or $50,000 whichever is greater.

**(b)** The maximum amount for one year of funding to spend on administrative costs associated with the UFA costs described at 42 USC 11360(g) is up to 3 percent of FPRN or $1,250,000 per fiscal year; whichever is less.

**(c)** CoC Planning and UFA Costs grants are not renewable.

**(10)** Any new project that is requesting consideration under the DV Bonus or DV Reallocation process may only request 1 year of funding, but may request a longer initial grant term not to exceed 18 months regardless of project application component type.

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

# V. APPLICATION REVIEW INFORMATION

V. Application Review Information

A. Threshold Review

B. Merit Review

C. Risk Review

D. Selection Process

E. Award Notices

TABLE OF CONTENTS

Case 1:25-cv-00636-MSM-AEM   Document 56-2   Filed 12/29/25   Page 202 of 279
PageID #: 1570

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

# V. APPLICATION REVIEW INFORMATION

## A. Threshold Review

HUD reviews each application to make sure it meets the following threshold requirements. If you meet all threshold requirements, your application will advance to a merit review. If you fail to meet one or more threshold requirements, your application is not eligible for HUD funding.

### 1. Eligible Applicant

You must meet the applicant eligibility criteria in this NOFO. Applications from ineligible applicants are not rated or ranked and will not receive HUD funding.

**a.** *Eligible Project Applicants (McKinney-Vento Act, 24 CFR 578.15, 24 CFR 5.100).* Eligible project applicants for the CoC Program Competition are found at 24 CFR 578.15 and in the Act and include nonprofit organizations, states, local governments, instrumentalities of state and local governments, Indian Tribes and TDHE [as defined in section 4 of the Native American Housing Assistance and Self-Determination Act of 1996 (25 U.S.C. 4103) (TDHEs)]. Public housing agencies, as such term is defined in 24 CFR 5.100, are eligible without limitation or exclusion. For-profit entities are ineligible to apply for grants and are prohibited from being subrecipients of CoC Program grant funds.

**b.** *Collaborative Applicants.* Only CoCs with a valid FY 2025 e-snaps registration will have access to the FY 2025 CoC Program and YHDP Funding Opportunity in e-snaps, which includes the Consolidated Application (i.e., the CoC Application, the CoC Priority Listing and the project application(s). CoCs should not attempt to change Collaborative Applicants during the FY 2025 CoC Program and YHDP Funding Opportunity without prior HUD approval unless HUD replaces the CoC's designated Collaborative Applicant under the authority of Section 402(c) of the Act. HUD will approve Collaborative Applicant changes outside the annual CoC Program Registration process under the following circumstances:

• the Collaborative Applicant made an error when entering the Collaborative Applicant name in the CoC Applicant Profile;
• the CoC-designated Collaborative Applicant is no longer in business;
• the CoC designates a new Collaborative Applicant; or
• HUD designated a new Collaborative Applicant as a remedial action under Section 402(c) of the Act.

In cases where the CoC changes its designated Collaborative Applicant during the CoC Program Registration process, the CoC must notify the local HUD CPD field office, in writing, stating the reason for the Collaborative Applicant change. The notice to HUD must provide documentation of the CoC's approval of the change (e.g., a copy of the meeting minutes to include the date and attendees).

**c.** *Indian Tribes and Tribally Designated Housing Entities (TDHE).* The Consolidated Appropriations Act, 2021 (Public Law 116-260, approved December 27, 2020) amended Title IV to add Section 435 of the Act to allow Indian Tribes and Tribally Designated Housing Entities (TDHE) to be Collaborative Applicants, eligible entities, or subrecipients of the CoC Program in addition to amending Title IV Section 401 to add the terms

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 203 of 279
PageID #: 1571

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

"Formula Area" and "Indian Tribe." These amendments mean that not only may Tribes and TDHEs apply for grants through other CoCs, but that formula areas, as that term is defined in the Indian Housing Block Grant program at 24 CFR 1000.302, are eligible to be added to the geographic areas of existing CoCs or may be included in newly formed CoCs through the CoC registration process (see Notice CPD-22-02).

Indian Tribes and TDHEs may:

(1) create a CoC;
(2) be a Collaborative Applicant;
(3) be an eligible project applicant; or
(4) receive grant amounts from another entity that receives a grant directly from HUD (i.e. be a CoC grant subrecipient).

However, under 42 U.S.C. 11383(g) only States, Units of General Local Government, nonprofit organizations, and Public Housing Agencies may administer permanent housing rental assistance.

d. *Solo Applicants.* Eligible project applicants that attempted to participate in the CoC planning process in the geographic area in which they operate that believe they were denied the right to participate in a reasonable manner, may submit a solo project application to HUD by following the procedure found in 24 CFR 578.35. If HUD finds in favor of the solo applicant, HUD may award grant funds. Solo applicants requesting FY 2025 funding must submit their solo project application in e-snaps to HUD by 8:00 PM EST, on January 14, 2026. See section VIII.D.4 of this NOFO for additional information regarding the Solo Applicant appeal process.

## 2. Resolution of Civil Rights Matters

Applicants with outstanding, unresolved judgments against them for violations of civil rights laws must resolve those judgments before the application submission deadline or the applicant will be deemed ineligible.

a. An applicant is ineligible for funding if the applicant has received notice of a judgment imposed against them for violations of:

1. the Fair Housing Act or a substantially equivalent state or local fair housing law for discrimination because of race, color, religion, sex, national origin, disability or familial status; or

2. Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, Section 109 of the Housing and Community Development Act of 1974, the Americans with Disabilities Act, or the Violence Against Women Act or substantially equivalent state or local laws.

b. HUD will determine if actions to resolve the judgment taken before the application deadline date will resolve the matter. Examples of actions that may be sufficient to resolve the matter include, but are not limited to:

1. Current compliance with a voluntary compliance agreement signed by all the parties;

2. Current compliance with a HUD-approved conciliation agreement signed by all the parties;

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 204 of 279
PageID #: 1572

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |
|---|---|---|---|---|---|---|---|---|

3. Current compliance with a conciliation agreement signed by all the parties and approved by the state governmental or local administrative agency with jurisdiction over the matter;

4. Current compliance with a consent order or consent decree; or

5. Current compliance with a final judicial ruling or administrative ruling or decision.

## 3. Timely Submission of Applications

Late applications are not eligible for funding. See deadlines in Section VI of this NOFO.

Applicants should review and follow the steps outlined below to ensure applications are complete and submitted by the deadlines established in this NOFO. Documents referenced in this section can be found on the CoC Program page of HUD's website: https://www.hud.gov/program_offices/comm_planning/coc.

4. Threshold Criteria.

Applicants who fail to meet the following threshold eligibility requirements are ineligible.

**a.** *Project Eligibility Threshold.* HUD will review all projects to determine if they meet the following project eligibility threshold requirements on a pass/fail standard. If HUD determines the applicable standards are not met for a project, HUD will reject the project. HUD will consider any project requesting renewal funding as having met these requirements through its previously approved grant application unless HUD receives information to the contrary (e.g., monitoring findings, results from investigations by HUD's Office of Inspector General, the recipient routinely does not draw down funds from eLOCCS at least once per quarter, consistently late Annual Performance Report (APR) submissions). Approval of new and renewal projects is not a determination by HUD that a recipient is compliant with applicable fair housing and civil rights requirements.

**(1)** Project applicants and potential subrecipients must meet the eligibility requirements of the CoC Program as described in the Act and the Rule and provide evidence of eligibility required in the application (e.g., nonprofit documentation).

**(2)** Project applicants and subrecipients must demonstrate the financial and management capacity and experience to carry out the project as detailed in the project application and the capacity to administer federal funds. Demonstrating capacity may include a description of the applicant and subrecipient experience with similar projects and with successful administration of SHP, S+C, or CoC Program funds or other federal, state, local, or private resources.

**(3)** Project applicants must submit the required certifications specified in this NOFO.

**(4)** The population to be served must meet program eligibility requirements as described in the Act, the Rule, and section III.G.10 of this NOFO.

**(5)** Project applicants, except Collaborative Applicants that only receive awards for CoC Planning costs and, if applicable, UFA Costs, must agree to participate in a local HMIS system. However, in accordance with Section 407 of the Act, any victim service provider that is a recipient or subrecipient must not disclose, for purposes of HMIS, any personally identifying information about any client. Victim service providers must

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 205 of 279
PageID #: 1573

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

use a comparable database that meets the needs of the local HMIS.

**(6)** Project applicants must certify affirmatively to the following:

| | |
|---|---|
| The project applicant will not engage in racial preferences or other forms of illegal discrimination. | |
| The project applicant will not operate drug injection sites or "safe consumption sites," knowingly distribute drug paraphernalia on or off of property under their control, permit the use or distribution of illicit drugs on property under their control, or conduct any of these activities under the pretext of "harm reduction." | |

**b.** *Project Quality Threshold.* HUD will review all new project applications to determine if they meet the following project quality threshold requirements HUD will not award funds to a new project unless the project was created through reallocation, or the CoC has demonstrated to HUD's satisfaction that projects are evaluated and ranked based on the degree to which they improve the CoC's system performance.

**(1)** HUD will consider any project requesting renewal funding, including renewing YHDP and renewing Special NOFO projects, as having met project quality threshold requirements through its previously approved grant application unless HUD receives information to the contrary or if the renewal project has compliance issues which results in the project not operating in accordance with the Rule.

**(2)** HUD will consider YHDP Replacement project applications including applications for new YHDP projects created through YHDP reallocation as having met project quality threshold requirements if the project application activities and costs are eligible under this NOFO. If a YHDP Replacement (including YHDP Reallocation) project application is not for activities and costs that are eligible under this NOFO, HUD will not reject the project under this project quality threshold, but HUD will require the project applicant to correct or revise information submitted after the final CoC Program award announcement but before executing the grant agreement.

**(3)** HUD will review the UFA Costs submitted by the UFA designated Collaborative Applicant to ensure appropriate match and eligibility of costs requested.

**(4)** HUD will assess all new project applications for the following minimum project eligibility, capacity, timeliness, and performance standards.

**(a)** project applicants must have satisfactory capacity, drawdowns, and performance for existing grant(s) funded under the CoC Program, as evidenced by timely reimbursement of subrecipients, regular drawdowns, and timely resolution of any monitoring findings; however, this does not apply to project applicants who have never received a CoC Program funded project;

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 206 of 279
PageID #: 1574

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

**(b)** for expansion project applications, project applicants must describe the part of the project that is being expanded and demonstrate the project is not replacing other funding sources; and

**(c)** project applicants must demonstrate their ability to meet all timeliness standards per 24 CFR 578.85. HUD reserves the right to deny a funding request for a new project, if the request is made by an existing recipient that HUD finds to have significant issues related to capacity, performance, unresolved audit, or monitoring findings related to one or more existing grants; or does not routinely draw down funds from eLOCCS at least once per quarter. HUD also reserves the right to withdraw funds if no APR is submitted on the prior grant.

**(5)** HUD reserves the right to verify past performance and evaluate the eligibility of a project application submitted during the CoC Program Competition for the following reasons:

**(a)** evidence that the project has previously or currently conducts activities that subsidize or facilitate racial preferences or other forms of illegal discrimination or conduct activities that rely on or otherwise use a definition of sex other than as binary in humans.

**(b)** evidence that the project operates drug injection sites or "safe consumption sites," knowingly distributes drug paraphernalia on or off of property under their control, permits the use or distribution of illicit drugs on property under their control, or conducts any of these activities under the pretext of "harm reduction."

**(6)** Additionally, for HUD to consider new projects as meeting project quality threshold, each new project must meet the following criteria as applicable. If awarded, a recipient must meet all the criteria listed in the criteria column for its component.

| (a) Transitional Housing (TH) | | |
|---|---|---|
| **New Project Application Rating Factors** | **Points Available** | **Criteria** |
| New Transitional Housing projects must receive at least 7 out of 10 points available for this project type. New TH projects that do not receive at least 7 points will be rejected. | 2 | Demonstrate that the project will provide and/or partner with other organizations to provide eligible supportive services that are necessary to assist program participants to obtain and maintain housing. |
| | 1 | The applicant has prior experience operating transitional housing or other projects that have successfully helped homeless individuals |

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 207 of 279
PageID #: 1575

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | and families exit homelessness within 24 months. |
|---|---|---|
| | 1 | The applicant has previously operated or currently operates transitional housing or another homelessness project, or has a plan in place to ensure, that at least 50 percent of participants exit to permanent housing within 24 months and at least 50 percent of participants exit with employment income as reflected in HMIS or another data system used by the applicant. |
| | 1 | The project will be supplemented with resources from other public or private sources, that may include mainstream health, social, and employment programs such as Medicare, Medicaid, SSI, and SNAP. |
| | 2 | Demonstrate that the proposed project will require program participants to take part in supportive services (e.g. case management, employment training, substance use treatment, etc) in line with 24 CFR 578.75(h) by attaching a supportive service agreement (contract, occupancy agreement, lease, or equivalent). |
| | 2 | Demonstrate that the proposed project will provide 40 hours per week of customized services for each |

Case 1:25-cv-00636-MSM-AEM     Document 56-2     Filed 12/29/25     Page 208 of 279
PageID #: 1576

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | |
|---|---|---|
| | | participant (e.g. case management, employment training, substance use treatment, etc.). |
| | | The 40 hours per week may be reduced proportionately for participants who are employed. |
| | | The 40 hours per week does not apply to participants over age 62 or who have a physical disability/impairment or a developmental disability (24 CFR 582.5) not including substance use disorder. |
| | 1 | Demonstrate the average cost per household served for the project is reasonable, consistent with 2 CFR 200.404. |

## (b) Supportive Services Only (SSO) Standalone

| New Project Application Rating Factors | Points Available | Criteria |
|---|---|---|
| New SSO – Standalone project applications must receive at least 4 out of the 5 points available for this project type. New SSO standalone projects that do not receive at least 4 points will be rejected. | 1 | The Supportive Services project is necessary to assist people in exiting homelessness and increasing self-sufficiency and the Recipient will conduct an annual assessment of the service needs of the program participants. |
| | 2 | The proposed project has a strategy for providing supportive services to eligible program participants including those with histories of unsheltered homelessness and those who do not |

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 209 of 279
PageID #: 1577

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | traditionally engage with supportive services. |
|---|---|---|
| | 1 | The project will be supplemented with resources from other public or private sources, that may include mainstream health, social, and employment programs such as Medicare, Medicaid, SSI, and SNAP. |
| | 1 | The services provided are cost-effective consistent with 2 CFR 200.404. |

### (c) Supportive Services Only (SSO) Street Outreach

| New Project Application Rating Factors | Points Available | Criteria |
|---|---|---|
| New SSO project applications that focus on street outreach and indicate so in their project application must receive at least 5 out of the 6 points available for this project type. Projects that do not receive at least 5 points will be rejected. | 1 | The project will be supplemented with resources from other public or private sources, that may include mainstream health, social, and employment programs such as Medicare, Medicaid, SSI, and SNAP. |
| | 2 | The proposed project has a strategy for providing supportive services to eligible program participants including those with histories of unsheltered homelessness and those who do not traditionally engage with supportive services. |
| | 1 | Demonstrate that the applicant has a history of partnering with first responders and law enforcement to engage people |

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 210 of 279
PageID #: 1578

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | living in places not meant for human habitation to access emergency shelter, treatment programs, reunification with family, transitional housing or independent living. The applicant must cooperate, assist, and not interfere or impede with law enforcement to enforce local laws such as public camping and public drug use laws. |
| --- | --- | --- |
| | 1 | The applicant has experience providing outreach services consistent with the activity description at 24 CFR 578.53(e)(13) and has demonstrated effectiveness at helping people successfully exit from places not meant for human habitation to emergency shelter, treatment programs, transitional housing or permanent housing programs. |
| | 1 | The services provided are cost-effective consistent with 2 CFR 200.404. |

## (d) SSO-Coordinated Entry (SSO-CE)

| New Project Application Rating Factors | Points Available | Criteria |
| --- | --- | --- |
| New SSO-CE project applications (also known as centralized or coordinated assessment) must receive at least 3 out of the 4 points available for this project type. New SSO-CE projects that do not receive at least 3 points | 1 | The Coordinated Entry system is easily available and reachable for all persons within the CoC's geographic area who are seeking homelessness assistance. The system must also be accessible for persons with disabilities within the CoC's |

