# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

NATIONAL ALLIANCE TO END
HOMELESSNESS, *et al.*,

      *Plaintiffs*,

v.

U.S. DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT, *et al.*,

      *Defendants*.

Case No. 25-cv-636-MSM-AEM

## SECOND SUPPLEMENTAL DECLARATION OF ANN MARIE OLIVA NATIONAL ALLIANCE TO END HOMELESSNESS

I, Ann Marie Oliva, declare the following under penalty of perjury:

1. My name is Ann Marie Oliva, and I am the CEO of the National Alliance to End Homelessness ("Alliance" or "NAEH").

2. I have previously submitted two declarations in this case in support of Plaintiffs' Motion for Relief Under 5 U.S.C. § 705 and for Preliminary Injunction. Dkt. No. 7-1 (First NAEH Decl.); Dkt. 49-1 (Suppl. NAEH Decl.).

3. I submit this Second Supplemental Declaration in support of Plaintiffs' Motion for Summary Judgment.

4. If called upon to testify, I could and would testify competently as to the truth of the facts in this declaration.

1

**Ongoing Harm to the Alliance's Members and their Communities**

5.  The Alliance has been in close communication with many of its members to understand the impacts of HUD's attempted rescission of the FY24-25 NOFO and potential implementation of new FY25 NOFOs, and the resulting delays and unpredictability of when HUD will issue FY25 awards, including renewal of grants previously awarded in FY24.

6.  We identified at least 271 FY24 grants to Alliance members that will expire during the first quarter of 2026, with over 500 set to expire at some point during the second quarter. Collectively, these grants house over 31,000 individuals.

7.  The affected members are struggling to find ways to keep their tenants in homes while navigating the uncertainties and delays wrought by HUD. For example:

   a. A CoC in Oklahoma is scrambling to "make plans to exit at least 60% of current clients off grants without discharging [them] to homelessness." One of the CoC's agencies has funding that ends in April 2026, and is working to determine whether it has any available funds to float the costs to house their tenants for some period, or whether it would be more prudent to exit them from the program;

   b. A CoC in Pennsylvania has their largest permanent supportive housing program due to expire at the end of April 2026; that program is working to try and relocate tenants to other housing programs due to the imminent loss of funds. Because of the uncertainty and likely

loss of funding, this CoC has been "ramping down operations and not accepting new applications," while trying to find creative solutions to fill funding gaps for as long as they can;

c. A CoC in Tennessee has a PSH grant that expires at the end of February 2026, and that program has been preparing to close. Program staff have been informing tenants of the imminent closure of the program, causing "incredible stress to those who have finally been in stable housing. A majority of them do not make anywhere near enough income to meet market rents and housing authorities have extremely long waiting lists." Given the timing of HUD's revised NOFO and renewal process, this CoC expects that these tenants "will likely not be placed in units by the time the grant will expire."

d. A CoC in West Virginia has a dedicated program for older adults who have experienced domestic violence and other forms of abuse, whose funding is due to be renewed on April 1. They explain that "the people we serve understand the impacts" of the potential loss of funding "and are fearful of losing the housing and supports that have allowed them to have a level of housing success that many of them had only hoped for."

e. A CoC in New York has a program serving individuals with Serious Mental Illness and developmental disabilities which is funded

through January 31, 2026. These individuals receive support four times monthly to assist with housing stability and daily living. If CoC funding is not renewed, these "highly vulnerable individuals—who were previously experiencing homelessness—will likely be forced back into the shelter system, despite having been successfully housed," with "a profound and heartbreaking impact on those individuals and their continued stability." The program itself "has been forced to begin ramping down operations in anticipation of a potential funding gap. This has included pausing new referrals, delaying program expansion, and engaging in contingency planning that may require reductions in supportive services." And the funding uncertainty is jeopardizing the long-term relationships the program had built with landlords supportive of the program's mission.

f. A CoC in New Jersey has three grants expiring at the end of January, February, and March 2026, respectively; the CoC has been unable to find alternative arrangements and has had to inform over 100 families that they may not have housing anymore as these grants expire;

g. A CoC in Maryland has been working to find funding for tenants served by programs ending in January and February 2026. They have managed to identify funding that would help them fill the gap for these tenants until April but have been discouraging these

individuals from signing new year-long leases because funding is not going to be available to support them past April. They expect a "great portion" of their tenants "will have to return to the streets," as many of them "have no family or friends" – "we are it." These tenants "are all disabled with very limited income" and will not be able to afford a one-bedroom apartment.

8. Every additional delay in being able to provide these CoCs funding and certainty is going to have profound impacts on their programs and the tenants they serve.

**Categories of FY25 Awards**

9. There are two categories of FY25 awards: those that do *not* require applications, and those that do.

10. **No-Application Renewals**: Projects awarded in FY 2024 under the FY24-25 NOFO are not required to submit new applications. FY24-25 NOFO at 4. They can receive a FY25 renewal award based on the application they submitted (and that HUD already reviewed) in FY 2024.

11. **New Application Awards**: New applications are required for CoCs and project applicants with new projects (primarily based on reallocating or replacing existing projects), or those renewing awards, granted in another fiscal year (before FY 2024), with expiration dates in calendar year 2026. FY24-25 NOFO at 4. For this category of awards, a new application, a new 2025 Priority Listing, and certain certifications would have been due on August 29, 2025. *Id.* at 23. HUD's review would

5

be more substantive and time-consuming as it would be starting anew, including scoring and selecting applications for funding.

12. The vast majority (95%) of FY 2025 renewal awards are No-Application Renewals.

13. HUD published the FY2025 Annual Renewal Demand, which indicates that approximately $3.57 billion would be needed to fund all eligible renewals in FY 2025, before making adjustments for Fair Market Rent and Cost of Living.

14. Based on our analysis, funding needed for No-Application Renewals represents approximately 95 percent of that amount. In other words, of the $3.57 billion in eligible renewals, approximately $3.34 billion would be for a No-Application Renewals. We determined this by using publicly available data compiled from several sources including HUD's posted 2025 Annual Renewal Demand, the CoC Award Announcements (2024 and previous), CoC Special NOFO Award Summary Reports, and USASpending.gov.

I declare under penalty of perjury as described in 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this 14th day of January, 2026

*[signature]*
Ann Marie Oliva
Chief Executive Officer, NAEH