# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF WASHINGTON, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al.*, <br><br> Defendants. <br><br> AND <br><br> NATIONAL ALLIANCE TO END HOMELESSNESS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al.*, <br><br> Defendants. | Case Nos. 25-cv-626-MSM-AEM <br>           25-cv-636-MSM-AEM <br><br> District Judge Mary S. McElroy <br> Magistrate Judge Amy E. Moses <br><br> **DEFENDANTS' COMBINED EMERGENCY MOTION FOR A STAY OF THE PRELIMINARY INJUNCTIONS PENDING APPEAL** <br><br> **EXPEDITED RELIEF REQUESTED BY MARCH 6, 2026** |

# INTRODUCTION

Defendants file this motion pursuant to Federal Rule of Appellate Procedure 8(a)(1) to stay this Court's preliminary injunctions in these two related cases pending appeal. Defendants respectfully request relief on this motion from this Court by March 6 and will seek the same relief from the United States Court of Appeals for the First Circuit no later than March 9.

# BACKGROUND

On December 19, 2025, the Court orally entered a preliminary injunction against Defendants U.S. Department of Housing & Urban Development (HUD) and Scott Turner, Secretary of HUD, in these two related cases. *See* Min. Entry, *State of Washington v. HUD*, No. 25-cv-626 (D.R.I. Dec. 19, 2025) ("*State Litigation*"); Min. Entry, *National All. to End Homelessness*, No. 25-cv-636 (D.R.I. Dec. 19, 2025) ("*NAEH Litigation*"). It memorialized that injunction by written order on December 23, 2025. *See State Litigation*, ECF No. 68; *NAEH Litigation*, ECF No. 52 (collectively "PI Order").

Among other things, that injunction stayed and preliminarily enjoined HUD's rescission of the Fiscal Year (FY) 2024 and FY 2025 Continuum of Care Notice of Funding Opportunity ("2024 NOFO") for HUD's Continuum of Care (CoC) program. *See* PI Order ¶ 2. It also prevented Defendants from giving effect to any new NOFO to award FY 2025 funding, "including by enforcing any deadlines" or accepting and processing applications under any other NOFO." *Id.* ¶ 5. The order had the effect of enjoining HUD's most recent NOFO ("December 2025 NOFO"), which HUD had previously informed the Court and Plaintiffs would be issued soon after rescission of HUD's earlier November 2025 NOFO. *See NAEH Litigation*, ECF No. 45-1 (noting HUD's December 8th withdrawal of an earlier NOFO and that HUD was "working diligently" toward publication of a new one). HUD issued that new NOFO, as it had informed the Court it would, on

1

December 19, 2025. *See State Litigation*, Defs.' Notice of Publication of NOFO, ECF No. 66; *NAEH Litigation*, ECF No. 51. The parties then proceeded through an expedited summary judgment briefing schedule, based on that new NOFO, that concluded on February 6, 2026. *See State Litigation*, Defs.' Reply in Supp. of Cross-Mot. for Summ. J., ECF No. 87; *NAEH Litigation*, Defs.' Reply in Supp. of Cross-Mot. for Summ. J., ECF No. 72. Those motions remain pending.

On February 3, 2026, Congress passed and the President signed into law the Consolidated Appropriations Act, 2026, which mandates that HUD noncompetitively renew all CoC projects expiring in the first quarter of 2026 and provides a series of additional deadlines throughout the year by which HUD must make awards under "a 2025 notice of funding opportunity" or, if HUD fails to meet those deadlines, must noncompetitively renew CoC projects expiring in subsequent quarters. *See* Transportation, Housing and Urban Development, and Related Agencies Appropriations Act, 2026, Pub. L. No. 119-75, div. D, tit. II, 140 Stat. 173, H.R. 7148 at 250–51 ("2026 THUD Appropriations Act"). Given the immediacy of those deadlines, the fact that the Court's PI Order prevented HUD from timely implementing and proceeding under its chosen 2025 NOFO, and the fact that HUD must begin implementation of its NOFO in the coming weeks in order to meet the final deadline under the 2026 THUD Appropriations Act, Defendants moved to dissolve the Court's preliminary injunction on February 17, 2026. *See State Litigation*, Defs.' Emergency Mot. to Dissolve, ECF No. 89; *NAEH Litigation*, Defs.' Emergency Mot. to Dissolve, ECF No. 74.

