**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| NATIONAL ALLIANCE TO END HOMELESSNESS, *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al*., <br><br> Defendants. | Case No. 25-cv-636-MSM-AEM <br><br> District Judge Mary S. McElroy <br> Magistrate Judge Amy E. Moses |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE
AND REQUEST FOR STATUS CONFERENCE**

Defendants file this response to Plaintiffs' notice, ECF No. 84, to update the Court in advance of the status conference scheduled for Monday, April 27, 2026.

Pursuant to the 2026 Transportation, Housing and Urban Development, and Related Agencies Appropriations Act ("THUD Appropriations Act"), HUD "announced $349,205,436 in FY 2025 CoC Program renewal funding for 622 projects that expired in the first calendar quarter of 2026" on March 31, 2026.[1] It has begun issuing individual award notices for projects that expired in Q1, and it will be issuing Q1 grant agreements shortly. HUD expects to announce Q2 awards on Monday, April 27, after a statutorily required three-day congressional notice period has lapsed. *See* 42 U.S.C. § 11382(c)–(d); *see also* THUD Appropriations Act, Pub. L. 119-75, div. D, tit. II, § 220, 140 Stat. 173, 417 (Feb. 3, 2026). And because insufficient time remains to conduct a competition for the remaining FY2025 funding available for the second half of the calendar year, HUD has committed to noncompetitively renewing the remaining grants expiring in Q3 and Q4,

---

[1] https://www.hud.gov/hud-partners/community-coc

1

pursuant to Congress's command. HUD expects to announce Q3 and Q4 awards by the end of May.

The separate process of finalizing grant agreements is distinct from the process of announcing awards. After awards are publicly announced, HUD and the awardees must engage in a lengthy process that, in a typical review cycle, takes at least four to six weeks. This process has diverted HUD staff from being dedicated to renewal reviews for Q3 and Q4. HUD has communicated its progress to Plaintiffs regularly and explained that the process of awarding grants—like in all years—has many independent steps.

Committing funding for specific renewals, as has already been done for Q1 and imminently for Q2, is distinct—legally and functionally—from finalizing grant agreements. The public announcement of awards triggers the obligation process. *See* 42 U.S.C. § 11382(c)(2). Once that announcement occurs, grant recipients have between nine months and two years, depending on the type of project, to "meet all requirements for the obligation" of funds that have been announced. *Id.* § 11382(d)(1)(A)–(B). Only then, "[n]ot later than 45 days after a recipient or project sponsor meets" such requirements, "shall" the Secretary obligate and distribute funds for the grant involved. *Id.* § 11382(d)(2). HUD is committed to following the process it always undertakes to finalize grant agreements for CoC grant recipients—and it has already taken all steps to "grant[] specific renewals," ECF No. 52 ¶ 6, under the HUD Reform Act's funding scheme. Indeed, it has been clear throughout this litigation that the point at which it considers the renewal process to be complete is when it "mak[es] selections" for awards, ECF No. 62-1 at 2—which comes just prior to public announcement of awards and the obligation of funds to specific recipients. The Court's preliminary-injunction order required HUD to "tak[e] all steps necessary to process eligible renewals for FY 2025 CoC funding pursuant to the FY24-25 NOFO, but excluding the obligation

2

of funding and the granting of any specific renewals." ECF No. 52 ¶ 6. HUD has since exceeded its obligations under that order (while also complying with its similar but distinct obligations under the 2026 THUD Appropriations Act) with respect to Q1 and Q2 awards.

Plaintiffs now suggest—for the first time—an entirely new requirement to impose on HUD: "issuing final grant agreements." ECF No. 84 at 2. But that requested relief is entirely outside the scope of this litigation and, because the relevant legal authorities set no imminent time limit by which such agreements must be finalized, likely outside this Court's authority. *See* Pub. L. No. 119-75, § 244, 140 Stat. 173, 422 (2026) (providing no deadline by which HUD must issue final grant agreements); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (explaining that a claim for unreasonable delay under 5 U.S.C. § 706(1) "precludes" any "broad programmatic attack" and can only proceed where "an agency failed to take a *discrete* agency action that it is *required to take*"); *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) (explaining that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money'" (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)).