Case 1:25-cv-00636-MSM-AEM     Document 56-2     Filed 12/29/25     Page 211 of 279
PageID #: 1579

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| will be rejected. | | geographic area. |
|---|---|---|
| | 1 | There is a strategy for advertising that is designed specifically to reach households experiencing homelessness with the highest needs. |
| | 1 | There is a standardized assessment process. |
| | 1 | The project will ensure program participants are directed to appropriate housing and services that fit their needs. |

## (e) Permanent Housing: Permanent Supportive Housing (PH-PSH)

| New Project Application Rating Factors | Points Available | Criteria |
|---|---|---|
| New Permanent Housing projects must receive at least 4 out of the 6 points available for this project type. New Permanent Housing projects that do not receive at least 4 points will be rejected. | 1 | The type of housing proposed, including the number and configuration of units, will fit the needs of the program participants. |
| | 1 | The type of supportive services and assistance that will be offered to program participants will ensure that the participant is able to successfully obtain and retain permanent housing and in a manner that fits their needs (e.g. transportation, safety planning, enhanced case management). If the applicant is proposing to expand an existing PH project, it must demonstrate how they are expanding supportive services to program participants, |

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 212 of 279
PageID #: 1580

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | including where appropriate, on-site supportive services. |
|---|---|---|
| | 1 | The project will be designed to serve elderly individuals and/or individuals with a physical disability/impairment or a developmental disability (24 CFR 582.5) not including substance use disorder. The units will prioritize these populations. |
| | 1 | Demonstrate that the proposed project will require program participants to take part in supportive services (e.g. case management, life skills, substance use treatment) in line with 24 CFR 578.75(h) by attaching a supportive service agreement (contract, occupancy agreement, lease, or equivalent). |
| | 1 | The average cost per household served is reasonable, consistent with 2 CFR 200.404, meaning that the costs for housing and services provided by the project are consistent with the population the project plans to serve. |
| | 1 | The project will be supplemented with resources from other public or private sources, that may include mainstream health, social, and employment programs such as Medicare, Medicaid, SSI, and SNAP. |

Case 1:25-cv-00636-MSM-AEM   Document 56-2   Filed 12/29/25   Page 213 of 279
PageID #: 1581

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| (e) Permanent Housing: Rapid Rehousing (PH-RRH) | | |
|---|---|---|
| **New Project Application Rating Factors** | **Points Available** | **Criteria** |
| New Permanent Housing projects must receive at least 6 out of the 8 points available for this project type. New Permanent Housing projects that do not receive at least 4 points will be rejected. | 1 | The provision of tenant-based rental assistance will help individuals and families achieve self-sufficiency within 3 months or up to 24 months. |
| | 2 | The type of supportive services and assistance that will be offered to program participants (e.g., case management, substance use treatment, mental health treatment, and employment assistance) will ensure that the participant is able to successfully obtain self-sufficiency and exit homelessness. |
| | 2 | The applicant has previously operated homelessness projects where outcomes for employment income were improved compared to the average project in the CoC. |
| | 1 | Demonstrate that the proposed project will require program participants to take part in supportive services (e.g. case management, employment training, substance use treatment) in line with 24 CFR 578.75(h) by attaching a supportive service agreement (contract, occupancy agreement, lease, or equivalent). |

Case 1:25-cv-00636-MSM-AEM     Document 56-2     Filed 12/29/25     Page 214 of 279
PageID #: 1582

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | |
|---|---|---|
| | 1 | The average cost per household served is reasonable, consistent with 2 CFR 200.404, meaning that the costs for housing and services provided by the project are consistent with the population the project plans to serve. |
| | 1 | The project will be supplemented with resources from other public or private sources, that may include mainstream health, social, and employment programs such as Medicare, Medicaid, SSI, and SNAP. |

**(g) Homeless Management Information System (HMIS)**

| New Project Application Rating Factors | Points Available | Criteria |
|---|---|---|
| New HMIS project applications must receive at least 3 out of the 4 points available for this project type. New HMIS projects that do not receive at least 3 points will be rejected. | 1 | How the HMIS funds will be expended in a way that furthers the CoC's HMIS implementation and ability to use HMIS as a proactive case management tool to promote treatment and recovery. |
| | 1 | The HMIS collects all Universal Data Elements as set forth in the HMIS Data Standards. |
| | 1 | The ability of the HMIS to un-duplicate client records. |
| | 1 | The HMIS produces all HUD-required reports and provides data as needed for HUD reporting (e.g., APR, quarterly reports, data for CAPER/ESG |

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 215 of 279
PageID #: 1583

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

|  |  | reporting) and other reports required by other federal partners. |
|---|---|---|
| **(h) CoC Planning – Collaborative Applicants Only** | | |
| **New Project Application Rating Factors** | **Points Available** | **Criteria** |
| New CoC Planning projects, submitted only by the CoC's designated Collaborative Applicant, must receive at least 3 out of the 5 points available for this project type. CoC Planning projects that do not receive at least 3 points will be rejected. | 1 | Governance and Operations-The CoC conducts meetings of the entire CoC membership that are inclusive and open to members and demonstrates the CoC has a written governance charter in place that includes CoC policies. |
|  | 1 | CoC Committees-The CoC has CoC-wide planning committees, subcommittees, or workgroups to address the needs of persons experiencing homelessness in the CoC's geographic area that recommends and sets policy priorities for the CoC. |
|  | 2 | The proposed planning project that will be carried out by the CoC with Planning grant funds are compliant with the provisions of 24 CFR 578.7. |
|  | 1 | The funds requested will improve the CoC's ability to evaluate the outcome of both CoC Program-funded and ESG-funded projects. |

c. *Project Renewal Threshold*. CoCs must consider the need to continue funding for projects expiring in CY 2026 (January 1, 2026 to December 31, 2026) when applying for FY 2025 CoC and YHDP funding. Renewal projects must meet the minimum project eligibility, capacity, timeliness, and performance standards identified in this NOFO or they will be rejected from consideration for funding:

Case 1:25-cv-00636-MSM-AEM     Document 56-2     Filed 12/29/25     Page 216 of 279
PageID #: 1584

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

**(1)** When considering renewal projects for award; HUD will review information in eLOCCS, APRs, and information provided from the local HUD CPD field office; including monitoring reports and audit reports as applicable, and performance standards on prior grants, and will assess projects using the following criteria on a pass/fail basis:

**(a)** whether the project applicant's performance met the plans and goals established in the initial application, or grant as amended;

**(b)** whether the project applicant demonstrated all timeliness standards for grants being renewed have been met, including those standards for the expenditure of grant funds;

**(c)** the project applicant's performance in assisting program participants to achieve and maintain self-sufficiency and independent living and records of success, except dedicated HMIS projects are not required to meet this standard; and

**(d)** evidence of unwillingness of project applicants to accept technical assistance, a history of inadequate financial accounting practices, indications of project mismanagement, a drastic reduction in the population served, program changes have been made without prior HUD approval, or the loss of project site control.

**(2)** HUD reserves the right to reduce or reject a project application submitted during the CoC Program Competition for the following reasons:

**(a)** outstanding obligation to HUD that is in arrears or for which a payment schedule has not been agreed upon;

**(b)** audit finding(s) for which a response is overdue or unsatisfactory;

**(c)** history of inadequate financial management accounting practices;

**(d)** evidence of untimely expenditures on prior award;

**(e)** history of other major capacity issues that have significantly affected the operation of the project and its performance;

**(f)** history of not reimbursing subrecipients for eligible costs in a timely manner, or at least quarterly; and

**(g)** history of serving ineligible program participants, expending funds on ineligible costs, or failing to expend funds within statutorily established timeframes.

**(h)** evidence that the project has previously or currently conducts activities that subsidize or facilitate racial preferences or other forms of illegal discrimination or conduct activities that rely on or otherwise use a definition of sex other than as binary in humans.

**(i)** evidence that the project operates drug injection sites or "safe consumption sites," knowingly distributes drug paraphernalia on or off of property under their control, permits the use or distribution of illicit drugs on property under their control, or conducts any of these activities under the pretext of "harm reduction."

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 217 of 279
PageID #: 1585

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

## B. Merit Review

HUD expects to evaluate and score your application using the following merit criteria and process. Merit reviewers evaluate and score all applications that pass the threshold review. Merit reviewers may include Federal and non-Federal persons. Reviewers receive a copy of your application to evaluate and score each application separately.

**Merit Review Summary**

| Merit Review Summary | |
|---|---|
| **Criterion** | **Maximum number of points = 130** |
| a. Project Capacity, Review, and Ranking. | 9 |
| b. System Performance. | 40 |
| c. CoC Coordination and Engagement. | 81 |
| **Bonus Points** | |
| CoC Merger Bonus (V.B.1.e) | 15 |
| Policy Initiative Preference Points (V.B.2) | 4 |

### 1. Rating Factors

Your application must include a response to the following criteria.

HUD will use all of the factors outlined in this section to establish the CoC's score for the FY 2025 CoC Program Competition.

**Rating Factors Details**

a. *Project Capacity, Review, and Ranking.* HUD will award up to 9 points to CoCs that demonstrate the existence of a coordinated, inclusive, and outcome-oriented community process for the solicitation, objective review, ranking, and selection of project applications.

| Rating Factor | Maximum Points | To Receive Maximum Points |
|---|---|---|
| (1) *Objective Criteria and System Performance.* | 6 | The CoC must attach the written process or tool it used to review, rate, and rank project applications for this NOFO. This written process or tool must:<br><br>Demonstrate it used objective criteria (e.g., cost-effectiveness, performance data, type of population served) to review, rate, and rank project applications and that these factors account for at least 50% of the total available points (up to 1 |

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | |
|---|---|---|
| | | point). |
| | | Demonstrate that at least 25% of the total points available account for the following: |
| | | • Returns to homelessness performance measure (up to 1 point); |
| | | • Employment income performance measure (up to 1 point); and |
| | | • Supportive service participation requirements (up to 3 points). |
| (2) *Ranking and Selection Process.* | 2 | The CoC must: |
| | | • Invite new proposals from entities that have not previously received funding; |
| | | • Prior to the application deadline, post on their website all parts of the Consolidated Application, and notify community members and key stakeholders. CoCs that do not have a website must post this information to a partner website within the CoC (e.g., a city or county website); |
| | | • Attach a listing of all projects submitted to HUD from their CoC's local competition that includes all projects their CoC considered during their local competition: (1) the |

Case 1:25-cv-00636-MSM-AEM     Document 56-2     Filed 12/29/25     Page 219 of 279
PageID #: 1587

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | |
|---|---|---|
| | | final score, (2) project rank, (3) accepted or rejected status, (4) funding amounts, (5) reallocated funds added to or subtracted from projects listed; and |
| | | • Notify project applicants, in writing outside of *e-snaps*, who submitted their project applications to the CoC by the CoC-established deadline, whether their project application(s) will be accepted and ranked, rejected, or reduced on the CoC Priority Listing no later than 15 days before the NOFO application submission deadline, and where a project application is being rejected or reduced, the CoC must indicate the reason(s) for the rejection or reduction. |
| **(3) *Reallocation.*** | 1 | The CoC must show:<br><br>• Their CoC actively reviews the performance of existing CoC Program funded projects and have a standard process for reallocating funding from lower performing projects to create new high performing projects;<br><br>OR<br><br>• They have cumulatively |

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 220 of 279
PageID #: 1588

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | reallocated at least 20 percent of their CoC's ARD between the FY 2021 and the FY 2025 CoC Program Competitions. |
|---|---|---|

**b.** *System Performance.* HUD will award up to 40 points to CoCs that have a CoC system-wide performance measurement process related to reducing homelessness.

| Rating Factor | Maximum Points | To Receive Maximum Points |
|---|---|---|
| **(1)** *Reducing the Number of Homeless Individuals and Families.* | 17 | The CoC will receive:<br><br>• Up to 5 points for demonstrating a decrease of at least 20 percent in the number of unsheltered homeless individuals and families in the 2025 PIT compared to the prior year's data.<br><br>• Up to 4 points for demonstrating decreases in the number of unsheltered homeless individuals and families between the 2023 and 2024 PIT Counts AND the 2024 and 2025 PIT Counts.<br><br>• Up to 3 points for demonstrating a decrease in the number of unsheltered homeless individuals and families between the 2023 and 2025 PIT Counts.<br><br>• Up to 3 points for demonstrating a 5% decrease in the number of individuals and |

Case 1:25-cv-00636-MSM-AEM     Document 56-2     Filed 12/29/25     Page 221 of 279
PageID #: 1589

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | |
|---|---|---|
| | | families experiencing chronic homelessness between the 2024 and 2025 PIT Counts. |
| | | • Up to 2 points for demonstrating a decrease of at least 20 percent in the combined number of sheltered and unsheltered individuals and families in the 2025 PIT compared to the prior year's data. |
| (2) *Reduce First Time Homelessness.* | 1 | The CoC must: <br><br> • Demonstrate a reduction in the number of first-time homeless of at least 20% as reported in HDX; <br><br> • Identify the strategies (including funding sources and timeframes) in place to address individuals and families at risk of becoming homeless; and <br><br> • Identify the organization or position that is responsible for overseeing the CoC's strategy to reduce or end the number of persons experiencing homelessness for the first time. |
| (3) *Length of Time Homeless.* | 1 | The CoC must: <br><br> • Demonstrate a reduction in the length-of-time homeless |

DOJ-HUD-AR00225

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 222 of 279
PageID #: 1590

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | |
|---|---|---|
| | | compared to the prior year's data as reported in HDX; |
| | | • Identify the strategies (including funding sources and timeframes) in place to address individuals and families at risk of becoming homeless; and |
| | | • Identify the organization or position that is responsible for overseeing the CoC's strategy to reduce the length of time individuals and families remain homeless. |
| (4) *Successful Permanent Housing Placement.* | 5 | The CoC must:<br><br>• Demonstrate that the rate of successful exit from ES, TH, and RRH is at least 50% (up to 2 points);<br><br>• Demonstrate that at least 20% of program participant exits from TH/RRH/PSH collectively are to unsubsidized housing using HMIS data (up to 2 points).<br><br>• Indicate the strategy (including funding sources and timeframes) the CoC is taking to improve permanent housing placement and stability including how the CoC connects participants to |

Case 1:25-cv-00636-MSM-AEM   Document 56-2   Filed 12/29/25   Page 223 of 279
PageID #: 1591

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | |
|---|---|---|
| | | non-subsidized housing and furthers successful transitions from CoC-funded projects to other housing options; and |
| | | • Identify the organization or position that is responsible for overseeing the CoC's strategy to increase the rate at which persons exit to permanent housing destinations (up to 1 point). |
| (5) *Returns to Homelessness.* | 7 | The CoC must: |
| | | • Demonstrate the rate at which persons who exited to permanent housing destinations experienced additional spells of homelessness over a 12- month and 24-month period as reported in HDX: |
| | | Is less than 8% over 24 months (3 points, or 1 point if less than 16% over 24 months). |
| | | Is less than 7% over 12 months (3 points, or 1 point if less than 11% over 12 months). |
| | | • Indicate a strategy to account for returns to homelessness that occur outside of the geographic area to the extent practicable (i.e., statewide HMIS sharing, long-term follow-up with clients.) |
| | | • Indicate the strategy |

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 224 of 279
PageID #: 1592

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | |
|---|---|---|
| | | that will reduce returns to homelessness over the long term. Additionally, identify the funding sources that will be used to accomplish specific tasks within the strategy and the timeframes for completing specific tasks within the strategy; and<br><br>• Identify the organization or position that is responsible for overseeing the CoC's strategy to reduce returns to homelessness. |
| **(6) *Jobs and Income Growth.*** | 7 | The CoC must:<br><br>• Demonstrate that the percentage of program participants who had an increase in income from employment (not government assistance) in the CoC was 20 percent or higher as reported in HDX (up to 3 points);<br><br>• Demonstrate that at least 25 percent of people leaving programs in the CoC had an increase in income from employment (up to 3 points);<br><br>• Identify the strategy (including funding sources and timeframes) that has |