On February 27, 2026, the Court denied the combined motions to dissolve, reasoning that Plaintiffs continue to face imminent, irreparable harm from "(1) the upheaval and service gaps that would result from the Defendants['] attempt to vastly overhaul the funding selection criteria on an accelerated basis" and "(2) the Defendants' attempt to implement the December 2025 NOFO in

2

light of the Court's prior determination that Plaintiffs have a strong likelihood of success in their action contesting its legality." *State Litigation*, Text Order (Feb. 27, 2026); *accord NAEH Litigation*, Text Order (Feb. 27, 2026). Defendants have appealed the Court's denials of their combined motion to dissolve the preliminary injunction. The instant motion seeks a stay of the Court's preliminary injunctions in each case pending resolution of an appeal. Defendants respectfully request relief from this Court by March 6 and will seek relief from the First Circuit no later than March 9.[1]

## LEGAL STANDARD

Courts consider four factors in assessing a motion for a stay pending appeal, all of which are similar to the four factors used to assess the basis for preliminary injunctive relief and to determine whether to dissolve or modify preliminary injunctive relief. Courts assess (1) the movant's likelihood of prevailing on the merits of the appeal, (2) whether the movant will suffer irreparable harm absent a stay, (3) the harm that other parties will suffer if a stay is granted, and (4) the public interest. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). When the government is a party, its interests and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

A stay is warranted here. Defendants are likely to succeed on the merits of their appeal, because the Court erred in refusing to dissolve the preliminary injunction. Moreover, the equities support a stay, because the injunction irreparably harms the government and the public. *See Nken*, 556 U.S. at 426. The preliminary injunction irreparably harms HUD because it prevents HUD from

---

[1] Defendants conferred with Plaintiffs by email at 3:58 PM EST on Sunday, March 1, and later at 9:59 PM EST on the same day, requesting their position on this motion and stating that Defendants intended to appeal the Court's February 27 orders and to move to stay the preliminary injunction by 10:00 AM EST today. As of this filing, Defendants have not received a response.

giving effect to its 2025 NOFO and therefore prevents HUD from meeting the deadlines set by Congress to award funds under a 2025 NOFO. And the preliminary injunction does so despite the fact this Court has not yet adjudicated any challenge to the merits of the December 2025 NOFO, preliminarily or otherwise. Nor could the court have assessed the lawfulness of the December 2025 NOFO at the time of the preliminary injunction, as that NOFO was not issued until after the Court's oral preliminary injunction decision. In light of Congress's confirmation that HUD can issue a 2025 NOFO, there can be no legal basis for prohibiting that NOFO from taking effect. Meanwhile, any imminent harm to Plaintiffs has been eliminated, because Congress has provided that all CoC projects expiring in the first quarter of 2026 (and, as a practical matter, in the second quarter as well) will be noncompetitively renewed. In other words, Congress has removed the risk of a potential funding gap.

*First*, Defendants are likely to succeed on appeal on the merits of their argument that rescission of the 2024 NOFO and implementation of the December 2025 NOFO were, and are, lawful. And they are likely to succeed on the merits of their appeal that the Court's refusal to dissolve its preliminary injunction was error. The preliminary injunction forbids HUD from giving effect to any 2025 NOFO. *See* PI Order ¶ 5. But the new appropriations act authorizes HUD to award at least some of its 2025 funds under a 2025 NOFO. *See* 2026 THUD Appropriations Act, § 244, H.R. 7148 at 250. The preliminary injunction thus thwarts Congress's determination that HUD would have freedom to award 2025 CoC funds under a 2025 NOFO, as long as HUD could do so before a series of deadlines. *See id.* § 244, H.R. 7148 at 250–51. Congress has thus confirmed that HUD has the flexibility to modify or rescind the two-year 2024 NOFO and to issue a new 2025 NOFO in its place. Despite their protestations that Congress's act represents a *rebuke* to HUD's administration of the CoC program, *see State Litigation*, Pls.' Opp'n to Mot. to Dissolve

4

at 6, ECF No. 90; *NAEH Litigation*, Pls' Opp'n to Mot. to Dissolve at 8–9, ECF No. 75, Plaintiffs have shown *no* textual support in the appropriations act for their position that HUD is *required* to implement the prior Administration's two-year NOFO. And they cannot: the 2026 THUD Appropriations Act expressly provides HUD the flexibility to, at some point between today and July 1, make awards under "a" 2025 NOFO. Any "uncertainty," *State Litigation*, ECF No. 90 at 6, in the statutory language cannot form the basis to maintain a determination that Plaintiffs are likely to succeed on the merits in their argument that the McKinney-Vento Act (and Congress's subsequent instructions) does not permit HUD to rescind or modify an earlier-issued NOFO, even past the statutory deadlines identified in the McKinney-Vento Act.