HUD acknowledges that it has not yet announced the renewal of grants for the full calendar year, despite the agency's earlier indication (prior to passage of the 2026 THUD Appropriations Act) that "HUD *anticipates* completing its required review and making selections [under the 2024 NOFO] no later than March 31, 2026." ECF No. 62-1 at 2 (emphasis added). But, as Defendants have explained to Plaintiffs, HUD's current timeline is justified here by two separate factors.

*First*, the threshold risk and financial-management reviews that HUD must perform in advance of its obligation of funding, *see, e.g.*, 2 C.F.R. § 200.206(b), have necessitated multiple rounds of review at the agency, including coordination between HUD's CoC program office and

3

its field offices, to ensure that the agency has access to the most accurate and recent information available on recipients' financial-management practices. HUD earlier anticipated that it would be able to complete such review by March 31. But, as explained below, HUD then had to adjust its review processes—expending significant additional time—to separately comply with its duties under the 2026 THUD Appropriations Act. While the process under the appropriations act was similar to that under the 2024 NOFO, it was not identical. That adjustment made a "date certain" more difficult to predict, let alone guarantee. Further, HUD has had to build out most of this compliance process anew—in every tranche of renewals, it has discovered that certain information underlying the required eligibility, capacity, and threshold review processes was out of date and had not been properly updated. That process for projects expiring in the first two quarters, which necessitated a significant number of individualized follow-ups with field offices and grantees for each tranche of CoC projects, thus took slightly longer than HUD originally anticipated

Despite this, HUD has as of filing consummated the renewal process—by submitting projects for congressional review—for over 1,800 projects expiring in Q1 and Q2. HUD has now improved upon its process such that it anticipates that it is on track to publicly commit funding for Q3 and Q4 renewals by May 31, 2026, well before its requirement to do so under the 2026 THUD Appropriations Act is triggered. *See* § 244, 140 Stat. at 422–23 (setting July 1 as the date triggering HUD's obligation to renew projects expiring in Q3 and Q4).

*Second*, Congress's new requirement to undertake a rolling renewal scheme for FY2025 funding throughout 2026, *see* § 244, 140 Stat. at 422, has impacted HUD's longstanding practices for renewing CoC grants. The 2026 THUD Appropriations Act required HUD to rework its financial-review process to prioritize projects expiring in Q1 and Q2 of 2026. And, although the scheme has created certain efficiencies—*i.e.*, CoCs with projects expiring earlier in the year should

receive more efficient review for any projects they may also have expiring later in the year—it has also led to certain duplications. For instance, when, in years prior, HUD undertook renewal reviews for a CoC's projects, it could do so all at once—now, given that Congress has directed HUD to prioritize renewals of earlier-in-time projects, HUD must independently review projects that expire later in the year, even if the CoC for that project has already undergone review.

Further, HUD had to divert staff from reviewing all renewals to actually effectuating them. In years past, those processes have been separate—once review was complete, then effectuating the awards could occur. Congress's choice to change that process means that HUD must now run both processes concurrently. And the effectuation of awards is a lengthy process that takes at least four to six weeks and involves numerous stages, including issuing the awards, ensuring compliance with complex statutory and regulatory requirements, preparing thousands of individualized transmittal letters and grant agreements, and training HUD staff. It also necessitates involvement from and coordination with the Office of Management and Budget and virtually every division of HUD leadership, in ways that renewal reviews do not. HUD staff and leadership are working diligently both to effectuate and finalize Q1 and Q2 awards and simultaneously to complete reviews for Q3 and Q4 awards..

\* \* \*

In sum, HUD is working expeditiously to comply with its obligations to renew CoC projects throughout the 2026 calendar year. In fact, it has already completed that process for projects expiring in Q1 and (imminently) for Q2—above and beyond what the Court's preliminary-injunction order required. The agency will complete the required process to obligate funds for CoC projects expiring in the remainder of 2026 as expeditiously as possible, considering the above constraints.

Date: April 24, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

JOHN BAILEY
Counsel to the Assistant Attorney General

JOSEPH E. BORSON
Assistant Branch Director

*/s/ William S. Jankowski*
WILLIAM S. JANKOWSKI
D.C. Bar No. 90021524
PARDIS GHEIBI
PETER R. GOLDSTONE
Trial Attorneys, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20530
Tel.: (202) 353-7578
Fax: (202) 616-8640
Email: william.s.jankowski@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on April 24, 2026, the above document was filed with the CM/ECF filing system.

/s/ *William S. Jankowski*