Case 1:25-cv-00636-MSM-AEM   Document 56-2   Filed 12/29/25   Page 225 of 279
PageID #: 1593

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | |
|---|---|---|
| | | been implemented to increase employment and non-employment cash sources, including through employment training; |
| | | • Identify how the CoC works with child care organizations to facilitate employment for parents experiencing homelessness; and |
| | | • Identify the organization or position that is responsible for overseeing the CoC's strategy to increase jobs and income from employment and non-employment cash sources. |
| **(7) *Timely Submission of Data.*** The CoC collected and submitted data in a timely manner. | 1 | The CoC must demonstrate it:<br><br>• Conducted a Housing Inventory (HIC) and Point-in-Time (PIT) count during the last 10 days in January 2025, or if an exception was provided by HUD, during the time period agreed upon by the CoC and HUD;<br><br>• Submitted both the 2025 HIC and PIT count data in HDX 2.0 by June 13, 2025, 8:00 PM EDT, or an alternate date approved by HUD;<br><br>• Submitted their |

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 226 of 279
PageID #: 1594

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | |
|---|---|---|
| | | Longitudinal System Analysis (LSA) data in HDX 2.0 by the submission deadline of January 9, 2025, 11:59 PM EST, or an alternate date approved by HUD; and HUD determined that there were at least 2 usable files; and<br><br>• Submitted FY 2024 System Performance Measures data in HDX 2.0 by the submission deadline of 8:00 PM EDT on April 11, 2025, or an alternate date approved by HUD. |
| **(8) HMIS and Comparable Database Participation** | 1 | The CoC must demonstrate at least 85 percent of the beds in their CoC's geographic area are covered in HMIS and comparable databases. The bed coverage rate is the number of HMIS and comparable database participating beds divided by the number of year-round beds dedicated to persons experiencing homelessness in the geographic area covered by the CoC. |

c. *CoC Coordination and Engagement.* HUD will award up to 81 points to CoCs that demonstrate coordination with other systems of care that serve homeless individuals and families.

| **Rating Factor** | **Maximum Points** | **To Receive Maximum Points** |
|---|---|---|
| **(1) *Accountable Structure and Participation.*** | | |

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | |
|---|---|---|
| **(a)** has a membership of a variety of stakeholders within the geographic area and considers the needs of all relevant subpopulations; | | The CoC must demonstrate it has participation from a broad array of stakeholders, not limited to organizations listed in 24 CFR 578.5(a), within the geographic area: |
| | 0.5 | Relevant organizations include nonprofit homeless assistance providers, victim service providers, faith-based organizations, governments, businesses, advocates, public housing agencies, school districts, social service providers, mental health agencies including CCBHCs and CMHCs, hospitals, universities, affordable housing developers, law enforcement, and organizations that serve veterans and homeless and formerly homeless individuals. |
| **(b)** has a governance board representative of the community | 4 | The CoC must demonstrate it has a decision-making governance board that includes:<br><br>• at least 1 person with a former experience of homelessness;<br><br>• at least 3 elected public officials;<br><br>• at least 1 representative of the business community;<br><br>• at least 2 representatives of law enforcement. |
| **(c)** has an invitation process for new members | 0.5 | The CoC must demonstrate it has a transparent process |

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 228 of 279
PageID #: 1596

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | |
|---|---|---|
| to join; | | (e.g., communicated in a public manner such as on the CoC's website) in place to invite new members to join and the invitation process is publicly available within the CoC's geographic area at least annually. |
| **(d)** solicits and considers opinions from knowledgeable individuals and organizations; and | 0.5 | The CoC must demonstrate a transparent process (e.g., communicated in a public manner such as on the CoC's website) is in place to solicit and consider opinions regarding the CoC's general performance, strategies, and priority setting process from individuals and organizations with knowledge of homelessness in the geographic area or an interest in preventing or ending homelessness in the geographic area. |
| **(e)** accepts and considers proposals from organizations that have not previously received CoC Program funding. | 0.5 | The CoC must demonstrate it has a transparent process is in place to accept and consider proposals from organizations that have not previously received CoC Program funding including faith-based organizations. |
| **(2)** *Availability of Treatment and Recovery Services.* | 16 | The CoC must demonstrate:<br>• Substance use treatment is available on-site for at least 30% of projects (attach agreements or letters of commitment);<br>• The creation or current existence of projects |

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

with the purpose of providing substance abuse treatment services for people experiencing homelessness in which program participants are required to take part in such services as a condition of continued participation in the program (attach contracts or occupancy agreements);

Provide a list of the beds/projects and occupancy agreements demonstrating the purpose of the project and the requirement for participation in substance abuse treatment.

-For geographic areas with a population greater than 2,500,000, demonstrate at least 500 beds.

-For geographic areas with a population between 1,000,000 and 2,499,999, demonstrate at least 250 beds.

-For geographic areas with a population between 500,000 and 999,999, demonstrate at least 100 beds.

-For geographic areas with a population between 100,000 and 499,999, demonstrates at least 50 beds.

DOJ-HUD-AR00233

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

-For geographic areas with less than 100,000, demonstrate 25 beds.

The bed count described above may include CoC-funded per diem beds located outside the geographic area of the CoC. Provide a list of the beds/projects and occupancy agreements demonstrating the purpose of the project and the requirement for participation in substance abuse treatment.

- There is 24/7 access to detox or inpatient treatment within the geographic area of the CoC;

- Formal partnership with a Certified Community Behavioral Health Clinic (CCBHC) or Community Mental Health Center (CMHC) or a similar facility if no CCBHCs or CMHCs are located in the geographic area;

- The availability or proposed creation of sober housing for people in recovery in accordance with 24 CFR 578.93(b)(5); and

- They are investing adequately in supportive services by showing either:

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 231 of 279
PageID #: 1599

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | |
|---|---|---|
| | | ○ through proposed CoC funding, leveraging, match, and other formal partnerships, the CoC is providing supportive services with a value of 50% of the CoC's Annual Renewal Demand; or |
| | | ○ 30% of their proposed CoC funding is used for supportive services relative to their Annual Renewal Demand. |
| **(3) *Participation Requirements for Supportive Services.*** | 10 | The CoC must demonstrate that projects require program participants to take part in supportive services (e.g. case management, employment training, substance use disorder treatment) in line with 24 CFR 578.75(h) by attaching supportive service agreements (contract, occupancy agreement, lease, or equivalent).<br><br>• 100% of CoC projects have participation requirements (10 points).<br><br>• 50% of CoC projects have participation requirements (5 of the 10 points). |

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 232 of 279
PageID #: 1600

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| (4) *Reduce encampments.* | 10 | The CoC must demonstrate a reduction in the number of encampments or the number of people residing in encampments by at least 20%. |
|---|---|---|
| (5) *Coordination with Federal, State, Local, Private, and Other Organizations.* | 2 | The CoC must:<br><br>• Demonstrate coordination with other federal, state, local, private, and other organizations in the planning and operation of projects; and<br><br>• Describe how they have and plan to continue to consult with ESG recipients in the planning and allocation of ESG funds; and Describe how they have or will share PIT, HIC, HMIS, and System Performance data with state and local government as permitted by law. |
| (6) *Discharge Planning.* | 2 | The CoC must coordinate with state or local planning efforts to prevent homelessness among people transitioning from public systems (prisons, jails, health care facilities, residential care facilities, and foster care.) |
| (7) *Collaboration Related to Children and Youth.* | 2 | The CoC must:<br><br>• Indicate written agreements are in place between their CoC or its HUD-funded |

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 233 of 279
PageID #: 1601

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | |
|---|---|---|
| | | projects and educational supports and services for children ages 0-5, such as Public Pre-K, Head Start, Child Care (including Child Care and Development Fund), or home visiting (including Maternal, Infant and Early Childhood Home and Visiting or MIECHV); |
| | | • Identify formal partnerships the CoC has with youth education providers, local educational authorities, or school districts; and |
| | | • Show policies and procedures that have been adopted to inform individuals and families who become homeless of their eligibility for educational services. |
| **(8) *Coordination with Veteran Organizations.*** | | The CoC must indicate that they partner with the Department of Veterans Affairs or other Veteran Serving Organizations to do the following: |
| | 6 | • Refer veterans identified by the CoC to VA or other Veteran Serving Organizations for assistance; |
| | | • Coordinate the provision of emergency shelter, supportive services, and housing; |

Case 1:25-cv-00636-MSM-AEM     Document 56-2     Filed 12/29/25     Page 234 of 279
PageID #: 1602

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | and |
|---|---|---|
| | | • Identify and fill service gaps for veterans. |
| (9) *Addressing the Needs of Survivors of Domestic Violence, Dating Violence, Sexual Assault, and Stalking* | 2 | The CoC must partner with victim service providers, state domestic violence coalitions, state sexual assault coalitions, anti-trafficking service providers or other organizations who help provide shelter, housing, and services to individuals and families of persons experiencing trauma or a lack of safety related to fleeing or attempting to flee domestic violence, dating violence, sexual assault, and stalking. |
| (10) *Street Outreach.* | 6 | The CoC must show that:<br><br>• An increasing number of people exit street outreach to a positive destination; and<br><br>• Street Outreach projects partner with first responders and law enforcement to increase housing and service engagement. |
| (11) *Partnering with Public Housing Agencies.* | 2 | The CoC must:<br><br>• Show they have an agreement in place with one or more of their public housing agencies to enable participants to transition from Transitional Housing, Rapid Re-Housing, and Permanent Supportive |

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 235 of 279
PageID #: 1603

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | |
|---|---|---|
| | | Housing to HUD assisted housing; and |
| | | • Describe the strategy for helping participants who are able to live independently move from homelessness assistance to permanent housing taking into account employment and economic stability. |
| **(12) *Leveraging housing and healthcare resources.*** These points are available for CoCs that apply for at least one new TH, PSH or RRH project that that utilizes housing and healthcare resources not funded through the CoC or ESG Programs. Examples of housing and healthcare resources include those provided by: <br>• Private organizations <br>• State or local government sources <br>• Public housing agencies <br>• Faith-based organizations | 4 | • The CoC must demonstrate that: <br>  ○ In the case of housing subsidies for PSH or TH projects, the leveraged resources provide at least 25 percent of the units included in the project; <br>  ○ In the case of housing subsidies for a RRH project, the leveraged resources serve at least 25 percent of the program participants included in the project. <br>• The CoC must attach letters of commitment, contracts, or other formal documents that demonstrate the commitment. CoCs can |

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

|  |  |  | receive less than full points for demonstrating commitments less than the threshold above. |
|  |  |  | • The CoC must demonstrate that: |
|  |  |  | ○ In the case of an organization that provides substance use disorder treatment or recovery services, the leveraged resource provides access to all participants who qualify for those services; or |
|  |  |  | ○ In the case of healthcare or behavioral health resources, the value of assistance being provided is at least an amount that is equivalent to 25 percent of the funding being requested by the project. |
|  |  |  | The CoC must attach letters of commitment, contracts, or other formal documents that demonstrate that commitment. CoCs can receive less than full points for demonstrating commitments less than the |

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 237 of 279
PageID #: 1605

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | |
|---|---|---|
| | | thresholds described above. |
| **(13) Protecting Public Safety.**<br><br>HUD encourages the most effective use of funding for efforts to end homelessness, quickly rehouse individuals, and minimize trauma (42 U.S.C 11381). Law enforcement and public safety protections play a critical role in accomplishing these purposes. | 13 | CoCs must:<br><br>• Cite state or local law(s) that cover the CoC's entire geographic area (up to 2 point) that:<br>  ○ Prohibits public illicit drug use; and<br>  ○ Prohibits public camping or loitering.<br><br>• Indicate that state or local government that covers the CoC's entire geographic area has a protocol (up to 2 point) that:<br>  ○ Enforces a prohibition on public illicit drug use; and<br>  ○ Enforces a prohibition on public camping or loitering.<br><br>• Demonstrate utilization of standards that address individuals experiencing homelessness who are a danger to themselves or others including involuntary commitment; (up to 3 points point)<br><br>• Indicate that the state substantially implements and is compliant with the |

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

|  |  | registration and notification obligations of the Sex Offender Registry and Notification Act (SORNA); (up to 3 points) |
|  |  | • Indicate (up to 3 points) that the CoC: |
|  |  |    o When asked by law enforcement, assists in adequately mapping and checking the location of homeless sex offenders; and |
|  |  |    o Cooperates, assists, and does not interfere or impede with law enforcement or co-response to connect violators of public camping or drug use laws with services. |

**d.** *CoC Merger Bonus Points.* As stated in section 2.b.(2) in the Appendix of this NOFO, HUD will award up to a possible 5 bonus points to CoCs that merged after the FY 2024 CoC Program Registration deadline. To receive consideration as a merged CoC, new CoCs must contain all the geographic area of at least two CoCs that were considered completely separate CoCs in prior CoC Program competitions.

| Rating Factor | Maximum Points | To Receive Maximum Points |
|---|---|---|
| **Merged CoCs after the FY 2024 CoC Program Registration CoC Program** | 15 | Merged CoCs - all CoCs that merged will receive this minimum number of points. |

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 239 of 279
PageID #: 1607

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| **Registration deadline.** | | |
|---|---|---|

## 2. Policy Initiative Preference Points

This NOFO supports the following policy initiatives, for which a maximum of four (4) preference points may be awarded.

Preference points are added to your overall application score. You do not need to address the policy initiatives in this section to receive an award. If you choose to address a policy initiative in your application, you must adhere to the information with any award.

### a. Opportunity Zones

You may receive up to four (4) points (but no more than 4 policy preference points total) if your proposed activities are within an Opportunity Zone. To receive points, you must complete and submit form HUD-2996, Certification for Opportunity Zone Preference Points. If you expect to use less than 50% of the award in Opportunity Zones, you won't receive preference points.

### b. Verification of Immigration Status

You may receive up to four (4) points (but not more than 4 policy preference points total) if you can demonstrate that all CoC projects that are non-profit charitable organizations voluntarily, thoroughly, and demonstrably facilitate immigration status verification before distribution of benefits to all recipients using SAVE directly or in coordination with a governmental entity. The purpose of verification of immigration status is to remove any incentive for illegal immigration provided by the availability of public benefits and to assure that the public benefits system, including the provision of assistance for homeless Americans, is not burdened by illegal immigration (8 U.S.C 1601).

## 3. Other Factors

### a. Budget

The panel will review but not approve the budget. The panel will assess whether the budget aligns with planned program activities and objectives. Panel members will consider whether the budget and the requested performance period are fully justified and reasonable in relation to the proposed project.

The budget information will be reviewed to ensure:

- The requested costs are eligible under the CoC Program and this NOFO.
- The total amount of funding is within the amount of funding available to the CoC as described in Section I.A.2 of this NOFO.
- If funds are requested for project administrative costs, the amount requested is no more than 10 of the total funding requested.

### b. Certification of Consistency with the Consolidated Plan

You must make sure your application activities are consistent with your local Consolidated

Case 1:25-cv-00636-MSM-AEM     Document 56-2     Filed 12/29/25     Page 240 of 279
PageID #: 1608

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

Plan.

All project applications submitted and listed on the CoC Priority Listing by Collaborative Applicants must be included in the certification either by submitting one correctly signed and dated HUD-2991 from the appropriate jurisdiction that includes an attachment listing of all submitted project applications, or a single signed and dated HUD-2991 for each individual project application from the appropriate jurisdiction. See section IV.A.1 for more information.

## C. Risk Review

Before making an award, HUD will evaluate each applicant's likelihood of successfully implementing an award based on the following criteria.

- OMB-designated repositories of governmentwide data, as noted in 2 CFR 200.206(a)
- Other public sources such as newspapers, Inspector General or Government Accountability Office reports or findings, or other complaints that have been proven to have merit
- Financial stability
- Quality of management systems and ability to meet the management standards prescribed in 2 CFR part 200
- History of performance. The applicant's record in managing Federal awards, if it is a prior recipient of Federal awards, including timeliness of compliance with applicable reporting requirements, failing to make significant progress in a timely manner, failing to meet planned activities in a timely manner, conformance to the terms and conditions of previous Federal awards, and, if applicable, the extent to which any previously awarded amounts will be expended prior to future awards
- Reports and findings from audits performed under 2 CFR part 200, subpart F—Audit Requirements or the reports and findings of any other available audits
- The applicant's ability to effectively implement statutory, regulatory, or other requirements imposed on non-Federal entities
- Capacity of the applicant, including staffing structures and capabilities
- History of timely completion of activities and receipt and expenditure of promised matching or leveraged funds
- Ability to promote self-sufficiency and economic independence
- Ability to produce positive outcomes and results
- History of subsidizing or facilitating activities that conflict with the purposes of this NOFO.