The preliminary injunction is all the more unfounded because HUD is likely to succeed in showing that it acted reasonably and within its authority in rescinding the 2024 NOFO and issuing the December 2025 NOFO. As HUD explained in detail in its summary judgment briefing, HUD's rescission of the 2024 NOFO was not arbitrary and capricious, contrary to law, or unreasonably delayed. *See State Litigation*, Defs.' Cross-Mot. for Summ. J. at 17–30, ECF No. 83; *NAEH Litigation*, Defs.' Cross-Mot. for Summ. J. at 17–30, ECF No. 68 (collectively "Defs.' MSJ Br."); *see also State Litigation*, Defs.' Reply at 2–9, ECF No. 87; *NAEH Litigation*, Defs.' Reply at 2–9, ECF No. 72 (collectively "Defs.' MSJ Reply"). Plaintiffs' challenges to provisions appearing only in the defunct November 2025 NOFO are moot. *See* Defs.' MSJ Br. at 30–32; Defs.' MSJ Reply at 9–12. The December 2025 NOFO was not arbitrary and capricious or contrary to law and was properly issued without notice-and-comment rulemaking. *See* Defs.' MSJ Br. at 32–67; Defs.' MSJ Reply at 15–40. And Plaintiffs' constitutional claims fail as well, as the December 2025 NOFO does not violate any Spending Clause, separation-of-powers, or free speech principles. *See* Defs.' MSJ Br. at 68–78; Defs.' MSJ Reply at 40–45.

The Court erred by declining to dissolve its injunction against Defendants without independently adjudicating the lawfulness of the December 2025 NOFO, especially in light of the advance notice Defendants gave of the forthcoming publication of the December 2025 NOFO and the changed circumstances resulting from passage of the 2026 THUD Appropriations Act. Defendants explained in their summary-judgment briefing why the McKinney-Vento Act permits HUD (1) to modify or rescind an earlier-issued NOFO after the statutory deadline to issue a NOFO has passed and (2) to set permanent housing and project renewal amounts at the statutory minimums in the Act. *See* Defs.' MSJ Br. at 18–20, 37–44. And Defendants further explained in their reply and motion to dissolve why the 2026 THUD Appropriations *affirmed* HUD's authority to modify earlier-issued NOFOs after the McKinney-Vento Act's deadlines have passed. *See* Defs.' MSJ Reply Br. at 3–6, 17–21; ECF No. 89 at 9–11, 14–15. The Court has declined to provide any reasoned assessment of the merits of that argument, or of the lawfulness of the December 2025 NOFO, at this stage, or any stage. The Court's brief text order denying Defendants' motion to dissolve incorporated its "prior determination" that Plaintiffs were likely to succeed in their challenge to any NOFO on the merits. *State Litigation*, Text Order (Feb. 27, 2026); *NAEH Litigation*, Text Order (Feb. 27, 2026). But the Court never provided any merits determination on the *operative* NOFO HUD issued. Continuing to enjoin HUD from implementing its NOFO, without clarifying how Plaintiffs have met their burden to show likelihood of success on the merits of their argument that HUD's implementation of the December 2025 NOFO violated the McKinney-Vento Act, warrants a stay of the preliminary injunction.

*Second*, the equitable factors favor a stay pending appeal, because the harm to HUD far outweighs any harm that Plaintiffs can identify from permitting HUD to begin implementation of

6

the December 2025 NOFO in time to begin making awards under the NOFO by the congressional deadline of July 1, 2026.