HUD may use the results of the risk review to make funding decisions and to apply award conditions.

This assessment helps identify risks that may affect the advancement toward or the achievement of a project's goals and objectives. 2 C.F.R. 200.206(b)(1).

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 241 of 279
PageID #: 1609

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

## D. Selection Process

When making funding decisions, HUD will consider:

- Eligibility requirements, including threshold review results.
- Merit review results.
- Risk review results.

To the extent allowed by law, HUD may:

- Fund applications in whole or in part.
- Fund applications at a lower amount than requested.
- Choose to fund no applications under this NOFO.
- Adjust funding for an application, to ensure funding or geographic dispersion, and alignment with program or administrative priorities.
- Withdraw an award offer and make an offer of funding to another eligible application, if terms and conditions are not finalized or met.
- Use additional funds made available after NOFO publication to either fully fund an application or fund additional applications.
- Correct HUD review and selection errors. If HUD commits an error that causes an applicant not to be selected, HUD may make an award to that applicant when and if funding is available.
- Release another NOFO, if funding is available and if HUD does not receive applications of merit.

### 1. Threshold Review.

HUD will conduct a project eligibility and project quality threshold review on all project applicants.

HUD will review new project applications to determine whether applicants meet the applicant eligibility in section V.A.1, and whether the project applications meet the project eligibility and project quality thresholds detailed in sections V.A.4.a and V.A.4.b of this NOFO. HUD will review renewal projects to determine if project applicants and subrecipients meet the renewal project threshold requirements detailed in section V.A.4.c of this NOFO. If HUD determines these standards are not met, HUD will reject the project application, unless otherwise provided in this NOFO.

If a new project application passes the project eligibility threshold review in section V.A.4.a and receives enough points to pass the project quality threshold review in section V.A.4.b of this NOFO but does not receive all the points available for its project type, HUD may place conditions on the grant award that must be satisfied before HUD will execute a grant agreement with the applicant for the project. If an applicant is unable to satisfy the condition(s) within the timeframe specified by HUD, HUD reserves the right to withdraw the conditionally awarded funds.

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 242 of 279
PageID #: 1610

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

## 2. Conditional Selection and Adjustments to Funding.

HUD Headquarters will conditionally select project applications for funding using the following process:

**a.** *HUD Funding Process.* All project applications, including YHDP renewal and replacement projects, must be competitively ranked, except for CoC Planning and, if applicable, UFA Costs Applications. HUD will select projects in the following order:

(1) HUD will select all CoC Planning and UFA Costs applications that meet project quality threshold requirements. Only one CoC Planning and one UFA Costs (if applicable) project application can be submitted per CoC.

(2) HUD will then select all projects in Tier 1 that pass project quality and project eligibility thresholds as described in section V.D.3.a below.

(3) HUD will then select projects that meet project quality and project eligibility thresholds that are ranked in Tier 2 in the order of project score as described in Section V.D.3.b below:

(a) If at any point, HUD selects Permanent Housing projects in an amount more than 30 percent of a CoC's Annual Renewal Demand (ARD), HUD will remove all remaining unselected Permanent Housing projects from that CoC's priority listing, recalculate their Tier 2 project score, and continue selection.

(4) HUD will then review DV Bonus projects already selected for funding through the above process and determine whether $52,000,000 has been awarded to DV Bonus projects:

(a) If at least $52,000,000 has been selected for conditional award no further action is needed.

(b) If $52,000,000 has not been selected for conditional award – continue down the list and fund additional DV Bonus projects by project-level score until at least $52 million has been selected.

**b.** As authorized under the Consolidated Appropriations Act, 2017 (Public Law 115-31; 131 Stat. 135) for fiscal year 2017 and hereafter, HUD will conditionally select a renewal grant that exceeds $10 million that was originally awarded pursuant to the matter under the heading "Department of Housing and Urban Development–Permanent Supportive Housing" in chapter 6 of title III of the Supplemental Appropriations Act, 2008 (Public Law 110-252; 122 Stat. 2351).

**c.** If an ineligible renewal project submitted under this NOFO is used in the reallocation process; or an ineligible YHDP Renewal or YHDP Replacement project is submitted, HUD will remove the ineligible project when calculating the final ARD amount for the CoC. To be eligible for renewal, reallocation, or replacement in the FY 2025 CoC and YHDP Funding Process, a project must have an expiration date in Calendar Year (CY) 2026 (between January 1, 2026, and December 31, 2026).

## 3. HUD Funding Process.

CoCs and applicants should ensure there is a thorough understanding of the information

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 243 of 279
PageID #: 1611

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

provided in this NOFO. HUD has a two-tier funding selection process for FY 2025 funding. HUD will establish Tier 1 and Tier 2 amounts for each CoC, based on each CoC's Annual Renewal Demand. HUD will post a report that lists the available amounts for each CoC's PPRN, estimated ARD, Tier 1, CoC Planning, estimated CoC Bonus amounts, and estimated DV Bonus amounts on HUD's website.

The maximum amount a CoC may apply for is the sum of the CoC's ARD, eligible CoC Bonus amounts, eligible DV Bonus amounts, eligible CoC planning amounts and if applicable, eligible UFA costs amounts.

The selection process described in this section of the NOFO will also be used for CoC Collaborative Applicants designated as UFAs.

Note that for FY 2025, DV Bonus and YHDP projects will be selected using the Tier 1 and Tier 2 selection process.

a. *Tier 1.* Tier 1 is equal to 30 percent of the CoC's Annual Renewal Demand (ARD). HUD will conditionally select project applications in Tier 1 from the highest scoring CoC application to the lowest scoring CoC application and according to the rank assigned by the CoC on the CoC Priority listing, provided the project applications pass both project eligibility and project quality threshold review, and if applicable, project renewal threshold.

Any competitively ranked project may be placed in Tier 1 according to the CoC's local rating and ranking process and based on local needs and priorities.

b. *Tier 2.* Tier 2 is the difference between Tier 1 and the sum of each CoC's ARD, CoC Bonus, and DV Bonus.

HUD will evaluate project applications placed in Tier 2 for project eligibility and project quality threshold requirements and project renewal threshold requirements, if applicable; and HUD will determine funding using the CoC Application score as well as the CoC project ranking.

HUD will award a point value to each ranked new and renewal project application that is in Tier 2 using a 100-point scale, and conditionally select applications in Tier 2 using this point value from the highest scoring project application to the lowest:

(1) *CoC Score.* Up to 50 points in direct proportion to the score received on the CoC Application, e.g., if a CoC received 65 out of 130 points on the CoC Application, the project application would receive 25 out of 50 points for this criterion.

(2) *CoC Project Ranking.* Up to 40 points for the CoC's ranking of the project application(s). To consider the CoCs ranking of projects, HUD will assign point values directly related to the CoCs' ranking of project applications. The calculation of point values will be 40 times the quantity (1-x) where x is the ratio of the cumulative funding requests for all projects or portions of projects ranked higher by the CoC in Tier 2 plus one half of the funding of the project of interest to the total amount of funding available in Tier 2 for the CoC.

(3) *Service Participation.* Up to 10 points for projects that have or will incorporate supportive service participation requirements in their program design, based on individual need and evidenced in an occupancy agreement or equivalent document.

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 244 of 279
PageID #: 1612

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

**c.** *Projects Straddling Tiers.* If a project application straddles the Tier 1 and Tier 2 funding line, HUD will conditionally select the project up to the amount of funding that falls within Tier 1. Using selection criteria in section V.D.3.b above, HUD may fund the Tier 2 portion of the project. If HUD does not fund the Tier 2 portion of the project, HUD may award the project at the reduced amount based on the amount of funding that falls within Tier 1, provided the project is still feasible with the reduced funding (e.g., is able to continue serving homeless program participants effectively).

**d.** *Domestic Violence, Dating Violence, Sexual Assault, and Stalking Bonus (DV Bonus).* This NOFO provides approximately $52 million for "rapid re-housing projects and supportive service projects providing coordinated entry, and for eligible activities that the Secretary determines to be critical in order to assist survivors of domestic violence, dating violence, sexual assault, or stalking." In this NOFO, Transitional Housing is an eligible activity determined critical to assist survivors of domestic violence, dating violence, sexual assault, or stalking.

Each CoC may only submit one new SSO-CE DV Bonus project; however, there is no limit to the number of TH projects and PH-RRH projects CoCs may apply for, provided each application is for at least $50,000. A project applicant may also apply to expand an existing renewal project, including one that was previously awarded with DV Bonus funding, in accordance with section IV.D.1.j.(4) of this NOFO; however, only the new project application for the expansion will be considered for DV Bonus funds through this process. DV Bonus funding may be used to expand an existing renewal project that is not dedicated to serving individuals and families who are fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking who qualify as homeless under paragraphs (1) or (4) of the definition of homeless at 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act so long as the DV Bonus funds for expansion are solely for additional units, beds, or services dedicated to persons eligible to be served with DV Bonus funding.

CoCs must rank all new DV Bonus project applications on the New Project Listing of the CoC Priority Listing with a unique number ranking and when the project is part of an expansion, the corresponding renewal project application must be on the Renewal Project Listing with a unique rank number as well. HUD will only select a new DV Bonus project that expands an existing renewal project if HUD conditionally selects the existing renewal project for funding.

### 4. Conflict of Interest of Consultants or Technical Experts Assisting HUD.

Consultants and technical experts who assist HUD in evaluating applications for funding under published CoC Program NOFOs are subject to 18 U.S.C. 208, the Federal criminal conflict-of-interest statute, and the Standards of Ethical Conduct for Employees of the Executive Branch regulation published at 5 CFR 2635. Therefore, consultants and technical experts who have assisted or plan to assist applicants with preparing applications for CoC Program NOFOs are prohibited from serving on a selection panel or serving as a technical advisor to HUD. Anyone involved in reviewing CoC Program NOFO applications, including departmental staff, experts, and consultants, must avoid conflicts of interest or the appearance of such conflicts. These individuals must also disclose to HUD's Office of General Counsel Ethics Law Division the following information, if applicable:

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |
|---|---|---|---|---|---|---|---|---|

**a.** How the selection or non-selection of any applicant under a CoC Program NOFO will affect the individual's financial interests, as provided in 18 U.S.C. 208, or

**b.** How the application process involves a party with whom the individual has a covered relationship under 5 CFR 2635.502.

The consultant or technical expert assisting HUD must disclose this information before participating in any matter regarding a program NOFO. Applicants with questions regarding these provisions or concerning a conflict of interest should call the Office of General Counsel Ethics Law Division, at (202)708-3815 (this is not a toll-free number). HUD welcomes and is prepared to receive calls from individuals who are deaf or hard of hearing, as well as individuals with speech or communication disabilities. To learn more about how to make an accessible telephone call, please visit
https://www.fcc.gov/consumers/guides/telecommunications-relay-service-trs.

### 5. Adjustments to Projects.

HUD may adjust the selection of competitive projects as follows:

**a.** *CoC Maximum Award and FMR Adjustments.* The process for determining a CoC's maximum award amount is detailed in 24 CFR 578.17(b). HUD must adjust awards for leasing, operating, and rental assistance BLIs based on changes to the Fair Market Rents (FMR). 24 CFR 578.51(f) requires that HUD will determine the award amount for Rental Assistance projects by multiplying the number and size of units proposed by the FMR of each unit on the date the application is submitted to HUD.

HUD will make these adjustments as follows:

**(1)** Funds awarded for rental assistance will be adjusted in one of two ways:

**(a)** Funds awarded for rental assistance requesting the FMR will be adjusted by applying the FMR in effect at the time applications are due, including instances where the FMR for a specific area has decreased from the project award year.

**(b)** Funds awarded for rental assistance for renewal projects that request less than FMR, that is, a per-unit amount based on the actual rent costs per unit (section IV.D.2.h), will be increased based on the average increase in FMR amounts within the CoC's geographic area, weighted for population density. If the FMR for a specific area had a net decrease from the project award year, the award will not exceed the FMR after adjustment. If the FMR for the project applicant's entire area decreased from the project award year, the project will be awarded the lesser amount of the per-unit amount requested by the project applicant, based on the actual rent costs per unit, or the FMR after adjustment.

**(2)** HUD will increase funds awarded for operating and leasing in PH projects based on the average increase in FMR amounts within the CoC's geographic area, weighted for population density. Because leasing and operating costs do not decrease relative to rent amounts for specific units (e.g., operating costs for 10 units that have rents of $500 are likely the same as for 10 units that have rents that are $450) HUD will not decrease leasing and operating BLIs if FMRs decrease in the geographic area. The operating and leasing BLIs in these projects will remain the same as in the most recent grant agreement or grant agreement amendment.

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 246 of 279
PageID #: 1614

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

**b.** *Cost of Living Adjustment Factor.* HUD will adjust amounts for the supportive services and HMIS Costs budget lines for renewing projects by the following factor: Most recent three-year average of changes in State Quarterly Census of Employment and Wages (QCEW) for the category Social Assistance (NAICS 624). Data can be found at: https://www.bls.gov/cew/data.htm.

### 6. Geographic Diversity.

HUD has determined that geographic diversity is an appropriate consideration in selecting homeless assistance projects in the CoC Program Competition. HUD believes that geographic diversity can be achieved best by awarding grants to as many CoCs as possible. To this end, in instances where any of the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, the Northern Mariana Islands, the Virgin Islands, and American Samoa do not have at least one funded CoC, HUD reserves the right to fund eligible project(s) with the highest total score in the CoC.

### 7. Funding Diversity.

HUD reserves the right to reduce the amount of a grant, if necessary, to ensure that no more than 10 percent of assistance made available under this NOFO will be awarded for projects located within any one unit of general local government or within the geographic area covered by any one CoC.

### 8. Approval from HUD Headquarters is required before a grant awarded under this NOFO may be transferred.

Under this NOFO, HUD will treat the change of project applicant as a curable deficiency. This occurs when a Recipient of an expiring grant awarded under a prior FY CoC or YHDP competition NOFO applies to renew their award under this NOFO and during the period between applying for FY 2025 funds and before HUD announces FY 2025 awards, HUD executes a grant agreement amendment to transfer the expiring grant to a New Recipient. This grant transfer results in a FY 2025 CoC renewal application that does not reflect the New Recipient as the applicant. In this type of situation, HUD will treat the change of project applicant as a curable deficiency.

### 9. Use of unawarded funds.

In the case that funding remains available under this NOFO after HUD follows the selection process described in V.D.2 and V.D.3 above and any subsequent appeals process as described in VII.D below, HUD reserves the right to issue a supplemental NOFO.

**10.** If any part or provision of the grant Agreement or terms of this Notice have been or are enjoined or held to be void or unenforceable by a federal court, they shall be ineffective only to the extent of such court's authority and only as to such prohibition or enjoinment and shall not invalidate or affect the legality or enforceability of the remaining provisions and applications of the Agreement and Notice. In the event the enjoinment of such provisions is stayed, dissolved or reversed, the full terms of the grant agreement and Notice, including such provisions, will automatically become effective.

## E. Award Notices

If you are successful, HUD will email an award notice to the authorized official representative

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 247 of 279
PageID #: 1615

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

from the SF-424. HUD will also notify unsuccessful applicants.

The award notice communicates the amount of the award, important dates, and the terms and conditions you need to follow. HUD may impose specific conditions on an award as provided under 2 CFR 200.208.

You agree to the award terms and conditions by either drawing funds from HUD's payment system or signing the agreement with HUD. If you do not agree to the award terms and conditions, HUD may select another eligible applicant.