Following the Court's preliminary injunction, the balance of equities and public interest have tipped decisively in HUD's favor. The "service gaps" that Plaintiffs first alleged supported preliminary relief—and that the Court determined in its order denying Defendants' motion to dissolve the injunction, *see State Litigation*, Text Order (Feb. 27, 2026); *NAEH Litigation*, Text Order (Feb. 27, 2026)—have been entirely ameliorated by Congress's decision to mandate noncompetitive renewals for CoC project expiring in the first quarter of 2026 (and, given HUD's inability to make awards under its NOFO prior to April 1, 2026, for the second quarter of 2026 as well). And, to the extent that the Court's denial of relief is premised on the finding that "upheaval" will result from Defendants' attempt to "vastly overhaul the funding selection criteria," *see, e.g.*, *State Litigation*, Text Order (Feb. 27, 2026), such a finding improperly assumes success on the *merits* of any argument that Defendants do not have the authority to "overhaul" funding selection criteria. But that's not enough to maintain a preliminary injunction against a governmental policy going into effect. Indeed, the Government might obtain relief against such an injunction merely on the strength of its irreparable-harm argument, without *any* assessment of whether the Government is likely to succeed on the underlying merits of whether the policy is lawful. *See Trump v. CASA, Inc.*, 606 U.S. 831, 859–60 (2025). Irreparable harm to the Government—if shown—can independently justify the stay of an order preventing the Government from effectuating its chosen policy. *See id.*; *see also Charlesbank Equity Fund II v. Blinds to Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004). And because the Court's injunction has just that effect, Defendants here "suffer[] a form of irreparable injury." *CASA*, 606 U.S. at 860–61 (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)).

7

Even if Plaintiffs had established irreparable harm at the time of the preliminary injunction, that harm has dissipated and can no longer provide the basis for equitable relief. Plaintiffs have not seriously raised any argument—independent of the *merits* of the lawfulness of Defendants' chosen policies in administering the CoC program—that dissolution of the preliminary injunction would result in imminent irreparable harm to Plaintiffs. *See State Litigation*, ECF No. 90 at 8 (alleging harm would result from the "evisceration of housing programs and services, organizations' decisions not to renew leases," "hiring freezes," and "overhauling processes to prepare for new NOFO requirements," all of which bear on the ultimate lawfulness of the policies leading to such outcomes); *NAEH Litigation*, ECF No. 75 at 11–12 (challenging the "foundational and extensive changes embodied in the December NOFO"). The only *possible* harm Plaintiffs identify, independent of their ultimate challenge to the December 2025 NOFO itself, is the cost associated with the "application process" that would be implemented should Defendants proceed under its new NOFO. *See NAEH Litigation*, ECF No. 75 at 12, 14–16. But those harms are far outweighed by HUD's inability to implement its chosen policy. HUD has provided evidence that, should it have its NOFO in place by April 1, it anticipates it could be able to issue awards in time to meet Congress's July 1 deadline. *See State Litigation*, ECF No. 89-3 ¶¶ 5–6 (McKenney Decl.); *NAEH Litigation*, ECF No. 74–3 ¶¶ 5–6 (McKenney Decl.). Indeed, HUD issued the December 2025 NOFO several months ago—Plaintiffs have had months to prepare for any applications under the instrument. Plaintiffs' claims of processing harms cannot, alone, bear the weight required to maintain preliminary relief against the implementation of HUD's CoC NOFO.

The Court's preliminary injunction usurps Congress's judgment about the proper administration of the CoC program. Congress emphatically declined to require that *all* 2025 CoC awards be processed pursuant to the 2024 NOFO. Instead, it provided that certain categories of

projects would be noncompetitively renewed, independent of any NOFO being in effect. *See* 2026 THUD Appropriations Act, § 244, H.R. 7148 at 250–51. The Court is "not free to ignore that judgment and rewrite the statue to include a [different] timetable." *In re Am. Fed'n of Gov't Emps., AFL-CIO*, 837 F.2d 503, 506 (D.C. Cir. 1988).

\* \* \*

Continuing to enjoin the implementation of HUD's December 2025 NOFO will result, by default, in Plaintiffs' success in this lawsuit—without *any* finding, on the merits, that HUD's actions under the CoC program were unlawful. Such a result is untenable. A stay is warranted.

## CONCLUSION

For the reasons identified above, Defendants respectfully request that this Court stay its preliminary injunction pending resolution of Defendants' forthcoming appeal to the U.S. Court of Appeals for the First Circuit.

DATE: March 2, 2026               Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

JOHN BAILEY
Counsel to the Assistant Attorney General
Civil Division

JOSEPH E. BORSON
Assistant Branch Director

*/s/ William S. Jankowski*
WILLIAM S. JANKOWSKI
D.C. Bar No. 90021524
PARDIS GHEIBI
PETER R. GOLDSTONE
Trial Attorneys, U.S. Department of Justice

        Civil Division, Federal Programs Branch
        1100 L Street, N.W.
        Washington, D.C. 20530
        Tel.: (202) 353-7578
        Fax: (202) 616-8640
        Email: william.s.jankowski@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on March 2, 2026, the above document was filed with the CM/ECF filing system.

                                                                /s/ *William S. Jankowski*