Under 2 CFR 200.458 pre-award costs are allowable with written approval from HUD if such costs: a) are consistent with 2 CFR 200.458; and b) would be allowable as a post-award cost; and c) do not exceed 10 percent of the total funds obligated to this award. However, HUD will not consider eligibility for pre-award costs until after the date of the HUD selection notice. Additionally, the incurrence of pre-award costs in anticipation of an award imposes no obligation on HUD either to make the award, or to increase the amount of the approved budget, if the award is made for less than the amount anticipated and is inadequate to cover the pre-award costs incurred.

For selected projects, HUD will require recordation of a HUD-approved use and repayment covenant before funds can be drawn down (the form can be obtained from the local HUD CPD field office) for all grants of funds for new construction, acquisition, and rehabilitation. (24 CFR 578.81) HUD Field Office Counsel must approve the use and repayment covenants in advance of their being recorded, and proof of recording must be submitted to HUD Field Office Counsel before HUD will release grant funds, other than acquisition funds.

If the award includes funds for acquisition, HUD may allow recipients to draw down acquisition funds before recording the Declaration of Restrictive Covenant if the HUD Field Office confirms that the escrow agent has received the Declaration of Restrictive Covenant and the recording instructions. The recipient or subrecipient may not draw down any funds other than acquisition funds until HUD Field Counsel has confirmed the Declaration of Restrictive Covenants has been recorded.

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |
|---|---|---|---|---|---|---|---|---|

# VI. SUBMISSION REQUIREMENTS AND DEADLINES

VI. Submissions Requirements and Deadlines

    A.  Deadlines

    B.  Submission Methods

    C.  Other Submissions

    D.  False Statements

TABLE OF CONTENTS

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 249 of 279
PageID #: 1617

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

# VI. SUBMISSION REQUIREMENTS AND DEADLINES

You must apply electronically. See Find the Application Package to make sure you have everything you need to apply online. See Application Waiver if you qualify to submit a paper application.

Make sure you are current with SAM.gov and UEI requirements before applying for the award. See the Before You Begin section of this NOFO.

## A. Deadlines

### 1. Application submission deadline:

The application deadline is 8 PM Eastern time on:

01/14/2026

HUD must receive your application by the deadline. Applications received after the deadline are late. Late applications are not eligible for HUD funding.

If HUD receives more than one application from you, HUD will review only the last submission.

HUD may extend an application due date based on emergency situations such as Presidentially-declared natural disasters. Improper or expired registration and password issues are not causes to allow HUD to accept applications after the deadline date.

Applicants must complete and submit their applications in *e-snaps* at **https://esnaps.hud.gov/**. The deadline to submit applications for FY 2025 funding is 8:00 PM EST on January 14, 2026

24 CFR 578.9 requires CoCs to design, operate, and follow a collaborative process for the development of an application in response to a NOFO issued by HUD. As part of this collaborative process, CoCs must implement internal deadlines to ensure transparency and fairness at the local level. The implementation of deadlines that meet the standards outlined below for FY 2025 CoC Program project applications are part of the scoring criteria as detailed in section V.B.1.a of this NOFO.

**a.** *Project Application.* All project applications must be submitted to the CoC no later than 30 days before HUD's CoC Program application submission deadline of 8:00 PM EST on January 14, 2026. CoCs that fail to establish this deadline for local project application(s) will receive 0 points under section V.B.1.a.(2) of this NOFO.

**b.** *CoC Notification to Project Applicants.* The CoC is required to notify, in writing outside of e-snaps, all project applicants who submitted their project applications to the CoC by the local CoC-established deadline whether their project application(s) will be accepted and ranked on the CoC Priority Listing, rejected, or reduced by the CoC no later than 15 days of the FY 2025 CoC Program application submission deadline.

Where a project application is being rejected or reduced, the CoC must provide the project applicant with the reason(s) for the rejection or reduction. CoCs failing to provide this information to a project applicant that submits its project application by the local competition deadline will receive 0 points under section V.B.1.a.(2) of this NOFO.

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 250 of 279
PageID #: 1618

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

2. Major Disaster Areas.

If a major disaster impacts a CoC's geographic area, as declared by the President under the Stafford Act, during the CoC Program application process that will impact the submission of the CoC Priority Listing and FY 2025 project applications, the CoC's Collaborative Applicant must send written notification to Norm Suchar, Director, Office of Special Needs Assistance Program (SNAPS) at CoCDisaster@hud.gov. The email must include:

**a.** the nature of the disaster, date(s) the major disaster occurred, how the major disaster affected the Collaborative Applicant, the CoC, or its project(s);

**b.** the duration, and the impact on the Collaborative Applicant, the project applicants, or the CoC to meet the local competition deadline; and

**c.** the anticipated amount of time the CoC is requesting for an extension (e.g., number of days, weeks, or months). This does not mean HUD will allow the full amount of time requested.

Based on the timing and the extent of the major disaster, HUD may extend the application deadline for the affected CoC(s). All requests received will be confirmed via the Federal Emergency Management Agency (FEMA) website, https://www.fema.gov/disaster.

## B. Submission Methods

### 1. Electronic Submission

The official documents HUD uses to solicit applications for this NOFO are posted on Grants.gov; however, you must register and submit your application through esnaps.hud.gov. HUD does not accept applications or supportive documents via fax.

### 1. Electronic Submission

Applicants must register and submit project applications through esnaps.hud.gov. HUD does not accept applications or supportive documents via fax.

**a.** *CoC Registration.* Collaborative Applicants that Registered their CoCs in FY 2024 were not required to register again for FY 2025 funding. HUD moved all FY 2024 CoC Program Registrations forward for FY 2025 on behalf of all existing Collaborative Applicants in accordance with Notice CPD-22-02: Continuum of Care Program Registration. Collaborative Applicants that were designated by HUD as UFAs during the FY 2024 Registration were not required to reapply during the FY 2025 funding year.

**b.** *CoC Review of Project Applications Prior to Submission to HUD.* HUD expects CoCs to implement a thorough review and oversight process at the local level for both new and renewal project applications to be submitted to HUD for the FY 2025 CoC Program Competition. HUD's experience is that many project applications contain information resulting in conditions on the grant; or for more serious infractions, HUD rejecting a project application. Deficient project applications prolong HUD's review process, which results in delayed funding announcements, lost funding for CoCs due to

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 251 of 279
PageID #: 1619

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

HUD rejecting projects, and delays accessing project funds to house and assist individuals and families experiencing homelessness. HUD expects CoCs to closely review the information provided in each project application, including Renewal, Replacement, or Reallocation projects, to ensure:

**(1)** all proposed program participants will be eligible for the program component type selected;

**(2)** the information provided in the project application and proposed activities are:

**(a)** eligible and consistent with program requirements in the Rule;
**(b)** eligible and consistent with DV Renewal, DV Reallocation and DV Bonus requirements in sections IV.D.1.d, and IV.D.1.e, and I.D.1.f of this NOFO; or
**(c)** eligible and consistent with YHDP Renewal and YHDP Replacement project requirements which includes YHDP Reallocation provided in sections IV.D.1.h and IV.D.1.i of this NOFO;

**(3)** each project narrative is fully responsive to the question being asked and that it meets all the criteria for that question as required by this NOFO;

**(4)** the data provided in various parts of the project application are consistent; and

**(5)** all required attachments correspond to the list of attachments in e-snaps, must contain accurate and complete information and must be dated between November 1, 2024 and January , 2026.

**c.** *Collaborative Applicant Submission Requirements.* Collaborative Applicants must submit the FY 2025 Consolidated application by the FY 2025 application submission deadline. HUD will consider the CoC Consolidated Application properly submitted for review when the Collaborative Applicant submits the FY 2025 CoC Application, the FY 2025 CoC Priority Listing, and all FY 2025 project applications on behalf of the CoC.

The FY 2025 CoC Application and the FY 2025 CoC Priority Listing are separate submissions in e-snaps; therefore, Collaborative Applicants must ensure both the CoC Application and the CoC Priority Listing, that includes all project applications either approved and ranked or rejected, are submitted in e-snaps prior to the CoC Program application submission deadline.

The "Submit" button will not be available on the Submission Summary of the FY 2025 CoC Application and FY 2025 CoC Priority Listing until all required sections of the application and all parts of the listings have been completed. Collaborative Applicants should review the Submission Summary form carefully to ensure no sections state "Please Complete."

Collaborative Applicants should export a PDF copy of the Submission Summary form from the FY 2025 CoC Application and the FY 2025 CoC Priority Listing after they have been submitted to HUD and before closing their internet browser. This is the Collaborative Applicant's receipt of submission and proof of compliance with the FY 2025 application deadline.

The CoC Consolidated Application includes the following:

**(1) FY 2025 CoC Application which includes the following:**

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 252 of 279
PageID #: 1620

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

**(a) CoC Review, Score, and Ranking Procedures.** The CoC's written procedures that are publicly posted for all interested stakeholders and applicants that clearly describe the project-level review and ranking process that is used by the CoC to determine how CoC Program project applications submitted to the CoC are reviewed, scored, and ranked.

**(b) CoC Public Notice.** A screenshot(s) from the CoC's, or a partner website, that includes the date the CoC notified the public of its local competition process, the due date for project applications, and the full CoC Application and CoC Priority Listing that includes all Project Listings of project applications submitted to HUD as accepted (in the case of non-competitive CoC Planning and UFA costs), approved and ranked or rejected.

**(c) CoC Review and Ranking Process.** Documents the process used by the CoC in the local competition to review, assess, and score new and renewal project applications, a copy of one scored project application form used by most renewal project applicants that includes the objective criteria and system performance criteria and their respective maximum point values and the actual points your CoC awarded to the project applicant; and the local competition selection results for new and renewal project applications.

**(d) Notification to Project Applicants of projects rejected or reduced.** The notification of the action (rejection or reduction) that must be sent to the project applicant at least 15-days prior to the HUD application submission deadline, if a new or renewal project application was submitted to the CoC in the local competition and the CoC rejected it or reduced its funding request as part of the CoC's local process.

**(e) Public Notification of Ranked Project Applications.** The notification of action that all project applicants who submitted new and renewal project applications in the local CoC competition are notified at least 15-days prior to the HUD application submission deadline of the CoC's acceptance that includes the ranked position of the project applications. This notification may be posted publicly or sent via email to individual project applicants.

**(f) PHA Administrative Plan.** If the CoC is seeking points under section V.B.1.c.(11) of this NOFO, a copy or the relevant excerpt from the local PHA(s) administrative planning document(s), or other written policy developed between the CoC and the PHA(s) that describes the PHA(s) preference for persons experiencing homelessness. Instead of a relevant excerpt from the written plan, a letter from the PHA(s) that describes the PHA(s) preference for persons experiencing homelessness may be attached.

**(g) Leveraging Housing and Healthcare Resources.** If the CoC is seeking points under section V.B.1.c.(12) and (13) written commitment(s), contract(s), or other formal written documents that demonstrate the number of housing subsidies, housing units, and healthcare resources that will be provided.

**(h) Projects to Serve Persons Defined as Homeless under paragraph (3) of 24 CFR 578.3.** If the CoC is seeking to serve persons defined as homeless under

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 253 of 279
PageID #: 1621

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

paragraph (3) of the homeless definition, a list of projects that will serve persons defined as homeless under paragraph (3) of the homeless definition.

**(i) The FY 2025 HDX Competition Report.** The FY 2025 HDX Competition Report contains data submitted to HUD via HUD's Homelessness Data Exchange (HDX), including HIC, PIT count, and system performance data.

**(2) FY 2025 Project Application(s), including for each project application:**

**(a) Charts, narrative responses, and attachments.**

**(b) Documentation of Applicant and subrecipient Eligibility.** All nonprofit project applicants must attach eligibility documentation to the Project Applicant Profile. If nonprofit subrecipients are included in a project application, subrecipient eligibility documentation must be attached to the project application.

**(c) HUD required forms.** The following HUD required forms are built into e-snaps and must be fully completed and electronically signed before project applicants have access to the project application (see section IV.F.A of this NOFO).

**(3) FY 2025 CoC Priority Listing, including.** The CoC Priority Listing in e-snaps must include the following completed forms, certifications and attachments:

**(a) Project Reallocation Form.** The Reallocation form allows CoCs to indicate which eligible new projects, if any, will be reduced or eliminated through the reallocation process.

**(b) CoC and YHDP Project Listings.** The CoC project listing forms require the following project applications to be ranked, with unique rank numbers, in order of priority. Any project not ranked with a unique rank number must be rejected. The forms under this requirement include:

**i.** CoC New Projects (including CoC Bonus and CoC Reallocation projects;
**ii.** CoC Renewal Projects (including DV Renewal and Special NOFO Renewal projects);
**iii.** DV Bonus Projects;
**iv.** DV Reallocation Projects;

**v.** YHDP Renewal Projects;

**vi.** YHDP Replacement Projects (including YHDP Reallocation projects).

**(c)** CoC Planning and UFA Costs Project Application Listings. These project listing forms include the following non-ranked project applications:

**i.** CoC Planning Project Listing; and
**ii.** UFA Costs Project Listing, if applicable.

Collaborative Applicants must ensure the CoC only submits one project application for CoC Planning, and if the CoC's Collaborative Applicant is a HUD-designated UFA, one UFA Costs project application.

**(d)** Form HUD-2991, Certification of Consistency with the Consolidated Plan (See section IV.A.1 of this NOFO).

Case 1:25-cv-00636-MSM-AEM     Document 56-2     Filed 12/29/25     Page 254 of 279
PageID #: 1622

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

(e) Tribal Resolution, if applicable (See section IV.1.2 of this NOFO).

### d. Project Application Submissions.

Project applications must include the population(s) and subpopulation(s) they will serve, the type of housing and services they will provide, and the budget activities they are requesting. Project applicants must also provide documentation of applicant and subrecipient eligibility. All nonprofit project applicants must attach eligibility documentation to the Project Applicant Profile. If nonprofit subrecipients are included in a project application, subrecipient eligibility documentation must be attached to the project application.

Collaborative Applicants applying for CoC Planning and UFA Costs (if designated as a UFA by HUD) must provide a description of the activities that will be carried out with CoC Program grant funds.

Additionally, all project applicants must ensure their organization has a Code of Conduct that complies with the requirements of 2 CFR part 200, as may be amended from time to time, and is included on HUD's website. If the organization's Code of Conduct does not appear on HUD's website, the project applicant must attach its Code of Conduct that includes all required information to its Project Applicant Profile in e-snaps.

For more information on project applications, see section IV.D of this NOFO.

### e. Timely Submissions.

HUD will not fund applications that are not received on time. Also, failure to submit a complete CoC Consolidated Application may result in HUD finding that the CoC does not meet the requirements of the Act or its implementing regulations under 24 CFR 578.13. If the Secretary makes that finding, HUD may take remedial action to ensure fair distribution of grant funds to eligible entities within the CoC's geographic area, which includes the possibility that HUD will designate another eligible applicant to be the Collaborative Applicant for the CoC. In addition to the remedial actions listed in 24 CFR 578.13(a), HUD may also impose another remedial action, such as requiring the CoC to create new policies and procedures to ensure that the Collaborative Applicant performs its duties.

### f. Resolving Technical Difficulties.

CoC and project applicants experiencing technical difficulty with any part of the Application should notify HUD immediately for assistance and document all attempts to obtain assistance. Notification of technical difficulties are to be sent to CoCNOFO@hud.gov. HUD will not provide assistance directly related to content, only to troubleshoot submission issues.

CoCs that are submitting new and renewal applications for FY 2025 CoC and YHDP funding should print the Submission Summary form for the FY 2025 CoC Priority Listing for proof of compliance with the FY 2025 application deadline. HUD will not give funding consideration to any Collaborative Applicant whose FY 2025 CoC Priority Listing is determined to be late and the Collaborative Applicant is unable to provide HUD with a record of submission that verifies the CoC Consolidated Application was submitted prior to the application deadline date and time.

HUD strongly suggests that applicants use the "Export to PDF" functionality in e-snaps to save a hard copy of all submission documents for their records. This can be completed prior

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 255 of 279
PageID #: 1623

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

to or after submission.

If after notice and reasonable opportunity to be heard, HUD finds pursuant to 24 CFR 578.13, that one or more CoCs have failed to comply with the requirements of the Act and the Rule, HUD may, solely at its discretion and only if sufficient funds become available by recapture, publish a new NOFO for eligible applicants in CoCs that HUD determined do not meet the requirements of the Act and program regulations.

**Need Help?** See the Contact and Support section of this NOFO.

## 2. Electronic Submission Application Waiver

You may request a waiver from the requirement to submit your application electronically. The request must show good cause and detail why you are technologically unable to submit electronically. An example of good cause may include: a valid power or internet service disruption in the area of your business office. Lack of SAM.gov registration is not good cause.

Use the information in the Contact and Support section of this NOFO to submit a written request to HUD. You must **submit your waiver request at least 15 calendar days before the application deadline**.

The regulatory framework of HUD's electronic submission requirement is the final rule established in 24 CFR 5.1005. CoCs seeking a waiver of the electronic submission requirement must request a waiver in accordance with 24 CFR 5.1005. If a Collaborative Applicant finds it cannot submit its application electronically and must seek a waiver of the electronic grant submission requirement, its request must be postmarked no later than 60 days after the publication date of this NOFO. To expedite the receipt and review of each request, Collaborative Applicants may email their written requests to Norm Suchar, Director, Office of Special Needs Assistance Program (SNAPS) at CoCNOFO@hud.gov. If HUD does not have sufficient time to process the waiver request, HUD will not grant a waiver. HUD will not consider paper applications received without a prior approved waiver or after the established deadline.

## C. Other Submissions

### 1. Intergovernmental Review

This NOFO is not subject to Executive Order 12372. No action is needed.

### 2. Technical Application Errors

HUD may contact you to fix a technical error with your timely application after the due date. Technical errors that you may fix are not submitted to satisfy merit review criteria. And you may not fix technical errors related to threshold review except eligibility entity documentation. Examples of technical errors include: inconsistencies in funding requests; improper signature on a form; a missing or incomplete form; and nonprofit status documentation.

HUD will send notice to the authorized organization representative from the SF-424 to fix a technical error.

Your application is not eligible for funding, if you fail to fix the error to HUD's satisfaction and by the due date in HUD's notice. HUD will not review information submitted after the application due date in HUD's notice.

Applicants should compare their application submission with the requirements in the CoC Program NOFO. The FY 2025 Continuum of Care and Youth Homeless Demonstration Program Grants NOFO located on Grants.gov is HUD's official NOFO. If a discrepancy in the CoC Program NOFO posted on Grants.gov or other information provided in any other version or supporting documentation is found, please notify HUD immediately as indicated in section VIII of this NOFO. HUD welcomes and is prepared to receive calls from individuals who are deaf or hard of hearing, as well as individuals with speech or communication disabilities. To learn more about how to make an accessible telephone call, please visit https://www.fcc.gov/consumers/guides/telecommunications-relay-service-trs.

HUD will post any corrections or amendments to a CoC Program NOFO on Grants.gov.

For projects conditionally selected for award, HUD verifies that your organization has an active SAM registration prior to release of awarded funds and will withhold processing funds if your organization's SAM registration has expired or isn't consistent with the information provided on the SAM.gov website. A UEI discrepancy may also occur if HUD approves a grant to be amended to a new recipient (see section V.D.7 of this NOFO).

UEI discrepancies are a curable deficiency that may be corrected by the applicant with timely action. If a UEI discrepancy isn't resolved within the timeframe prescribed by the Notification of Curable Deficiency the applicant receives from HUD, HUD may reject the project.

### a. Fix Errors in Electronic Applications

To fix an error in response to a HUD notice, you must email the corrections to HUD at CoCNOFO@hud.gov.

HUD allows 7 calendar days from the date of the HUD notice to fix an error. If the due date to fix an error falls on a Saturday, Sunday, Federal holiday, or on a day when HUD's Headquarters office in Washington, DC is closed, then the due date is the next business day.

### b. Fix Errors in Paper Applications

You must fix an error in your paper application, in accordance with HUD's notice. If your paper application includes an incorrect UEI, HUD will request you supply the correct UEI.

## D. False Statements

By submitting an application, you acknowledge your understanding that providing false or misleading information during any part of the application, award, or performance phase of an award may result in criminal, civil or administrative sanctions, including but not limited to: fines, restitution, and/or imprisonment under 18 USC 1001, 18 USC 1012, 18 USC 1010, 18 USC 1014, or 18 USC 287; treble damages and civil penalties under the False Claims Act, 31 USC 3729 et seq.; double damages and civil penalties under the Administrative False Claims Act, 31 USC Sections 3801-3812; civil recovery of award funds; suspension and/or debarment from all federal procurement and non-procurement transactions, FAR Part 9.4 or 2 CFR Part 180; and other remedies including termination of active HUD award.

# VII. POST - AWARD REQUIREMENTS AND ADMINISTRATION

VII. Post-Award Requirements and Administration

A. Administrative, National and Departmental Policy Requirements and General Terms and Conditions

B. Environmental Requirements

C. Remedies for Noncompliance

D. Reporting

TABLE OF CONTENTS

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

# VII. POST-AWARD REQUIREMENTS AND ADMINISTRATION

## A. Administrative, National and Departmental Policy Requirements, and General Terms and Conditions

You must follow the applicable provisions in the Administrative, National & Departmental Policy Requirements and Terms for HUD Financial Assistance – 2025. You must comply with these applicable provisions:

1. The Fair Housing Act (42 USC 3601-3619) and Civil Rights laws which encompass the Fair Housing Act and related authorities (24 CFR 5.105(a))

2. Affirmatively Furthering Fair Housing (AFFH) requirements, (42 USC § 3608(e)(5)) and implementing regulations at 24 CFR 5.150 et seq.as amended by 90 FR 11020.

3. Economic Opportunities for Low-and Very Low-income Persons (12 USC 1701u) requirements, including those listed at 24 CFR part 75

4. Compliance with Immigration Requirements (8 U.S.C. 1601-1646; Executive Order 14218)

5. Accessible Technology requirements, (29 USC § 794d, 29 USC 794, 42 USC 12131-12165) and implementing regulations at 36 CFR part 1194 (Section 508 regulations),24 CFR § 8.6 (Section 504 effective communication regulations), 28 CFR part 35, subpart H (DOJ Web Access Rule), and 28 CFR part 35, subpart E (DOJ's Title II communications regulations)

6. Ensuring, when possible, small businesses, minority businesses, women's business enterprises, veteran-owned businesses, and labor surplus area firms receive consideration consistent with 2 CFR 200.321

7. Equal Participation of Faith-based Organizations in HUD Programs and Activities consistent with 42 U.S.C. 2000bb et seq.; 42 U.S.C. 2000d et seq.; 24 CFR 5.109; and Executive Orders 14202, *Eradicating Anti-Christian Bias* and EO 14205, *Establishment of the White House Faith Office.*

8. Uniform Relocation Assistance and Real Property Acquisition Policies Act (42 USC § 4601 et seq.) (URA) requirements, 49 CFR part 24, and applicable program regulations

9. Participation in HUD-Sponsored Program Evaluation (12 USC 1701z-1; 12 USC 1702z-2; 24 CFR part 60; and FR-6278-N-01)

10. OMB Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (2 CFR part 200)

11. Drug-Free Workplace requirements (2 CFR part 2429)

12. HUD requirements related to safeguarding resident/client files (e.g., 2 CFR 200.303(e))

13. The Federal Funding Accountability and Transparency Act of 2006 (2 CFR part 170) (FFATA), as amended

15. Accessibility for Persons with Disabilities requirements (29 USC § 794) and implementing

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |
|---|---|---|---|---|---|---|---|---|

regulations at 24 CFR parts 8 and 100; 28 CFR part 35

16. Applicable Violence Against Women Act requirements in the Housing Chapter of VAWA (34 USC § 12491-12496) 24 CFR part 5, subpart L, and program-specific regulations.

17. Conducting Business in Accordance with Ethical Standards/Code of Conduct, including 2 CFR 200.317, 2 CFR 200.318(c) and other applicable conflicts of interest requirements

18. Build America, Buy America (BABA) Act procurement purchase requirements

20. Environmental requirements that apply in accordance with 24 CFR part 50 or part 58

22. Unless prohibited by law and to the extent permitted under the Freedom of Information Act (FOIA), your application and post-award content may be released to the public in response to FOIA requests, except to the extent that certain information may be withheld under a FOIA exemption (5 USC § 552(b); 24 CFR 15.107(b)). HUD may also share your information within HUD or with other Federal agencies if HUD determines that sharing is relevant to the respective program's objectives.

23. Waste, Fraud, Abuse, and Whistleblower Protections. 41 USC § 4712, which includes informing your employees in writing of their rights and remedies, in the predominant native language of the workforce. Under 41 U.S.C. § 4712, employees of a contractor, subcontractor, grantee, subgrantee, and personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant. (See Federal Contractor or Grantee Protections | Office of Inspector General, Department of Housing and Urban Development (hudoig.gov))

24. Implementing Presidential Executive Actions affecting federal financial assistance programs, as advised by the Department, unless otherwise restricted by law: Executive Order (EO) 14219 (Ensuring Lawful Governance and Implementing the President's "Department of Government Efficiency" Deregulatory Initiative); 14218 (Ending Taxpayer Subsidization of Open Borders); guidance resulting from the White House Task Force established by 14202 (Eradicating Anti-Christian Bias) and the Senior Advisor to the White House Faith Office assigned by 14205 (Establishment of the White House Faith Office); 14182 (Enforcing the Hyde Amendment); 14173 (Ending Illegal Discrimination and Restoring Merit-Based Opportunity); 14168 (Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government); 14151 (Ending Radical and Wasteful Government DEI Programs and Preferencing); and 14148 (Initial Rescissions of Harmful Executive Orders and Actions)

In addition:

1. Awards made under this NOFO will not be used to conduct activities that subsidize or facilitate racial preferences or other forms of illegal discrimination, including activities where race or intentional proxies for race will be used as a selection criterion for employment or program participation; or conduct activities that rely on or otherwise use a definition of sex as other than binary in humans 14332 (Improving Oversight of

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |
|---|---|---|---|---|---|---|---|---|

Federal Grantmaking).

2. Awards made under this NOFO will not be used to fund, promote, encourage, subsidize or facilitate the use of illicit drugs.

3. Awards made under this NOFO will not be used to fund any project, service provider, or organization that operates drug injection sites or "safe consumption sites," knowingly distributes drug paraphernalia on or off of property under their control, permits the use or distribution of illicit drugs on property under their control, or conducts any of these activities under the pretext of "harm reduction." 14321 (Ending Crime and Disorder on America's Streets).

4. All agreements or contracts made with subrecipients under this NOFO must contain the identical terms and conditions as those in the grant agreement issued by HUD. Any additional or conflicting terms and conditions must be approved by HUD.

## B. Environmental Requirements

### 1. Environmental Review

You must follow these environmental review requirements, including regulations at:

24 CFR part 50

24 CFR part 58

Notwithstanding 24 CFR 578.31 and 24 CFR 578.99(a) of the Rule, and in accordance with Section 100261(3) of MAP-21 (Pub. L. 112-141, 126 Stat. 405), activities under this NOFO are subject to environmental review by a responsible entity under HUD regulations at 24 CFR part 58 or by HUD under 24 CFR part 50.

a. All HUD assisted activities, even projects that only involve exempt activities, require some level of environmental review. Two types of projects are Categorically Excluded from review under the National Environmental Policy Act (NEPA) and not subject to compliance with the laws and authorities listed under 24 CFR 58.5 (CENST): All scattered-site projects where program participants choose their own unit and are not restricted to units within a pre-determined specific project site or sites are categorized in 24 CFR 58.35(b)(1) as CENST. This includes both tenant-based rental assistance and tenant-based leasing projects where program participants choose their own unit and do not involve any physical work or impacts beyond routine maintenance as defined by Notice CPD-16-02: Guidance for Categorizing an Activity as Maintenance for Compliance with HUD Environmental Regulations. The Exempt/CENST environmental review form is only required for each project, not every unit.

b. For activities under a grant to a recipient other than a state or unit of general local government that generally would be subject to review under 24 CFR part 58, HUD may make a finding in accordance with 24 CFR 58.11(d) and may itself perform the environmental review under the provisions of 24 CFR part 50 if the recipient objects in writing to the responsible entity's performing the review under part 24 CFR part 58.

c. Irrespective of whether the responsible entity in accordance with 24 CFR part 58 (or HUD in accordance with 24 CFR part 50) performs the environmental review, the recipient

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 261 of 279
PageID #: 1629

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

must supply all available, relevant information necessary for the responsible entity (or HUD, if applicable) to perform for each property any required environmental review. The recipient also must carry out mitigating measures required by the responsible entity (or HUD, if applicable) or select alternative property.

**d.** The recipient, its project partners, and their contractors may not acquire, rehabilitate, convert, lease, repair, dispose of, demolish, or construct property for a project under this NOFO, or commit or expend HUD or non-HUD funds for such eligible activities under this NOFO, until the responsible entity (as defined by 24 CFR 58.2(a)(7)) has completed the environmental review procedures required by 24 CFR part 58 and the environmental certification and Request for Release of Funds (RROF) have been approved or HUD has performed an environmental review under 24 CFR part 50 and the recipient has received HUD approval of the project. HUD will not release grant funds if the recipient or any other party commits grant funds (i.e., incurs any costs or expenditures to be paid or reimbursed with such funds) before the recipient submits and HUD approves its RROF (where such submission is required).

## 2. NOFO Impact Determination Related to the Environment

This NOFO has no significant impact related to the environment. HUD has made a Finding of No Significant Impact (FONSI) as required by HUD regulations at 24 CFR part 50, which implement section 102(2)(C) of the National Environmental Policy Act of 1969 (42 USC § 4332(2)(c)). To learn more about this FONSI, go to HUD's Funding Opportunities web page.

## 3. Lead-Based Paint Requirements

You must follow the lead-based paint rules below if you fund any work on pre-1978 housing. This includes buying, leasing, support services, operating, or work that disturbs painted surfaces.

- HUD's rules (Lead Disclosure Rule; and Lead Safe Housing Rule).
- EPA's rules (Renovation, Repair and Painting Rule, and Lead Abatement, Inspection and Risk Assessment Rule).

You must discuss the Lead Disclosure Rule if you fund education or counseling on buying or renting housing that may have been built before 1978. You must also discuss the Lead Safe Housing Rule if the education or counseling focuses on buying or renting HUD-assisted pre-1978 housing.

## C. Remedies for Noncompliance

HUD may terminate all or a part of your award as described under 2 CFR 200.340 through 200.343 pursuant to the terms and conditions of your award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities. HUD may also impose specific conditions on your award or take other remedies as described by 2 CFR 200.339 through 200.343, if you do not comply with your award terms and conditions.

For more information on CoC Program sanctions and remedies for noncompliance see 24

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 262 of 279
PageID #: 1630

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

CFR 578.107.

## D. Reporting

HUD requires recipients to submit the performance, financial, and program reports as outlined below. You must comply with these reporting requirements to remain eligible for HUD funding. See Section VII.C. of this NOFO.

HUD is implementing new grants management and reporting tools, which will be rolled out for your use in the near term. As a grantee, you will be required to report on grant performance and financial activities (including vendor and cash disbursement supporting details for yourself and your sub-recipients) using these new tools when they are released. HUD will work with you to support your transition to this new reporting environment. Once implemented, timely reporting in this new environment will be mandatory. HUD reserves the right to exercise all available rights and remedies for any noncompliance with these grants management and financial reporting requirements, to include requiring 100% review or stopping future disbursements altogether if reporting is not timely submitted.

| Report | Description | When |
|---|---|---|
| Federal Funding Accountability and Transparency Act (FFATA) | • Awards equal to or greater than $30,000<br>• Data on executive compensation and first-tier subawards<br>• See Public Law 109-282 and 2 CFR part 170<br>• HUD reports initial prime recipient data to usaspending.gov<br>• Submit via SAM.gov | See 2 CFR Appendix A to Part 170(a)(2)(ii) |
| Reporting on Recipient Integrity and Performance Matters | • Total value of all current Federal awards exceed $10,000,000 for any period of time during the period of performance of this Federal award<br>• See Appendix XII to 2 CFR 200<br>• Submit via SAM.gov | See 2 CFR Appendix-XII to Part 200 I.(d) |

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| Report | Description | When |
|--------|-------------|------|
| Annual Performance Report (APR) | • Collect and report data use of funds annually. <br><br> • Projects receiving funds for acquisition, new construction, or rehabilitation must submit APRs for 15 years from the date of initial occupancy or the date of initial service provision. | See 24 CFR 578.103(e) |
| Federal Financial Report, SF-425 | • Summary of key financial data <br><br> • See 2 CFR 200.328 | See 2 CFR 200.328 or award terms |
| Race, Ethnicity, and Other Data Reporting | Recipients that provide HUD-funded program benefits to individuals or families, report data on the race, color, religion, sex, national origin, age, disability, and family characteristics of persons and households funded by this program. | Annually through the Homeless Data Exchange submission. |
| Audited financial statement | Recipient's organizational structure, any sub-grantees or sub-recipients, and how each disbursement of grant funds was applied to an eligible cost throughout the life of the grant to receive disbursements of Federal funds. | No less than annually. |

**1. Program Specific Reporting Requirements.**

   **a.** In accordance with program regulations at 24 CFR 578.103, project recipients must maintain records within the timeframe required and make any reports that HUD may require. Project recipients may report the data as part of their APR submission to HUD. Also, project recipients who expend $750,000 or more in 1 year in federal awards must have a single or program-specific audit for that year in accordance with the provisions of 2

CFR part 200, subpart F.

**b. Section 3 Reporting Regulations.** Recipients are required to report their Section 3 activities per 24 CFR 75.25 if funds were awarded for housing rehabilitation, housing construction, and other public constructions. See HUD's Section 3 website for additional information including annual reporting requirements.

**c.** Award notices may also include requirements for sub-award reporting in compliance with the requirements of the Federal Financial Assistance Accountability and Transparency Act of 2006 (Pub. L. 109-282) (FFATA) and Section 872 of the Duncan Hunter National Defense Authorization Act for Fiscal Year 2009 (Pub. L. 110-417), referred to as "Section 872." See the General Section for further information.

**e.** An estimate of the reporting and recordkeeping burden of the CoC Program can be found in the Federal Register Publication of the Rule.

## 2. Administrative and Other Program Requirements.

Federal agencies are required to measure the performance of their programs. HUD captures this information from monitoring visits and APRs

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 265 of 279
PageID #: 1633

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

# VIII. CONTACT AND SUPPORT

VIII. Contact and Support

    A.  Agency Contact

      B.  Grants.gov

      C.  Sam.gov

      D.  Debriefing

    E.  Applicant Experience Survey

     F.  Other Online Resources

TABLE OF CONTENTS

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 266 of 279
PageID #: 1634

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

# VIII. CONTACT AND SUPPORT

Individuals who are deaf or hard of hearing, as well as individuals who have speech or communication disabilities may use a relay service. To learn more about how to make an accessible telephone call, visit the webpage for the Federal Communications Commission.

## A. Agency Contact

### 1. Program and Application Requirements

Name: HUD Office of Community Planning and Development

Phone: 800-347-3735

Email: CoCNOFO@hud.gov

Note: HUD's assistance is limited by the standards at 24 CFR 4.26.

HUD staff will be available to provide general clarification on the content of this NOFO; however, HUD staff are prohibited from assisting any applicant in preparing the application(s) in e-snaps.

**a. Local HUD Community Planning Development (CPD) Office.** Questions regarding specific program requirements should be directed to the local HUD CPD field office, a directory of which can be found at https://www.hud.gov/program_offices/field_policy_mgt/localoffices.

**b. Training and Resources.** Collaborative Applicants and project applicants that need assistance completing the applications in e-snaps or understanding the program requirements under the CoC Program may access the Rule, training materials, and program resources via https://www.hud.gov/hud-partners/community-coc.

**c. Questions.** CoCs, Collaborative Applicants, and project applicants that require information and technical support concerning this NOFO and the application in e-snaps may submit an inquiry to CoCNOFO@hud.gov. Starting 2 days prior to the application deadline, this email address will respond only to emergency technical support questions up to the deadline of 8:00 PM EST on January 14, 2026. Applicants experiencing technical difficulty should contact CoCNOFO@hud.gov immediately for assistance and document their attempts to obtain assistance.

### 2. Paper Application Waiver Request

Name: HUD Office of Community Planning and Development

Email: CoCNOFO@hud.gov

Phone: (202) 708-4300

HUD Organization: Community Planning and Development

Street: 451 7th Street SW

City: Washington

DC DISTRICT OF COLUMBIA

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 267 of 279
PageID #: 1635

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

20410

**HUD Reform Act.** HUD is prohibited from disclosing covered selection information during the selection process. The selection process includes NOFO development and publication, and concludes with the announcement of selected recipients of financial assistance. HUD will not assist you with completing your application.

HUD will only return calls related to paper application requests. All other calls will not be returned.

All other requests or questions regarding this NOFO must be sent via email to CoCNOFO@hud.gov

### B. esnaps.hud.gov

CoCs, Collaborative Applicants, and project applicants that require information and technical support concerning this NOFO and the application in e-snaps may submit an inquiry to CoCNOFO@hud.gov. Starting 2 days prior to the application deadline, this email address will respond only to emergency technical support questions

### C. SAM.gov

If you need help, you can call 866-606-8220 or live chat with the Federal Service Desk.

### D. Debriefing and Appeals

1. After public announcement of awards, HUD will debrief the Collaborative Applicant upon your written request. Submit your written request to the agency contact for program and application requirements in this NOFO. HUD may limit the information provided to protect the integrity of the competition.

2. You may appeal an application decision or a HUD funding decision. Email your appeal to snapsappeals@hud.gov. The subject line of your email must include the CoC Number, "Appeal Notice," and type of appeal, i.e., Participation, HUD Error, or Consolidated Plan Certification. A sample email Subject Line is, Subject: XX-500 – Appeal Notice–Consolidated Plan Certification.

24 CFR 578.35 provides the appeal process options. Sections 578.35(b)(3), (b)(4), (c)(1), and (d)(2) authorize HUD to establish requirements for the form and manner of submissions for appeals by Solo Applicants, applicants with denied or decreased funding, and from competing CoCs. For HUD to consider an appeal under 24 CFR 578.35(b) or (c), the solo project applicant must follow the applicable application process set forth in this NOFO. This NOFO also provides guidance to CoCs and applicants regarding appeals of a jurisdiction's refusal to sign the Consolidated Plan certification for a project under 24 CFR 578.35(c).

Additionally, HUD is clarifying the impact that Solo Applicant appeals will have on HUD signing grant agreements for funds awarded under this NOFO. If HUD receives one or more Solo Applicant appeals from a CoC, HUD will determine the amount of funding the Solo Applicant(s) have requested which may delay signing grant agreements for the awarded project(s) listed at the bottom of the CoC's Priority Listing that has requested funding under this NOFO equal to double the amount requested by the Solo Applicant(s). Refer to the Solo Applicant appeal process in section VIII.D.4 of this NOFO for additional information about the

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 268 of 279
PageID #: 1636

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

Solo Application appeal process.

Finally, for the purposes of the appeals identified in this NOFO where 24 CFR 578.35 requires that all evidence be sent to the CoC and that the CoC respond to evidence, this means that correspondence to the CoC should be addressed to the CoC-designated Collaborative Applicant and all correspondence to HUD from the CoC should be addressed from the CoC's designated Collaborative Applicant. If the CoC has authorized another entity other than the Collaborative Applicant to respond to the appeals identified in this NOFO on its behalf, it should notify HUD by sending an email to snapsappeals@hud.gov.

### 3. Types of Appeals.

The provision at 24 CFR part 578 sets forth the following types of appeals:

**a.** *Solo Applicants.* A process for eligible project applicants that attempted to participate in their CoC planning process and believe they were denied the right to participate in a reasonable manner.

**b.** *Denied or Decreased Funding.* A process for eligible applicants that are denied funds by HUD or that requested more funds than HUD awarded to them.

**c.** *Consolidated Plan Certification.* A process for eligible applicants whose jurisdiction refused to provide a Certification of Consistency with the Consolidated Plan (form HUD-2990).

**d.** *Competing CoCs.* A process when more than one CoC selects the same geographic area, for eligible applicants of lower-scoring CoCs, to appeal to HUD's decision to fund the competing CoC. Should two or more CoCs select the same geographic codes associated with formula areas during the CoC Program Registration process, HUD will use the competing CoC process provided by 24 CFR 578.35(d).

### 4. Solo Applicant.

Per the Act, "A solo applicant may submit an application to the Secretary for a grant under subsection (a) and be awarded such grant on the same basis as such grants are awarded to other applicants based on the criteria described in section 427, but only if the Secretary determines that the solo applicant has attempted to participate in the continuum of care process but was not permitted to participate in a reasonable manner. The Secretary may award such grants directly to such applicants in a manner determined to be appropriate by the Secretary."

To apply as a solo applicant, the project applicant must submit a Solo Applicant Project Application in e-snaps by the application submission deadline of January 14, 2026 at 8:00 PM EST. Additionally, the solo applicant, Collaborative Applicant, and HUD must take the following steps (See 24 CFR 578.35 for more information):

**a.** *Written Notice of Intent to Appeal.* The solo applicant must submit a written notice of intent to appeal, with a copy to the CoC, with their funding application.

**b.** No later than 30 days after the date that HUD announces the awards, the solo applicant shall submit in writing, with a copy to the Collaborative Applicant, all relevant evidence supporting its claim. The submission shall be emailed to

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 269 of 279
PageID #: 1637

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

snapsappeals@hud.gov.

**c.** The CoC has 30 days from the date of its receipt of the solo applicant's evidence to respond to HUD in writing, with a copy to the solo applicant. The submission must be emailed to snapsappeals@hud.gov.

**d.** HUD will notify the solo applicant and the CoC of its decision within 60 days of receipt of the CoC's response.

**e.** If HUD finds that the solo applicant was not permitted to participate in the Continuum of Care planning process in a reasonable manner, then HUD may award a grant to the solo applicant when funds next become available and may direct the Continuum of Care to take remedial steps to ensure reasonable participation in the future. HUD may also reduce the award to the Continuum's applicant(s).

## 5. Denied or Decreased Funding.

Eligible applicants, including project applicants and Collaborative Applicants, that submitted an application to HUD in response to this NOFO, that were either not awarded funds by HUD, or that requested more funds than HUD awarded, may appeal HUD's decision within 45 days after the final funding announcement. HUD will only consider for funding or additional funding applicants the CoC ranked within the CoC's maximum amount available. Collaborative Applicants that submitted CoC planning, and if applicable, UFA Costs project applications can appeal decreased funding if they can demonstrate HUD decreased the submitted project application's funding request to less than 5 percent of the CoC's FPRN or $1,250,000; whichever is less. To appeal HUD's decision, the applicant must submit a written appeal to HUD, with a copy to the authorized representative from the CoC's designated Collaborative Applicant. The written appeal must include evidence demonstrating HUD error and follow the instructions in this section.

The applicant must submit its written appeal by email to snapsappeals@hud.gov, from the organization's email address on the organization's letterhead and signed by the authorized representative–electronic signatures are acceptable.

**a.** *Denied Funding.* To appeal HUD's decision, the applicant must submit a written appeal to HUD using the process outlined in Section VIII.D.6 of this NOFO within 45 days of the date of the funding announcement of the conditional awards from HUD, with a copy to the authorized representative from the CoC's designated Collaborative Applicant.

**(1)** Projects, including projects for CoC Planning funds and Unified Funding Agency (UFA) costs, could have been rejected by HUD because:

**(a)** the individual project application failed to meet project eligibility, project quality, and project renewal thresholds set forth in this NOFO;

**(b)** the individual project application met project eligibility, project quality, and project renewal thresholds set forth in this NOFO, but was ranked in a position where a portion of the grant funds was outside the CoC's maximum award amount, and after HUD reduced its funding to fit within the CoC's maximum award amount, HUD determined that the project was no longer feasible; or

**(c)** HUD did not have sufficient funding to fund all eligible projects ranked within

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 270 of 279
PageID #: 1638

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

the CoC's maximum award amount.

(2) For applicants that were fully denied funding for a grant, the applicant must provide evidence that demonstrates HUD error in not awarding the grant. Documentation submitted by the applicant must include:

(a) documentation that the project was ranked within the maximum award amount available to the CoC;

(b) evidence from the project application supporting the applicant's claim that the project application met project eligibility, project quality, and project renewal thresholds set forth in this NOFO; and

(c) evidence that the applicant believes HUD failed to follow its selection threshold criteria set forth in this NOFO, which resulted in the project not being funded.

(3) For applicants that were denied funding due to the individual project's funding being decreased to such a level that the project was no longer feasible, documentation submitted by the applicant must include:

(a) documentation that the project was ranked within the maximum award amount available to the CoC;

(b) evidence from the project application supporting the applicant's claim that the project application met project eligibility and project quality thresholds set forth in this NOFO;

(c) evidence that the applicant believes HUD failed to follow its selection threshold criteria set forth in this NOFO which resulted in the project not being funded (e.g., selecting a lower-scored project within the CoC or a similar project from another CoC); and

(d) the evidence in section VI.B.1.b of this NOFO as well as evidence for decreased funding in section VIII.D.5.b of this NOFO.

(4) For CoCs that were denied funding due to the score of the CoC Application or the score of the project application not being high enough to result in the funding of project(s) within the CoC, and the lower score for one or both application types was the result of HUD error, the CoC may appeal the CoC or project application score and request funding for affected projects. Documentation submitted by the Collaborative Applicant on behalf of the CoC must include evidence of HUD error when calculating the Coc Application or project application score.

b. *Decreased Funding.* To appeal HUD's decision, the applicant must submit a written appeal to HUD using the process outlined in section VIII.D.2 of this NOFO within 45 days of the date of the final funding announcement of the conditional awards from HUD, with a copy to the authorized representative of the CoC's designated Collaborative Applicant. Documentation submitted by the applicant must include evidence of the HUD error the applicant believes was made.

occurred, and the applicant should have been awarded additional funding, HUD will provide funding from the next available funds and make necessary adjustments by amending the award. HUD will reverse a decision only when the applicant can show that HUD error caused

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 271 of 279
PageID #: 1639

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

the denial or decrease.

### 6. Written Appeal.

An applicant may appeal to HUD a jurisdiction's refusal to provide a certification of consistency with the Consolidated Plan. The appeals process is as follows:

With the project application that is submitted by the application deadline, the applicant must submit a written appeal. Project applicants may submit its appeal in e-snaps with its project application. When submitted with the project application in e-snaps, the applicant must also email a copy of this appeal to the jurisdiction that denied the Certification of Consistency with the Consolidated Plan and should send a copy to the authorized representative from the CoC's designated Collaborative Applicant, unless it is the Collaborative Applicant that is filing the appeal. Otherwise, the project applicant or Collaborative Applicant may submit the appeal to HUD using one of the methods in section VIII.D of this NOFO. The written appeal must include the following information:

**a.** a copy of the applicant's request to the jurisdiction for the Certification of Consistency with the Consolidated Plan;

**b.** a copy of the jurisdiction's response stating the reasons for denial, including the reasons the proposed project is not consistent with the jurisdiction's Consolidated Plan in accordance with 24 CFR 91.510(c); and

**c.** a statement of the reasons why the applicant believes its project is consistent with the jurisdiction's Consolidated Plan.

The appeal may include additional information the applicant believes supports its appeal, including:

**(1)** any additional communication between the applicant and the jurisdiction regarding the request for certification of consistency; and

**(2)** documentation that identifies to whom within the jurisdiction the evidence was sent and the date on which it was sent.

**d.** *Jurisdiction Response.* The jurisdiction will have 10 days after the receipt of the applicant's written appeal to submit a written response to HUD. The response must be sent by email to snapsappeals@hud.gov on the organization's letterhead, with a copy to the project applicant and the authorized representative of the CoC's designated Collaborative Applicant. The response must include the following information:

**(1)** an explanation of the reasons originally given for refusing to provide the Certification of Consistency with the Consolidated Plan; and

**(2)** written rebuttal to any claims made by the applicant in the written appeal.

### e. *HUD Decision and Notification of Decision.*

**(1)** HUD will review the submissions and will provide written notification, by email, of its decision to the applicant and the jurisdiction, with a copy to the authorized representative from the CoC's designated Collaborative Applicant within 45 days of the date of the receipt of the jurisdiction's response. In making its decision, HUD will consider whether the applicant submitted the request to the appropriate certifying

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 272 of 279
PageID #: 1640

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

jurisdiction and the reasonableness of the jurisdiction's refusal to provide the certificate.

**(2)** If HUD finds that the certifying jurisdiction's refusal to provide a certification of consistency with the Consolidated Plan was reasonable, then HUD will automatically reject the project application. If HUD finds that the certifying jurisdiction's refusal to provide a certification of consistency with the Consolidated Plan was not reasonable, then HUD will consider the project application for funding in the respective FY CoC Program Competition in accordance with the review standards set forth in this NOFO.

**(3)** If the jurisdiction failed to provide written reasons for refusal, including the reasons why the project is not consistent with the jurisdiction's Consolidated Plan in its initial response to the applicant's request for a certification, HUD will find for the applicant without further inquiry or response from the political jurisdiction.

**(4)** HUD will provide written notification of its decision within 45 days of the date of HUD's receipt of the jurisdiction's response. Where the jurisdiction failed to provide a written response, HUD will provide written notification of its decision within 55 days of the date of HUD's receipt of the project applicant's response.

## E. Applicant Experience Survey

You are encouraged to provide feedback on your application experience by completing our Applicant Experience Survey. Your feedback is optional; you are not required to provide personal information. HUD may use your feedback to improve future NOFOs. Your feedback has no impact on funding decisions.

## F. Other Online Resources

You are encouraged to review the online resources for context on some of the NOFO requirements.

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 273 of 279
PageID #: 1641

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

# APPENDIX

Appendix

Appendix I Definitions

TABLE OF CONTENTS

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 274 of 279
PageID #: 1642

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

# APPENDIX

## Appendix I. Definitions

### 1. Standard Definitions

For standard definitions not listed below, refer to 2 CFR 200.1.

**Affirmatively Furthering Fair Housing (AFFH)** - statutory obligation to affirmatively further the purposes and policies of the Fair Housing Act (see also 24 CFR 5.151, as amended by 90 FR 11020).

**Authorized Organization Representative (AOR)** is the official within your organization with the legal authority to: give assurances, make commitments, submit your application to HUD, enter into agreements, and execute such documents on behalf of your organization. The AOR is not necessarily the Project Director. The AOR has defined privileges within Grants.gov.

**Consolidated Plan** has the same meaning as defined at 24 CFR part 91.

**Eligibility requirements** are mandatory requirements for an application to be considered for funding.

**Grants.gov** is the website serving as the Federal government's central portal for searching and applying for federal financial assistance.

**Opportunity Zone (OZs)** are defined in 26 U.S.C. 1400Z-1. In general, OZs are census tracts located in low-income communities where new investments, under certain conditions, may be eligible for preferential tax treatment.

**Primary Point of Contact (PPOC)** is the person HUD may contact with questions about the application submitted. The PPOC is listed in item 8F on the SF-424.

**System for Award Management (SAM)** has the same meaning as 2 CFR 25.100(b).

**Threshold Requirements** are eligibility requirements you must meet before HUD advances to a merit review of your application.

**Unique Entity Identifier (UEI)** has the same meaning as 2 CFR 25.100(a).

### 2. Program Definitions.

Regulatory citations are provided below so applicants can refer to specific areas of the Rule. Projects awarded CoC Program funds are subject to the program regulations as they may be amended from time to time. However, YHDP Renewal and YHDP Replacement projects and awards are subject to CoC Program regulations except as otherwise provided in this NOFO.

The definitions and concepts contained in this section include terms that are important for all applicants to understand in order to operate projects under this NOFO.

    **a.** *The following terms are defined in 24 CFR 578.* Applicants must refer to the Rule for the definitions contained in this section.

**(1)** Annual Renewal Amount (ARA)
**(2)** Applicant

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |
|---|---|---|---|---|---|---|---|---|

**(3)** Centralized or Coordinated Assessment System
**(4)** Chronically Homeless
**(5)** Collaborative Applicant
**(6)** Continuum of Care
**(7)** Consolidated Plan
**(8)** Establishing and Operating the CoC. -24 CFR 578.5 and 24 CFR 578.7 detail the requirements for the establishment of a CoC and its responsibilities.
**(9)** Final Pro Rata Need (FPRN)
**(10)** High Performing Community (HPC)
**(11)** Homeless Management Information System (HMIS)
**(12)** HMIS Lead
**(13)** Homeless. - Although not reflected in the regulation, section 605 of Violence Against Women Act Reauthorization Act of 2022 amended Section 103(b) of the Act and requires HUD to consider certain individuals and families as homeless. This amendment took effect on October 1, 2022. Notwithstanding anything to the contrary contained elsewhere in this NOFO, where 578.3 paragraph (4) is referenced,
**(14)** Permanent Housing
**(15)** Permanent Supportive Housing
**(16)** Preliminary Pro Rata Need (PPRN)
**(17)** Private Nonprofit Organization
**(18)** Program Participant
**(19)** Project
**(20)** Rapid Rehousing (RRH).
**(21)** Recipient
**(22)** Subrecipient
**(23)** Transitional Housing
**(24)** Unified Funding Agency
**(25)** Victim Service Provider

**b.** *CoC Program NOFO Terms.* The following terms may be used during the administration of CoC Program grants. The definitions and specific concepts pertaining to these terms are further explained below:

**(1) Annual Renewal Demand (ARD) (24 CFR 578.17(b)(2)).** The total amount of all the CoC's projects that will be eligible for renewal in the CoC Program Competition, before any required adjustments to funding for leasing, rental assistance, and operating Budget Line Items (BLIs) based on FMR changes. HUD will calculate the ARD by combining the total amount of funds requested by eligible renewal projects in each FY funding opportunity, including:

**(a)** renewal projects approved and ranked on the Renewal Project Listing;
**(b)** renewal project amount(s) that were reallocated as recorded on the reduced or eliminated reallocation forms of the CoC Project Listing;
**(c)** YHDP renewal projects on the YHDP Renewal Project Listing; and
**(d)** YHDP Replacement projects, including YHDP Reallocation projects, on the YHDP Reallocation and Replacement Project Listing. YHDP Replacement projects are eligible for funding through the replacement of YHDP Renewal projects. The YHDP Replacement application must request the same amount of funding that is

eligible for YHDP Renewal.

**(2) CoC Merger.** The CoC merger is a process where two or more CoCs voluntarily agree to merge the entire geographic area of all CoCs into one larger CoC. HUD strongly encourages CoCs that struggle with capacity to merge with a neighboring CoC or Balance of State CoC during each fiscal year's CoC Program Registration process. To encourage CoC mergers and mitigate the potential adverse scoring implications that may occur when a high performing CoC merges with one or more lower-performing CoC(s), HUD will award 5 bonus points to the FY 2025 CoC Application Score for CoCs that registered as a merged after the FY 2024 CoC Program Registration deadline.

**(3) Formula Area.** Defined in the Indian Housing Block Grant Program at [24 CFR 1000.302](#).

**(4) CoC Geographic Area.** 24 CFR 578.5 requires representatives from relevant organizations within a geographic area to establish a CoC to carry out the duties within the geographic area. The boundaries of identified CoC geographic areas cannot overlap, and any overlapping geographies are considered Competing CoCs. HUD follows the process at 24 CFR 578.35(d) to determine which CoC HUD will fund in the case of CoC geographic areas that overlap.

**(5) Homelessness and Human Trafficking.** HUD is clarifying that persons who are fleeing or attempting to flee human trafficking may qualify as homeless under paragraph (4) of the homeless definition at 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act and may be eligible for certain forms of homeless assistance under the CoC Program, subject to other restrictions that may apply. HUD considers human trafficking, including sex trafficking, to be "other dangerous or life-threatening conditions that relate to violence against the individual or family member" under paragraphs (1) and (4) of the definition of homeless at 24 CFR 578.3 and "other dangerous, traumatic, or life-threatening conditions related to the violence against the individual or a family member in the individual's or family's current housing situation" under section 103(b) of the McKinney-Vento Homeless Assistance Act.

**(6) Host Home and Kinship Care.** Host Home and Kinship Care is limited to YHDP Renewal and replacement grants. This is a model of housing where a family agrees to permit a youth program participant to reside with them. Recognizing the addition of another person in the home may increase costs to the family, HUD will consider YHDP Replacement project applications that propose to house youth with families and subsidize the additional costs attributable to housing the youth, including recruitment of hosts. An example of eligible costs would be additional food or transportation costs, which are eligible supportive services under 24 CFR 578.53(e)(7) or 24 CFR 578.53(e)(15). Recipients must keep records related to this determination for HUD review upon request. The residence is in a community-based setting and the family may be related to youth program participants with a time-limited or unlimited length of stay.

**(7) Housing Inventory Count (HIC).** A complete listing of the CoC's HUD and non-

Case 1:25-cv-00636-MSM-AEM    Document 56-2    Filed 12/29/25    Page 277 of 279
PageID #: 1645

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

HUD funded beds dedicated to individuals and families experiencing homelessness in the CoC's geographic area.

**(8) Reservation and Trust Land.** For purposes of this Notice, Reservations and Trust Land are types of formula areas as specifically delineated under HUD's IHBG program at 24 CFR 1000.302.

**(9) Rural Area.** For this competition a rural area is a county which:

**(a)** has no part of it within an area designated as a standard metropolitan statistical area by the Office of Management and Budget;

**(b)** is within an area designated as a metropolitan statistical area or considered as part of a metropolitan statistical area and at least 75 percent of its population is local on U.S. Census blocks classified as non-urban; or

**(c)** is located in a state that has a population density of less than 30 persons per square mile (as reported in the most recent decennial census), and of which at least 1.25 percent of the total acreage of such State is under Federal jurisdiction, provided that no metropolitan city in such State is the sole beneficiary of the grant amounts awarded under this NOFO. A metropolitan city means a city that was classified as a metropolitan city under section 102(a) of the Housing and Community Development Act of 1974 (42. U.S.C. 5302(a)) for the fiscal year immediately preceding the fiscal year for which Emergency Solutions Grants program funds are made available.

**(10) Shared Housing.** YHDP Renewal, YHDP Replacement and YHDP Reallocation grants may provide rental assistance for shared housing where youth may reside with family or another unrelated person. The youth leases from the property owner and shares the unit with the family or unrelated person. The unit may be a house or an apartment.

**(a)** YHDP rental assistance cannot be provided to a youth to reside in a unit occupied by an immediate family member. For this NOFO "immediate family member" includes parents, grandparents, and legal guardians.

**(b)** YHDP rental assistance cannot be provided to a youth in a shared housing unit if the landlord is an immediate family member of the youth.

**(c)** YHDP rental assistance may only be provided to a youth if the youth can enter into a valid, binding, and enforceable lease under applicable state or local law. This includes a legally appointed guardian executing a lease on behalf of a youth or an emancipated youth entering into a lease.

**(d)** YHDP Renewal and replacement grants may provide a shared housing option for youth program participants who are not part of a household but are interested in sharing a housing unit with a roommate unrelated to the program participant.

**(11) Special NOFO.** A competition administered under the Continuum of Care Supplemental to Address Unsheltered and Rural Homelessness designed to target efforts to reduce unsheltered homelessness in communities with very high levels of unsheltered homelessness and homelessness in rural areas. Funding through this

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |
|---|---|---|---|---|---|---|---|---|

Competition was awarded through either the Unsheltered Set Aside or the Rural Set Aside.

**(12) YHDP Replacement Process, including YHDP Reallocation.** The YHDP Replacement process occurs when: (1) a CoC reallocates a YHDP Renewal project to create one or more new YHDP project(s) that has the same recipient referred to as YHDP Replacement in this NOFO; (2) a CoC is reallocating a YHDP Renewal project to create one or more new projects with a new recipient referred to as YHDP Reallocation in this NOFO; or (3) a CoC is reallocating YHDP Renewal project(s) to create YHDP Expansion applications through the YHDP Replacement process. For more information on YHDP Reallocation, see sections IV.D.1.i of this NOFO.

Appendix 2: Funding Opportunity Goals

The CoC Program is designed to promote a community-wide commitment to the goal of ending homelessness and to provide funding for efforts by nonprofit providers, States, Indian Tribes or Tribally Designated Housing Entities, and local governments to quickly rehouse individuals, families, persons fleeing domestic violence, dating violence, sexual assault, and stalking, and youth while minimizing the trauma caused by homelessness. The CoC Program promotes access to and the effective utilization of mainstream programs by homeless individuals and families to optimize self-sufficiency among those experiencing homelessness. HUD hopes to accomplish the following goals through the collaborative efforts of applicants for CoC Program funding and local CoC stakeholders:

## 1. Ending the Crisis of Homelessness on Our Streets

The number of people experiencing unsheltered homelessness is at an all-time high. People living on the streets and in encampments have high rates of substance use disorder and mental illness. According to a nationwide study, 75% of people experiencing unsheltered homelessness report a substance use disorder and 78% report a mental health condition. The study found that substance use disorder contributed to the loss of housing for 50% of the unsheltered population, and mental health conditions contributed to loss of housing for 51% of the population.

CoCs should direct resources towards outreach, intervention, and assistance that helps people regain self-sufficiency. Consistent with Executive Order 14321 "Ending Crime and Disorder on America's Streets," CoCs should work with law enforcement, first responders, and their state and local governments to reduce encampments, public camping, and public drug use in order to address barriers to maintaining housing and increasing self-sufficiency.

## 2. Prioritizing Treatment and Recovery.

CoCs should prioritize projects that provide the treatment and services people need to recover and regain self-sufficiency including on-site behavioral health treatment, robust wraparound supportive services, and participation requirements. This NOFO devotes resources to Transitional Housing programs and Supportive Service Only projects with the goal of improving health and long-term economic independence for the homeless. HUD encourages CoCs to utilize the full array of mainstream programs and local and private resources to provide housing and healthcare needed to maintain safe and stable housing.

## 3. Advancing Public Safety

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

Safety and security for all members of the public, especially those living unsheltered, is essential to promoting a community-wide commitment to the goal of ending homelessness. CoCs should cooperate with law enforcement to advance public safety for the entire community impacted by homelessness. No one should sleep outside on the street or in dangerous encampments, and everyone should be able to enjoy public spaces safely. HUD encourages CoCs to assist in preventing and minimizing the trauma associated with living on the streets or in encampments, especially for women and youth that are the victims of sexual assault and trafficking. Unchecked public camping and public illicit drug use inhibit nonprofit providers and local government from effectively addressing homelessness.

First responders are critical partners in engaging people into treatment and services and protecting public order and vulnerable individuals experiencing homelessness. In *Grants Pass v. Johnson,* the Supreme Court of the United States upheld the authority of local governments to prohibit public camping.

**4. Promoting Self-Sufficiency.**

One of the primary purposes of the CoC Program is to optimize self-sufficiency. CoCs should partner with workforce development centers, employers, childcare, and other supportive service providers to increase employment and employment income for program participants. CoCs should prioritize projects that help lead to long-term economic independence for individuals and families to exit homelessness and prevent future returns to homelessness.

**5. Improving Outcomes.**

CoCs should review all projects eligible for renewal under this NOFO to determine their effectiveness in reducing homelessness and increasing self-sufficiency. CoCs should prioritize projects that promote self-sufficiency, increase employment income over government assistance, and promote treatment and recovery.

This NOFO includes several options to help CoCs improve their effectiveness, including reallocation, expansion, and transition grants, and CoC's should take advantage of these options to expand the pool of providers, including faith-based providers, and improve the overall performance of the CoC.

**6. Minimizing Trauma.**

One of the purposes of the CoC program is to minimize the trauma associated with homelessness. CoCs should encourage providers to provide trauma informed care and ensure participant safety in programs, especially for survivors of domestic violence, dating violence, sexual assault, and stalking. Women experiencing homelessness or domestic violence should have access to safe, single-sex spaces.

DOJ-HUD-AR00283